PETER BIBRING (SBN 223981)
pbibring@aclusocal.org
CARMEN IGUINA (SBN 277369)
ciguina@aclusocal.org
CATHERINE WAGNER (SBN 302244)
cwagner@aclusocal.org
MELANIE P. OCHOA (SBN 284342)
mpochoa@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone:   (213) 977-9500
Facsimile:   (213) 977-5299

*Counsel for Plaintiffs*
(Additional Counsel for Plaintiffs on Following Page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUTH JUSTICE COALITION, a non-profit organization; PETER ARELLANO and JOSE REZA, individuals, for themselves and on behalf of a class of similarly-situated individuals,<br><br>     *Plaintiffs*,<br><br>    vs.<br><br>CITY OF LOS ANGELES; MIKE FEUER, City Attorney of the City of Los Angeles, in his official capacity; CHARLIE BECK, Chief of the Los Angeles Police Department, in his official capacity; DOES 1 through 10, in their official and individual capacities,<br><br>     *Defendants*. | Case No. 16-7932<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION**<br><br>42 U.S.C. § 1983 [Fourteenth Amendment]<br>California Constitutional Claim |

1

1   JACOB S. KREILKAMP (SBN 248210)
2   jacob.kreilkamp@mto.com
    LAURA D. SMOLOWE (SBN 263012)
3   laura.smolowe@mto.com
    AMELIA L.B. SARGENT (SBN 280243)
4   amelia.sargent@mto.com
    MARIA JHAI (SBN 283059)
5   maria.jhai@mto.com
    MUNGER, TOLLES & OLSON LLP
6   355 South Grand Avenue
    Thirty-Fifth Floor
7   Los Angeles, California 90071-1560
    Telephone:   (213) 683-9100
8   Facsimile:   (213) 687-3702

9   ANKUR MANDHANIA (SBN 302373)
    ankur.mandhania@mto.com
10  MUNGER, TOLLES & OLSON LLP
    560 Mission Street
11  Twenty-Seventh Floor
    San Francisco, California 94105-2907
12  Telephone:   (415) 512-4000
    Facsimile:   (415) 512-4077

13  JOSHUA GREEN (SBN 293749)
    jgreen@urbanpeaceinstitute.org
14  THE CONNIE RICE INSTITUTE FOR URBAN PEACE
    1910 West Sunset Boulevard
15  Suite 800
    Los Angeles, California 90026
16  Telephone:   (213) 404-0124
    Facsimile:   (213) 402-2843
17
    *Counsel for Plaintiffs*
18

19

20

21

22

23

24

25

26

27

28

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

## **JURISDICTION AND VENUE**

2      1.      This Court has subject matter jurisdiction over Plaintiffs' federal

3  claim for relief under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331 and § 1343,

4  and over Plaintiffs' state law claim, because it is so related to their federal law

5  claim as to form part of the same case or controversy, pursuant to 28 U.S.C.

6  § 1367(a).

7      2.      Venue is proper in the Central District of California under 28 U.S.C.

8  § 1391(b) because all acts, events, and occurrences giving rise to this action

9  occurred in the County of Los Angeles, California.

10

## **PRELIMINARY STATEMENT**

11      3.      This action concerns the unconstitutional enforcement of restrictive

12  "gang injunctions" by the City of Los Angeles (the "City") against thousands of

13  Los Angeles residents—most of them men of color—based on a unilateral and

14  behind-closed-doors determination by police and city attorneys that they are active

15  participants in a street gang. Without any prior notice or opportunity to contest the

16  allegations of gang membership, the City serves such individuals with these

17  injunctions that subject them to arrest for such ordinary activities as appearing in

18  public with friends and family, working alongside other members of the

19  neighborhood, or wearing the clothes they choose.[1]

20      4.      So-called "gang injunctions" are court orders prohibiting a variety of

21  conduct that police and prosecutors argue constitutes a nuisance. In Los Angeles,

22  the process of obtaining gang injunctions works as follows: police and prosecutors

23  work together to bring state court actions against alleged gangs, claiming that their

24  activities constitute a public nuisance and seeking an injunction to abate that

25  nuisance by prohibiting not only illegal activities, but also otherwise lawful

26

27  _____

[1] The allegations of this Complaint are based on information and belief unless

28  otherwise specified.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

conduct—such as associating in public, drinking anywhere in public view, or wearing supposed gang colors or symbols. In those actions, the City for the most part names as defendants not the individual people they believe are gang members, but rather the gang itself as an unincorporated association. Because the defendant gangs are not organized legal entities, these state court gang injunction actions have always resulted in a judgment against the gang by default, and the City has obtained its gang injunctions based on those defaults. But once the City obtains those judgments against the supposed gang entity, it uses those orders to restrict the rights of real people who were never parties to the state court action, "serving" individuals it asserts are active participants in the gang with the gang injunction and subjecting them to arrest and prosecution for engaging in any of the prohibited activities.

