**United States District Court**
**Central District of California**

Youth Justice Coalition, et al.,

Plaintiffs,

v.

City of Los Angeles, et al.,

Defendants.

CV 16-7932-VAP (RAOx)

**Order GRANTING Plaintiff Peter Arellano's Motion for Preliminary Injunction**

On October 31, 2016, Plaintiff Peter Arellano filed a motion for a preliminary injunction "to stop police and prosecutors from enforcing against him a restrictive civil 'gang injunction.'" Doc. No. 13 at 7. On December 16, 2016, Defendant City of Los Angeles ("the City") filed an opposition to that motion. Doc. No. 40. On January 9, 2017, Plaintiff filed a reply. Doc. No. 59.

On January 27, 2017, this Court stayed proceedings to allow the Parties to resolve the matter via mediation. Doc. No. 69. On July 3, 2017, this Court lifted the stay after the Parties submitted a report informing the Court that they were unable to reach a settlement. Doc. No. 86.

The Court now considers the pending motion for a preliminary injunction. Having considered the papers filed in support of and in opposition to the motion, the Court GRANTS the motion.

I.      **Background**

Over the past three decades, prosecutors in Southern California have used public nuisance law to obtain civil injunctions prohibiting suspected gang members from participating in a variety of activities.  Matthew Mickle Werdegar, Note, Enjoining the Constitution: The Use of Public Nuisance Abatement Injunctions Against Urban Street Gangs, 51 Stan. L. Rev. 409, 411 (1999).  The injunctions are often broad in scope and can include activities such as "fighting, trespassing, and spraying graffiti," as well as "otherwise legal activities such as appearing in public together or carrying pagers or cellular telephones."  Id.

At issue in the present action is an injunction obtained by the City against six alleged gang entities, including the "Echo Park Locos" (hereinafter referred to as "Echo Park Injunction").  Doc. No. 21-2 at 13.  To obtain the Echo Park Injunction, the Los Angeles City Attorney filed a public nuisance action in the California Superior Court for the County of Los Angeles.  Instead of naming as defendants the persons who police and prosecutors suspected were active participants in the gang at the time, the City sued the six alleged gang entities.  Id.  The gang entities were not represented during the public nuisance proceedings, and the City obtained the Echo Park Injunction by default judgment on September 24, 2013.  Doc. Nos. 21-2 at 1; 46 at 114.

On October 2, 2013, Plaintiff filed a motion to intervene in the state court action to oppose the Echo Park Injunction.  Doc. No. 45 at 64.  In the motion, Plaintiff contended that he had "an interest in the subject of [the] action" and "an interest in the 'property' that is the subject of [the] litigation" because the injunction would restrict his personal freedom.  Id. at 68-71.  He also argued that, if the court

denied his request to intervene, the injunction would curtail his civil liberties without due process.  Id. at 71.

On October 7, 2013, Plaintiff filed an ex parte application for an order staying enforcement of the Echo Park Injunction.  Id. at 25.  The application argued that the injunction "abridges the Constitutional rights of those who fall within its ambit under the [F]irst, [S]econd, [F]ourth, and [F]ourteenth [A]mendments" and that the "deprivation of rights will occur without procedural due process" because "no one who will be served with the injunction was named as a party to the case." Id. at 28.  The superior court denied Plaintiff's ex parte application as untimely on October 8, 2013.  Id. at 56-57.  The court noted that "individuals need not be named parties [to an] action for a judgment of injunction to apply to them."  See Doc. No. 45 at 56.

Likewise, the superior court denied the motion to intervene on November 13, 2013.  Doc. No. 46 at 19-22.  In its order, the superior court held that the City "took steps reasonably calculated . . . to provide notice," the motion to intervene was untimely, and the reasons for intervention were insufficient.  Id. at 19.  The court determined that "the [permanent injunction] judgment already provides for exceptions, exemptions and means to further avoid its application, . . . and no person at this time is so situated that the disposition may as a practical matter impair or impede that person's ability to protect that interest."  Id. at 19-20.

On November 22, 2013, Plaintiff filed a motion for reconsideration arguing that the Ninth Circuit's holding in Vasquez v. Rackuackas, 734 F.3d 1025 (9th Cir. 2013), established that the "Due Process Clause of the United States Constitution

requires individuals have the right to defend against the imposition of a permanent gang injunction <u>before</u> such an injunction is issued" and "post-deprivation remedies are no substitute for pre-deprivation procedural safeguards."[1] Doc. No. 47 at 7, 9 (emphasis in original). The superior court denied the motion for reconsideration on July 30, 2014. Doc. No. 47 at 162. In its order, the superior court incorporated by reference an earlier ruling that determined <u>Vasquez</u> was inapplicable because <u>Vasquez</u> merely "enjoined county prosecutors from enforcing a gang injunction" against a set of specific persons that had been denied due process, rather than ruling the terms of the injunction order were invalid. <u>Id.</u> at 44-45, 162. The superior court stated that the <u>Vasquez</u> opinion "uniquely addressed how Orange County enforcement aggressively prosecuted" and "enforce[d]" an injunction order after it had been obtained, and the court noted "its expectation that Los Angeles authorities will implement the injunction [at issue in this case] only lawfully and fairly." <u>Id.</u> at 45 (emphasis added). The court also distinguished <u>Vasquez</u> on the ground that the injunction it dealt with lacked exceptions for law-abiding citizens and noted that federal case law is not binding upon California courts. <u>Id.</u>

## II.   Evidentiary Issues

Plaintiff and Defendant request the Court take judicial notice of several facts contained in exhibits filed in conjunction with the briefings in this matter. Doc. Nos. 21, 55, 60. Neither Party disputes any of the requests, and the Court finds good cause appears to approve them. The Court, therefore, GRANTS the Parties' requests for judicial notice.

