PETER BIBRING (SBN 223981)
pbibring@aclusocal.org
MELANIE P. OCHOA (SBN 284342)
mpochoa@aclusocal.org
ADITI FRUITWALA (SBN 300362)
afruitwala@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299

*Counsel for Plaintiffs*
(Additional Counsel for Plaintiffs on Following Page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUTH JUSTICE COALITION, a non-profit organization; PETER ARELLANO and JOSE REZA, individuals, for themselves and on behalf of a class of similarly-situated individuals,<br><br>        *Plaintiffs*,<br><br>        vs.<br><br>CITY OF LOS ANGELES; DOES 1 through 10, in their official and individual capacities,<br><br>        *Defendants*. | Case No. 2:16-cv-07932-VAP-RAO<br><br>**NOTICE OF MOTION AND MOTION BY PLAINTIFFS FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH**<br><br>Complaint Filed: October 25, 2016<br>Hearing Date: November 27, 2017<br>Hearing Time: 2:00 p.m.<br>Trial Date: None Set |

JACOB S. KREILKAMP (SBN 248210)
jacob.kreilkamp@mto.com
LAURA D. SMOLOWE (SBN 263012)
laura.smolowe@mto.com
MARIA JHAI (SBN 283059)
maria.jhai@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

ANKUR MANDHANIA (SBN 302373)
ankur.mandhania@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

ADELE M. EL-KHOURI (Admitted *pro hac vice*)
adele.el-khouri@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, 7th Floor
Washington, D.C. 20004
Telephone:   (202) 220-1100
Facsimile:    (202) 220-2300

JOSHUA GREEN (SBN 293749)
jgreen@urbanpeaceinstitute.org
SEAN GARCIA-LEYS (SBN 313558)
sgarcialeys@urbanpeaceinstitute.org
THE CONNIE RICE INSTITUTE FOR URBAN PEACE
1910 West Sunset Boulevard
Suite 800
Los Angeles, California 90026
Telephone:   (213) 404-0124
Facsimile:    (213) 402-2843

*Counsel for Plaintiffs*

## NOTICE OF MOTION AND MOTION TO CERTIFY
## CLASS ACTION AND APPOINT CLASS COUNSEL

PLEASE TAKE NOTICE THAT at 2:00 p.m. on November 27, 2017, or as soon thereafter as counsel may be heard, before the Honorable Virginia A. Phillips in Courtroom 8A of the above-entitled Court located at 350 West 1st Street, Los Angeles, California, Plaintiffs Peter Arellano and Jose Reza ("Plaintiffs") will and hereby do move for an order certifying a class of plaintiffs ("Plaintiff class members") as defined herein, appointing Mr. Arellano and Mr. Reza as class representatives, and appointing Plaintiffs' counsel as class counsel. Plaintiff class members move to certify the class on the grounds that they are all similarly situated and have been subjected to the same unconstitutional policies and practices of the City in this action. The motion is based on Federal Rule of Civil Procedure 23(b)(2).

Plaintiff class members' motion to certify the class is based upon this notice and motion, the memorandum of points and authorities filed concurrently herewith, the declarations of Adele El-Khouri, Melanie Ochoa, Laura D. Smolowe, Peter Bibring, Joshua Green, and Tayon Blockmon, filed concurrently herewith, the pleadings on file, and such evidence and argument as may be presented at the hearing on this motion.

The motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 4, 2016. The parties were unable to reach a resolution to eliminate the necessity for this motion.

Dated: October 2, 2017                   Respectfully submitted

                                         MUNGER, TOLLES & OLSON LLP
                                         JACOB S. KREILKAMP
                                         LAURA D. SMOLOWE
                                         MARIA JHAI
                                         ADELE M. EL-KHOURI
                                         ANKUR MANDHANIA

1

2                                  By:   s/ Laura D. Smolowe

3                                        Laura D. Smolowe

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27     MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

28

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   BACKGROUND ...................................................................................... 4

A.    Plaintiffs File This Lawsuit to Address the City's
Unconstitutional Enforcement of Gang Injunctions, and Mr.
Arellano and Mr. Reza Successfully Obtained Preliminary
Injunctions Establishing The Likelihood That They Will Succeed
On the Merits .................................................................................. 4

1.    Plaintiff Joe Reza ................................................................ 4

2.    Plaintiff Peter Arellano ....................................................... 5

B.    The City Imposes Dozens of Other Los Angeles Gang
Injunctions That Impose Exceedingly Broad Restrictions on
Enjoined Individuals Akin to the Echo Park Injunction ...................... 7

C.    The City Imposes Dozens of Other Gang Injunctions That Fail to
Provide Enjoined Individuals with Adequate Pre-Deprivation
Process Akin to the Inadequate Process Provided by the Echo
Park Injunction .............................................................................. 8

D.    In Response to This Lawsuit, The City Asserts that It Is Revising
Its Gang Injunction Procedures In Ways That Apply to Each
Plaintiff Class Member and that Remain Constitutionally
Inadequate ................................................................................... 11

III.  ANALYSIS .............................................................................................. 12

A.    The Proposed Class Satisfies Rule 23 ................................................ 12

1.    *The Class is Numerous* ........................................................ 13

2.    *Class Members Share Common Questions of Law or Fact* ........ 14

(a)    The Procedural Due Process Inquiry ............................ 15

(i)    Implicated Liberty Interests ............................... 16

(ii)   The Process Due Under *Mathews* ...................... 18

3.    *The Named Plaintiffs' Claims Are Typical of the Class* ............ 21

4.    *The Named Plaintiffs Will Fairly and Adequately Protect
the Interests of the Class* ...................................................... 22

B.    The Proposed Class Satisfies Rule 23(b)(2) ....................................... 23

**TABLE OF CONTENTS**
(continued)

Page

C.    This Court Should Appoint Undersigned Counsel as Class
      Counsel.................................................................................................24

D.    The City's Limited Revised Procedures Do Not Moot the Case..........25

IV.    CONCLUSION ...............................................................................................27

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR CLASS CERTIFICATION &
APPOINTMENT OF CLASS COUNSEL

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ambrosia v. Cogent Commc'ns, Inc.,*
   312 F.R.D. 544 (N.D. Cal. 2016) .................................................................. 13

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) ........................................................................ 14

*Arnold v. United Artists Theatre Circuit, Inc.,*
   158 F.R.D. 439 (N.D. Cal. 1994) .................................................................. 23

*Johnson v. California,*
   543 U.S. 499 (2005) ...................................................................................... 14

*Elliot v. Weinberger,*
   564 F.2d 1219 (9th Cir. 1977), ..................................................................... 13

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) ........................................................................ 14

*General Telephone Co. of the Southwest v. Falcon,*
   457 U.S. 147 (1982) ...................................................................................... 21

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 22

*Harris v. Palm Springs Alpine Estates, Inc.,*
   329 F.2d 909 (9th Cir. 1964) ........................................................................ 13

*Holmes v. Cont'l Can Co.,*
   706 F.2d 1144 (11th Cir. 1983) .................................................................... 23

*Kentucky Department of Corrections v. Thompson,*
   490 U.S. 454 (1989) ...................................................................................... 15

