1  PETER BIBRING (SBN 223981)
   pbibring@aclusocal.org
2  MELANIE P. OCHOA (SBN 284342)
   mpochoa@aclusocal.org
3  ADITI FRUITWALA (SBN 300362)
   afruitwala@aclusocal.org
4  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West Eighth Street
5  Los Angeles, California 90017
   Telephone:  (213) 977-9500
6  Facsimile:  (213) 977-5299

7  *Counsel for Plaintiffs*
   (Additional Counsel for Plaintiffs on Following Page)
8

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

13  YOUTH JUSTICE COALITION, a          Case No. 2:16-cv-07932-VAP-RAO
    non-profit organization; PETER
14  ARELLANO and JOSE REZA,             **NOTICE OF MOTION AND**
    individuals, for themselves and on  **MOTION TO EXPAND THE**
15  behalf of a class of similarly-situated  **PRELIMINARY INJUNCTIONS**
    individuals,                        **ENTERED ON BEHALF OF**
16                                      **PLAINTIFFS PETER ARELLANO**
                *Plaintiffs*,           **AND JOSE REZA TO THE ENTIRE**
17                                      **CLASS; MEMORANDUM OF**
            vs.                         **POINTS AND AUTHORITIES IN**
18                                      **SUPPORT THEREOF**
    CITY OF LOS ANGELES; DOES 1
19  through 10, in their official and   **Complaint Filed: October 25, 2016**
    individual capacities,              **Hearing Date: February 26, 2018**
20                                      **Hearing Time: 2:00 p.m.**
                *Defendants*.           **Trial Date: None Set**
21

22

23

24

25

26

27

28  NOTICE OF MOTION AND MOTION TO EXPAND THE PRELIMINARY INJUNCTIONS ENTERED
    ON BEHALF OF PLAINTIFFS PETER ARELLANO AND JOSE REZA TO THE ENTIRE CLASS

JACOB S. KREILKAMP (SBN 248210)
jacob.kreilkamp@mto.com
LAURA D. SMOLOWE (SBN 263012)
laura.smolowe@mto.com
MARIA JHAI (SBN 283059)
maria.jhai@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

ANKUR MANDHANIA (SBN 302373)
ankur.mandhania@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077

ADELE M. EL-KHOURI (Admitted *pro hac vice*)
adele.el-khouri@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, 7th Floor
Washington, D.C. 20004
Telephone:   (202) 220-1100
Facsimile:   (202) 220-2300

JOSHUA GREEN (SBN 293749)
jgreen@urbanpeaceinstitute.org
SEAN GARCIA-LEYS (SBN 313558)
sgarcialeys@urbanpeaceinstitute.org
THE CONNIE RICE INSTITUTE FOR URBAN PEACE
1910 West Sunset Boulevard
Suite 800
Los Angeles, California 90026
Telephone:   (213) 404-0124
Facsimile:   (213) 402-2843

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION TO EXPAND THE PRELIMINARY INJUNCTIONS ENTERED
ON BEHALF OF PLAINTIFFS PETER ARELLANO AND JOSE REZA TO THE ENTIRE CLASS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### NOTICE OF MOTION AND MOTION TO EXPAND THE PRELIMINARY INJUNCTIONS ENTERED ON BEHALF OF PLAINTIFFS PETER ARELLANO AND JOSE REZA TO THE ENTIRE CLASS

**PLEASE TAKE NOTICE** that at 2:00pm on February 26, 2018, or as soon thereafter as counsel may be heard, before the Honorable Virginia A. Phillips in Courtroom 8A of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California, Plaintiffs will and hereby do move for an order expanding the preliminary injunctions entered on behalf of Plaintiffs Peter Arellano and Jose Reza to the entire class of similarly situated individuals, thereby enjoining the City of Los Angeles as follows: "The City and its agents, employees, assigns, and all those acting in concert with them are hereby barred from enforcing a Los Angeles Gang Injunction against the Plaintiff class members. This order does not preclude the City, its agents, employees, assigns, or all those acting in concert with them from returning to the California Superior Court for the County of Los Angeles to seek separate orders binding each Plaintiff class member to the terms of a Los Angeles Gang Injunction, nor does it preclude the City from seeking to modify this order on grounds that they have provided Plaintiff class members adequate due process through additional proceedings."

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities filed concurrently herewith, all pleadings and papers filed in this action, and such additional papers and arguments as may be presented at or in connection with the hearing.

