MICHAEL N. FEUER, City Attorney (SBN 111529)
JAMES P. CLARK, Chief Deputy City Attorney (SBN 64780)
THOMAS H. PETERS, Chief Assistant City Attorney (SBN 163388)
SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
A. PATRICIA URSEA, Deputy City Attorney (SBN 221637)
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011
Patricia.Ursea@lacity.org

Attorneys for Defendant
CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| YOUTH JUSTICE COALITION, a non-profit organization; et al.,<br><br>        *Plaintiffs*,<br><br>vs.<br><br>CITY OF LOS ANGELES; et al.,<br>        *Defendants*. | Case No.:  2:16-cv-07932-VAP-RAO<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION "TO EXPAND THE PRELIMINARY INJUNCTIONS ENTERED ON BEHALF OF PLAINTIFFS PETER ARELLANO AND JOSE REZA TO THE ENTIRE CLASS"; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Filed Concurrently with<br>(1) Declaration of Patricia Ursea;<br>(2) Declaration of Arturo Martinez; and (3) Defendant's Evidentiary Objections]**<br><br>Complaint Filed: October 25, 2016<br>Hearing Date:  February 26, 2018<br>Hearing Time:  2:00 p.m.<br>Trial Date:  None Set |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ...................................................................................5

ARGUMENT .......................................................................................................9

I.     PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN TO SHOW
       THAT, IN LIGHT OF DEFENDANT'S REVISED POLICY, THE CLASS
       IS LIKELY TO SUCCEED ON THE MERITS AND/OR SUFFER
       IRREPERABLE HARM. ................................................................................9

II.    ALTHOUGH THE COURT NEED NOT DECIDE THE ISSUE AT THIS
       STAGE, PLAINTIFFS' ASSUMPTION THAT THE REVISED POLICY
       VIOLATES DUE PROCESS BECAUSE IT OFFERS NO PRE-
       DEPRIVATION REMEDY IS BOTH FACTUALLY AND LEGALLY
       INCORRECT. ..............................................................................................13

III.   PLAINTIFFS' SPECULATION THAT DEFENDANT IS NOT
       COMMITTED TO THE REVISED POLICIES IS BELIED BY THE
       FACTUAL RECORD, AND IN ANY EVENT DOES NOT SHOW A
       "LIKELIHOOD" OF IRREPERABLE HARM. .............................................16

IV.    PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE BALANCE
       OF THE EQUITIES FAVORS THEM. .........................................................19

CONCLUSION ..................................................................................................20

OPPOSITION TO MOTION TO EXPAND INDIVIDUAL PRELIMINARY INJUNCTIONS TO CLASS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ...............................................................9

*Costco Wholesale Corp. v. AU Optronics Corp.*,
   No. C13-1207RAJ, 2014 U.S. Dist. LEXIS 132145 (W.D. Wash.
   Sept. 17, 2014) ......................................................................................17

*Dixon v. Love*,
   431 U.S. 105 (1977) ..............................................................................14

*Mackey v. Montrym*,
   443 U.S. 1 (1979) ..................................................................................14

*Matthews v. Eldridge*,
   424 U.S. 319 (1976) ....................................................................4, 11, 14

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) .........................................................................16, 20

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
   762 F.2d 1374 (9th Cir. 1985) ..............................................................16

*People v. Engelbrecht*,
   88 Cal.App.4th 1242 (2001) .................................................................11

*People v. Sanchez*,
   No. F071330, 2017 WL 6462438 (Cal. Ct. App. Dec. 19, 2017) ...............14, 15

*Reno v. Flores*,
   507 U.S. 292 (1993) ..............................................................................14

*In re Toys "R" Us-Delaware, Inc.*,
   No. ML 08-1980 MMM, 2010 U.S. Dist LEXIS 130884 (C.D. Cal.
   July 29, 2010)........................................................................................16

*Traverso v. People ex rel Dept. of Transp.*,
    6 Cal.4th 1152 (1993) ........................................................................................14

*Vasquez v. Rackauckas*,
    734 F.3d 1025 (9th Cir. 2013) .....................................................................4, 14

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008)........................................................................................*passim*

**Statutes**

Cal. Code Civ. Proc. §128 .......................................................................................12

Cal. Code Civ. Proc. §187 .......................................................................................12

**Other Authorities**

Rule 23(b)(2)...........................................................................................................9, 10

# INTRODUCTION

The Court should deny Plaintiffs' motion to expand to the entire class the preliminary injunctions entered in favor of the two named Plaintiffs (Peter Arellano and Jose Reza) last year.  The crux of Plaintiffs' argument is that because the Court previously granted the named Plaintiffs' requests for preliminary injunction, it should do the same for the class.  (*See* [Dckt 115] Plaintiff's Motion to Expand Preliminary Injunctions ("Pl's Mot. to Expand") at 1:3-16.)  The flaw in Plaintiffs' logic is that it fails to acknowledge that the gang injunction policy that was in place at the time those preliminary injunctions were issued was dramatically different than Defendant's present gang injunction policy.  The motion should be denied because the revised policy—which grants every individual served with a gang injunction the right to have the Los Angeles Superior Court adjudicate his or her active gang membership—significantly changes the application of the *Winter* factors.  *See Winter v. Natural Res. Def. Council*, *Inc.* 555 U.S. 7, 24 (2008) (requiring plaintiffs to establish that they are likely to succeed on the merits and suffer irreparable harm, that the balance of equity tips in their favor, and that an injunction is in the public interest).

