FILED
CLERK, U.S. DISTRICT COURT

3/15/2018

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ BH _____ DEPUTY

rf

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Youth Justice Coalition, et al.,

Plaintiffs,

v.

City of Los Angeles, et al.,

Defendants.

CV 16-07932 VAP (RAOx)

**Order GRANTING Plaintiffs' Motion to Expand Preliminary Injunction (Doc. No. 115).**

On January 29, 2018, Plaintiffs Youth Justice Coalition, Peter Arellano ("Arellano"), and Jose Reza ("Reza") for themselves and on behalf of a class of similarly-situated individuals (collectively "Plaintiffs") filed a Motion to Expand the Preliminary Injunctions Entered on Behalf of Plaintiffs Arellano and Reza to the Entire Class ("Motion").  (Doc. No. 115).

On February 5, 2018, Defendant City of Los Angeles ("the City") filed an Opposition to Plaintiffs' Motion.  (Doc. No. 116).  On February 12, 2018, Plaintiffs filed their reply in support of their Motion.  (Doc. No. 123.)

After considering all papers filed in support of and in opposition to the Motion, and the parties' arguments at the February 26, 2018 hearing,  the Court GRANTS the Plaintiffs' Motion as detailed below.

# I. BACKGROUND

## A.  Los Angeles Gang Injunctions

For thirty years, prosecutors in Southern California have used public nuisance law to obtain civil injunctions prohibiting suspected gang members from participating in a variety of activities.  At issue in this case are the approximately forty-six gang injunctions issued by the City.  These injunctions restrict both criminal gang activities and otherwise lawful activities that purportedly constitute a gang nuisance within a defined geographical area.  Plaintiffs allege that the City's issuance and enforcement of these gang injunctions violate the procedural due process protections in the United States Constitution and the California Constitution. The City contends that the gang injunctions are an effective means of reducing gang-related crime, and disputes Plaintiffs' allegations that its policies and procedures are unlawful.

Plaintiffs Peter Arellano and Jose Reza were made subject to two such gang injunctions.  Arellano was subject to the injunction issued in People v. Big Top Locos, Case No. BC511444 (L.A. Sup. Ct. 2013) and Reza was subject to the injunction issued in People v. Big Hazard, Case No. BC335749 (L.A. Sup. Ct. 2005).  Neither was a party to their respective underlying civil actions, and both allege that they were not given meaningful notice or opportunity to contest the City's allegations of active gang membership before enforcement of the injunction against them.  Plaintiff Youth Justice Coalition is a non-profit organization located in Los Angeles,

California that works with communities affected by mass incarceration and over-policing.

### B.  The Court Issued Preliminary Injunctions for Plaintiff Arellano.

On September 7, 2017, the Court granted Peter Arellano's Motion for a Preliminary Injunction to stop the City from enforcing the Echo Park Injunction against him.  (Doc. No. 106).[1]  The Court found that Arellano was likely to succeed in proving (1) that the City's procedures for enforcing the Echo Park Injunction interfered with Arellano's liberty interests "including rights of free movement, association, and speech" (Doc. No. 106 at 16); and (2) the City's procedures were insufficient to afford Arellano due process.  (Doc. No. 106 at 18-25).  The Court also found that for the same reasons Arellano had demonstrated a likelihood of success on the merits, he had also demonstrated a likelihood of irreparable harm.  (Doc. No. 106 at 25-26).  Finally, the Court determined that the balance of the equities and the public interest both weighed in favor of granting an injunction as to Arellano.  (Doc. No. 1-6 at 26-27).

---

[1] On November 14, 2016 Plaintiff Reza moved for a preliminary injunction similar to the one sought by Plaintiff Arellano.  (Doc. No. 28).  The City filed a statement of non-opposition to Reza's motion, noting that while "the stated legal basis for Reza's motion [was] flawed,"  it would not oppose Reza's motion for the "limited factual reason" that it did not believe that Reza's current gang participation was "more than nominal, passive, inactive, or purely technical."  (Doc. No. 39 at 2-3).  The Court granted Reza's motion for a preliminary injunction.  (Doc. No. 68).