5.      This practice runs afoul of one of the most basic principles of fairness embodied in both the U.S. and California constitutions: that of procedural due process—the notion that the government cannot make determinations that deprive a person of legal rights without providing that person meaningful notice and an opportunity to be heard. "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Al Haramain Islamic Found., Inc. v. U.S. Dept. of Treas.*, 686 F.3d 965, 985 (9th Cir. 2012) (internal quotation marks and citation omitted).

6.      Relying on this fundamental principle of fairness, the Ninth Circuit Court of Appeals in *Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013), held unconstitutional the enforcement of a gang injunction against individuals who had not been provided adequate process to contest the allegation that they were members of the gang. The City of Los Angeles has refused to abide by the holding of the Ninth Circuit Court of Appeals in that case and fails to afford individuals with due process before enforcing gang injunctions against them.

7.     By enforcing gang injunctions against individuals who were never parties to the underlying state court actions, and who received no notice of or opportunity to contest the gang allegations against them, the City of Los Angeles has violated the Constitution of the United States and the California Constitution by denying due process of law to Plaintiffs Peter Arellano, Jose Reza, and others similarly situated. As a result of this disregard for Angelenos' due process rights, organizational Plaintiff Youth Justice Coalition has been forced to divert limited resources to address the Defendants' unconstitutional conduct.

## ALLEGATIONS

8.     The City of Los Angeles' gang injunctions are court orders obtained through civil public nuisance actions that seek to enjoin the nuisance activities of a gang in a particular defined geographical area referred to as the "Safety Zone."[2] Within that "Safety Zone," the injunctions uniformly prohibit not only criminal gang activities, but also otherwise lawful activities that prosecutors argue constitute a gang nuisance, such as associating together in public with others whom the police contend are gang members, even if those individuals are not themselves enjoined, and without any notice of whom the police believe to be gang members. Most injunctions prohibit association even between immediate family members or between co-workers while on the job, and many fail to provide an exception for school or church attendance. Even those injunctions with exceptions for school or church attendance still prohibit travel to and from these locations with others whom the police assert to be members of the gang, such that, for example, family and friends are forced to drive to church in separate cars or stop attending church

---

[2] The "Safety Zone" of any particular injunction is defined in the injunction itself (in fact, many injunctions include a map of the "Safety Zone"). Safety Zones can encompass entire neighborhoods. For example, one gang injunction in the San Fernando Valley covers nearly 10 square miles. *See* Scott Gold, *Gang injunction splits a San Fernando Valley community*, LATIMES (Sept. 26, 2008), http://www.latimes.com/local/la-me-outthere26-2008sep26-story.html.

altogether. The majority of injunctions prohibit individuals from possessing such mundane items as markers, flashlights, binoculars, and whistles; some even bar them from wearing certain colors as part of their attire or possessing a cell phone. Until recent litigation forced the City to change its practices, many of the injunctions also contained curfew provisions. *See Rodriguez v. City of Los Angeles*, Case No. CV11-01135 DMG (C.D. Cal.) ("*Rodriguez*").[3]

9.     The City of Los Angeles pioneered the use of gang injunctions, beginning with its effort to obtain what is widely recognized as one of the first gang injunctions in 1987.[4] Currently, the City has obtained at least forty-six gang injunctions against more than seventy-nine alleged gangs within the City of Los Angeles. As of 2008, gang injunctions covered more than seventy-five square miles, or fifteen percent of the City, and since that time the City has obtained ten more gang injunctions.

10.     Each of Defendants' forty-six gang injunction actions named as a defendant one or more alleged gangs as unincorporated associations. Most also included individual Doe defendants, and fewer than a third also named a few individual defendants. In none of the forty-six gang injunction actions in state court was the City ever required to litigate the merits of whether a gang nuisance existed that justified the permanent relief requested. Instead, in each action, the alleged gang named as a defendant never contested the suit, and the City obtained a

---

[3] The City has also stopped enforcement of other injunction provisions found by the courts to be unconstitutionally vague, including the "Obey All Laws," "Stay Away from Alcohol," and "Stay Away from Drugs" provisions. The City, however, continues to enforce the "Stay Away from" alcohol and drugs provisions if the enjoined individual is found in physical possession of an alcoholic beverage in public or in physical possession of a controlled substance or marijuana without a valid medical prescription or recommendation.