---

[1] Plaintiff also filed an amended brief in support of his motion to intervene raising similar arguments pursuant to <u>Vasquez</u>. Doc. No. 46 at 24-37.

Plaintiff also submitted several evidentiary objections in response to the City's opposition to his motion for a preliminary injunction.  Doc. No. 61.  "In assessing the evidence with respect to irreparable harm," the district court need not "rely only on admissible evidence to support its finding of irreparable harm."  Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1250 n.5 (9th Cir. 2013).  Rather, "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings."  Id.; see also Republic of the Philippines v. Marcos, 862 F.2d 1355, 1363 (9th Cir. 1988) ("It was within the discretion of the district court to accept . . . hearsay for purposes of deciding whether to issue the preliminary injunction.").

The Court, therefore, OVERRULES Plaintiff's Objection No. 33 as to the portion of the objected-to paragraph that describes Plaintiff's December 2013 arrest and subsequent conviction and Plaintiff's Objection No. 77 as to the portion of the objected-to paragraph that describes Plaintiff's January 2016 arrest.

As to the remaining objections, the Court has not relied upon objected-to evidence in ruling on the present motion.  Accordingly, the remaining objections are OVERRULED as moot.

### III.   Facts

#### A.  Echo Park Injunction Application and Terms

The Echo Park Injunction applies to "active members" of the following gangs: Big Top Locos aka Big Top aka BTLS, Crazys aka CYS aka Mayberry aka MB, Diamond Street Locos aka Diamond Street aka DST, Echo Park Locos aka

Echo Park aka Echo Parque aka ExP aka EP, Frogtown Rifa aka Frogtown aka FTR, and Head Hunteres aka HHS ("Defendant Gangs").  Doc. No. 21-2 at 13.  The injunction states that the following factors may be used to determine whether a person is an "active member" of one of the applicable gangs:

> (1) whether the person admits to being a member of a Defendant Gang, (2) whether the person has tattoos that are associated with a Defendant Gang, (3) whether the person has been arrested while participating with active members of a Defendant Gang, or (4) whether a reliable informant provides information that the person is an active member of a Defendant Gang.   Clothing, accessories, photographs and close association with known gang members may also be relevant to whether a person is an active gang member, but these factors alone are insufficient to validate a subject as an "active member" of a Defendant Gang for purposes of this injunction.  "Part time" and "weekend" gang members can be an "active member" for the purpose of this injunction if they otherwise satisfy the above criteria.  A person need not devote a majority of his or her time to gang activities to be an "active member."

Id. at 15.

Pursuant to the "Gang Injunction Program Guidelines" issued by the Los Angeles City Attorney, the Los Angeles Police Department ("LAPD") must obtain prior approval from a deputy city attorney before serving a person with a gang injunction.  Doc. No. 20-1 at 15.  The guidelines state that "[a] suspected gang

member may be served . . . if, at the time of service, there is documented evidence establishing beyond a reasonable doubt that: (a) the suspected gang member is, in fact, a gang member; and (b) his or her participation in the enjoined gang during the past five (5) years has been more than nominal, passive, inactive, or purely technical."  Id.  The guidelines list a series of factors for the deputy city attorney to consider similar to those listed in the Echo Park Injunction and note that the deputy city attorney "should exercise independent and informed judgment based on all available evidence and the totality of the circumstances."  Id. at 49-50.

The injunction, among other things, prohibits enjoined persons from associating in public or in common areas of residential buildings with other "known" gang members under a "Do Not Associate" provision.  Doc. No. 21-2 at 15-16.  Specifically, the "Do Not Associate" provision prohibits enjoined persons from "[s]tanding, sitting, walking, driving, gathering, or appearing, anywhere in public view, in a public place, or any place accessible to the public, with any other known member of a Defendant Gang."  Id.  The provision also applies to "all methods of travel."  Id. at 16.  The provision includes exceptions to its restrictions if the enjoined person is: (1) inside a school attending class or conducting school business; (2) inside a church or religious institution for the purposes of worship; or (3) inside a place where he or she is lawfully employed and is engaged in a lawful business, trade, profession, or occupation which requires such presence.  Id.

The injunction also prohibits enjoined persons from engaging in several other activities, such as possessing any firearm or ammunition, trespassing, engaging in graffiti, or possessing an aerosol paint container, felt tip marker, paint marker, spray paint tip, slap tag, or any other item that can be used to apply graffiti.  (Id.)  In

addition, enjoined persons are prohibited from selling, transporting, possessing, or using any controlled substance without a prescription, as well as drinking or possessing an open container of alcohol in public, except on a licensed premises where alcohol consumption is authorized.  <u>Id.</u>

The limitations imposed by the injunction on active gang members last for five years after personal service, after which a new five-year period may be initiated with re-service.  <u>Id.</u> at 19.