*LaDuke v. Nelson,*
   762 F.2d 1318 (9th Cir. 1985) ...................................................................... 21

*Lynch v. Rank,*
   604 F. Supp. 30 (N.D. Cal. 1984) ................................................................ 23

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lyon v. United States Immigration and Customs Enforcement*,
300 F.R.D. 628 (N.D. Cal. 2014) ......................................................... 24

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ............................................................... 15, 18, 20

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ................................................................ 14

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ................................................... 17, 19, 22

*Vasquez v. Rackauckas*,
734 F.3d 1025 (9th Cir. 2013) ................................................. 4, passim

*Vasquez v. Rackaukas*,
Case No. 8:09-CV-01090-VBF-RNB (C.D. Cal. 2010) .................... 15, 18, 19, 20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................ 24

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ............................................................. 22

*Wilkinson v. Austin*,
545 U.S. 209 (2005) ............................................................................ 15

**STATE CASES**

*People v. Englebrecht*,
88 Cal. App. 4th 1236 (2001) ........................................................ 10, 17

**CASES - OTHER**

*People v. Big Hazard*,
Case No. 335749 (L.A. Super. Ct. Sept. 9, 2005) ................................. 5

*People v. Big Top Locos, et al.*,
No. BC511444 (L.A. Super. Ct. Sept. 24, 2013) ................................... 6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**STATE STATUTES**

Penal Code § 166 ........................................................................................... 8

**FEDERAL RULES**

Fed. R. Civ. P. 23 ........................................................................................ 12

Fed. R. Civ. P. 23(a)(1) .............................................................................. 13

Fed. R. Civ. P. 23(a)(1)-(4) ........................................................................ 13

Fed. R. Civ. P. 23(a)(3) .............................................................................. 21

Fed. R. Civ. P. 23(a)(4) .............................................................................. 22

Fed. R. Civ. P. 23(a) and 23(b)(2) ............................................................... 3

Fed. R. Evid. 1006 ........................................................................................ 7

**CONSTITUTIONAL PROVISIONS**

First Amendment ........................................................................................ 17

Fourth Amendment ..................................................................................... 21

**OTHER AUTHORITIES**

7A Wright, Miller & Kane, Fed. Practice & Proc. § 1763, at 226 (3d ed.
    2005) .................................................................................................... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs and proposed class representatives Peter Arellano and Jose ("Joe") Reza seek certification of a class of similarly-situated individuals in this challenge to the unconstitutional process by which the City of Los Angeles ("the City") subjects them to restrictive "gang injunctions" that impose extraordinary burdens on everyday legal activity. This Court already granted preliminary injunctions as to Mr. Arellano and Mr. Reza, the two putative class representatives, holding that that they were likely to succeed on their claims that the City's methods of enforcing gang injunctions against them violated due process under the United States and California Constitutions. Dkt. 106, Order Granting Plaintiff Peter Arellano's Preliminary Injunction (Phillips, J.); Dkt. 68, Order Granting Plaintiff Jose Reza's Preliminary Injunction (Fairbank, J.) Class certification is appropriate here because, by the City's own admission, it applies the same enforcement policies it applied to Mr. Arellano and Mr. Reza to the entire proposed class, and any changes it claims it is now making or will make to those policies (which remain constitutionally deficient) apply to the entire class as well.

The injunctions unconstitutionally enforced against Mr. Arellano and Mr. Reza are not outliers. In fact, the City has obtained dozens of gang injunctions akin to those enforced against the putative class representatives (collectively, the "Los Angeles Gang Injunctions"), and uses them to prohibit thousands of individuals, selected by the City without any judicial oversight, from engaging in "otherwise legal activities such as appearing in public together or carrying pagers or cellular telephones." Dkt. 106 at 2 (internal quotation marks omitted). The City's gang injunctions "profoundly implicate[] liberty interests protected by the Due Process Clause, including rights of free movement, association, and speech," Dkt 106 at 16 (internal quotation marks omitted), yet none of the Plaintiff class members suffering

liberty deprivations under these injunctions was provided a meaningful opportunity to contest the City's determination that he or she was an active member of an enjoined gang prior to enforcement of the injunction against him or her. As a result, the City's gang injunction enforcement procedures violate Plaintiff class members' right to procedural due process.

This lawsuit is ideal for class treatment. The procedures the City used to subject Plaintiffs Arellano and Reza to gang injunctions are not materially distinguishable from those the City uses to enforce substantially similar gang injunctions against all Plaintiff class members. Indeed, the City has set forth its gang injunction procedures in formal policy and guidelines that have not meaningfully changed since the City began using gang injunctions, thus subjecting all Plaintiff class members to essentially the same process. The City's recent—and ongoing—attempts to revise these procedures in response to this litigation only confirm the appropriateness of proceeding as a class action: as the City concedes, any new procedures it plans to employ to allow individuals to contest its decision to subject people to injunctions will apply in the same manner to the entire class.[1]

Plaintiffs[2] therefore respectfully request that the Court certify the following class under Federal Rule of Civil Procedure 23(b)(2):

_____

[1] On January 27, 2017, the Court stayed the case so that the parties could attempt to negotiate a settlement. Dkt. 69. On July 3, 2017, the Court lifted the stay when negotiations failed. Dkt. 86. The City represented at that time that it would, at some point in the future, implement new policies regarding enforcement of gang injunctions. Dkt. 90. The City acknowledged that the new procedures it contemplated would apply to all "future-served individuals, [and] also . . . individuals served with injunctions in the past," that is, to all Plaintiff class members. Dkt. 90. In its most recent discovery responses the City reiterated that the new policies will apply to "individuals served with an injunction (whether previously served or served in the future)." Ochoa Decl. Ex. D at 11.

[2] In addition to the class representatives, Plaintiff Youth Justice Coalition ("YJC") filed an individual claim as part of the Complaint, alleging that it has been forced to

(cont'd)

-2-

All persons currently, or who are in the future, subject to a Los Angeles Gang Injunction who were not named as defendants in or otherwise parties to the civil nuisance abatement action to obtain that injunction, and who do not have contempt proceedings for violation of an injunction currently proceeding against them.

Plaintiff class members easily satisfy the standard for a class seeking injunctive relief under Rule 23(b)(2), which requires a showing that the City has acted in ways applicable to the class as a whole, because the City's gang injunction enforcement procedures apply to the entire class.

Plaintiff class members also meet the Rule 23(a) standard for class actions, which requires: 1) numerosity, 2) commonality of facts and law, 3) typicality of the claims of the named plaintiffs, and 4) that the named plaintiffs will fairly and adequately represent the class. First, the proposed class, which numbers in the thousands, satisfies numerosity, which can be shown with a class of as few as 40 individuals. Second, the primary factual and legal issues presented to the Court are common across the class: all Plaintiff class members were (or will be) subjected to a Los Angeles Gang Injunction without constitutionally-adequate pre-deprivation notice and opportunity to contest the City's unilateral determination of active gang membership, and the principal legal issue presented by these claims is whether this conduct violated the United States and California Constitutions. Third, class representatives Mr. Arellano and Mr. Reza's interests and injuries are typical of the entire class. And fourth, the named Plaintiffs, represented by counsel experienced in precisely this type of litigation, will fairly and adequately represent the interests of the entire class.