1

2    Dated: January 29, 2018                    Respectfully submitted,

3                                                ACLU FOUNDATION OF SOUTHERN
                                                 CALIFORNIA
4                                                PETER BIBRING
                                                 MELANIE P. OCHOA
5                                                ADITI FRUITWALA

6                                                By: _s/ Melanie P. Ochoa_____
                                                     Melanie P. Ochoa
7

8                                                *Counsel for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                 2

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................... 1

II.    RELEVANT PROCEDURAL HISTORY ..................................... 1

III.    ARGUMENT ................................................................................ 3

    A. The Plaintiff Class is Likely to Succeed on the Merits ........................ 5

       1. The City's Enforcement of Gang Injunctions Deprive Plaintiffs of a Protected Liberty Interest ........................................................... 5

       2. The Plaintiff Class Has Been Denied Procedural Protections ...... 8

          a. The Private Interest in Constitutional Freedoms is Weighty 9

          b. The Risk of Erroneous Deprivation is Considerable and the City's Procedures are Inadequate .................................... 10

          c. The City Has No Interest in Failing to Provide Additional Procedural Protections ..................................................... 12

          d. The City's Procedures Infringe on Plaintiffs' Dignitary Interests ............................................................................ 12

    B. Plaintiffs Will Suffer Irreparable Harm Absent Relief ...................... 13

    C. Equities Tip Sharply in Plaintiffs' Favor and a Preliminary Injunction is in the Public Interest .......................................................................... 14

    D. The Class Is Entitled To Relief Notwithstanding The City's Assertion That It Is Revising Its Gang Injunction Procedures ........................... 15

IV.    CONCLUSION ............................................................................ 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*K.W. ex rel. D.W. v. Armstrong*,
    789 F.3d 962 (9th Cir. 2015) ...................................................................... 3

*Elrod v. Burns*,
    427 U.S. 347 (1976) ................................................................................ 14

*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017) ...................................................................... 3

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ................................................................... 8, 9, 13, 16

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ...................................................................... 3

*People v. Sanchez*,
    No. F071330, 2017 WL 6462438 (Cal. Ct. App. Dec. 19, 2017) .......... 8, 9, 13, 15

*Today's Fresh Start, Inc. v. Los Angeles Cty. Office of Educ.*,
    57 Cal. 4th 197 (2013) ............................................................................ 13

*United States v. Juvenile Male*,
    670 F.3d 999 (9th Cir. 2012) ...................................................................... 5

*Vasquez v. Rackauckas*,
    734 F.3d 1025 (9th Cir. 2013) ............................................................ 7, 8, 9, 13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................... 5

**Statutes**

California Civil Code Section 3479 ................................................................. 2

California Penal Code Section 186.22 ............................................................. 2

**Other Authorities**

First Amendment ......................................................................... 5, 6, 13, 14

NOTICE OF MOTION AND MOTION TO EXPAND THE PRELIMINARY INJUNCTIONS ENTERED
ON BEHALF OF PLAINTIFFS PETER ARELLANO AND JOSE REZA TO THE ENTIRE CLASS

California Constitution ........................................................................................ 12, 13

U.S. Constitution ...................................................................................................... 12

NOTICE OF MOTION AND MOTION TO EXPAND THE PRELIMINARY INJUNCTIONS ENTERED ON BEHALF OF PLAINTIFFS PETER ARELLANO AND JOSE REZA TO THE ENTIRE CLASS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court has already preliminarily enjoined the City's enforcement of gang injunctions against Plaintiffs Peter Arellano and Jose Reza on the ground that they are likely to prevail on their claims that the City's enforcement of gang injunctions against them without prior notice or opportunity to contest the application of injunctions to them violates due process.  Following the issuance of those preliminary injunctions, this Court then certified a class of all persons who have been notified by an authorized agent of the City of Los Angeles that they are subject to a Los Angeles Gang Injunction[1], holding that the class presents common claims and that Plaintiffs Arellano and Reza set forth claims that are typical of the class. Because Plaintiffs' claims are typical of the common claims of the class, and because this Court has already issued preliminary injunctive relief for the named Plaintiffs, both logic and justice require that this Court extend to all class members the preliminary injunctions precluding the City from enforcing gang injunctions without first providing adequate pre-deprivation procedure.

## II.    RELEVANT PROCEDURAL HISTORY

On September 7, 2017, this Court granted a preliminary injunction to Mr. Arellano, named Plaintiff and class representative, enjoining the City from enforcing the Echo Park Gang Injunction against Mr. Arellano after finding that he was likely to succeed on his claim that the City's enforcement of the gang injunction

---

[1] The class excludes any individuals named as individual civil defendants or substituted as Doe defendants in the civil nuisance abatement action to obtain a gang injunction, as well as all individuals who have contempt proceedings for violation of an injunction currently pending against them.  *See* Dkt. 114, Order Granting Joint Stipulation Re: Class Certification and Amended Class Definition, at 3 (defining class).