Plaintiffs have presented no evidence that, in light of Defendant's revised policy, they are entitled to a class-wide preliminary injunction under *Winter*.  Indeed, despite their burden of proof on this motion, Plaintiffs largely ignore the fact that Defendant has adopted and implemented a revised policy for serving and enforcing gang injunctions.  They do not attach the policy documents, do not discuss any of the details of the policy, and do not explain why they believe the revised policy fails to satisfy due process.

Having failed to acknowledge the substantial differences between Defendant's former and revised policies, Plaintiffs cannot satisfy their burden of

proof on this motion.  The constitutional concerns the Court identified with
Defendant's former policy when ruling on Plaintiff Arellano's motion [1] are not
implicated by the revised policy.  (*See* [Dckt 106] Order Granting Plaintiff Peter
Arellano's Motion for Preliminary Injunction ("Arellano Order").)  In the Arellano
Order, the Court concluded that Plaintiff Arellano demonstrated a likelihood of
success and irreparable harm because the (post-deprivation) removal procedures
available to him at the time, *i.e.*, the administrative removal procedure and the
"opt-out' procedure, were unfairly one-sided.  (*See id.* at pp.16-25).  Plaintiffs do
not argue that this same conclusion applies to Defendant's revised policy.  Nor can
they.  The revised policy creates an entirely new procedure:

1. Upon request by any class member, Defendant will file a motion in
   Los Angeles Superior Court seeking a determination as to active gang
   membership (without any of the restrictions of the opt-out provision);

2. The Los Angeles Police Department ("LAPD") will not enforce any
   gang injunction served in the future for an initial 30-day
   "forbearance" period to allow those individuals an opportunity seek
   judicial (or administrative) review before enforcement;

3. If individuals served in the future seek judicial (or administrative)
   review, Defendant will not enforce the injunction unless and until a
   final determination of active gang membership is made.

---

[1] It is not accurate to say that the Court preliminarily enjoined enforcement against
*both* Plaintiffs Arellano and Reza "on the ground that they are likely to prevail on
their claims…" (*See* Pl's Mot. to Expand at 1:3-7).  The Court reached that
conclusion only as to Plaintiff Arellano.  (*See* Arellano Order at p.29).  Judge
Fairbank entered the order as to Plaintiff Reza without ruling on the merits of the
motion; instead, the Court based its decision solely on Defendant's concession that
it did not believe that Reza's *current* gang participation rose to a level that is "more
than nominal, passive, inactive, or purely technical."  ([Dckt. 28] at p.5.)

(*See* 2/5/18 Declaration of Arturo Martinez ("Martinez Decl.") at ¶8.)

Over the course of the last month, all previously served individuals who remain subject to enforcement were notified that Defendant will initiate this judicial process upon request;  (*id.* at 13; Ex. 4 thereto); as of the date of this Opposition, none have requested it.  (*Id.* at 14.)  It is unclear what aspects of Defendant's revised policy Plaintiffs find objectionable.  The policy provides both future-served and previously-served individuals with an opportunity to review and refute the evidence against them and adjudicate the issue of active gang membership before a Superior Court Judge.  Future-served individuals who request this opportunity will not be subject to enforcement unless and until the Superior Court judge issues an order permitting it.  Previously-served individuals who request the judicial process can obtain similar relief by seeking a stay of enforcement from that judge.

Plaintiffs have failed to establish that the law requires anything more.  Indeed, the only perceptible arguments Plaintiffs articulate against the revised policy are that they believe it (1) is "experimental"; and (2) fails to provide "pre-deprivation" process for all class members.  (Pl's Mot. to Expand at 15:13-17; 16:13-16).  Both arguments fail.

First, Plaintiffs point to nothing in the record to support their assertion that the revised policy is a temporary "experiment."  Instead, they base their suspicion on a declaration by Plaintiffs' counsel purporting to summarize a meet-and-confer call with Defendant's counsel.  (*Id.* at 15:13-17 and [Dckt 115-1] Declaration of Melanie Ochoa.)  Plaintiffs' speculation is unfounded.  Even if statements made by an attorney during a meet-and-confer held any evidentiary value under the law (and they do not), and the declarant did not misapprehend the statements made by Defendant's counsel (which she appears to have), the factual record demonstrates that Defendant's commitment to provide additional constitutional safeguards to its

3

gang injunction service and enforcement policy is both sincere and enduring. There is no evidence whatsoever to suggest that Defendant will not follow through with its policy to file motions in Superior Court on behalf of any served individual who requests one.