## C.  The Court Certified a Class.

On January 4, 2018, the Court certified the following stipulated class pursuant to Fed. R. civ. P. 23(a) and 23(b)(2):

> "All persons, past and future, whom an authorized agent of the City of Los Angeles has notified, whether by personal service or otherwise, that they are subject to a Los Angeles Gang Injunction and who (a) were not named as individual civil defendants, or who were not substituted in as Doe defendants, in the civil nuisance abatement action to obtain that injunction, and (b) who do not have contempt proceedings for violation of such an injunction currently pending against them."

(Doc. No. 114 at 3).  The Court also adopted the parties' stipulated definition for "Los Angeles Gang Injunction" as follows:

> "An injunction obtained by the People of the State of California represented by the Los Angeles City Attorney's Office, against a criminal street gang and its members as defined in Section 186.22 of the California Penal Code, pursuant to a nuisance abatement action, including, but not limited to, a common law nuisance abatement action or those brought pursuant to Section 3479 of the California Civil Code."

(Doc. No. 114 at 4).

United States District Court
Central District of California

**D. By January 19, 2018 the City Revised Guidelines Regarding the Service and Enforcement of Los Angeles Gang Injunctions.**

On September 14, 2017, the Los Angeles Police Department, Office of Operations, issued "Operations Order No. 5," which contained the City's revised guidelines regarding the enforcement and service of the Los Angeles Gang Injunctions.  (Doc. No. 127-1).  These guidelines include a "Forbearance Period" for future-served individuals where a Los Angeles Gang injunction will not be enforced for 30 days after service.  (Doc. No. 127-1 at 3-4).  The Forbearance Period contemplates allowing "the served individual an opportunity to submit a Removal Petition or to go to civil court to challenge whether the served individual is an active member of the enjoined gang."  (Doc. No. 127-1 at 3).  The revised guidelines also contain a sunset provision, where the Los Angeles Gang Injunction would expire five years after service (as long as the served person is not re-served).  (Doc. No. 127-1).

In opposition to Plaintiff's Motion, the City has outlined its new policy for adjudicating active gang membership when requested by served individuals. (Doc. No. 127 at 5, ¶12).  Upon written request by any person served with a Los Angeles Gang Injunction, the City has committed to filing a motion with the Superior Court requesting an adjudication regarding that person's active gang membership.  (Id. at ¶12).  The City mailed letters to those previously served with Los Angeles Gang Injunctions explaining the City's policy changes by January 19, 2018.  (Id. at ¶14; Doc. No. 128 at 4, ¶14).

United States District Court
Central District of California

### E. Plaintiffs Now Move to Expand Arellano's Preliminary Injunction to the Entire Class.

Plaintiff now moves to expand the preliminary injunction granted to Arellano to the entire class.  (Doc. No. 115).[2]  Plaintiff argues that the same grounds for granting Arellano an injunction also apply to these class members.  (Id.)  The City opposes, arguing that the City's revised policies regarding the Los Angeles Gang Injunctions renders the Court's analysis in granting a preliminary injunction as to Arellano inapplicable to the present Motion.  (Doc. No. 116).

## II.   EVIDENTIARY ISSUE

The City objects to the January 29, 2018 declaration of Melanie Ochoa, filed in support of Plaintiffs' Motion.  (Doc. No. 119).  Ms. Ochoa's declaration summarizes a December 5, 2017 teleconference with the City's counsel regarding the City's revisions to the gang injunction policies in this case.  (See Doc. No. 115-1 at 3-4, ¶¶2-5).  The City argues that the description of the City's counsel's statements included in this declaration constitutes inadmissible hearsay.  (Doc. No. 119 at 2).  Plaintiffs argue that these statements are not hearsay since, pursuant to Fed. R. Evid. 801(d)(2)(C), they are "offered against an opposing party and . . . [were] made by a person whom the party authorized to make a statement on the subject."  The Court agrees with Plaintiffs.  The declaration is offered in support of Plaintiff's Motion, and thus against the City.  The statements at issue related to the City's policies directly at issue in this litigation, and they were made by the City's counsel, who is authorized to make statements on