[4] *See generally* Matthew Mickle Werdegar, Note, *Enjoining the Constitution: The Use of Public Nuisance Abatement Injunctions Against Urban Street Gangs*, 51 Stan. L. Rev. 409, 414 (1999).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

judgment against the gang by default and an order granting permanent injunctive relief based on that default.[5]

11.     After obtaining gang injunction orders by default, Defendants then personally delivered the permanent injunction to—or "served"—individuals they contended to be active participants in the gang at issue.[6] Personal delivery of an existing injunction does not make the individual a party to any legal action or begin a process such as a lawsuit or subpoena. Rather, such service means only that the individual cannot claim ignorance of the injunction. In practice, by serving individuals with injunction papers, the City informed them that they would be subject to the terms of the order and that Los Angeles Police Department ("LAPD") officers could arrest them on the spot for violating any of its terms.

12.     Of the close to ten thousand individuals that the City currently subjects to its gang injunctions, the vast majority were never named as defendants in the civil nuisance action in which the City originally obtained the injunction. Instead, Defendants decided to enforce the gang injunction against them only after it had been issued and the case terminated—in many cases years later—despite the fact they were never parties to the case in which the gang injunction was obtained.

13.     Defendants determine whom to serve with a gang injunction based on

_____

[5] In two of the cases, an attorney purported to enter an appearance in the state court action on behalf of the gang entity, but the papers leave unclear whether the attorneys represented the gang itself or rather individuals who were attempting to be heard and so filed on behalf of the only defendant. In the first case, the attorney entered an appearance after default judgment had been entered and requested that the judgment be set aside as to certain individuals. In the second case, the attorney filed a general denial, an answer, and response to a request for preliminary injunction purportedly on behalf of the gang, but failed to take any further action in connection with the case, which ended in the entry of a permanent injunction against the gang.

[6] Under California law, gang injunctions may be applied only to "active" members whose participation in gang activities is "more than nominal, passive, inactive or purely technical." *People v. Englebrecht*, 88 Cal. App. 4th 1236, 1261 (2001).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

a one-sided determination in which the person potentially subject to the injunction plays no part.[7] Defendants do not notify individuals in advance of their intent to serve them with a gang injunction. Defendants provide them no opportunity for a hearing, or even an opportunity to provide a written response to contest their alleged participation in the gang, before Defendants serve and enforce the injunction against them. With few exceptions, individuals' first formal notice that Defendants are considering subjecting them to an injunction is when they are served with the order itself.[8]

14.    The City of Los Angeles has subjected more than 9,000 individuals to its injunctions through the process described above, that is, through service of an injunction without notice or an opportunity to contest Defendants' gang membership allegations. Many of those individuals have never been convicted of any gang-related crimes or otherwise judged by a court to be gang members. By obtaining judgments by default against the gangs and then enforcing the injunctions against individuals who were never parties to the actions, Defendants

[7] Notably, LAPD employs a similarly one-sided determination in the decision to include individuals in the CalGang Criminal Intelligence System, otherwise known as the CalGang database. The California State Auditor recently found that, in a review of user agencies including LAPD, in "numerous instances" the agencies could "not substantiate CalGang entries they had made." *See The CalGang Criminal Intelligence System — As the Result of Its Weak Oversight Structure, It Contains Questionable Information That May Violate Individuals' Privacy Rights*, Report 2015-130, AUDITOR.CA.GOV (Aug. 11, 2016), https://www.auditor.ca.gov/pdfs/reports/2015-130.pdf. Partly in response to these findings, California has recently passed legislation, and the City—and all California law enforcement—will soon provide notice and a limited opportunity to be heard by a superior court to individuals they seek to place in the CalGang database. *See* Cal. Penal Code § 186.35 (added 2016 by A.B. 2298).

[8] The relatively small number of people who were named as individual defendants in the state civil nuisance action and who received notice through personal service had an opportunity for a hearing to contest their inclusion in the gang injunction in those proceedings. These individuals are not members of the putative class that Plaintiffs seek to represent.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

subject the individual Plaintiffs and the plaintiff class to the restrictive probation-like terms of the injunctions, and to potential arrest and prosecution if they violate those terms, without due process.