**B.  <u>Echo Park Injunction "Opt-Out" Provision and Administrative Process</u>**

The Echo Park Injunction affords enjoined persons two processes—one judicial and one administrative—to challenge its enforcement.  First, the injunction includes an "opt-out" provision by which a person served with the injunction may move the superior court for an order not to enforce the injunction against him or her.  Doc. No. 21-2 at 18.  The City will not oppose the motion if the person challenging the injunction's application satisfies certain criteria, including declaring, under oath, that for the past three years he or she has not been a member of any enjoined gang, has not been documented by law enforcement as having associated with any known, active members of any relevant gang other than immediate family members, has not been arrested for any felony or misdemeanor crime, and has not obtained any new gang-related tattoos.  <u>Id.</u>  The enjoined person must also declare, under oath, that he or she has been consistently and gainfully employed or enrolled in and attending school for at least one year.  <u>Id.</u>  If an enjoined person is able to obtain a court order granting removal, he or she may still be re-served with the injunction if, after being removed, he or she claims membership in a gang, associates with known gang

members other than immediate family, is arrested for any felony or misdemeanor, or obtains any gang-related tattoos.  Id. at 18-19.

Second, the City has established a post-deprivation administrative process by which enjoined persons can apply to be removed from the injunction.  Doc. No. 20-2 at 116.  The process is initiated by the enjoined person submitting a petition to the City Attorney's Office.  Id.  The petition is then reviewed by a senior supervising attorney who is outside of the gang enforcement section.  Id.  The senior supervising attorney considers evidence provided by an LAPD gang expert for the enjoined gang, the deputy city attorney assigned to prosecute the injunction, and the petitioner before making a final determination.  Doc. No. 42 at 7, ¶ 21.

### C. Application Against Plaintiff

In June 2015, LAPD officers served Plaintiff with the Echo Park Injunction and told him he was subject to its terms.  Doc. No. 14 at 7.  Since he was served with the injunction, Plaintiff has been arrested and threatened with arrest multiple times for alleged violations of the injunction's terms.  Id.

## IV.    Legal Standard

"A preliminary injunction is an extraordinary and drastic remedy" and "is never awarded as of right."  Munaf v. Green, 553 U.S. 674, 689-90 (2007) (citations omitted).  Typically, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's "sliding scale" approach, however, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the <u>Winter</u> test are also met." <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1132 (9th Cir. 2011). The "sliding scale" approach allows "district courts to preserve the status quo where difficult legal questions require more deliberate investigation." <u>Greene v. Wells Fargo Bank, N.A.</u>, No. C 15-00048 JSW, 2015 WL 3945996, at *1 (N.D. Cal. June 26, 2015); <u>see also</u> <u>Leiva-Perez v. Holder</u>, 640 F.3d 962, 971 (9th Cir. 2011) (holding that, under the "sliding scale" approach, a petitioner had "made a sufficiently strong showing of likely success on the merits" where he presented "a case which raises serious legal questions, or has a reasonable probability or fair prospect of success").

## IV. Analysis

As a threshold matter, the City argues that Plaintiff is collaterally estopped from relying on <u>Vasquez</u> and due process contentions to support his motion for relief because he presented identical issues to the superior court during his unsuccessful attempt to intervene. Doc. No. 40 at 14. This argument fails.

As the party asserting collateral estoppel, the City bears the burden of establishing each element. <u>See</u> <u>Murphy v. Murphy</u>, 164 Cal. App. 4th 376, 400 (2008) ("[T]he the burden of proof is on the party asserting collateral estoppel to show that a particular issue was adjudicated."). For collateral estoppel to apply, "the particular legal or factual issue must have been presented and determined in the former action." <u>Bleeck v. State Bd. of Optometry</u>, 18 Cal. App. 3d 415, 428 (1971);

see also <u>Hernandez v. City of Pomona</u>, 46 Cal. 4th 501, 514 (2009) ("[A]n issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding.").

      In the present motion, Plaintiff contends that, pursuant to the Ninth Circuit's decision in <u>Vasquez</u>, the City violated his due process rights by enforcing the Echo Park Injunction against him before providing him with an adequate opportunity to contest his designation as a gang member.  Doc. No. 13 at 7.  The City argues that the superior court "necessarily decided" the due process issues raised by Plaintiff "on the merits" in three separate orders: the October 8, 2013 order denying Plaintiff's ex parte application; the November 13, 2013 order denying Plaintiff's motion to intervene; and the July 30, 2014 order denying Plaintiff's motion for reconsideration.

      The City fails to observe the key distinction between Plaintiff's position before the superior court and his position now.  In his motions to the superior court, Plaintiff sought to intervene in an action that he claimed threatened to deprive his due process rights by arguing that the City's procedures, in theory, would be insufficient to afford him due process.  Doc. Nos. 45 at 28 (noting that the "deprivation of rights <u>will occur</u> without procedural due process") (emphasis added); 45 at 71 ("Were Applicant's request to intervene denied, his due process rights under the Constitution <u>would be</u> violated.") (emphasis added); 47 at 15 ("[T]he proposed intervenors <u>face</u> significant deprivations of their constitutional rights . . . .") (emphasis added).