---

divert its limited resources to address the City's unconstitutional gang injunction procedures. Dkt. 2, Complaint at ¶ 7. YJC is a non-profit organization located in Los Angeles, California, whose "goal is to dismantle policies and institutions that have ensured the massive lock-up of people of color, widespread law enforcement violence and corruption, [and] consistent violation of youth and communities' Constitutional and human rights." *Id.* ¶¶ 37–38.

Confirming that class certification is appropriate here, the Central District of California certified a class bringing almost identical claims in 2010 in *Vasquez v. Rackaukas*, Case No. 8:09-CV-01090-VBF-RNB, Dkt. 135. There, Judge Fairbank, and then the Ninth Circuit, ultimately held that the Orange County District Attorney and the Orange Police Department had violated the due process rights of a class of alleged gang members by failing to provide them with adequate pre-deprivation process prior to enforcing a gang injunction against them. *See Vasquez v. Rackauckas,* 203 F.Supp.3d 1061, 1068 (C.D. Cal. 2011), *aff'd in relevant part, Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013). As Plaintiff class members will show here, their constitutional rights similarly have been—and continue to be—violated in a manner warranting class-wide relief.

## II.  <u>BACKGROUND</u>

### A.  <u>Plaintiffs File This Lawsuit to Address the City's Unconstitutional Enforcement of Gang Injunctions, and Mr. Arellano and Mr. Reza Successfully Obtain Preliminary Injunctions Establishing The Likelihood That They Will Succeed On the Merits</u>

On October 25, 2016, Plaintiffs filed this lawsuit alleging that the City's policy of enforcing gang injunctions without adequate pre-deprivation due process protections violated their constitutional rights. Dkt. 2. Promptly thereafter, the individually named plaintiffs, and putative class representatives, sought preliminary relief to halt the ongoing violation of their constitutional rights.

#### 1.  **Plaintiff Joe Reza**

On November 14, 2016, Jose ("Joe") Reza filed a motion for preliminary injunction. Dkt. 28. The City filed a statement of non-opposition in response to Mr. Reza's motion, confirming that at least as to Mr. Reza, the City agreed that there was no basis to continue to subject him to a restrictive injunction, notwithstanding the fact that the City had taken no steps to cease enforcement or remove him from the injunction list. *See* Dkt. 39 at 2 ("Defendant does not believe that Reza's current

participation in the Big Hazard Gang rises to a level that is 'more than nominal, passive, inactive, or purely technical.'").

Mr. Reza is a forty year-old man, born and raised in the Ramona Gardens neighborhood of Los Angeles. *See* Dkt. 28-2, Decl. of Jose Reza ("Reza Decl.") ¶2. He now lives in Whittier with his fiancée and works in construction as a carpenter. Mr. Reza has no gang-related criminal convictions. *Id.* ¶¶6, 8.

Mr. Reza was served with the injunction in *People v. Big Hazard*, Dkt. 21-2 Ex. 14, Case No. 335749 (L.A. Super. Ct. Sept. 9, 2005) ("Big Hazard Injunction"), in or about October 2006. *Id.* ¶¶10-11. As an individual served with the Big Hazard Injunction, Mr. Reza could be arrested, prosecuted, and even imprisoned for engaging in a variety of noncriminal and commonplace conduct. *Id.* at 2-3.

Since being served, Mr. Reza has been arrested and threatened with arrest numerous times for alleged violations of the gang injunction. Mr. Reza was first charged with violating the injunction for the trespassing incident that occurred *before* he was even served. *See* Reza Decl. ¶¶13-14. He pled no contest to the charge because he was afraid that his son would find out he was in trouble with the police if he fought the charge and prolonged the proceedings. *Id.* ¶14. Mr. Reza was threatened with arrest, arrested, or charged with violating the injunction twice in 2007, once in 2008 while working, and once in 2011 while attending a barbecue in celebration of a friend drafted to play baseball for the Boston Red Sox. *Id.* ¶¶15-20. Each time the charges were dropped. *Id.*

This Court issued a preliminary injunction as to Mr. Reza on January 27, 2017. Dkt. 68.

## 2.    Plaintiff Peter Arellano

On October 31, 2016, Plaintiff Peter Arellano filed a motion for preliminary injunction. Dkt. 12. The City opposed the preliminary injunction against Mr. Arellano. Dkt. 40.

-5-

Mr. Arellano is a twenty-two year-old man who was born and raised in the Echo Park neighborhood of Los Angeles, where he lives with his parents, sister, and girlfriend in his childhood home. *See* Dkt. 14, Declaration of Peter Arellano ("Arellano Decl.") ¶3.

Mr. Arellano was served with the injunction in *People v. Big Top Locos*, *et al.*, Dkt. 21-2 Ex. 2, Case No. 511444 (L.A. Super. Ct. Sept. 24, 2013) ("Echo Park Injunction"). *Id.* ¶ 16. As an individual subject to that injunction, Mr. Arellano could be arrested, prosecuted, and even imprisoned for engaging in a variety of noncriminal and commonplace conduct. Dkt. 106 at 7-8.

Since being served, Mr. Arellano has been arrested and threatened with arrest for a violation of the gang injunction for doing no more than being outside in public spaces or in public view with friends or neighbors from Echo Park. Arellano Decl. ¶17-19. Because he fears arrest, Mr. Arellano has avoided appearing in public with his father, brother, uncle, cousin, and many of his childhood friends, even to engage in routine day-to-day activities. *Id.* ¶¶22-23. He has skipped neighborhood gatherings, holiday parties, and other social activities. He has described his experience living under the injunction as being under "house arrest." *Id.* ¶26.[3]

---

[3] The City has argued in this case that Mr. Arellano was and is an active gang member and therefore properly subject to the injunction. *See* Dkt. 40 2-4. Mr. Arellano disputes that he is, or ever was, an active gang member. Arellano Decl. ¶ 11. But whether any individual class member is or is not a member of a gang is irrelevant to the question whether class certification is appropriate. The relevant question for that purpose is, rather, whether the challenged policies apply to all Plaintiff class members. Further, not only are the merits of Mr. Arellano's claim not at issue at this class certification stage, whether or not Mr. Arellano is in fact an active gang member is not relevant to the merits of Plaintiff class members claims either. Plaintiff class members' right to relief does not depend on whether the City can produce post hoc evidence purporting to show that any particular individual served by the City with a gang injunction was a member of a gang when served. Instead, Plaintiff class members' right to relief depends on whether the City violated their due-process rights by serving and enforcing gang injunctions without affording any individual served a constitutionally adequate opportunity to hear and challenge the supposed evidence of gang membership before being deprived of fundamental liberties.

This Court granted Mr. Arellano's motion for a preliminary injunction on September 7, 2017, holding that Mr. Arellano was likely to succeed on his claim the City did not provide him with due process in enforcing the injunction against him, that continued enforcement of the injunction is likely to result in irreparable injury, and that the balance of the equities and public interest weigh in his favor. Dkt. 106 at 27.