NOTICE OF MOTION AND MOTION TO EXPAND THE PRELIMINARY INJUNCTIONS ENTERED
ON BEHALF OF PLAINTIFFS PETER ARELLANO AND JOSE REZA TO THE ENTIRE CLASS

"profoundly implicate[d his] liberty interests," Dkt. 106 ("Arellano PI Order") at 16 (*quoting Vasquez v. Rackauckas,* 734 F.3d 1025, 1042 (9th Cir. 2013)), and that the City's policies and practices were constitutionally infirm, Arellano PI Order at 16-25.  The Court further found that Mr. Arellano satisfied the remaining elements for a preliminary injunction, because continuing to enforce the restrictive terms of the gang injunction would cause irreparable harm, the equities tipped in his favor, and granting the injunction was in the public's interest.  Arellano PI Order at 29.  The Court had previously granted a preliminary injunction on behalf of Mr. Reza, recognizing that the City's concession that it did not contend that Mr. Reza was an active gang member further supported the conclusion that he was likely to succeed on the merits of his underlying action.  Dkt. 68, Order Granting Plaintiff Jose Reza's Preliminary Injunction (Fairbank, J.) at 6.

On January 4, 2018, this Court certified the following class in this action:

> All persons, past and future, whom an authorized agent of the City of Los Angeles has notified, whether by personal service or otherwise, that they are subject to a Los Angeles Gang Injunction[2] and who (a) were not named as individual civil defendants, or who were not substituted in as Doe defendants, in the civil nuisance abatement action to obtain that injunction, and (b) who do not have contempt proceedings for violation of such an injunction currently pending against them.

Class Certification Order at 3.

In certifying the class, the Court found that common questions of law and fact predominate among class members' claims, that the claims and defenses of Mr. Arellano and Mr. Reza are typical of class members, that the class is sufficiently

---

[2] As defined in this Court's order certifying the class, the term "Los Angeles Gang Injunction" means "an injunction obtained by the People of the State of California represented by the Los Angeles City Attorney's Office, against a criminal street gang and its members as defined in Section 186.22 of the California Penal Code, pursuant to a nuisance abatement action, including, but not limited to, a common law nuisance abatement action or those brought pursuant to Section 3479 of the California Civil Code." Class Certification Order at 4.

numerous, and that the representation was adequate.  *Id.* at 9-13.  The Court's order certifying Plaintiffs' class expressly held that the restrictive terms of all 46 gang injunctions that the City currently enforces, and the City's means of enforcing these injunctions, were common across the 9,000 enjoined class members, and that their experiences were adequately represented by named Plaintiffs Peter Arellano and Jose Reza.  Dkt. 114 ("Class Certification Order").

## III.   **ARGUMENT**

The combined effect of the Court's rulings—granting the named Plaintiffs' motions for preliminary injunction, and certifying the class because the legal and factual arguments underlying their claims are common to and typical of the class—compel a finding that the remaining class members are equally entitled to preliminary injunctive relief from the burdens imposed by the City's unconstitutional gang injunctions.  Plaintiffs therefore now seek an order expanding the preliminary injunctions entered on behalf of Mr. Arellano and Mr. Reza to the entire class of similarly situated individuals, thus enjoining the City from enforcing gang injunctions against Plaintiff class members unless and until the City rectifies the procedural due process violations identified in this Court's order granting Mr. Arellano's motion for a preliminary injunction.  *See e.g., K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 976 (9th Cir. 2015) (affirming district court's expansion of preliminary injunction granted to named plaintiffs to class).

Courts addressing requests for class-wide preliminary injunctive relief typically do what this Court has already done — examine the likelihood of success on the merits of the named plaintiffs. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) (evaluating claims of named Plaintiffs to determine that class-wide relief was proper); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (same). This criterion unquestionably has been satisfied in this case, where the premise of the class-wide challenge, like the claims of the named Plaintiffs, is the City's failure

1    to provide a constitutionally-adequate pre-deprivation procedure to *any* member of

2    the named class.  And Mr. Arellano and Mr. Reza's success on the remaining

3    elements required for a preliminary injunction—irreparable harm, balance of

4    equities, and the public interest—was likewise based entirely on characteristics they

5    share with all class members.

6            This Court's prior rulings in this case confirm that there is no meaningful

7    difference between the claims of Messrs. Arellano and Reza and the claims of the

8    class they represent.  For example, the class certification order concluded that the

9    claims of Messrs. Arellano and Reza, along with the claims of nearly 9,000 other

10   individuals hinged on the basic, common question whether the City's method of

11   enforcing gang injunctions was constitutional.  As part of that holding, the Court

12   found—based in part on the City's stipulation—that each of the 46 injunctions

13   (including the injunctions to which the named Plaintiffs are subject) implicated

14   substantially similar liberty interests, and that the City's administrative process for

15   enforcing its injunctions was identical across the class.  Class Certification Order at

16   6-11; dkt. 111, City's Statement of Non-Opposition to Motion for Class

17   Certification at 1.

18           For the reasons articulated in the Court's preliminary injunction order entered

19   on behalf of Mr. Arellano[3], the Plaintiff class also is entitled to injunctive relief

20   prohibiting the City from enforcing any of the Los Angeles Gang Injunctions against

21   it until the City provides the Plaintiff class with adequate pre-deprivation process.