Second, Plaintiffs' contention that the revised policy is unconstitutional because it does not provide pre-deprivation process to the class is both factually inaccurate and legally unsupported—as well as unnecessary to this Court's determination on this motion.  As noted, future-served individuals will have an opportunity for a hearing before enforcement; under any definition, this constitutes pre-deprivation process.  Previously-served individuals have the same judicial opportunity but because these individuals have already been served, any remedy provided to them will inherently be "post-deprivation" under Plaintiffs' definition.

Moreover, Plaintiffs have failed to establish that pre-deprivation process is required in all instances, or even as to the previously-served individuals in this case.  Neither *Matthews v. Eldridge*, 424 U.S. 319 (1976) nor *Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013), nor any other precedent, requires pre-deprivation process in all instances, and this Court expressly abstained from ruling on this issue in the Arellano Order.  (Arellano Order at p.21, n.4).  In fact, as discussed below, due process is a flexible doctrine that permits the process the revised policy offers previously-served individuals.

But the Court need not reach this issue to rule on Plaintiffs' motion. Plaintiffs have failed to identify any constitutional infirmities in Defendant's revised policy and have failed to proffer any factual or legal support to show they are likely to prevail on the merits, suffer irreparable harm, or that the *Winter* factors otherwise support them.  Because Plaintiffs have failed to justify their request for a class-wide preliminary injunction, their motion should be denied.

1

## STATEMENT OF FACTS

2

3          Beginning in 2000, Defendant began using gang injunctions as one method

4  (of many) to address the problems posed by gangs.  (Martinez Decl. at ¶3.)  Over

5  the last 18 years, Defendant's enforcement of gang injunctions has evolved.  At

6  various points in time and in response to many factors, including changes in case

7  law, community input, as well as issues raised in litigation, Defendant has revised

8  its gang injunction policies and practices.  For example, in response to changes in

9  case law, LAPD stopped enforcing certain provisions of the gang injunctions, such

10  as curfew and "in the presence of alcohol/controlled substance" provisions.  (*Id.* at

11  ¶4.)  On its own initiative, Defendant added certain safeguards to its injunctions,

12  including "hardship" exemptions and "opt-out" provisions, designed to increase

13  protections of individual liberties.  (*Id.*)  In response to community input, ten years

14  ago, Defendant developed the Removal Petition process to provide an expedient

15  non-judicial avenue for individuals to be removed from injunctions.  (*Id.*)

16          When Plaintiffs filed this case, Defendant was in the process of again

17  revising various aspects of its gang-abatement policies.  As part of the settlement

18  of a prior class action suit, Defendant was creating a jobs and education program to

19  help individuals who wish to leave gang life, as well as a quasi-judicial mechanism

20  for approximately 5,700 individuals served with gang injunctions to obtain a

21  determination of their active gang membership by a federal magistrate judge.  (*Id.*

22  at ¶5.)[2]  Furthermore, and separate and apart from the prior litigation and

23  settlement, Defendant was exploring options for performing a whole-sale review of

24  individuals who were subject to enforcement of a gang injunction.  (*Id.* at ¶15.)

25

26

_____

27  [2] All of these approximately 5,700 individuals in the prior class action lawsuit are
   members of the current class in this action and thus have that quasi-judicial
28  mechanism available to them.

OPPOSITION TO MOTION TO EXPAND INDIVIDUAL PRELIMINARY INJUNCTIONS TO CLASS

Upon receipt of the present complaint, Defendant suggested that the parties attempt to resolve the issues informally, as Defendant was in the process of reexamining its gang-abatement policies.  (Declaration of Patricia Ursea ("Ursea Decl.") at ¶2, 3.)  The parties entered a stipulation to stay the case and spent six months actively negotiating a potential settlement, including meeting with a mediator.  (*Id.* at ¶4.)  Although the negotiations ultimately did not result in settlement, Defendant nevertheless decided to move forward with amending its policies and practices.

A key facet of Defendant's revised policy is changes to LAPD's service and enforcement procedures.  The drafting, review, and approval of these changes involved multiple departments and took several months to complete.  (Martinez Decl. at ¶7.)  In September 2017, LAPD published Operations Order No. 5, which sets forth the new policies and procedures.  (*Id.* at ¶8.)  These new procedures include, in relevant part, the following:

1. Individuals served with gang injunctions in the future will receive an initial 30-day "forbearance" period, which allows them to challenge the City's determination that he or she is an active gang member before the injunction can be enforced against them; and

2. Defendant will cease enforcement of gang injunctions after five years from the date an individual was served ("Five-Year Sunset").  If Defendant has current evidence that the individual is still an active gang member, the individual may be re-served with the gang injunction, but this would trigger a new forbearance period and opportunity to challenge that determination in court.

(*Id.* at ¶8.)