---

[2] See Section IV.A below.

such topics.  Accordingly, the Court finds that these statements can be properly considered in support of Plaintiffs' Motion. United States v. Bonds, 608 F.3d 495, 503 (9th Cir. 2010) ("[L]awyers have implied authority to speak outside of court on matters related to the litigation.") (citing Hanson v. Waller, 888 F.2d 806, 814 (11th Cir.1989)); see also, Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings."); Republic of the Philippines v. Marcos, 862 F.2d 1355, 1363 (9th Cir. 1988) ("It was within the discretion of the district court to accept . . . hearsay for purposes of deciding whether to issue the preliminary injunction.").  The Court OVERRULES the City's evidentiary objection.

### III.    LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" and "is never awarded as of right."  Munaf v. Green, 553 U.S. 674, 689-90 (2007) (citations omitted).  Typically, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's "sliding scale" approach, however, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the

other two elements of the <u>Winter</u> test are also met." <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1132 (9th Cir. 2011). The "sliding scale" approach allows "district courts to preserve the status quo where difficult legal questions require more deliberate investigation." <u>Greene v. Wells Fargo Bank, N.A.</u>, No. C 15-00048 JSW, 2015 WL 3945996, at *1 (N.D. Cal. June 26, 2015); <u>see also</u> <u>Leiva-Perez v. Holder</u>, 640 F.3d 962, 971 (9th Cir. 2011) (holding that, under the "sliding scale" approach, a petitioner had "made a sufficiently strong showing of likely success on the merits" where he presented "a case which raises serious legal questions, or has a reasonable probability or fair prospect of success").

## IV.   ANALYSIS

### A. Scope of the Injunction

"Injunctive relief . . . must be tailored to remedy the specific harm alleged." <u>Lamb–Weston, Inc. v. McCain Foods, Ltd.</u>, 941 F.2d 970, 974 (9th Cir. 1991). "An overbroad injunction is an abuse of discretion." <u>Id.</u>

Plaintiffs move to expand the Arellano and Reza Preliminary Injunctions to "the entire class of similarly situated individuals." (Doc. No. 115 at 3). While the certified class includes "[a]ll persons, past and future," Plaintiffs indicate that they do not seek an expansion of the preliminary injunction to those who will be served by Los Angeles Gang Injunctions in the future. (<u>See</u> Doc. No. 123 at 8 ("Whether this new process for *future-served* individuals would satisfy the Constitution's requirements of procedural due process is not relevant to *this* Motion, however, because the City is very

United States District Court
Central District of California

clear that the procedures laid out in its Operations Order will *not apply at all* to any present member of the roughly 1,500-person class certified by the Court.  Its terms therefore are irrelevant in determining whether a preliminary injunction should be extended to them.") (emphasis in original); Doc. No. 115 at 18 ("[E]ach of the class members was subjected to the same deficient procedure prior to being made subject to enforcement of a Los Angeles Gang Injunction.")).  Accordingly, the Court construes Plaintiffs' Motion as seeking to extend the preliminary-injunction to class members who were served with Los Angeles Gang Injunctions before the City's adoption of its new pre-deprivation procedures on January 19, 2018.

As discussed below, the Court has determined that Plaintiffs are likely to establish that the City did not provide sufficient due process for class members who were served with Los Angeles Gang Injunctions before January 19, 2018, and that continued enforcement of the Los Angeles Gang Injunctions against these class members is likely to result in irreparable injury, and the balance of the equities weigh in their favor.  Accordingly, the Court finds that expanding the scope of the Preliminary Injunctions to class members served with Los Angeles Gang Injunctions before January 19, 2018 is reasonable.

### B.  Likelihood of Success

Courts "analyze a procedural due process claim in two steps.  The first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  United

9

States v. Juvenile Male, 670 F.3d 999, 1013 (9th Cir. 2012).  As discussed below, the Court finds that Plaintiffs have established a likelihood of success on the merits.