15.     Prior to 2007, LAPD officers had discretion to determine which individuals to serve with a gang injunction, and the determination process was left up to the *ad hoc* decisions of individual police officers. Starting in 2007, and under current guidelines issued by the City Attorney regarding the service of gang injunctions on individuals, LAPD must obtain prior approval from a Deputy City Attorney in order for LAPD officers to serve an individual with a gang injunction. The guidelines provide that Defendants can serve an individual with a gang injunction if there is documented evidence that the person is a gang member and that his or her participation in the gang during the previous five years has been more than nominal, passive, inactive, or purely technical. The guidelines purport to require that gang membership be established beyond a reasonable doubt, and set forth the criteria to be considered when assessing gang membership, any two of which are deemed "strong proof" of gang membership:

     a.   The individual admitted to being a gang member in a non-custodial situation;

     b.   The individual was identified as a gang member by a reliable informant or source (such as a registered gang member);

     c.   The individual was identified as a gang member by an untested informant or source with corroboration;

     d.   The individual was witnessed wearing distinctive gang attire;

     e.   The individual was seen displaying gang hand signs or symbols;

     f.   The individual has gang tattoos;

     g.   The individual frequents gang hangouts;

     h.   The individual openly associates with documented gang members; or

     i.   The individual has been arrested, alone or with known gang members,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    for a crime usually indicative of gang activity.

2        16.    However, the determination of whether someone is an active

3    participant in a gang involves a variety of complicated factors, many of which are

4    hard to measure. The Ninth Circuit recognized as much in *Vasquez. See* 734 F.3d

5    at 1047.

6        17.    LAPD officers can and do arrest individuals for violating the terms of

7    gang injunctions as soon as they have served those individuals with the injunction,

8    and the office of Defendant City Attorney can and does charge them with contempt

9    of court, a misdemeanor punishable by up to six months in jail and a fine of up to

10   $1,000 under California Penal Code § 166. Notably, there is no empirical evidence

11   to support gang injunctions' long term effect on crime reduction in the targeted

12   neighborhoods.

13       18.    None of the City of Los Angeles' gang injunctions contains an

14   expiration date. With the exception of a single injunction, Defendants' service of a

15   gang injunction upon an individual purports to subject that person to its terms

16   permanently.

17       19.    About a third of the gang injunctions obtained by the City contain

18   "renunciation" or "opt out" provisions to the effect that a served individual can

19   move the court for an order that the injunction not be enforced against him. Most

20   of those require, for the City of Los Angeles not to oppose the motion, that the

21   individual swear that he is no longer, or never was, a member of the gang; declare

22   that in the past three to five years he has not claimed membership in any gang,

23   associated with members of any gang (except for immediate family members),

24   gotten any new gang-related tattoos, or committed, assisted in, or been arrested for

25   any felony or misdemeanor crime; and also demonstrate sustained employment or

26   educational pursuits. These "renunciation" or "opt out" provisions do not provide

27   any right to discovery, or even notice of the allegations against an individual, and

28   all but two fail to set out the standard that the court will employ in considering the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

petition for removal (or, in fact, any other information about how the court process will work). Based on available court records, no more than three individuals have ever attempted to use these provisions.

20.     Beginning in about April 2007, the Los Angeles City Attorney's Office established an administrative process by which individuals subject to gang injunctions can apply to be removed. This process requires that individuals show that they are not anymore, or never were, members of a gang. The process is painstakingly slow; even applicants who satisfy all the stated criteria for presumption in favor of removal often wait more than a year for the City's decision. As with the "renunciation" or "opt out" process described above, there is no right to discovery or even notice of the allegations against an individual, and no meaningful guidance regarding the standard that the City Attorney will employ in making a determination on the petition. Fewer than fifty applicants (of the more than 9,000 people subject to injunctions) have been removed from an injunction through this process during the nearly ten years it has been in place.

**Ruling in *Vasquez v. Rackauckas***

21.     In 2013, the Ninth Circuit Court of Appeals ruled in *Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013), that the Orange County District Attorney and City of Orange Police Department had violated the due process rights of individuals who were subjected to the terms of a gang injunction without having been provided with a pre-deprivation hearing or other opportunity by which they could contest their participation in the gang. The court reasoned that the gang injunction at issue, which was similar in its terms to the gang injunctions employed by the City of Los Angeles, was "extraordinarily broad, interfering with a wide swath of Plaintiffs' protected liberty interests, including: family and social relationships; educational and professional opportunities; freedom of movement; and all manner of participation in civic life." *Id.* at 1053. The court also found that given the "wide variety of information that may be deemed relevant, and the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

difficulty of reasonably precise measurement in assessing whether someone is an active gang member, the risk of error is considerable when such a determination is made without any participation by, or opportunity to provide evidence on behalf of, the individual served." *Id.* at 1047. Based on these and other factors, the court concluded that defendants' enforcement of the gang injunction in that case had "violated Plaintiffs' rights under the Due Process Clause." *Id.* at 1053.