The superior court rejected those arguments, finding that the procedures, <u>on their face</u>, were sufficient.  Doc. Nos. 46 at 19-20 ("[T]he judgment already provides for exceptions, exemptions and means to further avoid its application to any person, . . . and no person at this time is so situated that the disposition may as a practical matter impair or impede that person's ability to protect that interest."); 47 at 43-45 (distinguishing <u>Vasquez</u> as a case that dealt with the enforcement of a gang injunction order, rather than the facial validity of the order itself, and noting the "<u>expectation</u> that Los Angeles authorities will implement the injunction only lawfully and fairly") (emphasis added).

Here, however, Plaintiff seeks to enjoin the City from enforcing the injunction against him by arguing that that the procedures, <u>as applied</u>, are insufficient to afford due process.  Doc. No. 13 at 15, 22 (arguing that the Echo Park Injunction "<u>deprives</u> [Plaintiff] of basic constitutionally protected freedoms" because "the post-deprivation remedies provided by the City are insufficient") (emphasis added); <u>see also</u> Doc. No. 59 at 28 ("The pleadings the City relies upon confirm that the due process claim invoked [before the superior court] was against the issuance of the injunction, not its individual <u>application</u>.") (emphasis added).

"[I]t is well-established that the facial upholding of a law does not prevent future as-applied challenges."  <u>In re Cao</u>, 619 F.3d 410, 430 (5th Cir. 2010); <u>see, e.g.</u>, <u>Wisconsin Right to Life, Inc. v. FEC</u>, 546 U.S. 410, 411-12 (2006) (holding that the plaintiff could bring an as-applied challenge to the Bipartisan Campaign Reform Act despite the Court upholding the statute on its face); <u>Am. Fed'n of Gov't Employees, AFL-CIO, Local 2391, (AFGE) v. Martin</u>, 969 F.2d 788, 793 (9th Cir. 1992) (holding that a U.S. Department of Labor drug testing plan did not, on its

face, violate the Fourth Amendment but "emphasiz[ing]]" that the ruling did "not preclude an as applied constitutional challenge").

Moreover, even if Plaintiff's prior arguments to the superior court could be read to include an as-applied challenge to the City's procedures, Plaintiff would not be precluded from raising it now as the issue was not <u>decided</u> by the superior court. <u>See</u> <u>Los Altos El Granada Inv'rs v. City of Capitola</u>, No. C04-5138, 2010 WL 3835665, at *4 (N.D. Cal. Sept. 29, 2010) ("In its amended state court complaint, Los Altos asserted an as-applied equal protection challenge under the California constitution.  The superior court construed it as a time-barred facial challenge.  The superior court did not make any factual or legal findings that would preclude the instant as-applied equal protection challenge under the Fourteenth Amendment.").

Accordingly, the proceedings before the superior court do not estop Plaintiff from bringing an as-applied challenge to the City's procedures, and the Court proceeds to analyze the merits of Plaintiff's motion pursuant to the <u>Winter</u> factors below.

### A.  <u>Likelihood of Success</u>

Courts "analyze a procedural due process claim in two steps.  The first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  <u>United States v. Juvenile Male</u>, 670 F.3d 999, 1013 (9th Cir. 2012).  Under the second step of the analysis, courts examine a set of factors outlined in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976):

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 334-35.

The Court address both steps, in turn, below.

## I.        Interference with a Liberty or Property Interest

Plaintiff's argument that he is likely to succeed in establishing that the City interfered with his liberty interests rests largely on analogizing the present action to Vasquez.  Indeed, the cases appear quite similar.

In the underlying state court case that preceded Vasquez, the Orange County District Attorney's Office had filed a public nuisance action in superior court against a street gang and 115 named persons, some of whom were juveniles. Vasquez, 734 F.3d at 1030.  After 32 individual defendants filed answers or general denials, the county filed a request to dismiss them and thirty other individual defendants from the case "because of the 'aggressive effort on the [] part' of those individuals to defend themselves in court, and because of the concerns that the state court judge raised regarding entering a judgment against unrepresented juveniles." Id. at 1031-32.  The superior court granted the request, and the county then obtained

14

a default judgment, including a permanent injunction, against the street gang.  Id. at 1032.

Approximately four months later, four persons on whom the county had served the injunction filed the Vasquez action in district court, alleging the county's "dismiss-and-serve strategy" had violated due process.  Id. at 1034.  The plaintiffs presented no challenge to the terms of the injunction; rather, they "challenged only the adequacy of their opportunity to contest the application of the [gang injunction] to them."  Id.  The plaintiffs represented two classes: (1) adults and minors "named as individual defendants" in the state case, "who appeared . . . to defend themselves and were voluntarily dismissed by [the county]; and (2) minors "named as individual defendants" in the state case for whom no guardian ad litem was appointed and who were voluntarily dismissed by [the county]."  Id.  After an eleven-day bench trial, the district court concluded that the county had deprived "the [p]laintiffs and those similarly situated of their constitutionally protected liberty or property interests without adequate procedural protections."  Id.  The court enjoined the county from enforcing the superior court order against the class members but emphasized that "it was 'not instructing the state court as to the nature of any hearing.'"  Id.