In granting the preliminary injunction as to Mr. Arellano, this Court described the features of the Echo Park Injunction to which Mr. Arellano was subjected that implicated significant liberty interests, and the deficiencies in the City's enforcement procedures that raise serious constitutional due process concerns. *Id.* at 5-9.

**B.**    **The City Imposes Dozens of Other Los Angeles Gang Injunctions That Impose Exceedingly Broad Restrictions on Enjoined Individuals Akin to the Echo Park Injunction**

At present, at least forty-six gang injunctions are being enforced across Los Angeles. *See* Declaration of Adele M. El-Khouri ("El-Khouri Decl.") ¶ 1, filed concurrently herewith.[4] Thousands of individuals are enjoined. *See* Dkt. No. 42, Declaration of Assistant City Attorney Arturo Martinez ("Martinez Decl.") ¶¶5, 28 (stating that 9400 individuals had been served with a Los Angeles Gang Injunction as of 2014).

As described below, the forty-six Los Angeles Gang Injunctions contain terms and restrictions substantially similar to those in the Echo Park Injunction.

This Court described in some detail the aspects of the Echo Park Injunction that impose significant burdens on critical liberty interests. Among other things:

> [It] enjoined persons from associating in public or in common areas of residential buildings with other "known" gang members under a "Do Not Associate" provision. Specifically, the "Do Not Associate"

---

[4] For the convenience of the Court, the El-Khouri Declaration summarizes the exhibits to Plaintiffs' Request for Judicial Notice ("RJN"), Dkt. 21, *see* Fed. R. Evid. 1006, which this Court granted, Dkt. 106 at 4.

provision prohibits enjoined persons from "[s]tanding, sitting, walking, driving, gathering, or appearing, anywhere in public view, in a public place, or any place accessible to the public, with any other known member of a Defendant Gang." The provision also applies to "all methods of travel." The provision includes exceptions to its restrictions if the enjoined person is: (1) inside a school attending class or conducting school business; (2) inside a church or religious institution for the purposes of worship; or (3) inside a place where he or she is lawfully employed and is engaged in a lawful business, trade, profession, or occupation which requires such presence.

Dkt. 106 at 7 (citations omitted). The Echo Park Injunction also prohibits enjoined individuals from engaging in a host of other lawful and unlawful activities. *Id.* at 7-8.

All of the Los Angeles Gang Injunctions contain substantially the same terms as the Echo Park Injunction: within a specified geographic area designated as a "safety zone,"[5] individuals subject to the gang injunction are prohibited from engaging in otherwise-lawful conduct, including "standing," "walking," or "appearing" in "public view" with a "known" gang member; being present on private property without prior written permission; wearing colors characterized as gang colors; or possessing run-of-the-mill items such as felt-tipped markers and cell-phones. *See* El-Khouri Decl. ¶¶13-22. As with the Echo Park Injunction, the City charges violations of the injunctions' terms as a misdemeanor under Penal Code § 166, punishable by up to six months in jail and a fine of up to $1000. *See* Dkt. 20, Ex. A, Office of the City Attorney, City of Los Angeles, *Gang Injunction Program Guidelines* (Nov. 2009) ("2009 Guidelines"), App. A at 24-25.

**C.** **<u>The City Imposes Dozens of Other Gang Injunctions That Fail to Provide Enjoined Individuals with Adequate Pre-Deprivation Process Akin to the Inadequate Process Provided by the Echo Park Injunction</u>**

This Court found that the Echo Park Injunction "affords enjoined persons two

---

[5] Each injunction's safety zone is defined in the injunction. El-Khouri Decl. ¶5.

1  processes—one judicial and one administrative—to challenge [their] enforcement."

2  Dkt. 106 at 8. The Court concluded that Mr. Arellano was likely to succeed in his

3  argument that *neither* satisfied due process.

4      First, it contains "opt-out provisions" that allow enjoined individuals to

5  petition for an order to cease enforcement. *Id.* These opt-out procedures are "an

6  inadequate remedy," however, because the provision allows for re-service of

7  persons that have successfully 'opted-out' if they associate with known gang

8  members other than immediate family post-removal." *Id.* at 22. In addition, the City

9  may, and often does, oppose an individual's opt-out petition. *Id.* at 18-19.

10      More than a third of the forty-six gang injunctions contain these opt-out

11  provisions. El-Khouri Decl. ¶ 26-29. In addition to the inadequacies this Court has

12  already identified, available court records show that the opt-out provisions do not, in

13  practice, provide a meaningful option for obtaining removal from a gang injunction.

14  Fewer than five people have even attempted to petition a court under these opt-out

15  provisions, and none has been successful. *See id.* ¶29.

16      Second, "the City has established a post-deprivation administrative process by

17  which enjoined persons can apply [to the City Attorney] to be removed from the

18  [Echo Park] [I]njunction." Dkt. 106 at 9. But as this Court found, the removal

19  procedures are an equally inadequate remedy, because they "flip the burden of proof

20  onto enjoined persons" by effectively making them prove they are not active gang

21  members. *Id.* at 23. They are also inadequate because they do "not afford enjoined

22  persons the opportunity to be presented with the evidence against them." *Id.* at 23.

23      The thousands of individuals enjoined under all of the Los Angeles Gang

24  Injunctions are subject to this same inadequate removal process. For all removal

25  petitions, the burden is on the petitioner to prove he or she merits removal (as

26  opposed to benefiting from the "clear and convincing" standard imposed on the

27  *government* when it must prove that an individual is an active participant in a gang).

28

-9-

*People v. Englebrecht*, 88 Cal. App. 4th 1236, 1256 (2001). Specifically, the petitioner has the burden of providing evidence that leaves the City employee reviewing the petition "firmly convinced . . . that the Petitioner: (a) No longer holds himself or herself out as a member of the gang; *and* (b) No longer is (or never was) acting to promote, further, or assist the gang's criminal and/or nuisance activity." November 2009 Gang Injunction Program Guidelines, Dkt. 20-1 Ex. A at 18 (standard for removal).

The administrative process common to all of the Los Angeles Gang Injunctions is, in the City's own words, "an exercise of prosecutorial discretion," not "cognizable in a court of law." Ex. A at A-24. The injunctions fail to provide individuals with the right to access or challenge the evidence against them, even though the City employee who is the final decision-maker has access to anything that the City unilaterally deems to be "reliable information concerning [petitioner's] past and present membership in or involvement with criminal street gangs." *Id.* Ex. B at 1 (removal petition). And all of the injunctions similarly fail to provide access to a neutral decision-maker—instead, "[t]he final decision is made by a LACA executive staff member," who is employed by the City. *Id.* ¶ 21. If an individual believes that the decision is wrong, there is no opportunity to appeal to a neutral decision-maker; instead, petitioners are directed to re-file their applications *to the City*, and only if they have what the City deems "significant new information to report." *Id.* Ex. B at 2.