22   Just like Mr. Arellano, the Plaintiff class squarely satisfies each of the requirements

23   for a preliminary injunction: (1) they are likely to succeed on the merits; (2) they are

24   _____

25   [3] Although the Court granted both Mr. Arellano's and Mr. Reza's motions for
     preliminary injunction, due to the City's non-opposition to Mr. Reza's motion, the
26   Court's order granting Mr. Arellano's request for a preliminary injunction more
     fully articulates its rationale for concluding that Mr. Arellano—and the class that he
27   represents—are likely to succeed on the merits of their constitutional claim.
28

likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities weighs in their favor; and (4) an injunction is in the public interest.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); Arellano PI Order at 9, 13-27.  This Court granted Mr. Arellano a preliminary injunction not because he was uniquely affected by the Echo Park Injunction, or because the City enforced its procedures against him in an idiosyncratic way.  To the contrary, this Court found that the requirements for a preliminary injunction were satisfied due to the nature of the conduct prohibited by the terms of the injunction, the deficiencies in the City's uniform enforcement process, and the inadequacy of its post-deprivation process. All of these elements are common to the class.

### A.    The Plaintiff Class is Likely to Succeed on the Merits

Courts analyze a procedural due process claim in two steps.  "The first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *United States v. Juvenile Male*, 670 F.3d 999, 1013 (9th Cir. 2012).  Like Mr. Arellano and Mr. Reza, the class satisfies both requirements.

### 1.    The City's Enforcement of Gang Injunctions Deprive Plaintiffs of a Protected Liberty Interest

With respect to Mr. Arellano, this Court found that the Echo Park Gang Injunction's prohibition on association between suspected gang members, without exceptions for immediate family members, modes of travel, or expressive activities protected by the First Amendment, "profoundly implicates liberty interests protected by the Due Process Clause, including rights of free movement, association, and speech, and that [the City's] conduct interferes with those protected liberty interests."  Arellano PI Order at 16 (*quoting Vasquez,* 734 F.3d at 1042).  This Court

-5-

detailed the aspects of the Echo Park Gang Injunction that impose significant burdens on liberty interests, including:

> [It] enjoined persons from associating in public or in common areas of residential buildings with other "known" gang members under a "Do Not Associate" provision. Specifically, the "Do Not Associate" provision prohibits enjoined persons from "[s]tanding, sitting, walking, driving, gathering, or appearing, anywhere in public view, in a public place, or any place accessible to the public, with any other known member of a Defendant Gang." The provision also applies to "all methods of travel."

Arellano PI Order at 7.

In its order certifying the Plaintiff class, this Court held, "[u]pon a review of the uncontested evidence provided by Plaintiff, the Los Angeles Gang Injunctions are substantially similar." Class Certification Order at 8-9. All of the Los Angeles Gang Injunctions contain a similar "do-not-associate" provision described above, enjoining individuals from associating with allegedly "known" gang members in public areas or in public view within the relevant safety zone; and none of the do-not-associate provisions contains an exception for association with immediate family or for First Amendment expressive activity such as political speech. *Id*.; *see* Dkt. 107-1, Declaration of Adele El-Khouri ¶10 (describing the gang injunctions and the similarity of injunction terms).

Additionally, as enumerated in Plaintiffs' Motion for Class Certification, 45 of the 46 injunctions contain provisions enjoining at least two and as many as nine of the following "noncriminal, usually innocuous and wholly ordinary," *Englebrecht*, 88 Cal. App. 4th at 1256, activities:

• Possessing everyday items including felt-tipped markers, flashlights, and binoculars;

• Possessing a cell-phone or pager for non-emergency or work-related purposes;

• Driving or possessing someone else's vehicle without that person's written permission or presence;

-6-

1      • Possessing automobile parts without proof of ownership, or performing

2 maintenance or repairs to vehicles without proof of ownership or the owner's

3 written permission;

4         • Being on private property without the owner's written consent or presence;

5         • Approaching or signaling a vehicle as a pedestrian;

6         • Possession of imitation or "toy" weapons;

7         • Consuming alcohol in public view;

8         • Wearing colors identified as gang colors;

9         • Making hand gestures identified as gang hand-signals.