After the Operations Order was published, the Los Angeles City Attorney's Office gave detailed presentations to all officers who are authorized to serve and/or

enforce gang injunctions.  (Martinez Decl. at ¶10.)  These presentations were mandatory; no officer could serve or enforce a gang injunction until he or she had received that training.  (*Id.*)  Over the course of six months, the City Attorney's Office provided a total of five such trainings, which were attended by a total of 312 police officers.  (*Id.*)  The City Attorney's Office also trained officers on accessing information in the field to confirm that an individual is subject to enforcement of a gang injunction prior to citation or arrest for violating that injunction, which was the subject of separate published order, LAPD Notice 1.11, issued on June 26, 2017.  (*Id.* at ¶9.)

Another key facet of Defendant's revised policy is the development of a mechanism in which Defendant will seek a judicial determination that a served individual is an active gang member, as an alternative to the existing system under which served individuals could bring their own separate legal actions to challenge Defendant's determination or submit a Removal Petition.  The City Attorney's Office developed the following policy:

- For both previously-served and future-served individuals, the City will advise them that they have the option to request an adjudication of active gang membership in Los Angeles Superior Court;

- If an individual notifies the City Attorney's Office in writing that he or she wishes to exercise this option, the City will file a motion in Superior Court requesting an adjudication as to that individual's active gang membership;

- The motion will be served on the individual along with the evidence supporting it and the individual will have the opportunity to present arguments and evidence in opposition of the motion.

- Future-served individuals who request this option within the 30-day forbearance period after they were served will not be subject to enforcement unless and until the Superior Court determines that Defendant has proven

active gang membership under the proper legal standard.

- Previously-served individuals who request this option will not be subject to enforcement if the Superior Court enters an order enjoining enforcement (either as a preliminary order or a final order upon the conclusion of the adjudication).  (Martinez Decl. at ¶10.)

The approximately 1,450 individuals who were previously served with a gang injunction and currently remain subject to enforcement[3] were mailed letters between December 20, 2017 and January 15, 2018 explaining this new judicial option to them (as well as an explanation of the new Five Year Sunset provision as applicable to them[4]).  (*Id.* at ¶8.)  Before sending the letters, attorneys for Defendant notified attorneys for Plaintiffs that Defendant intended to mail such letters and provided Plaintiffs' counsel a list of the names and contact information of the anticipated recipients.  (Ursea Decl. at ¶¶10, 12.)  Also, pursuant to the agreement of the parties' counsel, counsel for Defendant produced copies of the letters to Plaintiffs' counsel when they were mailed.  (*Id.* at ¶15.)  As of the date of this opposition, Defendant has received no requests by any previously-served class

---

[3] As noted, Defendant engaged in a whole-sale review of individuals who have been served with a gang injunction.  The review involves multiple levels of examination by both LAPD and the City Attorney's Office to identify those individuals for whom Defendant did not have sufficient evidence of current nuisance and criminal activities that the gang injunctions are intended to curb (*i.e.* evidence of active gang membership).  As a result of this review, over the past 7 months, approximately 7,500 individuals were sent letters informing them that the City Attorney's Office and LAPD will no longer enforce the gang injunction(s) against them.  (Martinez Decl. at ¶15.)

[4] Under the new policy, Defendant will cease enforcement of gang injunctions against previously-served individuals after five years from the date of the letter informing the individual of Defendant's new policy.

member (or Plaintiffs' counsel on behalf of those class members) seeking to exercise this judicial process.  (Martinez Decl. at ¶14.)

## ARGUMENT

**I.    PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN TO SHOW THAT, IN LIGHT OF DEFENDANT'S REVISED POLICY, THE CLASS IS LIKELY TO SUCCEED ON THE MERITS AND/OR SUFFER IRREPERABLE HARM.**

The burden to prove an entitlement to a preliminary injunction is unambiguously on Plaintiffs.  *Winter*, 555 U.S. at 20.  Even under the Ninth Circuit's "sliding scale" approach, Plaintiffs must show that it is likely—not just possible—that they will suffer irreparable harm.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).  Plaintiffs have presented no evidence to show that they are likely to succeed in proving that Defendant's revised policy violates due process or that the class members are likely to suffer irreparable harm under the new policy.  Indeed, Plaintiffs have failed to identify the likelihood of *any* harm to the class given the fact that each class member can have the issue of active gang membership adjudicated in state court simply by making a request to Defendant.

In the absence of any evidence or authority, Plaintiffs base their motion on a grossly oversimplified syllogism: (a) the Court granted Plaintiff Arellano's motion for preliminary injunction; (b) the Court then granted certification of the class under Rule 23(b)(2); (c) therefore, the Arellano Order should automatically be expanded to the class.  (Pl's Mot. to Expand at 1:3-16.)  Plaintiffs' logic fails because, as noted above, Defendant's revised policy cures the defects this Court

identified in the Arellano Order.[5]  In entering that order, the Court evaluated the
two (post-deprivation) process avenues available under the Defendant's policy at
that time: the administrative Removal Petition Process and the state court process
under the injunction's "opt-out" provision.