### 1. Interference with a Liberty or Property Interest

In its September 7, 2017 order granting a preliminary injunction to Arellano, the Court determined that the Echo Park Injunction "profoundly implicates liberty interests protected by the Due Process Clause, including rights of free movement, association, and speech, and that [the City's] conduct interferes with those protected liberty interests."  (Doc. No. 106 at 16 (quoting Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013)).

In its January 4, 2018 order, the Court found that Arellano was a typical class member, because he had allegedly suffered the same or similar due process injury as the proposed class.  (Doc. No. 114 at 11).  The Court also found that the Los Angeles Gang Injunctions (which includes the Echo Park Injunction) were "substantially similar" in that they "enjoin[] certain people from associating with allegedly 'known' gang members in public areas or in public view . . . [and] the majority . . .enjoin many similar, non-criminal activities."  (Doc. No. 114 at 8-9).  Plaintiff argues that the effect of these orders requires a finding that the same liberty interests that the Court found persuasive in granting the Arellano preliminary injunction are also implicated by the Los Angeles Gang Injunctions.  The City does not contest that the same liberty interests are implicated.

United States District Court
Central District of California

For these reasons, the Court finds that Plaintiffs have carried their burden to show the existence of a liberty interest with which the City's conduct interferes.

### 2.    Constitutional Sufficiency of the City's Procedures

Mathews v. Eldridge, 424 U.S. 319 (1976) identifies various factors for the Court to evaluate the constitutional sufficiency of the City's procedures:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 334-35; Id. ("'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'") (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

For the reasons discussed below, the Court finds that Plaintiffs have established that all of the Mathews factors weigh in their favor.

### a.    Private Interest

The Court previously held that Arellano's private interest was "truly weighty," since the Echo Park Gang Injunction prevented Arellano from participating in a wide variety of non-criminal activities with anyone the City

United States District Court
Central District of California

deemed an active gang participant.  (Doc. No. 106 at 19-20).  For the same

reason, Plaintiff has demonstrated that the Los Angeles Gang Injunctions

each contain the same "do not associate" provision that implicates these

same private interests.  (Doc. No. 115 at 16; Doc. No. at 4-6, ¶¶6-11). The

City does not contest this.[3]  Accordingly, the Court finds that the Los

Angeles Gang Injunctions "impose significant restrictions on Plaintiffs'

liberty" and implicate interests that are "truly weighty."  (Doc. No. 106 at 20;

see also, Vasquez, 734 F.3d at 1045).


**b.      Risk of Erroneous Deprivation**

In Vasquez, the Ninth Circuit found that "[d]etermining whether an

individual is an active gang member presents a considerable risk of error."

Id. at 1046.  The court noted that the "informal structure of gangs, the often

fleeting nature of gang membership, and the lack of objective criteria in

making the assessment," and found it problematic that Orange County's

process of assessing gang membership was an entirely "unilateral" and

"one-sided."  Id. at 1046-48.

---

[3] The City indicates that its new policy includes a automatic five-year sunset
provision that would apply to all Plaintiffs.  (Doc. No. 116 at 10; Doc. No. 127 at 4,
¶9(c)).  In Vasquez, the Ninth Circuit held that the "possible length of wrongful
deprivation is an important factor in assessing the impact of official action on the
private interests." 734 F.3d 1025, 1045 (9th Cir. 2013) (internal quotation marks
removed). For the same reason as discussed in the Court's order granting a
preliminary injunction for Plaintiff Arellano, the Court finds that this sunset
provision "does little to lessen the significance of the private interests at issue"
because "[f]ive years is a long time to be prevented from freely associating with
family members and friends in public."  (Doc. No. 106 at 19-20).