22.     Defendants have taken the position that the ruling in *Vasquez* is not applicable to its injunctions because in *Vasquez*, the individuals who brought the action against the County had been originally named as defendants in the state court action, dismissed when they attempted to defend against the injunction, and subsequently served after the County obtained the judgment against the gang. But the procedural due process analysis in *Vasquez* was not dependent on that "dismiss-and-serve" practice. Ignoring the clear admonition in that case regarding the unconstitutionality of subjecting individuals to gang injunctions without prior process, Defendants have continued to serve and enforce gang injunctions against individuals without providing any opportunity for a pre-deprivation hearing.

**Ruling and Settlement in *Rodriguez v. City of Los Angeles***

23.     In 2015, in the *Rodriguez* class action, a federal district court issued a summary judgment order concluding that Defendants City, City Attorney, and LAPD were liable for violating individuals' constitutional rights by serving and enforcing curfew provisions of gang injunctions that were unconstitutionally vague. The *Rodriguez* class action was brought in 2011 and covers twenty-six of the gang injunctions that Defendant City has obtained and served on individuals. The *Rodriguez* action challenged the curfew provisions *only*, and did not plead claims like those Plaintiffs bring here regarding the constitutionality of the process for service and enforcement on individuals who were never afforded notice or an opportunity to contest the imposition of the injunction against them.

24.     In July 2016, the court granted preliminary approval of a settlement

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

agreement, including the creation of an expedited removal process for *Rodriguez* class members. The Fairness Hearing regarding the settlement is scheduled for December 2, 2016.

## PARTIES

### A.   Plaintiff Peter Arellano

25.    Plaintiff Peter Arellano is twenty-one years old. He has lived in the Echo Park neighborhood of Los Angeles his entire life, and since 2001 in the house his parents own. Mr. Arellano graduated high school in 2013, and has since been employed. Mr. Arellano uses the income from his job to pay for his car and to contribute to the family finances.

26.    In or about June 2015, Mr. Arellano was served with and made subject to the Judgment Granting Permanent Injunction in *People v. Big Top Locos*, Case No. BC511444 (L.A. Sup. Ct. Sept. 23, 2013) ("Echo Park injunction"). On the day he was served, Mr. Arellano was outside near his home with his father and a few friends. LAPD officers detained Mr. Arellano and the other individuals, supposedly to investigate a vandalism complaint. They released Mr. Arellano after about forty minutes without charging him with any crime, but served him with the Echo Park injunction at that time. The LAPD officers turned to his father and informed him that Mr. Arellano was now subject to the terms of the injunction. He is still subject to the Echo Park injunction.

27.    Mr. Arellano was not named as a defendant in the nuisance abatement action for the Echo Park injunction, which was filed by Defendant City Attorney on June 11, 2013. Accordingly, he was not served with the civil complaint or supporting documents in that case. Even though Mr. Arellano was not named as a defendant in the nuisance abatement action, he was part of a community group that nevertheless attempted to intervene in that case. The City's attempt to obtain the Echo Park injunction met with community opposition, and Defendants City and City Attorney initially seemed receptive to community requests to stay the suit.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The City ultimately proceeded with the injunction action, however, and Mr. Arellano was among a number of community members who filed requests to intervene in the case. The City opposed the attempts to intervene, and the court denied their motions as untimely.

28. Prior to being served with, and being immediately subject to, the Echo Park injunction in or about June 2015, Mr. Arellano did not receive notice of Defendants' allegations against him or an opportunity to contest the imposition of the injunction against him.

29. Mr. Arellano is and at all relevant times has been a resident of the City of Los Angeles, residing at his parents' home in the geographical area referred to as the "Safety Zone" for the Echo Park injunction.

30. Mr. Arellano has suffered and continues to suffer great harm as a result of being subject to the Echo Park injunction. He feels that he is under house arrest. His father is also subject to the Echo Park injunction, and upon information and belief, the LAPD asserts that a number of his family members and childhood friends who live in or visit the "Safety Zone" are also members of the Echo Park gang. Because the Echo Park injunction—like all of the City of Los Angeles' injunctions—prohibits associating with any "known member" of the gang within the "Safety Zone," Mr. Arellano is afraid of going anywhere with his father or being seen in public with most of the people he is close to, even if they are engaging in routine day-to-day activities, for fear that they will be stopped, searched, and arrested for a violation of the injunction. This includes being in his own front yard or porch with his father, brother, uncle, cousin, or friends, because such space is within "public view" and associating there is therefore prohibited by the terms of the injunction. Mr. Arellano has skipped neighborhood gatherings, holiday parties, and other social activities out of fear of arrest. He chooses to work far away from the Echo Park neighborhood in order to be as far away from the "Safety Zone" as possible, even though at times it has meant a long and tedious

commute.