On appeal, the Ninth Circuit affirmed the district court and noted that its "analysis depend[ed] in significant part on the procedural history of the state case."  Id. at 1030.  Like the district court, the court of appeals determined that the injunction interfered with "liberty interests protected by the Due Process Clause."  Id. at 1042.  The court also found that the private interests affected by the injunction were "very strong"; the risk of erroneous deprivation of such interest through the

procedures used was "considerable" and was not adequately remedied by post-deprivation remedies; and the county had not established that it faced an administrative, fiscal, or other substantial burden in providing "some procedure for Plaintiffs to challenge [the County's] gang membership determination before they were subjected to the terms of the Order." Id. at 1053.  Thus, as all of the Mathews factors weighed in favor of the plaintiffs, the court of appeals held that the county violated due process by failing to provide "class members [with] an adequate opportunity to contest whether they are active gang members before . . . subject[ing] [them] to a gang injunction." Id. at 1030.

As noted above, there are substantial similarities between the present action and Vasquez.  For example, both the Echo Park Injunction and the Vasquez injunction prohibit association between suspected gang members, without exception for immediate family members, modes of travel, or in expressive activities protected by the First Amendment, such as public demonstrations.  Compare Doc. No. 21-2 at 15-16 with Vasquez, 734 F.3d at 1042-43.  Given those similarities, the Court agrees with Plaintiff that the Echo Park Injunction, much like the injunction at issue in Vasquez, "profoundly implicates liberty interests protected by the Due Process Clause, including rights of free movement, association, and speech, and that [the City's] conduct interferes with those protected liberty interests." Id. at 1042.

## II.     Constitutional Sufficiency of City's Procedures

As to whether the process provided by the City was "constitutionally sufficient," Juvenile Male, 670 F.3d at 1013, Plaintiff contends that Vasquez compels the conclusion that he is likely to prevail on his claim that Defendants

violated due process by enforcing the Echo Park Injunction against him without providing any pre-deprivation process.

The City attempts to distinguish this case from <u>Vasquez</u> on several grounds. Most notably, the City points out the difference in the procedural history of the present case—in which the City did not name individual defendants in the underlying state court action—and <u>Vasquez</u>—in which Orange County strategically moved to dismiss named defendants after they made an "aggressive effort . . . to defendant themselves in court," 734 F.3d at 1032.  This distinction is immaterial.  In <u>Vasquez</u>, Orange County made the "decision to thwart [p]laintiffs' efforts to use procedures available in the state court that . . . were constitutionally sufficient."  <u>Id.</u> at 1050.  The same occurred here, as the City first declined to name the persons it suspected of gang membership in the public nuisance complaint and then <u>opposed their attempts to intervene</u> when they sought to challenge the injunction order.  As the <u>Vasquez</u> decision notes, "the contingent right to file an opposed motion to intervene, subject to discretionary denial, is not an adequate assurance of due process to meet constitutional standards."[2]  <u>Id.</u>

The City also highlights several factual distinctions between the two cases to argue that Plaintiff was not denied adequate process.  The Court addresses those distinctions within its analysis of the <u>Mathews</u> factors below.

---

[2] At the hearing on the present motion, the City argued that Plaintiff had sufficient process because he had the opportunity to attempt to intervene in the superior court proceedings before the court entered judgment.  As noted above, however, such an opportunity does not ensure constitutionally adequate process.

i.      **Private Interest**

As noted above, both the Echo Park Injunction and the injunction at issue in Vasquez prohibit association between suspected gang members, without exception for immediate family members, modes of travel, or a wide-variety of other protected activities.  Thus, it appears that the Echo Park Injunction, like the injunction at issue in Vasquez, affects private interests of great importance.

The City, however, offers the following distinctions to argue that Plaintiff's private interests are insubstantial: (1) unlike the Vasquez injunction, the Echo Park Injunction lists specific factors to determine active gang membership and includes an "opt-out" provision that allows the superior court to adjudicate gang membership; (2) unlike the Vasquez injunction, the Echo Park Injunction contains exceptions for school, work, and religious worship, as well as a hardship exception; (3) unlike Orange County, Los Angeles does not have a policy of seeking increased bail amounts for violations of the injunction; and (4) unlike the Vasquez injunction, which has no expiration date, the Echo Park Injunction expires five years after service.

None of those distinctions, however, are significant.  For example, despite setting forth criteria to be considered in determining who is an active gang member, the Echo Park Injunction does not include any procedure by which this determination is made.  Moreover, had Plaintiff applied for removal pursuant to the injunction's "opt-out" provision, the City would have objected to the application due to Plaintiff's April 2014 arrest for vandalism with a gang enhancement, Doc.

No. 14 at 5, or his December 2013 arrest for "assault with a deadly weapon, . . . vandalism, and . . . witness intimidation," Doc. No. 41 at 9, ¶ 33.[3]

Notwithstanding the Echo Park Injunction's limited exceptions for associations at school, work, and places of religious worship, the injunction still prevents Plaintiff from participating in an enormous variety of activities with anyone who the City also believes is an active gang participant, such as sitting on his porch; visiting neighborhood parks, libraries, stores, and restaurants; or participating in political organizing activities.  Likewise, even though the City does not seek increased bail amounts for violations of the injunction, Plaintiff has submitted a sworn declaration stating that he does not have enough money to bail himself out if arrested for an injunction violation.  Doc. No. 14 at 9.  Finally, that the injunction expires every five years does little to lessen the significance of the private interests at issue.  Five years is a long time to be prevented from freely

---

[3] Although neither party briefed the effect of an objection to an "opt-out" application, the City argued at the hearing on the present motion that an objection does not necessarily deny an applicant due process.  The City contended that, despite an objection, the applicant retains the opportunity to persuade the superior court of his or her lack of membership in a gang, which affords the applicant adequate process.  That assertion, however, is inconsistent with the plain terms of the injunction.  Indeed, the same behaviors that allow the City to object to an "opt-out" application—claimed membership in a gang, association with known gang members other than immediate family, an arrest for any felony or misdemeanor, or obtaining new gang tattoos—also allow the City to re-serve the gang injunction on any persons that previously qualified for removal.  Doc. No. 21-2 at 18-19.  Thus, the opt-out provision appears to promote a zero tolerance policy towards such behaviors.  Moreover, as explained in more detail below, the "opt-out" provision is an inadequate remedy due to the restrictions that remain on removed persons.

associating with family members and friends in public and, in any event, the order permits re-service on a person as soon as its five-year window expires.