Moreover, the removal process is painfully slow; even applicants who satisfy all the stated requirements often wait more than a year for a determination. *See generally* Dkt. 16, Declaration of John Green ("Green Decl."); *see also* Dkt. 18, Declaration of Ana Muñiz ("Muñiz Decl.") ¶35. According to Assistant City Attorney Martinez, since 2007, only 45 people have been removed through this process out of 107 valid applications, showing that only a tiny fraction of the

individuals subject to gang injunctions have access to and obtain relief through this process. *See* Martinez Decl., Dkt. 42, ¶¶25-26.

This Court also found that the Echo Park Injunction's sunset provision of five years, which the City may then renew, "does little to lessen the significance of the private interests at issue." Dkt. 106 at 19. All of the other gang injunctions subject recipients to their terms *permanently*. *See* El-Khouri Decl. ¶24.[6]

### D. <u>In Response to This Lawsuit, The City Asserts that It Is Revising Its Gang Injunction Procedures In Ways That Apply to Each Plaintiff Class Member and that Remain Constitutionally Inadequate</u>

The City represented to this Court that it would be adopting limited changes to its gang injunction procedures ("the 2017 Revisions"). Dkt. 90, Defendant's Letter Brief 1 n.1; Dkt. 93, Rule 26(f) Conference Report 5. The City stated that it expected to complete these changes by the end of August 2017. *Id.* Notwithstanding these representations, the City has also acknowledged in discovery responses that as of mid-September 2017 it is still in the process of revising the processes themselves, and it does not appear that they have yet been implemented. Declaration of Melanie Ochoa ("Ochoa Decl.") Ex. D at 13-14, filed concurrently herewith.

Although Plaintiffs served two rounds of written discovery, the City has provided only very general information about these changes to its enforcement procedures. What is clear, however, is that the City's revisions to its procedures will apply across the board to *all* enjoined individuals, as well as those who will be

---

[6] The City's ongoing revisions to its gang injunction procedures, which Plaintiffs describe below, indicate that the City currently intends to enforce each injunction for five years at a time, Ochoa Decl. Ex. C at 4; Ex. D at 11-12, but just as with the Echo Park Injunction, the City apparently grants itself unfettered discretion to renew that five-period indefinitely; and, in any event, as this Court observed, "five years is a long time to be prevented from freely associating with family members and friends in public." Dkt. 106 at 19-20.

enjoined in the future—i.e., to all members of the Plaintiff class. Ochoa Decl. Ex. D at 9.

Based on the limited information Plaintiffs have received regarding the changes, the City apparently intends to institute a limited 30-day forbearance period during which it will not enforce a gang injunction, and an individual will have the option of pursuing one of two options for challenging his or her inclusion on the injunction. First, an individual apparently will be able to try to challenge the determination in the Superior Court proceeding in which the individual was not named as a defendant, but there is no clear procedure for what or how to file, or if a court would even allow such a motion. Crucially, enforcement would continue throughout the process (unless the court were to issue a stay within 30 days), which would render the process completely *post-deprivation* after the 30-day forbearance period. Ochoa Decl. Ex. C at 4. Second, the City asserts that it will abstain from enforcing beyond the 30-day period if an individual makes use of the "removal" process until that process is complete. That removal process, however, itself is constitutionally inadequate even as a pre-deprivation process; for example, it fails to provide for a third-party neutral decision-maker and places the burden of proof on the individual seeking to challenge his inclusion in the list. Ochoa Decl. Ex. C; Ex. D. As described below, the 2017 Revisions on their face fail to afford constitutionally adequate notice and opportunity for a pre-deprivation challenge to the City's determination that an individual is subject to a gang injunction.

## III.  ANALYSIS

### A.  The Proposed Class Satisfies Rule 23

Federal Rule of Civil Procedure 23(a) requires that:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of

-12-

the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). As set forth below, Plaintiffs' proposed class satisfies each of these requirements.[7]

### 1.    *The Class is Numerous*

The numerosity requirement of Rule 23 is satisfied if "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (internal quotation marks and citation omitted). No fixed number of class members makes joinder impracticable. *Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544, 552 (N.D. Cal. 2016). Generally, however, a class of forty or more members is considered numerous enough. *Id.* ("[A]s a general matter, a class greater than forty often satisfies the [numerosity] requirement….").

There can be no serious dispute that Plaintiff class members' proposed class is sufficiently numerous. The City has subjected thousands of individuals to forty-six Los Angeles Gang Injunctions without adequate pre-deprivation process. *See* Martinez Decl. ¶¶5, 28 (stating that 9400 individuals had been served with a Los Angeles Gang Injunction as of 2014). Joinder of almost 10,000 individuals would be impracticable.[8]

---

[7] Plaintiffs request that once the class is certified, they not be required to give unnamed class members notice of the pendency of this action prior to judgment. Pre-judgment notice is not required in Rule 23(b)(2) actions. *Elliot v. Weinberger*, 564 F.2d 1219, 1228-29 (9th Cir. 1977), *aff'd in relevant part, rev'd in part*, 442 U.S. 682.

[8] Based on meet-and-confer correspondence, Plaintiffs expect that the City may represent that it has removed (or "culled") a certain number of individuals from its enforcement lists, but the evidence shows that it has continued to enforce gang injunctions even against individuals that have supposedly been removed. *See* Decl. of Tayon Blockmon ("Blockmon Decl."), filed concurrently herewith. These

(cont'd)

-13-

## 2. *Class Members Share Common Questions of Law or Fact*

The proposed class also satisfies Rule 23(a)(2)'s requirement that there be "questions of law or fact common to the class." To satisfy Rule 23(a)(2), claims must "depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (alteration and quotations omitted). "All questions of fact and law need not be common," however. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (alteration and quotations omitted). The standard is readily satisfied where, as here, plaintiffs bring an action for injunctive relief "challeng[ing] a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005); *see also* 7A Wright, Miller & Kane, Fed. Practice & Proc. § 1763, at 226 (3d ed. 2005) ("[C]lass suits for injunctive or declaratory relief by their very nature often present common questions satisfying Rule 23(a)(2).").

Plaintiffs class members' allegations rest on a "common core" of factual and legal issues. Plaintiff class members allege that each member of the putative class was served with a gang injunction, and thereby required to comply with its provisions under threat of criminal penalties, without being provided constitutionally adequate pre-deprivation notice or opportunity to contest the allegation of gang membership, in violation of the due process guarantees of the U.S. and California Constitutions.

---

individuals therefore remain Plaintiff class members, subject both to actual enforcement and to fear of such enforcement. Moreover, even if the "culled" individuals were in fact no longer subject to enforcement, the remaining class of several thousand individuals would still easily satisfy Rule 23's numerosity requirement.

This Court previously certified a class presenting almost identical allegations. *See Vasquez v. Rackaukas*, Case No. 8:09-CV-01090-VBF-RNB, Dkt. 133 and Dkt. 135 (C.D. Cal. 2010). In *Vasquez*, Judge Fairbank held that "Plaintiffs' assertion that members of the putative classes were deprived of a protected liberty interest without first being provided adequate procedural safeguard presents questions of law and fact common to the putative class." *Id.*, Dkt. 133 at 8. The ruling in *Vasquez* is directly on point, and the same result should follow here. This Court, in applying *Vasquez* to conclude that Mr. Arellano was likely to succeed on the merits of his claim against the City, has already recognized that minor differences in the specific conduct enjoined under different injunctions do not render those injunctions dissimilar for purposes of evaluating the liberty interests at stake or the analysis required under *Mathews*. Dkt. 106 at 15-21. The same logic compels the conclusion that Plaintiff class members' claims share common factual and legal issues despite minor factual variations across individuals or injunctions.