10         Dkt. 107, Plaintiffs' Motion for Class Certification at 26.

11         The common do-not-associate restriction, along with the "substantially

12 similar" other restrictions, compel a finding that each of the Los Angeles Gang

13 Injunctions "profoundly implicate" the liberty interests of the class.  Indeed, the

14 Court cited the similarities between the injunctions as a basis for finding that the

15 question whether "those affected had a 'liberty or property interest which has been

16 interfered with by the State'" was common to the class's claims. Dkt. 114 at 9

17 (quoting *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

18         Moreover, as the Ninth Circuit recognized in *Vasquez*, the act of subjecting

19 class members to a Los Angeles Gang Injunction itself "constitute[s] further

20 'interference' with liberty interests triggering scrutiny under the Due Process

21 Clause." *Vasquez*, 734 F.3d at 1043 (*quoting Juvenile Male*, 670 F.3d at 1013)

22 (internal brackets omitted).  The LAPD can arrest class members for purported

23 violations of a gang injunction, and the City Attorney can prosecute them for any

24 alleged violations.  As in *Vasquez*, this "policy gave Plaintiffs a choice between

25 refraining from a wide variety of otherwise lawful, constitutionally protected

26 activities, or going to jail, quite possibly for some time." *Vasquez*, 734 F.3d at 1043.

27

28

NOTICE OF MOTION AND MOTION TO EXPAND THE PRELIMINARY INJUNCTIONS ENTERED
ON BEHALF OF PLAINTIFFS PETER ARELLANO AND JOSE REZA TO THE ENTIRE CLASS

For that reason, the City has deprived all class members, like Messrs. Arellano and Reza, of a protected liberty interest.

### 2.     The Plaintiff Class Has Been Denied Procedural Protections

The procedures afforded to Plaintiff class members prior to the deprivation of their liberty interests are not constitutionally sufficient under the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  The *Mathews* test evaluates the constitutional sufficiency of the government's process by weighing: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 334-35. In evaluating Mr. Arellano's motion for preliminary injunction, the Court concluded that he was "likely to establish that the risk of erroneous deprivation under the City's current procedures is considerable and the City's removal procedures do not adequately remedy the lack of pre-deprivation process."  Arellano PI Order at 24. The City's procedures for determining who to enjoin, as well as its post-deprivation removal procedures, are common to the entire class.  Thus, this analysis applies with equal force class-wide, compelling the finding that the City's process is constitutionally insufficient.

A California appellate court recently endorsed this Court's *Mathews* analysis when it applied *Vasquez* and this Court's Arellano PI Order to hold that enforcement of a gang injunction against individuals who were not given pre-deprivation process was unconstitutional.  *People v. Sanchez*, No. F071330, 2017 WL 6462438 at *8 (Cal. Ct. App. Dec. 19, 2017) (dismissing defendant's contempt charge based on gang injunction violation because defendant did not receive adequate pre-

-8-

deprivation process).  The *Sanchez* court held that a one-sided process nearly identical to the City's, which relied on similar criteria for gang membership, was constitutionally inadequate under *Mathews*.  *Id*. at *16.  It held that absent pre-deprivation process, "service of the permanent injunction on [the defendant] had no effect and [he] could not be guilty of criminal contempt for violating its provisions." *Id.* at *17.  *Sanchez* thus provides further grounds for concluding that all members of the Plaintiff class are entitled to the same relief—a preliminary injunction enjoining enforcement of the City's injunctions—as Mr. Arellano and Mr. Reza, unless and until the City can establish to this Court that it has adopted a constitutionally-sufficient pre-deprivation process.

### a.  The Private Interest in Constitutional Freedoms is Weighty

With respect to Mr. Arellano, this Court found that his private interest was "truly weighty", as the gang injunction "prevents Plaintiff from participating in an enormous variety of activities with anyone who the City also believes is an active gang participant, such as sitting on his porch; visiting neighborhood parks, libraries, stores, and restaurants; or participating in political organizing activities." Arellano PI Order at 19-20.

By finding that Mr. Arellano's protected liberty interests were common to, and typical of, the interests of the class such that class certification was appropriate, this Court necessarily concluded that the terms of each of the 46 injunctions similarly implicate "truly weighty" interests.  *See* Arellano PI Order at 20. This conclusion is also compelled by the inclusion of the same do-not-associate provision in all of the 46 injunctions, which this Court already recognized "affects private interests of great importance."  *Id.* at 18; *see Vasquez*, 734 F.3d at 1045 ("It follows from our analysis of Plaintiffs' liberty interests… that Plaintiffs' private interests are very strong.") (internal quotation marks and brackets omitted).