As to the former (administrative) process, the Court concluded that the
process was insufficient because (i) it "does not afford enjoined persons the
opportunity to be presented with the evidence against them"; and (ii) Defendant's
"rebuttable presumption of removal" for individuals who have not been convicted,
charged with, or arrested for specific offenses within the last three years "flip(s)
the burden of proof onto enjoined persons."  (Arellano Order at 23.)

As to the latter (opt-out) process, the Court found it insufficient because
(i) the provision did not specify the procedure that would be used (*id.* at 18);
(ii) Arellano's prior criminal history would have "prevented him from successfully
'opting out'" (*id.*); and (iii) Defendant could re-serve an individual even after a
successful opt-out solely on the basis that the he/she associated with known gang
members.  (*Id.* at 22.)

The Court's reasoning in the Arellano Order does not extend to Defendant's
revised policy.  Unlike the Removal Petition procedure, the revised policy provides
individuals with an opportunity to review and refute the evidence of active gang
membership as Defendant will serve that evidence along with its motion on the

_____

[5] The syllogism also fails because it incorrectly assumes that the certification of a
Rule 23(b)(2) class is the same as a finding that the named Plaintiffs and class
members are identically situated in all respects, even at different points in time.
All that Rule 23(b)(2) requires for certification is that Defendant "has acted or
refused to act on grounds that apply generally to the class."  (Fed. R. Civ. Proc.
23(b)(2).)  Defendant's earlier policy, and now its revised version, "generally
appl[ies]" to all class members.  This does not mean, however, that the Court's
analysis of the earlier policy as to Arellano applies to the revised policy as to the
class.

individual who requests the judicial process.  Likewise, the concerns the Court expressed with the "rebuttable presumption" are alleviated by the revised policy because the Los Angeles Superior Court judge presiding over the motion will ensure that the burden of proof is on Defendant, the moving party, as required by *People v. Engelbrecht*, 88 Cal.App.4th 1242, 1253 (2001).

Similarly, the flaws the Court found in the "opt-out" process are not present in the judicial process option offered by the revised policy.  The California Code of Civil Procedure sets forth the procedure that governs the motion practice.  Likewise, neither criminal history nor any other personal circumstances play any role in the availability of the judicial process to any individual; Defendant will file a motion on behalf of any served individual who requests one in writing.[6]  Finally, the revised policy provides that an individual may not be re-served unless there is new or additional evidence that establishes beyond a reasonable doubt that an individual is an active gang member.  In such circumstances, the re-served individual would receive the 30-day forbearance period and the opportunity to adjudicate the issue in court.  (Martinez Decl. at ¶8.)

Having ignored these critical differences between the policies, Plaintiffs cannot satisfy their burden to obtain a class-wide preliminary injunction.  All that due process requires is notice and a meaningful opportunity to be heard.  *See Matthews*, 424 U.S. at 333.  Plaintiffs have failed to articulate how the new policy fails to meet these standards.  Furthermore, although Plaintiffs speculate that the Superior Court may be "unwilling" to consider such motions (Pl's Mot. to Expand

---

[6] It is possible that in some instances Defendant may receive a request for judicial process and determine that the evidence at that time does not rise to the level of active gang membership (for example, when an individual has reformed his or her life away from gang activity).  In such cases, Defendant may decide that a motion may not be necessary and may instead notify the individual that he or she is no longer subject to enforcement of the gang injunction.

at 16:13-16), there is no evidence whatsoever to suggest that this is likely, or even raises a "serious question" as to the merits of Plaintiff's claim.  In fact, it would be highly *un*likely for the Los Angeles Superior Court to reject hearing such a motion. Defendant will file the proposed motion in the department that granted the original injunctions.  Those injunctions, as Plaintiffs have pointed out, do not have an expiration date (*see*, *e.g.,* [Dckt 2] Complaint at 10:13-14); accordingly, the Superior Court retains jurisdictions to enforce those injunctions.[7]  Additionally, according to Plaintiffs' own representations, other jurisdictions appear to be using the same or a similar procedure.  (*See* Pl's Mot. to Expand at 12:11-14.)  Finally, this Court appeared to contemplate the viability of precisely such a mechanism when it granted Plaintiff Arellano's motion for preliminary injunction, stating that Defendant "is not precluded from returning to the California Superior Court for the County of Los Angeles to seek a separate order binding Plaintiff Arellano to the terms of the Echo Park Injunction."  (*See* Arellano Order at p.29.)

For all these reasons, Plaintiffs cannot show that they are likely to succeed on the merits or suffer irreparable harm.  Their motion should be denied.

---

[7] *See* Cal. Code Civ. Proc. §128 (stating that the Court has the power "[t]o compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein. . . [and] . . . To amend and control its process and orders so as to make them conform to law and justice"); Cal. Code Civ. Proc. §187 ("When jurisdiction is . . .conferred on a Court . . . all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code.").