United States District Court
Central District of California

As in <u>Vasquez</u>, the City in this case makes its initial determination of active gang membership unilaterally and without input from alleged members.  <u>See</u> Doc. No. 20-1 at 15, 49-50 (describing procedures used to determine active gang membership); Doc. No. 20-2 at 94-95 (same).[4]  As noted in <u>Vasquez</u>, "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights."  <u>Am.-Arab Anti-Discrimination Comm. v. Reno</u>, 70 F.3d 1045, 1069 (9th Cir. 1995) (quoting <u>Joint Anti-Fascist Refugee Comm. v. McGrath</u>, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring)).  On September 7, 2017, the Court found that Arellano has shown that he is likely to establish that the risk of erroneous deprivation under the City's current procedures was considerable and the City's removal procedures did not adequately remedy the lack of pre-deprivation process. (Doc. No. 106 at 20-24).

The City argues that procedures it has adopted after the Court granted Arellano's preliminary injunction change the Court's due process analysis by reducing the risk of erroneous deprivation.  (Doc. No. 116 at 11).  The City asserts that a class member already served with a Los Angeles Gang Injunction will be able to obtain a hearing before the Superior Court by notifying the City in writing that she wishes to contest the applicability of the gang injunction.  The City would file a motion with the Superior Court seeking an adjudication of active gang membership.  This motion would include the evidence it has supporting a determination that the served

---

[4] The City's revised policies relate to the service and enforcement of the Los Angeles Gang Injunctions.  The City does not assert that it has changed the policy by which it makes the initial determination of gang membership.

United States District Court
Central District of California

person should be subject to the Los Angeles Gang Injunction.  The City argues that this post-deprivation remedy obviates the need to expand the Arellano preliminary injunction because it addresses the concerns the Court had with the policies governing the Echo Park Injunction.  (Doc. No. 116 at 14-16).[5]

The City is correct that its revised policy has remedied several aspects of the Echo Park Injunction that raised the risk of erroneous deprivation.  (See Doc. No. 116 at 14-15).  But while the revised policy is an improvement, it still places the burden on a class member to contest the applicability of the Los Angeles Gang Injunction in Superior Court.  Similar to the City's former "opt-out" policy, a class member served with a Los Angeles Gang Injunction before January 19, 2018 would still have to obtain an order from the Superior Court to be free of the Los Angeles Gang Injunction.[6]  Since it is apparent that the City's default policy for such a request is to contest the adjudication of gang membership in Superior Court (Doc. No. 127 at 5-6, ¶12),[7] an affected class member would still have to

---

[5] The City also highlights the pre-deprivation procedures that it adopted by January 19, 2018 will affect future-served class members.  As discussed above in Section IV.A, however, the Court has construed Plaintiffs' Motion to expand the preliminary injunction only to those class members served with the Los Angeles Gang Injunctions before January 19, 2018.  Accordingly, such pre-deprivation policy changes are not relevant for the purposes of re-solving the Motion.

[6] Counsel for the City explained at the February 26, 2018 hearing that the 30 day forbearance period only applies to future-served individuals.  Therefore, those already served with a Los Angeles Gang Injunction would be subject to the injunction unless and until the superior court issued a final order denying the City's motion for gang adjudication.

[7] The revised policy removes the formal protections contained in the "opt-out" process where the City would not to contest a motion for adjudication of ac-

United States District Court
Central District of California

face an adversarial, costly process to obtain removal from a Los Angeles Gang Injunction.

The City's revised policy also contemplates re-service of a Los Angeles Gang Injunction after the Superior Court issues an order regarding active gang membership in favor of the class member.  The City maintains that "an individual may not be re-served unless there is new or additional evidence that establishes beyond a reasonable doubt that an individual is an active gang member." (Doc. No. 116 at 15).  This determination is likely to include the same type of evidence the City previously indicated would justify re-service under the City's prior policy, however, including association with friends and family members who have gang affiliations.  Accordingly, even if a class member obtained an order from the Superior Court finding that he or she was not an active gang member, the class member "would still be effectively prevented from associating with friends and family members" the City deemed to be gang members.  (See Doc. No. 106 at 22).