**B.    Plaintiff Jose Reza**

31.    Plaintiff Jose "Joe" Reza is thirty-nine years old. He was born and raised in the Ramona Gardens neighborhood of Los Angeles, within the geographical area referred to as the "Safety Zone" for the Big Hazard gang injunction, and lived there until 1999, when he was twenty-two years old. He has since moved and now lives in Whittier.

32.    In or about October 2006, Mr. Reza was served with and made subject to the Judgment Granting Permanent Injunction in *People v. Big Hazard*, Case No. BC335749 (Los Angeles County Sup. Ct. 2005) ("Big Hazard injunction"). On the day Mr. Reza was served, LAPD officers detained him for violating a local ordinance. One officer told him that they had been waiting for a chance to serve him with the injunction. He signed an acknowledgment that he had been served with the injunction after being told he would be held overnight if he refused. He is still subject to the Big Hazard injunction.

33.    Mr. Reza was not named as a defendant in the nuisance abatement action for the Big Hazard injunction, which was filed by Defendant City Attorney on September 9, 2005. Accordingly, he was not served with the civil complaint or the supporting documents.

34.    Prior to being served with, and being immediately subject to, the Big Hazard injunction in or about October 2006, Mr. Reza did not receive notice of Defendants' allegations against him or an opportunity to contest the imposition of the injunction against him.

35.    Mr. Reza has suffered and continues to suffer great harm as a result of being subject to the Big Hazard injunction. Because the Big Hazard injunction—like all of the City of Los Angeles' injunctions—prohibits associating with any "known member" of the gang within the "Safety Zone," he is afraid to travel to or spend time in the neighborhood where he grew up. Mr. Reza has avoided driving

into the "Safety Zone" to pick up his son, who sometimes stays with family there, because he fears police harassment and arrest for a violation of the injunction. The LAPD asserts that a number of his family members and lifelong friends are also members of the Big Hazard gang, and therefore Mr. Reza avoids seeing his family and friends anywhere within the "Safety Zone," even if they are engaging in routine day-to-day activities, for fear that he will be stopped, searched, and arrested for a violation of the injunction. Mr. Reza has skipped neighborhood gatherings and social events, and even feared arrest while attending a friend's funeral.

36.     Being subject to the gang injunction also affects Mr. Reza's ability to maintain gainful employment. Mr. Reza is a carpenter by trade, and has been offered a number of union job opportunities with the Housing Authority of the City of Los Angeles ("HACLA") to remodel units in housing projects. However, because the jobs would have required him to go to the Ramona Gardens development within the Big Hazard injunction "Safety Zone," he has felt that he had no choice but to turn down those opportunities.

**C.    Plaintiff Youth Justice Coalition**

37.     Plaintiff Youth Justice Coalition is a non-profit organization located in Los Angeles, California that works with youth, currently and formerly incarcerated individuals, and their families, challenging mass incarceration, over-policing, and involvement of the criminal justice system in these communities.

38.     Plaintiff Youth Justice Coalition identifies as its core mission the following:

> The Youth Justice Coalition (YJC) is working to build a youth, family, and formerly and currently incarcerated people's movement to challenge America's addiction to incarceration and race, gender and class discrimination in Los Angeles County's, California's and the nation's juvenile and criminal injustice systems. The YJC's goal is to dismantle policies and institutions that have ensured the massive lock-up of people of color, widespread law enforcement violence and corruption, consistent violation of youth and communities' Constitutional and human rights, the construction of a vicious school-to-jail track, and the build-up of the world's largest network of jails and prisons.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

39.     One of its priority campaigns includes: "Exposing and Dismantling the War on Gangs as a War on Youth of Color including challenging the lack of due process and community input in the implementation by police, sheriffs and the courts of gang suppression tactics including gang injunctions and gang databases that serve to sweep thousands of youth into the system without notification, appeal, removal or resources."

40.     However, Plaintiff Youth Justice Coalition has had to divert limited resources from its core mission of building a youth-led movement and on its campaign to expose and dismantle the "war on gangs" to address Defendants' unconstitutional denial of process to individuals subjected to gang injunctions. For example, Plaintiff Youth Justice Coalition has had to divert resources to assist and advise members and other individuals who believe they have been wrongfully subjected to an injunction without process, helping them understand their rights, navigate the removal process, and fight police and city prosecutors' charges against them for a violation. Because of this concern over the lack of process afforded to individuals in the City of Los Angeles, Plaintiff Youth Justice Coalition has diverted resources to lobby the City and State to enact policy reforms that would provide relief to communities, including successfully lobbying the City of Los Angeles to adopt an administrative removal process and recent efforts at the state level to afford notice and an opportunity to contest designation for those subjected to gang injunctions. Plaintiff Youth Justice Coalition has also supported, organized with, and assisted communities in their efforts to address this unfair process before state courts considering a gang injunction action. Absent Defendants' unconstitutional conduct, Plaintiff Youth Justice Coalition would not have been forced to divert its limited resources to address the lack of process provided by the City, and would have instead focused on its core mission of empowering youth and their families to build a campaign to challenge the devastating effects of the criminal justice system on their communities, including

fighting the use of gang injunctions generally and gang databases as tools to target and criminalize young people of color.