Thus, much like the injunction at issue in <u>Vasquez</u>, the Echo Park Injunction "impose[s] significant restrictions on Plaintiffs' liberty" and implicates interests that are "truly weighty."  734 F.3d at 1045.

### ii.      Risk of Erroneous Deprivation

The Ninth Circuit in <u>Vasquez</u> found that "[d]etermining whether an individual is an active gang member presents a considerable risk of error."  <u>Id.</u> at 1046.  The court noted that the "informal structure of gangs, the often fleeting nature of gang membership, and the lack of objective criteria in making the assessment," and found it problematic that Orange County's process of assessing gang membership was an entirely "unilateral" and "one-sided."  <u>Id.</u> at 1046-48.

As in <u>Vasquez</u>, the City in this case makes its initial determination of active gang membership unilaterally and without input from alleged members.  <u>See</u> Doc. No. 20-1 at 15, 53-50 (describing procedures by which the LAPD and deputy city attorney work together to determine active gang membership).  As noted in <u>Vasquez</u>, "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights."  <u>Am.-Arab Anti-Discrimination Comm. v. Reno</u>, 70 F.3d 1045, 1069 (9th Cir. 1995) (quoting <u>Joint Anti-Fascist Refugee Comm. v. McGrath</u>, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring)).

The City argues that the risk of erroneous deprivation under its procedures is not as great as the risk in <u>Vasquez</u> because it, unlike Orange County, follows

consistent criteria that were approved by the superior court to determine active gang membership, offers a detailed removal process that has been implemented successfully, and serves a removal petition with each injunction.  Those distinctions fail.

Plaintiff has offered expert testimony from Professors Malcolm Klein and Diego Vigil—the same experts the Ninth Circuit relied upon in Vasquez—that suggests that the fluid nature of gangs makes it difficult to determine membership at any given time.  Doc. Nos. 17 at 4-7; 19 at 8-14.  Klein and Vigil also contend that several of the factors the City purportedly uses to identify active gang membership—close association, joint criminal activity, and even self-admissions— are unreliable and depend upon subjective assessment of facts and witness credibility.  Doc. Nos. 19 at 7 ("[I]t is very common for non-gang members to maintain some type of relationship with their friends-turned-gang-members."); 17 at 7 ("[P]eople who are not members [may] claim membership, because they do not want to show the wrong face in front of their peers; they do not want to be seen denying association with gang members.").  The City has offered no evidence to rebut Klein or Vigil's testimony in any meaningful way.

Nor do the City's removal procedures appear to be an adequate rememdy to cure the deprivation of Plaintiff's liberty interests.[4]  As explained above, Plaintiff's

---

[4] The Parties vigorously dispute whether post-deprivation remedies in cases such as this one are always inadequate.  As the Court can resolve the present motion without answering that question, it declines to do so.  See PDK Labs., Inc. v. Drug Enforcement Admin., 362 F.3d 786, 799 (D.C. Cir. 2004) ("[I]f it is not necessary to decide more, it is necessary not to decide more.") (Roberts, J., concurring in part and concurring in judgment).

arrest record likely would have prevented him from successfully "opting out" until
very recently, and his association with friends and extended family members who
may be suspected of gang membership would likely render him ineligible going
forward.  Doc. Nos. 14 at 8; 21-1 at 17-18.  Moreover, even if Plaintiff is eligible
for removal pursuant to the "opt-out" provision, it remains an inadequate remedy
because the provision allows for re-service of persons that have successfully
"opted-out" if they associate with known gang members other than immediate
family post-removal. Doc. No. 21-2 at 18.  Plaintiff has offered undisputed evidence
the LAPD believes that some of his extended family members, such as his uncle
and cousin, as well as some of his friends and neighbors, are members of a
Defendant Gang.  Doc. No. 14 at 7-8.  Thus, even if he were able to successfully
"opt out," Plaintiff would still be effectively prevented from associating with
friends and family members.

Likewise, Plaintiff remains ineligible for a presumption of removal pursuant
to the City's administrative process due to an arrest in January 2016 for an alleged
violation of the gang injunction.[5]  Doc. Nos. 14 at 7, 20-1 at 26.  In order to qualify

---

[5] Plaintiff states in his declaration that, on January 2, 2016, he and his
family members were arrested, for "walking out of the front yard" of a
neighbor's house.  Doc. No. 14 at 7.  The City filed a declaration from an
LAPD police officer stating that the arrest was for being "drunk in public at
a 'going away' party the gang held for [an] Echo Park gang member."  Doc.
No. 41 at 21, ¶ 61.  Plaintiff has not been charged with any crime in relation
to the January 2, 2016 arrest.  Doc. No. 14 at 7.