### (a)    The Procedural Due Process Inquiry

To decide procedural due process claims like those asserted here and in *Vasquez*, courts first ask whether the plaintiff had "a liberty or property interest which has been interfered with by the State." *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). If so, courts apply the familiar *Mathews v. Eldridge*, 424 U.S. 319 (1976), framework to determine "what process is due." *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005). *Mathews* requires that courts examine:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Vasquez*, 734 F.3d at 1044 (citation omitted). Both factors—the liberty interests and "what process is due"—present common questions suitable for resolution as a class.

(i)    <u>Implicated Liberty Interests</u>

Every Los Angeles Gang Injunction implicates Plaintiff class members' liberty interests in substantially similar ways. As this Court found with respect to Mr. Arellano, the restrictions in these injunctions "profoundly implicate[] liberty interests protected by the Due Process Clause, including rights of free movement, association, and speech, and . . . [the City's] conduct interferes with those protected liberty interests." Dkt. 106 at 16 (internal quotation marks omitted).[9]

The question whether the City's service and enforcement of gang injunctions interfered with class members' liberty interests is common to the class. Every class member, by definition, was (or will be) served with one or more gang injunctions and thereby made subject to its terms on threat of arrest, fines, and imprisonment despite not being a party to the underlying action. That fact alone implicates liberty interests common to the class. *See id.* at 1043 ("[A]side from the terms of the Order itself," the act of subjecting plaintiffs to the gang injunction constituted interference with liberty interests triggering due-process scrutiny).

Every gang injunction implicates Plaintiff class members' liberty interests in substantially similar ways. All forty-six of the Los Angeles Gang Injunctions enjoin individuals served from associating with allegedly "known" gang members[10] in public areas or in public view within the relevant safety zone. None of the do-not-associate provisions contains an exception for association with immediate family or

---

[9] The Ninth Circuit likewise has previously held that such restrictions implicate fundamental liberty interests. *See Vasquez*, 734 F.3d at 1043 (limitations on association that "have no exception for individuals to engage in First-Amendment protected 'expressive' activity" burden liberty interests) (citation omitted); *id.* (limitations on association that do not contain exceptions for immediate family "burden the constitutionally protected freedom of 'intimate association'").

[10] Individuals are identified as "known" gang members if they are listed within the CalGang database as gang members, have been previously served with an injunction, or otherwise are contended by LAPD officers to be gang members. Enjoined individuals are not provided any notice of specific individuals with whom they are forbidden from associating.

MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR CLASS CERTIFICATION & APPOINTMENT OF CLASS COUNSEL

for First Amendment expressive activity such as political speech. *See* El-Khouri Decl. ¶10. That means every member of the proposed class could be arrested and fined or imprisoned for participating in a peaceful protest within an injunction's safety zone, or simply for appearing in public with his or her spouse, parents, or children. This single, but critical, provision—shared by all 46 injunctions—is sufficient to create a common constitutional question across all class members.

Similarly, forty-five of the forty-six injunctions contain provisions enjoining at least two and as many as nine of the following "noncriminal, usually innocuous and wholly ordinary," *Englebrecht,* 88 Cal. App. 4th at 1256, activities:

- Possessing everyday items including felt-tipped markers, flashlights, and binoculars;
- Possessing a cell-phone or pager for non-emergency or work-related purposes;
- Driving or possessing someone else's vehicle without that person's *written* permission or presence;
- Possessing automobile parts without proof of ownership, or performing maintenance or repairs to vehicles without proof of ownership or the owner's written permission;
- Being on private property without the owner's written consent or presence;
- Approaching or signaling a vehicle as a pedestrian;
- Possession of imitation or "toy" weapons;
- Consuming alcohol in public view;
- Wearing colors identified as gang colors;
- Making hand gestures identified as gang hand-signals.

The overall effect—notwithstanding minor variations in some provisions across the various injunctions—is that every individual subject to a gang injunction must choose "between refraining from a wide variety of otherwise lawful, constitutionally protected activities, or going to jail, quite possibly for some time." *See Vasquez*, 734 F.3d at 1043. Whether the burden of that choice implicates liberty interests is thus a question common to the class.[11] Indeed, in granting Mr. Arellano's

---

[11] As the Ninth Circuit has recognized, differences in the amount of liberty lost by different class members do not defeat commonality. *See, e.g., Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (finding commonality satisfied in conditions-of-confinement action because, "although a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to (cont'd)

motion for a preliminary injunction, this Court concluded that the Echo Park Injunction to which Mr. Arellano is subject is substantially similar to the injunction held unconstitutional in *Vasquez*. Dkt. 106 at 14-16.

(ii)     <u>The Process Due Under *Mathews*</u>

The *Mathews* analysis here regarding the adequacy of the City's procedures likewise will apply equally across the class.

*First*, as to the private interest at stake, the inquiry is common to the class for the same reasons as the liberty-interest inquiry discussed above. *See Vasquez*, 734 F.3d at 1045 ("It follows from our analysis of Plaintiffs' liberty interests . . . that Plaintiffs' 'private interest[s]' are very strong.") (citation omitted). The City served every member of the class with a Los Angeles Gang Injunction imposing criminal penalties for engaging in a host of noncriminal activities integral to daily life. Whether the City's service and enforcement of the injunctions affected "truly weighty" private interests is a question common to every member of the class. Because all class members have been deprived of common fundamental liberty interests and face the same risk of incarceration, that question has a common answer here, as it did in *Vasquez*. *See id.* ("[U]nder the first *Mathews* factor, Plaintiffs' interests are truly weighty.").

*Second*, the assessment of the risk of erroneous deprivation presents common questions. Each class member was subjected to one or more Los Angeles Gang Injunction pursuant to the City's uniform policy and practice of unilaterally determining whether an individual is an "active" gang member without providing adequate notice, and based on undefined, subjective criteria and one-sided and

---

death—every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a substantial risk of serious harm"). Judge Fairbank, for this reason, rejected this argument in deciding to certify the class in *Vasquez*. *Vasquez*, Case No. CV-01090-VBF-RNB, Dkt. 133 at 8 (rejecting the argument that "individual differences in the total amount of liberty lost among different class members" defeats commonality).