-9-

### b. The Risk of Erroneous Deprivation is Considerable and the City's Procedures are Inadequate

As this Court already highlighted in Arellano's PI Order, the City's gang injunction policies and practices present a "considerable" risk of error due to the "informal structure of gangs," the "often fleeting nature of gang membership," "the lack of objective criteria in making the assessment," the unreliability of the factors considered in making the assessment, and the City's "unilateral" and "one-sided" decision-making.  Arellano's PI Order at 20 (*citing Vasquez*, 734 F.3d at 1047 ("In short, given the 'wide variety of information [that] may be deemed relevant', and the difficulty of 'reasonably precise measurement' in assessing whether someone is an active gang member, [t]he risk of error is considerable when such a determination is made without any participation by or opportunity to provide evidence on behalf of, the individual served.") (citation omitted)).  This Court based its findings in part on the uncontested expert declarations of Professors Malcolm Klein and Diego Vigil, who opined that "the fluid nature of gangs makes it difficult to determine membership at any given time." Arellano PI at 21 (*citing* dkt. 17, Declaration of Malcolm W. Klein ("Klein Decl."), at 4-7; dkt. 19, Declaration of James Diego Vigil ("Vigil Decl."), at 8-14). This Court also relied on Klein and Vigil's declarations to find that "several of the factors the City purportedly uses to identify active gang membership—close association, joint criminal activity, and even self-admissions—are unreliable and depend upon subjective assessment of facts and witness credibility." Arellano PI Order at 21 (*citing* Vigil Decl. at 7 ("[I]t is very common for non-gang members to maintain some type of relationship with their friends-turned-gang-members."); Klein Decl. at 7 ("[P]eople who are not members [may] claim membership, because they do not want to show the wrong face in front of their peers; they do not want to be seen denying association with gang members.").

NOTICE OF MOTION AND MOTION TO EXPAND THE PRELIMINARY INJUNCTIONS ENTERED ON BEHALF OF PLAINTIFFS PETER ARELLANO AND JOSE REZA TO THE ENTIRE CLASS

The Court's class certification ruling reflects its finding that the risk of error in the City's process, as applied to Mr. Arellano, is identical to the risk of error in that process as applied to the remaining class members.  The bases for the Court's determination that the process posed a high risk of error—such as the subjectivity of the judgment, the unreliability of the evidence, and the relevance of credibility determinations—are not specific to Mr. Arellano and Mr. Reza.  Rather, those flaws, and the elevated risk of error in the City's enforcement of its gang injunctions that they cause, inhere in the City's class-wide procedures.

As this Court articulated in its order in finding Mr. Arellano's and Mr. Reza's claims typical of the Plaintiff class, each of the class members was subjected to the same deficient procedure prior to being made subject to enforcement of a Los Angeles Gang Injunction.  Class Certification Order at 11.  Like Mr. Arellano, no class member was a named party in the underlying civil action in which the City obtained a Los Angeles Gang Injunction.  *Id*. Like Mr. Arellano, class members received no pre-enforcement notice of the City's intent to enforce a previously obtained gang injunction against them, nor did any of them receive notice of the City's grounds for asserting that he or she was an active gang member.  Dkt. 107, Plaintiffs' Motion for Class Certification at 18; Arellano PI Order at 23.  And like Mr. Arellano, no class member received an opportunity to refute that allegation prior to enforcement.  Class Certification Order at 8.  And to the extent that any of the City's post-deprivation processes may have been available to any class member, this Court has already determined that the City's post-deprivation removal procedures do not adequately remedy the deprivation of liberty interests.  Arellano PI Order at 24. In sum, every class member faces the same risk of erroneous deprivation of liberty, and thus has as strong a procedural due process claim, as the Plaintiffs who have already obtained preliminary injunctions.

### c. The City Has No Interest in Failing to Provide Additional Procedural Protections

As this Court has acknowledged, "[i]n assessing the government interest at stake, 'the question is not whether [the City] has a significant interest in combating gang violence . . . but rather whether they have a significant interest in failing to provide [additional] process." Arellano PI Order at 24 (*citing Vasquez*, 734 F.3d at 1052) (alterations omitted). This Court found that the City's purported burdens of delaying its ability to obtain and enforce injunctions "are precisely the sort of administrative cost that we expect our government to shoulder." Arellano PI Order at 24 (*quoting Humphries v. Cty. of Los Angeles*, 554 F.3d 1170, 1194 (9th Cir. 2009), *rev'd on other grounds, Los Angeles Cty. v. Humphries*, 562 U.S. 29 (2010)). Furthermore, as this Court noted, at least three other jurisdictions in California—San Francisco, Oakland, and Orange—provide pre-deprivation process to persons subject to gang injunctions. Arellano PI Order at 24 (*referencing* generally dkt. 21-3 335-549).

Any purported interest the City has in not providing additional process applies uniformly across class members and is not an individualized question. Thus, the Court's analysis of the City's interest in maintaining its deficient procedure with respect to Mr. Arellano applies equally to the remainder of the class. Moreover, the City's proposed new process offers the option for a post-deprivation judicial hearing to each individual contesting their active gang membership. Ochoa Decl. ¶ 3. If the City can expend fiscal and administrative resources on individualized post-deprivation proceedings, any argument that it cannot expend those resources pre-deprivation strains credulity.