OPPOSITION TO MOTION TO EXPAND INDIVIDUAL PRELIMINARY INJUNCTIONS TO CLASS

## II. ALTHOUGH THE COURT NEED NOT DECIDE THE ISSUE AT THIS STAGE, PLAINTIFFS' ASSUMPTION THAT THE REVISED POLICY VIOLATES DUE PROCESS BECAUSE IT OFFERS NO PRE-DEPRIVATION REMEDY IS BOTH FACTUALLY AND LEGALLY INCORRECT.

While Plaintiffs do not directly address the issue, implicit throughout Plaintiffs' motion is an assumption that an injunction must issue because due process can only be satisfied by pre-deprivation process and that the revised policy fails to provide such process to the class.  (*See, e.g.,* Pl's Mot. to Expand at 4:1, 4:21, 9:10, 14:21.)  As discussed below, this assumption is not supported by the facts in this case or the law.  Moreover, as in the Arellano Order, it is (again) unnecessary for this Court to decide the issue at this preliminary stage.  Because Plaintiffs have chosen not to explain the law or their analysis on this issue, particularly as it would apply to the past and future class members under the revised policy, their motion should be denied simply because they failed to satisfy their burden under *Winter*.

First, as a factual matter, individuals who are served with gang injunctions in the future will receive pre-deprivation process.  As explained above, going forward, LAPD will not enforce a gang injunction for an initial 30 day forbearance period following service; if an individual requests judicial process in that time period, LAPD will hold enforcement until that judicial process is complete and a state court judge has determined enforcement is warranted.  (*See* Martinez Decl. at ¶8.)  Given Plaintiffs' view that "deprivation" occurs due to the threat of enforcement (*see* Pl's Mot. to Expand at 7:18-26), and the revised policy provides that, for individuals who select this option, there is no threat of enforcement unless and until a Superior Court judge adjudicates the issue of active gang membership, Defendant cannot imagine what Plaintiffs' constitutional concerns may be, or what imminent irreparable harm Plaintiffs believe is likely, and Plaintiffs have

articulated none.[8]

Second, although by definition, previously-served individuals are receiving the judicial process option after having been served with a gang injunction, Plaintiffs fail to establish, by evidence, case law, or even argument, why due process would require anything more in these circumstances. Neither *Matthews* nor *Vasquez* hold that post-deprivation process is always inadequate. In *Matthews*, the Court upheld as constitutional the post-deprivation process that was challenged in that case. 424 U.S. at 348-349. In *Vasquez*, the Court expressly declined to hold that pre-deprivation process was required in all instances. 734 F.3d at 1048, fn. 22. This Court likewise did not rule on the issue in its Arellano Order. (Arellano Order at p.21, n.4).[9]

The criminal California Court of Appeal case Plaintiffs cite, *People v. Sanchez*, No. F071330, 2017 WL 6462438 (Cal. Ct. App. Dec. 19, 2017), does nothing to alter these precedents nor does it support Plaintiff's request for a class-wide injunction. In that case, the Court held that criminal contempt charges against a defendant should be dismissed because the arrest and prosecution stemmed from unconstitutional service under the unique circumstances of that case. Indeed, the Court began its opinion by stating, "We emphasize, however, that our holding is limited . . . [to] the circumstances of this case. . . ." (*Id.* at *2.)

_____

[8] In the event Plaintiffs are suggesting that due process requires Defendant to affirmatively seek judicial adjudication in every instance without requiring served individuals to request a hearing first, such a contention has absolutely no support in the law. Due process requires *not* the hearing itself but the *opportunity to be heard*. *See, e.g., Reno v. Flores*, 507 U.S. 292, 309 (1993); *Traverso v. People ex rel Dept. of Transp.*, 6 Cal.4th 1152, 1165 (1993).

[9] Particularly in situations such as this one, when the government interest involves the safety of its citizens, the U.S. Supreme Court repeatedly has upheld the exclusive use of post-deprivation remedies. (*See, e.g., Dixon v. Love*, 431 U.S. 105, 114 (1977); *Mackey v. Montrym*, 443 U.S. 1, 17–18 (1979).)

Given this admonition, it is inappropriate (if not impossible) to apply the Court's ruling—entered in a criminal case as to one particular individual who was subject to not only enforcement but arrest, under a different gang injunction policy issued by a different public entity—to the preliminary class-wide relief sought by Plaintiffs here.

Moreover, even viewed from a general policy perspective, the *Sanchez* case is factually inapposite.  As just one example, the Court in *Sanchez* found that "there [was] **no process** for an affected individual in Sanchez's position to challenge the [Stanislaus County District Attorney's] conclusion [of active gang membership] prior to being arrested and prosecuted." (*Id*. at *25.)  Here, Defendant has offered numerous avenues to challenge service and enforcement, all of which were available to served individuals to utilize before any arrest or prosecution.  Such differences in policy cannot be ignored; indeed, the judicial avenue for challenging active gang membership adopted in Defendant's revised policy is crucial to the resolution of Plaintiffs' motion.