For these reasons, the Court finds that the risk of erroneous deprivation weighs slightly in favor of expanding the preliminary injunction.

---

tive gang membership under certain circumstances.  Although the City suggests that "it is possible that in some instances" it would not file a motion for an adjudication of active gang membership and "notify the individual that he or she is no longer subject to enforcement of the gang injunction."  (Doc. No. 116 at 15 n. 6).  It is not clear what criteria the City would use to make this determination or if the City could re-serve an individual after making this determination, however.  As Plaintiffs point out, the City has "always retained the ability to remove individuals unilaterally" and "does not represent a change in the City's policy."  (Doc. No. 123 at 13).

United States District Court
Central District of California

### c.    Government's Interest

As the Court held in its September 7, 2017 order, "[i]n assessing the government interest at stake, the question is 'not whether [the City] has a significant interest in combating gang violence . . . but rather whether they have a significant interest in failing to provide [additional] process.'"  (Doc. No. 106 at 24 (quoting <u>Vasquez</u>, 734 F.3d at 1052).

The City argues that "the administrative and fiscal burdens associated with mandating post-deprivation process for a single named plaintiff (Arellano)" are different from the "burdens associated with mandating pre-deprivation process for approximately 1,450 individuals."  (Doc. No. 116 at 23).

The Court disagrees.  This argument is not persuasive in light of the City's revised policy.  If it was too great a fiscal or administrative burden for the City or the Superior Court to bear, the City could not commit to filing motions in Superior Court to adjudicate gang membership for any of the class members.  Furthermore, the fact that the City's revised policy includes pre-deprivation process for all future-served people is compelling evidence that it could have offered the existing class members a similar process before they were subject to the Los Angeles Gang Injunctions.  The Court recognizes that these burdens may be greater since so many people have already been subjected to a Los Angeles Gang Injunction, but the scale of this problem is entirely due to the City's failure to implement its revised policies earlier.

United States District Court
Central District of California

Nor is the Court persuaded by the City's suggestion that being forced to provide additional process for those currently subject to a Los Angeles Gang Injunction would pose a risk to public safety.  (Doc. No. 116 at 23 ("A class-wide injunction preventing enforcement of over one thousand persons with gang injunctions also would have a significantly larger impact on public safety than the impact this Court considered when entering the Arellano Order.")).  The City is not precluded from enforcing existing criminal laws or seeking a preliminary injunction against any particular class members that the City deems to be a risk to public safety.

For these reasons, the Court finds that the City has not established an administrative, fiscal, or other substantial burden that would prevent it from providing suspected gang members with additional process.

### C.  Likelihood of Irreparable Harm

Plaintiff must also demonstrate a likelihood of "irreparable harm in the absence of preliminary relief."  <u>Winter</u>, 555 U.S. at 20.

Just as with Arellano, because class members served with Los Angeles Gang Injunctions before January 19, 2018 have "succeeded in demonstrating a likelihood of success on the merits (i.e., that their [due process and] First Amendment rights are being violated), they have also succeeded in demonstrating a likelihood of irreparable harm."  <u>Occupy Fresno v. Cty. of Fresno</u>, 835 F. Supp. 2d 849, 870 (E.D. Cal. 2011); <u>see</u>

also Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").  The fact that these class members have not yet availed themselves of the City's new post-deprivation process is of little probative value.  Arc of Cal. v. Douglas, 757 F.3d 975, 990 (9th Cir. 2014) ("Although a plaintiff's failure to seek [a remedy] can imply the lack of need for speedy action . . ., such tardiness is not particularly probative in the context of ongoing, worsening injuries.") (citation omitted).

### D.  Balance of Equities and Public Interest

The final two Winter factors that Plaintiff must establish are that the "balance of equities tips in his favor, and that an injunction is in the public interest."  See Winter, 555 U.S. at 20.  The relevant question is not whether the City has an interest in combating gang violence, but whether the City's interest in quickly and efficiently serving class members with a gang injunction outweighs class members' interest in having due process before being subjected to such an injunction.  Vasquez, 734 F.3d at 1052.