41.   Consequently, Plaintiff Youth Justice Coalition has suffered and continues to suffer harm as a result of Defendants' unconstitutional methods of subjecting individuals to gang injunctions.

**D.   Defendants**

42.   Defendant City of Los Angeles is a public entity organized and existing under the laws of the State of California. Defendants City Attorney and LAPD are duly formed agencies of the City. These Defendants are sued in their own right for City policies, practices and/or customs which cause Plaintiffs' injuries in violation of one or more federal constitutional guarantees, and on Plaintiffs' state law claim based on respondeat superior, under California Government Code § 815.2 and mandatory duties under California Government Code § 815.6.

43.   Defendant Mike Feuer ("Feuer") is the elected City Attorney of the City of Los Angeles, and is the policy maker for the City Attorney's Office. He is sued in his official capacity.

44.   Defendant Charlie Beck ("Beck") is the Chief of the Los Angeles Police Department, and is the policy maker for the LAPD. He is sued in his official capacity.

45.   Plaintiffs are ignorant of the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will give notice of this Complaint, and of one or more Does' true names and capacities, when ascertained. Based on information and belief, Defendants Does 1 through 10 are legally responsible in some manner for the wrongs and injuries alleged herein.

## CLASS ACTION ALLEGATIONS

46.   Individual Plaintiffs Arellano and Reza bring this action on their own

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

behalf and on behalf of all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), or in the alternative, as a representative action pursuant to a procedure analogous to Rules 23(a) and 23(b)(2). Plaintiffs bring this action individually and on behalf of a class defined as:

> All persons currently or in future subject to a City of Los Angeles gang injunction, who were not named as defendants in or otherwise parties to the civil nuisance abatement action to obtain that injunction, and were not otherwise provided a full, constitutionally adequate hearing in which they could contest their designation as active gang participants prior to service with and being subject to the gang injunction, but do not have contempt proceedings for violation of that injunction currently pending against them.

47.     The proposed class satisfies the numerosity requirements of Fed. R. Civ. P. 23(a)(1). Plaintiffs do not know the exact number of class members. Defendant City has at least forty-six gang injunctions in effect against more than seventy-nine gang entities, and several thousand individuals have been served with one or more of these gang injunctions without being named as a defendant in the civil action and without being provided a hearing on their alleged gang involvement prior to being served. The City has served more than nine thousand such individuals without providing prior process. Joinder of all class members is therefore impracticable.

48.     The number and identity of the class members is known to Defendants and is readily ascertainable from Defendants' records.

49.     The proposed class satisfies the commonality requirements of Fed. R. Civ. P. 23(a)(2). The questions of law and fact common to the class include, but are not limited to: (1) whether being subject to the terms of one of Defendant City's gang injunctions deprives an individual of a liberty or property interest; and (2) whether a policy or practice of failing to provide a hearing on an individual's alleged gang involvement prior to subjecting that person to one of Defendant City's gang injunctions is a denial of adequate procedural protections in violation

19

of the Due Process Clause of the U.S. and California constitutions.

50.     The proposed class satisfies the typicality requirements of Fed. R. Civ. P. 23(a)(3). Like the proposed class members, Plaintiffs Arellano and Reza are subject to one of the City's gang injunctions without having been afforded notice and an opportunity to be heard, in violation of the Due Process Clause of the U.S. and California constitutions. Plaintiffs Arellano and Reza, and all proposed class members, have been served with their respective gang injunction(s) without being named as defendants in the underlying civil nuisance actions for those injunctions and without an opportunity for a hearing at which they could contest the allegation that they are active gang participants. Plaintiffs' interests and harms are therefore typical of the proposed class.

51.     The proposed class satisfies the adequacy requirements of Fed. R. Civ. P. 23(a)(4). The named Plaintiffs will fairly and adequately represent the interests of the class because their interests are consistent with and not adverse to the interests of the class. Moreover, the named Plaintiffs are represented by pro bono counsel from the ACLU Foundation of Southern California, The Connie Rice Institute for Urban Peace, and Munger, Tolles & Olson LLP, who have extensive civil rights litigation experience and broad experience litigating class actions, as well as specialized knowledge regarding gang injunctions in California generally and Los Angeles specifically.