While it is possible that Plaintiff could have applied for removal through
the administrative process in the six months between the City serving him
with the injunction and his January 2016 arrest, his December 2013 arrest
for what the City claims was "assault with a deadly weapon, . . . vandalism,
and . . . witness intimidation," Doc. No. 41 at 9, ¶ 33,  as well as his March
2014 arrest for "vandalism with a gang enhancement," Doc. No. 14 at 5,

for a rebuttable presumption of removal under the City's administrative process, an enjoined person cannot have been "convicted of, charged with, or arrested for a crime of violence, a felony offense, or a violation of a Gang Injunction" within the last three years.  Doc. No. 20-1 at 26.  The net effect of those requirements is to flip the burden of proof onto enjoined persons.  Hence, once an LAPD officer makes an arrest—even if the arrest is for a crime that has nothing to do with gang membership—the enjoined person will have to prove that he or she is not a gang member.  As in <u>Vasquez</u>, such a requirement creates the a "critical[]" defect because it places "the burden on the petitioning individual to demonstrate to he or she is <u>not</u> an active gang participant, even though the State ordinarily has the burden of demonstrating active gang participation by 'clear and convincing evidence.'" <u>Vasquez</u>, 734 F.3d at 1049 (citing <u>People v. Englebrecht</u>, 88 Cal. App. 4th 1236, 1256 (2001)).

Moreover, the City's administrative process does not afford enjoined persons the opportunity to be presented with the evidence against them.  Doc. No. 20-1 at 22-25.  Thus, where a person, such as Plaintiff, has an arrest record that disqualifies him from the presumption of removal, that person is required to prove that he or she is not a gang member in a vacuum of evidence.  Given such requirements, the administrative process cannot serve as an adequate remedy.  734 F.3d at 1049 (rejecting Orange County's removal process because "there are no provisions requiring an explanation of the basis for the conclusion that the individual is a gang member, either before or at the hearing," which leaves "the alleged gang member . . . in a factual vacuum, to prove a negative").

---

likely would have disqualified him from the rebuttable presumption of removal during that period as well.

Accordingly, given the record presently before the Court, Plaintiff has shown that he is likely to establish that the risk of erroneous deprivation under the City's current procedures is considerable and the City's removal procedures do not adequately remedy the lack of pre-deprivation process.

### iii.    Government Interest

In assessing the government interest at stake, the question is "not whether [the City] has a significant interest in combating gang violence . . . but rather whether they have a significant interest in failing to provide [additional] process." Vasquez, 734 F.3d at 1052 (brackets omitted).  The City contends that requiring it to provide all alleged gang members pre-deprivation hearings would substantially delay its ability to obtain and enforce gang injunctions.  But such burdens "are precisely the sort of administrative cost that we expect our government to shoulder." Humphries v. Cty. of Los Angeles, 554 F.3d 1170, 1194 (9th Cir. 2009), rev'd on other grounds, Los Angeles Cty. v. Humphries, 562 U.S. 29 (2010).  Moreover, the record shows that at least three other jurisdictions in California—San Francisco, Oakland, and Orange—provide some form of pre-deprivation process to persons subject to gang injunctions.  See generally Doc. No. 21-3 335-549.  Those "examples of procedures . . . cast further doubt on [the City's] claimed administrative burden in providing pre-deprivation protections of some kind." Vasquez, 734 F.3d at 1053.  Thus, the City has not established an "administrative, fiscal or other substantial burden[]" that would prevent it from providing suspected gang members with additional process.

### iv.    Conclusion as to Likelihood of Success

Given the record presently before the Court, Plaintiff has established that all of the <u>Mathews</u> factors appear to weigh decisively in his favor.  Accordingly, the Court finds that Plaintiff has established a likelihood of success on the merits.

### B.  <u>Likelihood of Irreparable Harm</u>

Plaintiff must also demonstrate a likelihood of "irreparable harm in the absence of preliminary relief."  <u>Winter</u>, 555 U.S. at 20.  The City contends that because Plaintiff, who was served with the Echo Park Injunction in June 2015, has not availed himself of either the administrative or judicial post-deprivation remedies, he cannot establish such a likelihood.  The Court disagrees.

"Usually, delay is but a single factor to consider in evaluating irreparable injury; courts are 'loath to withhold relief solely on that ground.'"  <u>Arc of Cal. v. Douglas</u>, 757 F.3d 975, 990 (9th Cir. 2014) (citing <u>Lydo Enters., Inc. v. City of Las Vegas</u>, 745 F.2d 1211, 1214 (9th Cir. 1984)).  "Although a plaintiff's failure to seek [a remedy] can imply the lack of need for speedy action . . ., such tardiness is not particularly probative in the context of ongoing, worsening injuries."  <u>Id.</u> (citation omitted).

Plaintiff's hesitance to pursue either the "opt-out" procedure through the superior court or the City's administrative removal process is understandable given the likelihood that he would not successfully qualify for either due to his arrest record and familial associations, as discussed above.  Indeed, the resolution of the likelihood of irreparable harm element, in this case, is necessarily tied to Plaintiff's likelihood of success on the merits.  "Because Plaintiff[] ha[s] succeeded in

demonstrating a likelihood of success on the merits (i.e., that [his due process and] First Amendment rights are being violated), [he] ha[s] also succeeded in demonstrating a likelihood of irreparable harm." Occupy Fresno v. Cty. of Fresno, 835 F. Supp. 2d 849, 870 (E.D. Cal. 2011); see also Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

### C. **Balance of Equities and Public Interest**

The final two Winter factors that Plaintiff must establish are that the "balance of equities tips in his favor, and that an injunction is in the public interest." See Winter, 555 U.S. at 20. Plaintiff has demonstrated both.

The Parties dispute the efficacy of gang injunctions such as the one at issue in this case. But even assuming that these types of injunctions are effective in limiting criminal activity, the balance of the equities still tips in Plaintiff's favor. As noted above, the relevant question is not whether the City has an interest in combating gang violence, but whether the City's interest in quickly and efficiently serving Plaintiff with a gang injunction outweighs Plaintiff's interest in having due process before being subjected to such an injunction. Vasquez, 734 F.3d at 1052. As the City has not rebutted Plaintiff's evidence that the City's unilateral procedures include a considerable risk of erroneous deprivation, the Court cannot conclude that the burdens it faces in providing additional process outweigh the Plaintiff's hardships. Nor do the risks posed by gang violence create a public interest in allowing the continued use of constitutionally inadequate procedures. Cf. Fernandez v. Nevada, No. 3:06-CV-00628-LRH, 2010 WL 5678693, at *6 (D. Nev. Oct. 28, 2010), report and recommendation adopted, No. 3:06-CV-00628-LRH

26

(RAMx), 2011 WL 344745 (D. Nev. Feb. 1, 2011) ("[T]he public's interest in ensuring that individuals receive due process protections and in ensuring that high risk offenders are correctly identified outweighs the public's interest in seeing a law enforced in this instance which does not assure that Plaintiff will be provided with the procedural protections he is entitled.").

Therefore, both the balance of equities and public interest weigh in Plaintiff's favor.

### D. Scope of Injunction

"Injunctive relief . . . must be tailored to remedy the specific harm alleged." Lamb–Weston, Inc. v. McCain Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991). "An overbroad injunction is an abuse of discretion."  Id.

Plaintiff moves the Court to enter an order barring the City from enforcing the Echo Park Injunction against him.  As the Court has determined that Plaintiff is likely to establish that the City did not provide him with due process in enforcing the injunction against him, that continued enforcement of the injunction is likely to result in irreparable injury, and that the balance of the equities and public interest weigh in his favor, the Court finds the scope of Plaintiff's requested remedy reasonable.

### E. Issuance of Bond

Typically, a plaintiff may not be granted a preliminary injunction without first posting security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or

restrained." Fed. R. Civ. P. 65(c). Among other things, this requirement both discourages "parties from requesting injunctions based on tenuous legal grounds" and "assures district court judges that defendants will receive compensation for their damages in cases where it is later determined a party was wrongfully enjoined." Nintendo of America, Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1037 (9th Cir. 1994). "The district court retains discretion 'as to the amount of security required, if any.'" Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011) (citing Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in original)).

Neither party has briefed whether the Court should require a security in this case or what type of a payment would be appropriate to protect the City's interests. Nevertheless, Plaintiff's motion is not based on "tenuous legal grounds," and the City's status as an institutional defendant lessens the need for an assurance of compensation in case the Court's decision to enter an injunction turns out to be wrong. Moreover, the City declined to be heard on the need for a security when presented with the opportunity at the hearing on this motion. Plaintiff's counsel, however, stated that they were unsure if their client would be able to pay a bond. That uncertainty is consistent with Plaintiff's declaration, in which he states in "[m]oney is tight in our house" and that he does not have "enough savings to be able to bail [him]self out" if he is arrested for violating the Echo Park Injunction. Doc. No. 14 at 9. Accordingly, the Court finds that a bond is not necessary here. See Elliott v. Kiesewetter, 98 F.3d 47, 60 (3d Cir. 1996) ("Where the balance of . . . equities weighs overwhelmingly in favor of the party seeking the injunction, a district court has the discretion to waive the Rule 65(c) bond requirement."); Orantes-Hernandez v. Smith, 541 F. Supp. 351, 385 n.42 (C.D. Cal. 1982) ("Where

. . . the action is brought by an impecunious class of plaintiffs, preliminary injunctive relief may be granted without any security whatsoever.") (citing <u>Bartels v. Biernat</u>, 405 F. Supp. 1012, 1019 (E.D. Wis. 1975)).

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for a preliminary injunction to stop the City from enforcing the Echo Park Injunction against him.

The City of Los Angeles and its agents, employees, assigns, and all those acting in concert with them are hereby barred from enforcing the Judgment Granting Permanent Injunction in <u>People v. Big Top Locos, et al.</u>, Case No. BC511444 (L.A. Sup. Ct. Sept. 23, 2013), against Plaintiff Peter Arellano. This order does not preclude the City, its agents, employees, assigns, or all those acting in concert with them from returning to the California Superior Court for the County of Los Angeles to seek a separate order binding Plaintiff Arellano to the terms of the Echo Park injunction, nor does it preclude the City from seeking to modify this order on grounds they have provided Plaintiff Arellano adequate due process through additional administrative proceedings.

**IT IS SO ORDERED.**

Dated:      9/7/17

_____
Virginia A. Phillips
Chief United States District Judge