-18-

untested evidence. Plaintiff class members challenge that uniform policy and practice, and argue that—as this Court already acknowledged with respect to Mr. Arellano and as the Ninth Circuit concluded in *Vasquez*—it presents a considerable risk of error. *See Vasquez*, 734 F.3d at 1047 ("In short, given the 'wide variety of information [that] may be deemed relevant,' and the difficulty of 'reasonably precise measurement' in assessing whether someone is an active gang member, [t]he risk of error is considerable when such a determination is made without any participation by, or opportunity to provide evidence on behalf of, the individual served") (citation omitted); Dkt. 106 at 24 (concluding that Mr. Arellano had demonstrated a likelihood of success in proving that "the risk of erroneous deprivation under the City's current procedures is considerable"). The factors for determining the likely risk of error—such as the subjectivity of the judgment, the reliability of the evidence, and the relevance of credibility determinations—do not vary across individuals but instead are inherent in the City's gang injunction procedures. This is therefore a common question appropriate for class-wide determination. For the same reasons, the probable value of any additional or substitute procedural safeguards also is a common question.[12]

_____

[12] Again, minor differences in the injunctions—such as the presence in certain injunctions of post-deprivation opt-out procedures whereby enjoined individuals can petition the court for an order that the individual is not subject to the injunction—do not change the analysis. For one thing, such distinctions are minor compared to the overall similarities in the process, and therefore the common questions predominate. *See, e.g.*, *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (finding commonality satisfied in conditions-of-confinement action because, "although a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a substantial risk of serious harm"); *Vasquez*, Case No. CV-01090-VBF-RNB, Dkt. 133 at 8 (rejecting the argument that "individual differences in the total amount of liberty lost among different class members" defeats commonality). Moreover, this Court has already found that there is a likelihood plaintiffs will be able to show that <span style="float:right">(cont'd)</span>

1    *Third*, the governmental interest (or lack thereof) in not providing pre-

2    deprivation process presents a class-wide question. As this Court has acknowledged

3    already, "[i]n assessing the government interest at stake, 'the question is not whether

4    [the City] has a significant interest in combating gang violence . . . but rather

5    whether they have a significant interest in failing to provide [additional] process."

6    Dkt. 106 at 24 (*citing Vasquez*, 734 F.3d at 1052) (alterations omitted). The City's

7    interest in that policy and practice—including any arguments regarding efficiency,

8    public safety, or administrative burden—is a common question, not unique to any

9    class member.[13]

10   Thus, here, as in *Vasquez*, Plaintiffs class members' allegation that "members

11   of the putative class[] were deprived of a protected liberty interest without first

12   being provided adequate procedural safeguard presents questions of law and fact

13   common to the putative class." *Vasquez v. Rackaukas*, Case No. CV-01090-VBF,

14   Dkt. 133 at 8.

15

16

17   such opt-out procedures are not sufficient to satisfy due process. Dkt. 106 at 22. As
     the injunctions without such opt-out provisions offer even *less* process, the adequacy

18   of additional or substitute procedural safeguards is a question common to each
     member of the class.

19

20   [13] Plaintiffs' California due-process claim also satisfies commonality. California
     courts apply the *Mathews* test with the addition of a fourth factor: "the dignitary

21   interests in informing individuals of the nature, grounds, and consequences of the
     action and in enabling them to present their side of the story before a responsible

22   governmental official." *Vasquez*, Case No. CV-01090-VBF-RNB, Dkt. 405 at 20.
     Plaintiffs allege here, as in *Vasquez*, that "the decisions about whom to subject to the

23   injunction's restrictions are made unilaterally and without notice or opportunity to

24   be heard, by the same police and prosecutors whose thresholds for enforcement and
     prosecution are made significantly lower by the injunction." *Id.* That allegation

25   presents questions common to the class. *Vasquez*, Dkt. 133 at 8 ("Plaintiffs'

26   assertion that members of the putative classes were deprived of a protected liberty
     interest without first being provided adequate procedural safeguard presents

27   questions of law and fact common to the putative class.").

28

### 3.     *The Named Plaintiffs' Claims Are Typical of the Class*

The proposed class satisfies the typicality element of Fed. R. Civ. P. 23(a)(3), which requires that the claims or defenses of the named plaintiffs be "typical of the claims or defenses of the class." To be typical, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (citation omitted). As with commonality, factual differences among the representatives and the class do not defeat typicality, provided there are legal questions common to all. *See LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) ("The minor differences in the manner in which the representative's Fourth Amendment rights were violated does not render their claims atypical of those of the class.").

Here, there are no typicality concerns that would render Mr. Arellano or Mr. Reza inadequate or unrepresentative.[14] Like the entire Plaintiff class, Plaintiffs Arellano and Reza were served with, and therefore subjected to, one of the Los Angeles Gang Injunctions without being provided pre-deprivation notice and opportunity to contest the allegation that they are active gang members.

This Court's reasoning in granting Mr. Arellano's motion for a preliminary injunction—that he likely would be able to prove that the Echo Park Injunction imposes liberty deprivations and contains procedural deficiencies substantially

---

[14] Even though this Court has granted Mr. Arellano's and Mr. Reza's motions for preliminary injunctions, and Mr. Reza has received a letter informing him that the City purportedly will no longer enforce gang injunctions against him, both remain eligible to file a motion for class certification. *See Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) (reiterating rule that a named plaintiff's receiving even complete relief on her individual claims does not preclude her from filing a motion for class certification or moot the entire action) (citing *Gomez v. Campbell–Ewald Co.*, 768 F.3d 871 (9th Cir.2014), *aff'd*, ––– U.S. ––––, 136 S. Ct. 663, 193 (2016); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011)). Moreover, because they could still be subject to gang injunctions, Mr. Arellano and Mr. Reza continue to share the class's interest in the relief sought.

similar to the injunctions at issue in *Vasquez*, despite differences in the process and terms of the injunction and the governmental interests asserted by the state actor involved—demonstrates that any immaterial factual differences do not alter the *Matthews* analysis common to all Plaintiff class members. Dkt. 106 at 15-21. To that end, this Court already concluded that even the fact that Mr. Arellano, unlike the *Vasquez* plaintiffs, had attempted to intervene in the underlying state-court action did not estop him from raising his claim, illustrating that his claim is not dissimilar for purposes of the *Matthews* analysis here. *Id.* at 2-3, 10-24. The claims of Plaintiffs Arellano and Reza therefore satisfy typicality. *See Parsons*, 754 F.3d at 686 ("It does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs; Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member").

### 4.    *The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class*

The proposed class representatives and class counsel satisfy the adequacy requirements of Fed. R. Civ. P. 23(a)(4). The adequacy analysis asks (1) if "the named plaintiffs and their counsel have any conflicts of interest with other class members" and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998) (citation omitted).

"Whether the class representatives satisfy the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (quotation marks and citations omitted). Here, Mr. Arellano and Mr. Reza will fairly and adequately represent the class because their interests are consistent with and not adverse to the interests of the class. Like all members of the proposed class, neither

Mr. Arellano nor Mr. Reza received sufficient pre-deprivation notice or opportunity to meaningfully challenge his alleged status as an active gang member before being made subject to a gang injunction. Both share class members' interest in seeking relief—an injunction against enforcement of gang injunctions—based on that constitutional violation.

Plaintiffs' counsel also are adequate. Counsel are qualified when they can establish experience in previous class actions and cases involving the same area of law. *See Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985). Plaintiffs are represented by counsel from the ACLU Foundation of Southern California, The Connie Rice Institute for Urban Peace, and Munger, Tolles & Olson LLP. Counsel are able and experienced in protecting the civil rights of individuals and, among them, have considerable experience handling complex and class action litigation, and were counsel representing the *Vasquez* class challenging the service and enforcement of a gang injunction both at trial and on appeal. Counsel also have specialized knowledge regarding gang injunctions in California broadly and Los Angeles specifically. *See* Decl. of Laura Smolowe; Decl. of Peter Bibring; Decl. of Joshua Green, all filed concurrently herewith.

## B.   The Proposed Class Satisfies Rule 23(b)(2)

In addition to satisfying the requirements of Rule 23(a), proposed class members also must satisfy Rule 23(b)(2), which states that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole…." This action, a civil rights action in which Plaintiff class members are requesting injunctive relief, is "the type of action for which the [Rule 23(b)(2)] form was specifically designed." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 452 (N.D. Cal. 1994); *see also Holmes v. Cont'l Can Co.*, 706

F.2d 1144, 1155 (11th Cir. 1983) ("Subsection (b)(2) was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive relief against discriminatory practices.") (internal quotation marks and citation omitted).

Here, the City has acted in ways generally applicable to the class, and Plaintiff class members seek class-wide relief. *See, e.g.*, *Lyon v. United States Immigration and Customs Enforcement*, 300 F.R.D. 628, 643 (N.D. Cal. 2014) (finding Rule 23(b)(2) certification appropriate where "[p]laintiffs are not asking for any individualized relief for each class member" but rather ask "for systemic changes consistent with a single overarching constitutional standard that [will] be applicable to all class members"), *modified* 308 F.R.D. 203; *cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class"). Moreover, the City has conceded that going forward, it intends to apply its gang injunction procedures to all enjoined individuals. *See* Dkt. 90. Plaintiff class members seek an injunction prohibiting the enforcement of Los Angeles Gang Injunctions without due process. If successful, all members of the class will receive the same relief: an injunction against enforcement of any of the Los Angeles Gang Injunctions against them until such time as they are provided a constitutionally adequate opportunity to contest the allegation of gang membership. Because all class members seek the same procedural protections regardless of their specific factual circumstances, Rule 23(b)(2)'s separate requirements are satisfied as well.

### C.    This Court Should Appoint Undersigned Counsel as Class Counsel

Plaintiff class members respectfully request that this Court appoint undersigned counsel as counsel for the class.

In appointing class counsel, the Court must consider "the work counsel has done in identifying or investigating potential claims in the action," "counsel's

experience in handling class actions, other complex litigation, and the types of claims asserted in the action," "counsel's knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Plaintiff class members' counsel have worked on this matter since well before it was filed nearly a year ago, and have conducted extensive legal and factual research, as reflected in their filings in this matter, to support Plaintiffs' claims. Moreover, counsel's experience with both complex litigation and constitutional claims, exemplified by their involvement in the *Vasquez* litigation, shows that counsel has sufficient experience and knowledge of the applicable law to represent the class. Finally, counsel have agreed collectively to commit numerous lawyers to representing the class, and to supplement that allocation of resources as required. Accordingly, Plaintiffs' counsel satisfy the Rule 23(g) factors, and should be appointed as class counsel.

### D.    The City's Limited Revised Procedures Do Not Moot the Case

As requested by this Court at the August 9, 2017 status conference, Plaintiff class members also address here the City's contention that the changes it intends to make to its gang injunction procedures moot the case. For one thing, as explained *supra*,  the question whether any such changes satisfy due process is not appropriately litigated at this stage of the case; rather, the key question here is only whether Rule 23 has been satisfied. *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013) ("[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). Because the City acknowledges that the 2017 Revisions will apply to all individuals subject to Los Angeles gang injunctions (the entire class), a class action is the appropriate vehicle through which to adjudicate a challenge to these procedures, just as it is the appropriate vehicle to discuss the merits of the current procedures.

Even if the ultimate constitutionality of the 2017 Revisions were at issue at

the class certification stage, which it is not, the purportedly revised procedures are, in any event, constitutionally inadequate on their face. Accordingly, they do not moot the case. "The party asserting mootness bears the burden of establishing that there is no effective relief remaining that the court could provide." *Wild Wilderness v. Allen*, --- F.3d ---, 2017 WL 3927275, at 3 (9th Cir. 2017). "The burden of demonstrating mootness is a heavy one." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). A case becomes moot only "if events subsequent to the filing of the case *resolve* the parties' dispute." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1087 (9th Cir. 2011) (emphasis added). Accordingly, "the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any effective relief." *Cantrell*, 241 F.3d at 678 (internal quotation marks omitted).

The City has provided only limited discovery on the details of the proposed new policies, including when and how they will be implemented. Ochoa Decl. Ex. C; Ex. D. But even on this limited record, and even assuming the procedures have been implemented (which does not appear to be the case), the 2017 Revisions are facially inadequate to resolve Plaintiff class members' due process claim. As described above, the proposed court process—to the extent an individual may even gain entry to Superior Court at all, which is not clear—is not a pre-deprivation process at all. Rather, the City will continue to enforce after the initial 30-day period unless the court affirmatively issues a stay, and the burden will be on the individual to obtain such a stay. Ochoa Decl. Ex. C at 4. Even if an individual were able to meet the high burden required to obtain a preliminary injunction or temporary restraining order—without the benefit of viewing the evidence the City intends to use—the likelihood that such relief could be obtained prior to expiration of the 30 days is remote at best, and renders the court process, in effect, a post-deprivation remedy. And the removal process alternative, although the City apparently intends

1  to forbear from enforcing throughout the process, remains constitutionally

2  inadequate because even as a pre-deprivation process, it fails to provide individuals

3  with the key hallmarks of due process, such as a neutral decision-maker and

4  meaningful opportunity to test allegations of gang membership through discovery

5  and cross-examination. Ochoa Decl. Ex. C; Ex. D.

6      Notwithstanding the revisions, therefore, the Plaintiffs' claim that the City's

7  process for enforcing its gang injunctions lacks constitutionally sufficient due

8  process persists, Plaintiffs may still obtain relief, and the action is not moot. *See*

9  *Allen* 2017 WL 3927275, at 3; *Pitts*, 653 F.3d at 1087; *Cantrell*, 241 F.3d at 678.

10 **IV.    CONCLUSION**

11     For the foregoing reasons, the Court should certify the proposed class

12 pursuant to Federal Rule of Civil Procedure 23(b)(2), appoint Plaintiffs Arellano and

13 Reza as Named Plaintiffs, and appoint the ACLU Foundation of Southern

14 California, The Connie Rice Institute for Urban Peace, and Munger, Tolles & Olson

15 LLP as co-class counsel.

16

17

18 Dated: October 2, 2017              Respectfully submitted

19                                     MUNGER, TOLLES & OLSON LLP
                                         JACOB S. KREILKAMP
20                                       LAURA D. SMOLOWE
                                         MARIA JHAI
21                                       ADELE M. EL-KHOURI
                                         ANKUR MANDHANIA
22

23                                     By:  s/ Laura D. Smolowe
                                          Laura D. Smolowe
24

25

26

27

28

-27-