### d. The City's Procedures Infringe on Plaintiffs' Dignitary Interests

The same result is compelled under the California Constitution, which provides greater procedural due process rights for private parties than the U.S.

NOTICE OF MOTION AND MOTION TO EXPAND THE PRELIMINARY INJUNCTIONS ENTERED ON BEHALF OF PLAINTIFFS PETER ARELLANO AND JOSE REZA TO THE ENTIRE CLASS

1   Constitution.  *See Today's Fresh Start, Inc. v. Los Angeles Cty. Office of Educ.*, 57
2   Cal. 4th 197 (2013).  The due process analysis under the California Constitution
3   looks at the *Mathews* factors, as well as a fourth factor: the "dignitary interest in
4   informing individuals of the nature, grounds, and consequences of the action and in
5   enabling them to present their side of the story before a responsible government
6   official."  *Id*. at 213 (internal quotation marks and citations omitted).

7          Here, as the district court found in *Vasquez*, "the decisions about whom to
8   subject to the injunction's restrictions are made unilaterally and without notice or
9   opportunity to be heard, by the same police and prosecutors whose thresholds for
10  enforcement and prosecution are made significantly lower by the injunction."
11  *Vasquez v. Rackauckas*, 203 F. Supp. 3d 1061, 1075 (C.D. Cal. 2011), *aff'd in part*,
12  *rev'd in part and remanded*, 734 F.3d 1025 (9th Cir. 2013).  Such practices infringe
13  upon class members' dignitary interests in knowing the nature, grounds, and
14  evidence of the charges against them, and in having an opportunity to present their
15  own evidence and be heard before a neutral government official.  *See also Sanchez*,
16  2017 WL 6462438 at *16 (finding that the county's enforcement of injunctions also
17  violated the California Constitution).

18

19          **B.      Plaintiffs Will Suffer Irreparable Harm Absent Relief**

20          The Plaintiff class has suffered—and absent preliminary injunctive relief, will
21  continue to suffer—immediate and irreparable harm.

22          When analyzing Mr. Arellano's claim for injunctive relief, this Court
23  recognized that the "the resolution of the likelihood of irreparable harm element, in
24  this case, is necessarily tied to Plaintiff's likelihood of success on the merits."
25  Arellano PI Order at 25 (*quoting Occupy Fresno v. Cty. of Fresno*, 835 F. Supp. 2d
26  849, 870 (E.D. Cal. 2011) ("Because Plaintiff[] ha[s] succeeded in demonstrating a
27  likelihood of success on the merits (i.e., that [his due process and] First Amendment
28

-13-

rights are being violated), [he] ha[s] also succeeded in demonstrating a likelihood of irreparable harm.")); *see also Elrod v. Burns*, 427 U.S. 347, 363 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Because the Court found that Mr. Arellano was likely to succeed in establishing that the Echo Park Gang Injunction imposed a significant burden on his fundamental rights, it concluded that he faced irreparable harm from the City's continued enforcement of the injunction. Arellano PI Order at 25-26. This is true for all class members. The City's gang injunction process deprives all class members of basic and fundamental constitutional rights, upon threat of arrest and criminal prosecution for exercising these rights. While the length of time to which individual class members have been subject or the specific terms of the injunctions may vary, they, like Mr. Arellano, are subject to a continuing deprivation of their constitutional rights, which supports a finding of irreparable harm for all class members. Arellano PI Order at 25-26.

## C. <u>Equities Tip Sharply in Plaintiffs' Favor and a Preliminary Injunction is in the Public Interest</u>

As this Court recognized with respect to Mr. Arellano, the relevant question in weighing the equities is not whether the City has an interest in combatting gang violence, but whether the City's interest in enforcing a gang injunction against a class member without providing pre-deprivation procedure outweighs that class member's interest in receiving due process before being subjected to an injunction. Arellano PI Order at 26 (*citing Vasquez*, 734 F.3d at 1052). This Court found that it does not, as the fiscal and administrative burdens in providing additional process do not outweigh the risk of erroneous deprivation or the hardships the injunctions impose. Arellano PI Order at 26. The City's interest in enforcing Los Angeles Gang Injunctions, like the due process protections afforded by the Constitution, does

-14-

not vary across class members.  Thus, the balancing of equities for the class as a whole is the same as that for Mr. Arellano, and this Court should once again reject the City's contention that "the risks posed by gang violence create a public interest in allowing the continued use of constitutionally inadequate procedures." *Id.*; *See also Sanchez*, 2017 WL 6462438 at *15-16.

D.    **The Class Is Entitled To Relief Notwithstanding The City's Assertion That It Is Revising Its Gang Injunction Procedures**

Having spent years burdened by the City's unconstitutional enforcement of Los Angeles Gang Injunctions, the Plaintiff class members are now entitled to immediate relief.  The City has repeatedly contended that it is currently revising or will soon revise its procedures for enforcing these injunctions, and has proposed delaying adjudication of the issues in this case on the ground that such changes were imminent.  In fact, however, although the City has made some recent changes to its gang injunction program, these modifications do not include providing all class members with constitutionally adequate pre-deprivation procedure, and the City concedes that even these alterations may not be permanent.  Ochoa Decl. ¶¶3-4. Therefore the City's representations about ongoing changes to the gang injunction process, if any, should not affect the Court's analysis in determining whether the class is entitled to immediate preliminary relief.

That conclusion is bolstered by the litigation history of this case.  In July 2017, the City ambitiously represented that it could finalize a new procedure for enforcing Los Angeles Gang Injunctions by "the end of August."  Dkt. 93 at 5. It was on the basis of this August timeline that the City asserted that the Court should delay adjudication of Plaintiffs' anticipated motion for class certification, on the dual grounds that the Court should first consider whether the changes would moot Plaintiffs' suit, and that it should not waste judicial resources "considering a motion on class certification that is based on policies and procedures that are no longer in

-15-

effect." Dkt. 90 at 2-3. Although the City ultimately succeeded in delaying Plaintiffs in filing their class certification motion from Plaintiffs' proposed deadline of June 30[4] until October 2, the City did not disclose its new process until mid-December, and its counsel conceded on December 5 that the new process was being adopted solely on a "trial basis." Ochoa Decl. ¶¶2, 4. And, after Plaintiffs filed their class certification motion, the City also *conceded* that Plaintiffs' claim was suitable for class-wide adjudication because any new policy would apply equally to all class members. Dkt. 111.

Nor does the substance of the City's tentative revision alter the *Mathews* analysis for the class in any way. The City began informing class members in mid-December that, upon the individual's request, the City would initiate a Superior Court process through which he or she could challenge the City's allegation of gang membership. Ochoa Decl. at ¶5. In addition to being an experimental solution implemented on a trial basis, the viability of this new process is also dependent on the Superior Court's as-yet-undetermined willingness to hear motions in cases that in some instances have long been terminated. Ochoa Decl. at ¶4. Additionally, the City has represented that the continued existence of this option will depend on the City's satisfaction with the speed at which it can obtain orders finding that individuals are active gang members. Ochoa Decl. at ¶4. Crucially, the City, even with its amended policy, asserts the right to enforce injunctions against class members prior to the issuance of a Superior Court order finding that an individual may be made subject to the injunction. Therefore despite the passage of at least six months since the City represented that it would be creating a new process purporting to moot Plaintiffs' claims, the City has failed to come up with *any* pre-deprivation

---

[4] Plaintiffs were prepared to file their motion for class certification on the initial deadline of January 30, 2017, but the filing was delayed due to a stay imposed to allow the parties to attempt settlement negotiations. Class certification—and ultimately class-wide relief—was therefore delayed at least nine months.

NOTICE OF MOTION AND MOTION TO EXPAND THE PRELIMINARY INJUNCTIONS ENTERED ON BEHALF OF PLAINTIFFS PETER ARELLANO AND JOSE REZA TO THE ENTIRE CLASS

procedure for the current class members.  Nothing in the City's proposed new process undercuts Plaintiffs' arguments for class-wide preliminary injunctive relief — in fact, the City's proposed process strengthens Plaintiffs' argument and suggests that absent explicit instruction from this Court, the City will not voluntarily adopt a process that ensures that all class members receive a constitutionally-adequate pre-deprivation procedure.

If the City does at a later date adopt a pre-deprivation process that it contends is constitutionally-adequate, it can seek to modify or lift the class-wide injunction on grounds that its amended procedure is constitutionally sufficient.  In the absence of such constitutionally adequate changes, however, the Plaintiff class members should not bear the burden of remaining under these restrictive injunctions.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court expand the preliminary injunctions entered on behalf of Mr. Arellano and Mr. Reza to the entire class, as set forth in the Proposed Order.  As with the orders entered on behalf of Mr. Arellano and Mr. Reza, Plaintiffs do not request that this Court specify the nature of any pre-deprivation process that may be provided to Plaintiffs to cure any constitutional deprivation.

Dated: January 29, 2018                    Respectfully submitted,

ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
PETER BIBRING
MELANIE P. OCHOA
ADITI FRUITWALA

By: __s/ Melanie P. Ochoa_____
        Melanie P. Ochoa

*Counsel for Plaintiffs*

-17-