Plaintiffs' motion fails for another reason—Plaintiffs have failed to demonstrate that previously-served individuals are likely to suffer irreparable injury under Defendant's revised policy.  As discussed above, starting in December 20, 2017, all individuals previously served with a gang injunction (who have not been identified as no longer subject to enforcement[10]) were mailed letters notifying them of Defendant's revised policy, and specifically, their right to request that Defendant initiate a judicial process to determine their active gang membership.  Defendant provided the names and contact information of those individuals to Plaintiffs' counsel before the letters were mailed (and even before class certification was entered), and further provided Plaintiffs' counsel with

---

[10] *See* Footnote 4, *supra*.

copies of every letter mailed to every class member.  (Ursea Decl. at ¶¶13, 15.)  As of the date of this Opposition, Defendant has received no requests for a court hearing from any class member or from Plaintiffs' counsel.  (Martinez Decl. at ¶ 14.) The lack of urgency in responding to Defendant's offers to file motions in state court to determine active gang membership casts further doubt on any claim of irreparable harm.  (*See, e.g., Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay … implies a lack of urgency and irreparable harm.").)

For all these reasons, the Court need not resolve the issue of pre- versus post-deprivation process at this stage.  The motion should be denied because Plaintiffs have failed to satisfy their burden under *Winter*.

## III.   PLAINTIFFS' SPECULATION THAT DEFENDANT IS NOT COMMITTED TO THE REVISED POLICIES IS BELIED BY THE FACTUAL RECORD, AND IN ANY EVENT DOES NOT SHOW A "LIKELIHOOD" OF IRREPERABLE HARM.

Plaintiffs' unfounded conjecture that Defendant's revised policy is "experimental" cannot, as a matter of law, satisfy Plaintiffs' burden to prove that preliminary class-wide equitable relief is warranted.  *See, e.g., Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 158 (2010) (holding that preliminary injunction cannot be based on speculative injury).  The only "evidence" Plaintiffs offer in support of this opinion is a declaration by Plaintiffs' counsel purportedly reporting statements made by Defendant's counsel on a meet-and-confer call.  (Pl's Mot. to Expand at 15:15-20; Ochoa Decl.)

Defendants' counsel's declaration has no evidentiary value.[11]  It also appears to be based on a misunderstanding.  The phone call at issue was initiated by

---

[11] (*See* Defendant's Evidentiary Objections, filed concurrently, citing Fed. R. Evid. 801(c) (hearsay); *In re Toys "R" Us-Delaware, Inc.*, No. ML 08-1980 MMM (FMOx), 2010 U.S. Dist LEXIS 130884 (C.D. Cal. July 29, 2010) ("The unsworn

Defendant's counsel to inform Plaintiffs' counsel, even before the class was certified, that Defendant was preparing to mail letters to previously-served individuals notifying them of Defendant's revised policy and to negotiate (also as a courtesy) the best method for sharing those communications with counsel. (Ursea Decl. at ¶9, 10; Ex. 1 thereto.) During that call, Defendant's counsel stated that Defendant was not aware of such motions having previously been filed in Los Angeles Superior Court and so, the details of the proposed judicial process, *e.g.,* the time it will take for the court to adjudicate the issues, will become evident only after the process has been "tested" by Defendant filing a few initial motions. (*Id.* at ¶11.) Defendant's counsel thus suggested that the parties meet again to discuss the judicial process sometime in the Summer of 2018, to allow time for some of the motions to be filed and adjudicated. (*Id.*) Defendant's counsel later sent Plaintiffs' counsel an email summarizing that conversation, which reflects the account of the call presented here. (*Id.* at ¶13; Ex. 1 thereto.) Defendant's counsel did not receive a response to that email nor any other request for clarification from Plaintiffs' counsel. (*Id.* at ¶ 14.)

Moreover, the record demonstrates that Defendant is in fact committed to revising its gang injunction policy to add additional constitutional protections. As described above, Defendant has spent close to a year and hundreds of hours reviewing, approving, adopting, and implementing various aspects of its revised policy. (Martinez Decl. at ¶7.) Defendant has (a) memorialized key features of its

---

statements of defendant's counsel in emails to opposing counsel [] do not constitute admissible evidence."); *Costco Wholesale Corp. v. AU Optronics Corp.*, No. C13-1207RAJ, 2014 U.S. Dist. LEXIS 132145 (W.D. Wash. Sept. 17, 2014) ("The court is aware of no precedent supporting the notion that every assertion a DOJ attorney utters in connection with a criminal prosecution becomes a 'factual finding' exempt from the rule against hearsay.").)

policies in formal LAPD Orders (*id.* at ¶8); (b) mailed thousands of letters notifying served individuals of the options available under the new policy (*id.* at ¶13); (c) prepared and conducted trainings of hundreds of LAPD officers regarding the new policy (*id.* at ¶¶9, 10); and (d) developed new technological solutions to permit LAPD officers to access information related to the new policies while in the field (*id.* at 9).[12]  These documented efforts show that Plaintiffs' speculations are unfounded.[13]  Because Defendant has demonstrated a sincere and enduring commitment to adding significant safeguards to its gang injunction policy to protect the liberty interests of individuals served with such injunctions, and

---

[12] Aspects of the revised policy also have been publicized in the media.  (*See* Ex. 2 to Ursea Decl.)

[13] Plaintiffs also point to the "litigation history" to support their position that Defendant cannot be trusted to implement safeguards without an order from this Court.  (*See* Pl's Mot. to Expand at 15:20-16:8.)  Plaintiffs' characterization of Defendant's litigation conduct is undeserved.  The record shows that Defendant has litigated this case in good faith at all times.  As noted above, Defendant has voluntarily kept Plaintiffs' counsel apprised of details regarding the revised policy and the status of its implementation.  (Ursea Decl. at ¶¶5, 9-15.)  Similarly, Defendant's counsel provided contact information for potential class members to Plaintiffs' counsel even before the class was certified and sent Plaintiffs' counsel copies of the notifications of the revised policy sent to previously-served individuals within days of them being mailed.  (*Id.*)  Finally, Plaintiffs' claim that Defendant's proposal to brief mootness before class certification "succeeded in delaying Plaintiffs in filing their class certification motion from Plaintiff's proposed deadline of June 30 until October 2" fails to take into account that (a) Defendant's pledge to amend its policy proved true (even if took somewhat longer than expected); and (b) Defendant's proposal was not ruled upon immediately because this case was returned for reassignment on July 21, 2017 (*see id.* at ¶5-8).

OPPOSITION TO MOTION TO EXPAND INDIVIDUAL PRELIMINARY INJUNCTIONS TO CLASS

because Plaintiffs have failed to satisfy their burden of proof under *Winter*, a preliminary injunction is unwarranted.

## IV.    PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE BALANCE OF THE EQUITIES FAVORS THEM.

It is not accurate to assume, as Plaintiffs urge the Court to do (*see* Pl's Mot. to Expand at 14:27-15:5), that the administrative and fiscal burdens associated with mandating post-deprivation process for a single named plaintiff (Arellano) are the same burdens associated with mandating pre-deprivation process for approximately 1,450 individuals—particularly given that none of those individuals have requested such a hearing despite being notified of Defendant's revised policy. A class-wide preliminary injunction would strain not only Defendant's resources but also the resources of the Los Angeles Superior Court, which would need to adjudicate motions on all 1,450 previously-served individuals so that Defendant could have the chance to continue enforcement against them.  A class-wide injunction preventing enforcement of over one thousand persons with gang injunctions also would have a significantly larger impact on public safety than the impact this Court considered when entering the Arellano Order.

These burdens must be meaningfully evaluated, particularly in these circumstances, where Plaintiffs' request for preliminary injunction significantly affects not only Defendant but the Superior Court and the residents of the City of Los Angeles.  Plaintiffs, however, elected to not evaluate these administrative or fiscal burdens, and not to provide any evidence in support of their claim that the equities tip in their favor.  Rather, Plaintiffs chose to rely solely on the analysis of this Court in the Arellano Order, which involved very different burdens under a very different gang injunction policy.  This further underscores Plaintiffs' failure to satisfy their burden under *Winter*.  The motion should be denied.

**CONCLUSION**

By ignoring critical distinctions between the circumstances that underpinned Plaintiff Arellano's request for preliminary injunction and those presented by a class of thousands who have been offered new due process opportunities under a revised policy, Plaintiffs invite the Court to presume their entitlement to an injunction unless Defendant proves otherwise.  Plaintiffs' invitation should be declined because it improperly inverts the standard.  As the United States Supreme Court has explained: "It is not enough for a court considering a request for injunctive relief to ask whether there is a good  reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue under the traditional four-factor test []."  *Monsanto*, 561 U.S. at 158 (emphasis in original).  Plaintiffs have not established that an injunction is justified under these circumstances; their motion should be denied.

DATED:    February 5, 2018

       MICHAEL N. FEUER, City Attorney
       JAMES P. CLARK, Chief Assistant City Attorney
       THOMAS H. PETERS, Chief Assistant City Attorney
       SCOTT MARCUS, Senior Assistant City Attorney
       PATRICIA URSEA, Deputy City Attorney


     By:   /s/ A. Patricia Ursea
       A. PATRICIA URSEA
       Deputy City Attorney,
       *Attorneys for Defendant*
       CITY OF LOS ANGELES

OPPOSITION TO MOTION TO EXPAND INDIVIDUAL PRELIMINARY INJUNCTIONS TO CLASS