The City argues that this Motion involves "very different burdens under a very different gang injunction policy" compared to those assessed by the Court when granting the Arellano preliminary injunction.  (Doc. No. 116 at 243).  The City argues that if is forced to adjudicate motions as to 1,450 previously-served class members, it will cause a fiscal and administrative burden on The City and the Los Angeles Superior Court.  (Id.) The City also argues that an expanded preliminary injunction "would have a

United States District Court
Central District of California

significantly larger impact on public safety than the impact this Court considered when entering the Arellano Order."  (Doc. No. 116 at 23).

As discussed above, these arguments are not persuasive in light of the City's revised policy.  The City has offered each of the existing class members the opportunity to have the Superior Court adjudicate their individual, active gang status by submitting a request in writing.  The City cannot both argue that it will adjudicate active gang status for any class member who requests it while arguing that it lacks the resources to honor such requests.

The City's argument that suspending enforcement of a Los Angeles Gang Injunction for these class members would endanger public safety is also unpersuasive. The City retains the ability to enforce existing criminal laws, and may seek a preliminary injunction against any particular class members that the City deems to be a risk to public safety.  Furthermore, the suggestion that every individual subject to a Los Angeles Gang Injunction necessarily poses an immediate threat to public safety is undercut by the City's new policy that contemplates an automatic suspension of the Los Angeles Gang Injunction for 30 days for any future-served class member who submits a written request.  As the Court found when entering the Arellano Preliminary Injunction, "the risks posed by gang violence" do not "create a public interest in allowing the continued use of constitutionally inadequate procedures."  (Doc. No. 106 at 26).

United States District Court
Central District of California

It stands to reason that the burdens facing the City are likely to be greater if the preliminary injunction is extended to the approximately 1,450 people already served with a Los Angeles Gang Injunction than the burdens considered by the Court when issuing the preliminary injunction for Plaintiff Arellano.  On the other side of the balance, however, is the greater aggregate interest of the 1,450 people who were also not provided due process before being subjected to a Los Angeles Gang Injunction.

The Court finds that the balance of the equities tips in favor of expanding the preliminary injunction.  Just as with Arellano, Plaintiffs have established that the City's unilateral procedures for determining gang membership for class members served with Los Angeles Gang Injunctions before January 19, 2018 include a considerable risk of erroneous deprivation.  The Court finds that the additional burdens identified by the City do not outweigh Plaintiffs' interest in having due process being fore being subjected to a Los Angeles Gang Injunction.

### E.  Issuance of Bond

Typically, a plaintiff may not be granted a preliminary injunction without first posting security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  Among other things, this requirement both discourages "parties from requesting injunctions based on tenuous legal grounds" and "assures district court judges that defendants will receive compensation for their damages in

cases where it is later determined a party was wrongfully enjoined."
Nintendo of America, Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1037
(9th Cir. 1994).  "The district court retains discretion 'as to the amount of
security required, if any.'" Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir.
2011) (citing Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009)
(emphasis in original)).

Neither the City nor Plaintiffs have briefed whether the Court should
require a security in this case or what type of a payment would be
appropriate to protect the City's interests.  Nevertheless, Plaintiff's motion is
not based on "tenuous legal grounds," and the City's status as an
institutional defendant lessens the need for an assurance of compensation
in case the Court's decision to enter an injunction turns out to be wrong.
Accordingly, the Court finds that a bond is not necessary here.  See Elliott v.
Kiesewetter, 98 F.3d 47, 60 (3d Cir. 1996) ("Where the balance of . . .
equities weighs overwhelmingly in favor of the party seeking the injunction,
a district court has the discretion to waive the Rule 65(c) bond
requirement.").

///
///
///
///
///
///
///

21

## V.   CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' Motion to the extent that it seeks to extend the Arellano Preliminary Injunction to class members served with a Los Angeles Gang Injunction before January 19, 2018.

**IT IS SO ORDERED.**

Dated:     3/15/18

Virginia A. Phillips

Chief United States District Judge