52.     The proposed class meets the requirements of Fed. R. Civ. P. 23(b)(2). Defendants have acted on grounds generally applicable to the class through their policy and practice of subjecting individuals to the terms of Defendant City's gang injunctions without providing due process of law, making class-wide declaratory and injunctive relief appropriate.

53.     This Complaint challenges Defendants' ongoing, systematic policy and practice of subjecting individuals to the severe liberty restrictions of gang injunctions without pre-deprivation hearings. At all times within the relevant

1   period, Defendants have maintained this unconstitutional policy and practice.

2                              **CAUSES OF ACTION**

3                          **FIRST CLAIM FOR RELIEF**

4   42 U.S.C. § 1983 – Procedural Due Process Under U.S. Const. Amend. XIV

5          54.    Plaintiffs re-allege and re-plead all allegations of the preceding

6   paragraphs of this Complaint and incorporate them here by reference.

7          55.    Defendants acted under color of law.

8          56.    The acts of Defendants deprived the individual Plaintiffs and those

9   similarly situated of their rights under the Due Process Clause of the Fourteenth

10  Amendment to the United States Constitution.

11         57.    Specifically, by subjecting the individual Plaintiffs and those similarly

12  situated, or causing them to be subjected, to the terms of a gang injunction as

13  described above, Defendants have deprived them of their constitutionally protected

14  liberty interests without adequate procedural protections.

15         58.    The mission of Plaintiff Youth Justice Coalition is also frustrated by

16  the acts of Defendants, and Youth Justice Coalition continues to divert resources as

17  a result of these acts to ensure that its members and the communities it serves are

18  not subjected to Defendants' unconstitutional practices.

19                         **SECOND CLAIM FOR RELIEF**

20            Procedural Due Process Under Cal. Const. art. I, § 7

21         1.     Plaintiffs re-allege and re-plead all allegations of the preceding

22  paragraphs of this Complaint and incorporate them here by reference.

23         2.     By subjecting individual Plaintiffs and those similarly situated, or

24  causing them to be subjected, to the terms of a gang injunction as described above,

25  Defendants have deprived them of their constitutionally protected liberty interests

26  without adequate procedural protections.

27         3.     Defendants' conduct deprived the individual Plaintiffs and those

28  similarly situated of their liberty without due process of law in violation of Article

1  I, § 7(a) of the California Constitution.

2      4.      The mission of Plaintiff Youth Justice Coalition is also frustrated by

3  the acts of Defendants, and Youth Justice Coalition continues to divert resources as

4  a result of these acts to ensure that its members and the communities it serves are

5  not subjected to Defendants' unconstitutional practices.

6                          **PRAYER FOR RELIEF**

7      WHEREFORE, Plaintiffs respectfully request that this Court enter judgment

8  in their favor as follows:

9      a.  Assume jurisdiction of this matter;

10     b.  Temporarily enjoin Defendants and their directors, officers, agents,

11         employees, and assigns from enforcing the terms of the City of Los

12         Angeles' gang injunctions against the individual Plaintiffs based on the

13         constitutionally deficient process provided;

14     c.  Certify a class under Fed. R. Civ. P. 23 (or other analogous procedures)

15         as described above, pursuant to the forthcoming motion for class

16         certification;

17     d.   Appoint the individual Plaintiffs as Class Representatives;

18     e.  Appoint Plaintiffs' counsel as Class Counsel;

19     f.  Declare that the actions, policies and practices of Defendants described

20         above constitute violations of federal and state constitutional law;

21     g.  Permanently enjoin Defendants and their directors, officers, agents,

22         employees, and assigns from enforcing the terms of the City of Los

23         Angeles' gang injunctions against the individual Plaintiffs and those

24         similarly situated based on the constitutionally deficient process

25         provided;

26     h.  Award Plaintiffs their fees, expenses, costs, and other disbursements

27         associated with the filing and maintenance of this action, including

28         reasonable attorneys' fees pursuant to any applicable provision of law;

1    and

2    i.   Award such other equitable and further relief as the Court deems just and

3         proper.

4

5

6    DATED:  October 25, 2016                    Respectfully submitted,

7                                               ACLU FOUNDATION OF SOUTHERN
                                               CALIFORNIA
8                                                   PETER BIBRING
                                                   CARMEN IGUINA
9                                                   CATHERINE WAGNER
                                                   MELANIE P. OCHOA
10

11
                                               By:  _____*s/ Carmen Iguina*_____
12                                                       Carmen Iguina

13                                             *Counsel for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF