PETER BIBRING (SBN 223981)
*pbibring@aclusocal.org*
MELANIE P. OCHOA (SBN 284342)
*mpochoa@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
LAURA D. SMOLOWE (SBN 263012)
*laura.smolowe@mto.com*
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Counsel for Plaintiffs*
(Additional Counsel for Plaintiffs on Following Page)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

YOUTH JUSTICE COALITION, a non-profit organization; et al.,

*Plaintiffs*,

vs.

CITY OF LOS ANGELES; et al.,

*Defendants*.

Case No.: 2:16-cv-07932-VAP-RAO

**UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Date: November 16, 2020
Time: 2:00 PM
Crtrm: 8A; Hon. Virginia A. Phillips

[Declaration of Peter Bibring (and attached exhibits) and Proposed Order Filed Concurrently Hereto]

JOSHUA GREEN (SBN 293749)
*jgreen@urbanpeaceinstitute.org*
THE CONNIE RICE INSTITUTE FOR URBAN PEACE
1910 West Sunset Boulevard
Suite 800
Los Angeles, California 90026
Telephone: (213) 404-0124
Facsimile: (213) 402-2843

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 16, 2020, or on such date as may be specified by the Court, in the courtroom of the Honorable Virginia A. Philips, United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California, Plaintiffs Youth Justice Coalition, Peter Arellano, and Jose Reza, for themselves and on behalf of all class members, hereby move for an order preliminarily approving the terms of the proposed class action settlement reached with Defendant, and to authorize provision of notice to the class members as specified in the parties' proposed settlement agreement.

This motion for preliminary approval (the "Motion") is unopposed and made on the grounds that the proposed settlement is fair, adequate, and reasonable, and that the class notice fairly and adequately informs the class members of the proposed settlement, their right to object, and the date and time of the final approval hearing.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Peter Bibring and the exhibits attached thereto, all of the papers and pleadings on file in this action, and any further evidence presented to the Court at the time of the hearing.

DATE: October 15, 2020

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

By: /s/ Melanie P. Ochoa
Melanie P. Ochoa

*Counsel for Plaintiffs*

## TABLE OF CONTENTS


I. Introduction....1
II. Background....2
a. Facts Alleged by Plaintiffs....2
b. Procedural History....5
III. Terms of Settlement....8
a. The Settlement Class....8
b. Settlement Terms....9
c. Notice to Settlement Class....12
d. Attorneys' Fees and Costs....12
IV. The Court Should Preliminarily Approve the Settlement....12
a. The Court Should Grant Preliminary Certification to the Settlement Class....12
b. The Relief Provided by the Settlement is Fair, Reasonable, and Adequate....14
i. Class Representatives and Class Counsel Have Adequately Represented the Class....15
ii. The Proposal Was Negotiated at Arm's Length....15
iii. All Class Members Are Treated Equitably....16
iv. Relief is Adequate Given the Costs, Risks, and Delay of Trial and Appeal....16
v. All Members of the Settlement Class Will Receive the Full Relief to Which They Are Entitled....18
c. The Proposed Attorney's Fees Are Reasonable Under the Circumstances....19
d. The Terms of the Settlement Agreement are Fair, Adequate, and Reasonable....20

V. The Process for Distribution of Class Notice is Reasonably Calculated to Reach Class Members........21
VI. Conclusion........24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bluetooth Headset Products Liability Litigation*,
654 F.3d 935 (9th Cir. 2011) ....................19, 20

*Carr v. Tadin, Inc.*,
51 F. Supp. 3d 970 (C.D. Cal. 2014) ....................15

*City of Colton v. American Promotional Events, Inc.*,
281 F. Supp. 3d 1009 (C.D. Cal. 2017) ....................15

*City of Riverside v. Rivera*,
477 U.S. 561 (1986) ....................19

*Handschu v. Special Servs. Div.*,
787 F.2d 828 (2d Cir. 1986) ....................23

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................13, 20

*Hassell v. Bird*,
247 Cal. App. 4th 1336 (2016) ....................10

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ....................5

*Mendoza v. Tuscon School Dist. No. 1*,
623 F.2d 1338(9th Cir. 1980) ....................23

*Murillo v. Pacific Gas & Elec. Co.*,
266 F.R.D. 468 (E.D. Cal. 2010) ....................14

*People v. Big Top Locos, et al.*,
Case No. BC511444 (L.A. Sup. Ct. Sept. 23, 2013) ....................6

*People ex rel. Reisig v. Acuna*,
182 Cal. App. 4th 866 (2010) ....................3

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) ....................19, 21

*Rota v. Brotherhood of Ry., Airline and S.S. Clerks*, 64 F.R.D. 699 (1974) ........ 23

*Stinson v. City of New York*, 256 F. Supp. 3d 283 (S.D.N.Y. 2017) ........ 20

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........ 14

*U.S. v. Chevron U.S.A.., Inc.*, 380 F. Supp. 2d 1104 (N.D. Cal. 2005) ........ 15, 16

*Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013) ........ 4, 5

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956 (3d Cir. 1983) ........ 23

**Statutes**

Cal. Penal Code §§ 186.20–186.33 ........ 2

California Code of Civil Procedure Sec. 585 ........ 10

Penal Code § 166(a)(9) ........ 4

**Other Authorities**

First Amendment ........ 1

Federal Rule of Civil Procedure 23(a) ........ 12

Federal Rules of Civil Procedure 23(b)(2) ........ *passim*

Federal Rule of Civil Procedure 23(e)(1)(B) ........ 20

Federal Rule of Civil Procedure 23(e)(2) ........ 2, 14

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. Introduction

Plaintiffs in this case challenged the practice by the City of Los Angeles ("City") of enforcing so-called "gang injunctions"—civil injunctions prohibiting otherwise lawful behavior by active members of street gangs on grounds that the gangs are causing a public nuisance—against individuals the City alleged to be members of those gangs, without providing those individuals notice and the opportunity to contest this designation before being made subject to its terms. In so doing, Plaintiffs maintain, the City violated procedural due process by severely limiting the basic freedoms of the accused individuals, including their freedom to travel within their own neighborhood, publicly associate with friends or family, or engage in First Amendment expressive activity, and subjecting them to criminal penalties for failure to adhere to these restrictions—all without first providing them with a meaningful opportunity to contest the City's allegations that they were, in fact, active gang members properly subject to an injunction secured against the gang. City maintains that such actions did not violate due process.

Following substantial pre-trial litigation, including plaintiffs and defendants negotiating an unopposed motion to certify an injunction-only class pursuant to Federal Rule of Civil Procedure 23(b)(2) and plaintiffs obtaining preliminary injunctions prohibiting the City from enforcing its gang injunctions against the two individually-named plaintiffs, and ultimately the entire plaintiff class, the parties engaged in nearly two years of extensive arms-length negotiations to craft a constitutionally-adequate pre-deprivation process for all individuals accused of being active gang members to challenge that designation *before* enforcement of a gang injunction against them. Plaintiffs now respectfully request that the Court issue preliminary approval of the terms of the settlement, order class notice, and set a hearing for any objections by class members and final approval of the settlement

under Rule 23(e)(2).

The settlement ultimately agreed upon by the parties ensures that every existing member of the Settlement Class—namely those the City had already subjected to one of its existing gang injunctions without providing pre-deprivation process—will no longer be subject to an injunction absent a constitutionally-adequate pre-deprivation procedure, thus making permanent the terms of the preliminary injunctions. The settlement provisions also ensure that any future class members—namely individuals the City seeks to enforce gang injunctions against after this settlement agreement is finalized—will be provided this pre-deprivation process as well. For three years following the termination of this action, the settlement also requires the City to provide Plaintiffs' counsel with the contact information of future class members, and provide future class members with Plaintiffs' counsel's information, to ensure that they are connected with resources to navigate the City's new process. This settlement therefore provides full relief to the entire Settlement Class and should also minimize the need for future litigation regarding the minimum procedural requirements for a constitutionally-adequate procedure for enforcing gang injunctions against individuals not initially party to the underlying litigation in which they were sought.

## II. Background

### a. Facts Alleged by Plaintiffs

Plaintiffs contended that the City's process of enforcing gang injunctions against individuals alleged to be active gang members who were not a party to the underlying action where the gang injunction was obtained, nor provided with any other pre-enforcement process to contest its applicability, violated those individuals' due process rights under the federal and state constitutions. Gang injunctions are orders obtained in civil public nuisance actions in state court against alleged gang entities, which enjoin the activities of the gang in a particular area known as a "Safety Zone." *See* Cal. Penal Code §§ 186.20–186.33; *People ex*

*rel. Reisig v. Acuna*, 182 Cal. App. 4th 866 (2010). At the time that this lawsuit was filed, the City had at least forty-six gang injunctions against seventy-nine alleged gangs. (Bibring Decl., Ex. 1 Settlement Agreement (hereinafter "Settlement Agreement") at Ex. C.) In nearly all of the forty-six actions seeking a gang injunction, the alleged gang named as a defendant never appeared in court, and the City obtained a default judgment against the gang and an order granting permanent injunctive relief based on that default.[1] Armed with the injunction issued by default against the gang, the City then personally served the injunction on people who police and prosecutors internally determined were "active participants" in the gang.[2] (Dkt. 20, Declaration of Catherine Wagner, Ex. A, Office of the City Attorney, City of Los Angeles, *Gang Injunction Program Guidelines* (Nov. 2009) ("2009 Guidelines") at 7-8; *id.*; Ex. E, Deposition of Allan Nadir (Sept. 16, 2014) ("Nadir Depo.") 46:8-12, 48:12-16.) Upon service, the City contended that the recipient was immediately subject to the terms of the injunction, and subject to arrest and prosecution for violating its terms. Once served, the individual could only choose between abiding by the restrictions of the injunction and refraining from prohibited behaviors—including otherwise legal conduct such as associating with family and friends in public spaces—or risking arrest and prosecution for contempt of court, a misdemeanor punishable by up to six months

---

[1] In one of the actions, *People v. 204th Street, et al*., Los Angeles Super. Ct., No. BC381942 (Dec. 7, 2007), the City filed a single suit against two separate gangs. While the City was granted an injunction by default against one gang, an attorney appeared on behalf the other, ultimately resulting in an order granting the injunction after an adversarial proceeding.

[2] The Program Guidelines allowed for service on a suspected gang member only when "there is documented evidence establishing beyond a reasonable doubt that: (a) the suspected gang member is, in fact, a gang member; and (b) his or her participation in the enjoined gang during the past five (5) years has been more than nominal, passive, inactive, or purely technical." Dkt. 20, Declaration of Catherine Wagner, Ex. A, 2009 Guidelines at 7-8.

in jail and a fine of up to $1,000 under Penal Code § 166(a)(9).[3] *See* 2009 Guidelines, App. A at 24-26.

The City's decision regarding who to serve with a gang injunction was entirely one-sided. As in many jurisdictions, the City's decision regarding who to serve with a gang injunction was determined solely by LAPD officers and employees in the City Attorney's (or District Attorney's) Office based on criteria that the City purports are indicative of gang membership; the individual subject to the injunction played no part and had no knowledge of the facts used to establish their alleged gang membership. As of 2014, approximately 9,400 people had been served with Los Angeles gang injunctions, the vast majority through this process. (Dkt. No. 42, Decl. of Arturo Martinez, ¶ 28.) Plaintiffs Arellano and Reza were both made subject to a gang injunction by the City through this process.

Plaintiffs argued that this lack of pre-deprivation process had already been deemed unconstitutional in *Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013), which held illegal the enforcement of a gang injunction against individuals who had not been provided adequate process to contest the allegation that they were members of the gang. *Vasquez* involved practices of the Orange County District Attorney's ("OCDA's") Office, but the gang injunction at issue in that case had terms indistinguishable from the City's gang injunctions, and individuals determined by the OCDA to be gang members were made subject in the same manner—*i.e.* immediately after service of the injunction without any pre-deprivation process to adjudicate whether they were active members of an enjoined gang. The court in *Vasquez* held that the OCDA and City of Orange Police Department had violated the due process rights of individuals who were subjected to the terms of a gang injunction without having been provided with a pre-deprivation hearing or other

[3] The instant lawsuit appears to be the first case in which a served individual challenged the constitutional adequacy of the City's process.

opportunity by which they could contest their participation in the gang. The court applied the test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether the pre-deprivation process satisfied due process and found that the procedures afforded the individuals accused of being gang members prior to the deprivation of their liberty interests were not constitutionally sufficient. It reasoned that the gang injunction at issue was "extraordinarily broad, interfering with a wide swath of Plaintiffs' protected liberty interests, including: family and social relationships; educational and professional opportunities; freedom of movement; and all manner of participation in civic life." *Id.* at 1053. The court also found that given the "wide variety of information that may be deemed relevant, and the difficulty of reasonably precise measurement in assessing whether someone is an active gang member, the risk of error is considerable when such a determination is made without any participation by, or opportunity to provide evidence on behalf of, the individual served." *Id.* at 1047. Based on these and other factors, the *Vasquez* court concluded that defendants' enforcement of the gang injunction in that case had "violated Plaintiffs' rights under the Due Process Clause." *Id.* at 1053.

Plaintiffs argued that the holding in *Vasquez* applied to the City's gang injunction program and compelled the City to cease enforcement against any individual not named as a defendant in the underlying proceeding where the injunction was obtained. City disputed the applicability of *Vasquez* and contended that its process did not violate the Plaintiffs' due process rights.

**b. Procedural History**

On October 26, 2016, Plaintiffs filed a lawsuit against City, Case No. 16-CV-07932-VAP (RAO), alleging that City violated procedural due process under the United States and California Constitutions by not naming Plaintiffs as defendants in the civil actions in which gang injunctions were issued or otherwise affording Plaintiffs an opportunity to contest the allegation that they were active members of the criminal street gang subject to the injunction before being served

with and made subject to enforcement of the gang injunction. (Dkt. 2.) On October 31, 2016, Plaintiffs filed a motion for preliminary injunction seeking to prohibit City and its agents and employees from enforcing gang injunctions against Plaintiffs Peter Arellano and Jose Reza. (Dkt. 12.) City opposed the motion for preliminary injunction as to Arellano and filed a notice of non-opposition as to Reza. (Dkts. 39 & 40.)

The parties stipulated to, and the Court granted, a stay of the proceedings on January 27, 2017 to allow the parties to pursue settlement negotiations with the help of a mediator. (Dkt. 69.) After the parties were unable to reach an agreement, the stay was lifted on July 3, 2017. (Dkt. 86.)

The Court entered a preliminary injunction on September 7, 2017, barring City from enforcing the Judgment Granting Permanent Injunction in *People v. Big Top Locos, et al.*, Case No. BC511444 (L.A. Sup. Ct. Sept. 23, 2013) against Plaintiff Arellano, on the ground that he was likely to succeed on his claim that "the risk of erroneous deprivation under the City's current procedures [for subjecting individuals to a gang injunction] is considerable and the City's removal procedures do not adequately remedy the lack of pre-deprivation process." (Dkt. 106, p. 24.)

Plaintiffs filed a motion to certify the class and, after negotiations between counsel, the Parties filed a Joint Stipulation re Class Certification and Amended Class Definition. (Dkt. 112.) The Court approved the Joint Stipulation, certifying the case as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, with the following class definition:

> All persons, past and future, whom an authorized agent of the City of Los Angeles has notified, whether by personal service or otherwise, that they are subject to a Los Angeles Gang Injunction and who (a) were not named as individual civil defendants, or who were not substituted in as Doe defendants, in the civil nuisance abatement action to obtain that injunction, and (b) who do not have contempt

> proceedings for violation of such an injunction currently pending against them.

(Dkt. 114.) The Court also appointed the ACLU Foundation of Southern California, The Connie Rice Institute for Urban Peace, and Munger, Tolles & Olson LLP (collectively, "Plaintiffs' Counsel") as class counsel.

On January 29, 2018, Plaintiffs filed a Motion to Expand Preliminary Injunctions Entered on Behalf of Plaintiffs Peter Arellano and Jose Reza to the Entire Class. (Dkt. 115.) The City opposed this motion. (Dkt. 116.) Shortly before the Plaintiffs filed this motion, the City adopted a number of changes to its gang injunction program that would have provided some class members—only those to be served in the future—with the option of seeking a determination of active gang member status prior to having the injunction enforced against them. (Dkt. 117 at ¶¶7-12.) The City's policy changes did not, however, provide any pre-deprivation process to class members currently subject to the City's gang injunctions. On March 15, 2018, the District Court granted Plaintiffs' motion and extended the Arellano Preliminary Injunction to class members served with a Los Angeles Gang Injunction before January 19, 2018, on the basis that "Plaintiffs are likely to establish that the City did not provide sufficient due process for [these] class members . . . and that continued enforcement of the Los Angeles Gang Injunctions against these class members is likely to result in irreparable injury." (Dkt. 132, p. 9.)

In April 2018, following the Court's extension of the preliminary injunction to the entire class, the City sent letters to all existing class members informing them of the Court's ruling and telling them the City would temporarily cease enforcement of the injunctions against them, until further notice. (Settlement Agreement at ¶9.b.) Several months later, the City sent a second letter to all existing class members informing them that it would no longer enforce the previously-served gang injunctions against them, thus releasing them completely.

(Settlement Agreement at ¶9.c.) While the City mailed these letters to the most recent addresses provided by the class members, it informed Plaintiffs' counsel that approximately 20-30% of the letters came back undeliverable or indicating the address was no longer valid. (Bibring Decl. at ¶9.)

On April 13, 2018, City filed a Notice of Appeal of the District Court's March 15, 2018 Order for a class-wide preliminary injunction. (Dkt. 134.) Soon thereafter, the parties agreed to participate in the Ninth Circuit Mediation process. After considering numerous different proposals, and engaging in discussions both with and without the assistance of the mediator, the parties agreed to the terms in the Settlement Agreement to provide relief to both existing and future class members in December 2019. The settlement, including an agreement regarding notice of settlement to the class and attorney's fees and costs, was approved by Los Angeles City Council and executed by the parties in January 2020. (Settlement Agreement, p. 20; Bibring Decl. at ¶¶ 10-11.)

## III. Terms of Settlement

The parties' settlement is detailed and ensures that all people the City contends are active gang members subject to a gang injunction will have a meaningful pre-deprivation process before being subjected to an injunction's restrictive terms. The major terms of the settlement are summarized below.

### a. The Settlement Class

The parties have agreed that the Settlement Class will be defined as follows:

> All persons, past and future, whom an authorized agent of City has notified, whether by personal service or otherwise, that they are subject to a Gang Injunction and who were not named as individual civil defendants, or who were not substituted in as Doe defendants, in the civil nuisance abatement action to obtain that injunction.

(Settlement Agreement at ¶13.) As further discussed below, the Settlement Class's definition is nearly identical to the already certified class, but does not carve out

individuals with a currently pending contempt proceeding for violation of a gang injunction. In that sense, the Settlement Class is slightly broader to clarify that a past or pending contempt proceeding for violating an injunction's terms does not preclude any individual from the procedural protections provided under the Settlement Agreement.

**b. Settlement Terms**

Through the Settlement Agreement, the City has agreed to policy changes to ensure that any individual accused of being a gang member is provided a constitutionally adequate process to challenge that accusation before being made subject to a gang injunction. Under the new policy,

> City will enforce a Gang Injunction against an individual only if that individual was named as a defendant in the civil injunction proceeding (or was otherwise joined in the civil injunction proceeding, as a party, real party in interest, or otherwise, such that the person received all the same procedural rights as a defendant under the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws) and is made subject to enforcement of the gang injunction by a judgment or court order.

(Settlement Agreement at ¶21.) This new policy applies irrespective of whether an individual was previously made subject to one of the City's gang injunctions under its prior policy. Indeed, all existing class members—*i.e*. those served with gang injunctions under the City's prior policy—have already been notified that they were released from the terms of the previously-served injunctions. If the City chooses to assert that any of those individuals are currently active gang members subject to an existing gang injunction, they will be afforded the same treatment as those who were not previously subject to a gang injunction.

If the City seeks to add an individual to an existing injunction, the City will

personally serve on them a motion to modify (or a similar document)[4] to add them as a party or real party in interest in the underlying gang injunction proceeding. The documents served will include the factual basis and evidence the City intends to rely upon to claim an individual is an active gang member. (Settlement Agreement at ¶26.) All individuals will therefore have the opportunity to challenge this allegation in state court with all of the procedural protections—including access to discovery—available in any civil proceeding in Superior Court. (Settlement Agreement at ¶26.) Even if the individual does not personally appear to challenge the City's allegation, the rules under California Code of Civil Procedure Sec. 585 requires a court to grant a judgment—even in default—only if that judgment is supported by admissible evidence. Plaintiffs' counsel believes that this will require the Superior Court to independently review the City's motion to ensure there is sufficient factual basis for designating a person a gang member before they are made subject to a gang injunction. *See id*. (the "court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated in the complaint . . . as appears by the evidence to be just."); *Hassell v. Bird*, 247 Cal. App. 4th 1336, 1344 (2016) (recognizing this requirement applies to requests for both monetary and injunctive relief). If the City obtains new gang injunctions, City will name as a defendant in that action any individual against whom City seeks to enforce the new gang injunction. In addition, the terms of the new injunction may specify the procedure in which additional people may be added as defendants in that action to ensure that they shall be provided with the same due process rights afforded any defendant in a civil proceeding. (Settlement Agreement at ¶23.)

---

[4] The Settlement Agreement does not specify the exact form that a request to extend an injunction to an individual on the basis of their alleged membership in an enjoined gang must take because the parties are not entirely certain exactly what procedure state courts will require to reopen and add parties to cases that have been closed in some instances for over a decade.

The Settlement Agreement also limits the City's enforcement of gang injunctions against Settlement Class members to five years after a court's determination—via default judgment or otherwise—that the individual is an active gang member. (Settlement Agreement at ¶37.) The existing gang injunctions do not expire, and only a single injunction previously limited the duration an individual is subject to an injunction after personal service. As a result, each of the injunctions could be enforced permanently against enjoined persons. The Settlement Agreement's five-year maximum enforcement against an individual after a determination of active gang participation does not prohibit the City from seeking a subsequent order by a court binding an individual to a gang injunction after those five years have elapsed based on new or additional evidence of active gang participation. (*Id.*) In such cases, a new determination of active gang participation would result in a new enforcement period of up to five years.

The Settlement Agreement also includes some provisions to assist members of the Settlement Class in this process. For the first three years, the City will provide a letter that includes the contact information of Plaintiffs' Counsel and explanatory information about the process at the time that it serves either a complaint seeking a new gang injunction or a motion to modify an existing gang injunction (or similar document). For this same period it will also provide to Plaintiffs' Counsel the names and contact information of those served. This will allow Plaintiffs' Counsel and Youth Justice Coalition to connect Settlement Class members with resources to help them navigate this process, and potentially mount a defense to the City's allegations.

The Settlement Agreement also preserves for Settlement Class members any individual claims and forms of relief, including claims for damages, arising from unconstitutionally being made subject to a gang injunction that are different from the specific due process claims and injunctive relief sought in this litigation. (Settlement Agreement at ¶41.) Additionally, recognizing that the fact that an individual was subject to a gang injunction may be deemed relevant in other

proceedings, the Settlement Agreement also retains for Settlement Class members the right to raise the same arguments as in this litigation regarding the unconstitutionality of the injunction's enforcement where applicable. (Settlement Agreement at ¶41.)

**c. Notice to Settlement Class**

The proposed notice to the Settlement Class involves driving Settlement Class members to the websites of the ACLU Foundation of Southern California, the Connie Rice Institute for Urban Peace, and the Youth Justice Coalition, where the full notices will be posted. (Settlement Agreement at ¶49.a.) Plaintiffs will retain a marketing firm to provide announcements of the settlement with links to the notice through a 4-week advertising campaign. (Settlement Agreement at ¶49.c.) The campaign will include 20 outdoor Poster Outdoor Boards placed where they will be visible to class members and a social media advertising campaign geographically-targeted for class members in injunction areas. (Settlement Agreement at ¶49.c.)

In addition, Youth Justice Coalition will announce the settlement on its Facebook, Twitter, and Instagram feeds, as well in email sent to their distribution list of over 10,000 recipients. (Settlement Agreement at ¶49.b.) Youth Justice Coalition will also distribute announcements and notice to gang intervention workers and at community meetings. (Settlement Agreement at ¶49.b.)

**d. Attorneys' Fees and Costs**

As part of the Settlement Agreement, City has agreed to pay $1,750,000 in attorneys' fees and costs. (Settlement Agreement at ¶45.)

## IV. The Court Should Preliminarily Approve the Settlement

**a. The Court Should Grant Preliminary Certification to the Settlement Class**

A court may certify a settlement class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have also been met. *See* Fed. R. Civ. P. 23;

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, the Court has already certified, under Rule 23(b)(2), a class nearly identical to the proposed Settlement Class, on the basis that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); Dkt 114. The Settlement Class's definition is broader than the already certified class, in that it includes "[a]ll persons, past and future, whom an authorized agent of City has notified, whether by personal service or otherwise, that they are subject to a Gang Injunction" and were not party to the underlying action where the injunction was obtained, but does not exclude individuals with a pending contempt proceeding. (Settlement Agreement ¶13.) As a result, it captures additional individuals who have been treated by the City in a manner identical to the original class members.

Practically, this amendment may not alter the number of individuals who are members of the Settlement Class, as the class-wide preliminary injunction has precluded the City from enforcing its injunctions against individuals who did not receive pre-deprivation process since March 15, 2018. (Dkt. 132.) Thus, there should be few, if any, individuals who have a contempt proceeding pending against them for a gang injunction violation at this time. Nonetheless, to the extent the original class definition could have excluded individuals who were denied due process prior to being made subject to an injunction, or made it unclear to class members who were previously charged with contempt whether the Settlement Agreement applies to them, this minor alteration removes any basis for confusion and ensures that no injured party is excluded from relief.

Because the Court already found that a class that is not meaningfully different from the Settlement Class meets the requirements of Rule 23, the parties respectfully propose that certification of the Settlement Class is likewise appropriate.

**b. The Relief Provided by the Settlement is Fair, Reasonable, and Adequate**

The Court should grant final approval of a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). At preliminary approval, the court "need only determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)). If the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," a court should grant preliminary approval of the proposed settlement and direct notice to the class. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citations omitted). Here the proposed settlement is well within the realm of possible approval, as it provides full relief to the Settlement Class without requiring a waiver of any individual claims its members may have based on allegations or seeking remedies different than the Action.

Under the 2018 amendments to Rule 23, courts are directed to consider the following factors to determine whether a class action settlement is potentially fair: (1) class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) all class members are treated equitably; and (4) the relief is adequate given (a) the costs, risks and delays of trial and appeal; (b) the effectiveness of distributing class relief; (c) the terms of proposed attorney's fees; and (d) the terms of the Settlement Agreement. Fed. R. Civ. P. 23(e)(2). Considering these factors, the Settlement Agreement is fair, reasonable, and adequate and should be preliminarily approved.

**i. Class Representatives and Class Counsel Have Adequately Represented the Class**

Both Class Counsel and the Class Representatives adequately represented the Settlement Class. This is evinced most readily by the fact that Class Counsel and the Class Representatives obtained full, albeit preliminary, relief for members of the Settlement Class—present and future—prior to settlement. While there was minimal discovery in this Action, Plaintiffs' counsel engaged in extensive pre-litigation factual research, including reviewing discovery produced in related gang injunction litigation, such as the current and historical gang injunction policies of the City Attorney's Office and depositions of City employees. (Bibring Decl., at ¶3.) *Cf. Carr v. Tadin, Inc*., 51 F. Supp. 3d 970, 976 (C.D. Cal. 2014) (finding that plaintiffs had "significant information going into the settlement negotiations" where no formal discovery was exchanged, but plaintiffs engaged in substantial informal discovery). The factual and legal research conducted by Plaintiffs' counsel ultimately led to three successful motions for preliminary injunctive relief, including class-wide relief freeing all members of the Settlement Class from gang injunction restrictions. The Class Representatives also dutifully fulfilled their obligations by advising Plaintiffs' counsel during the course of settlement negotiations. Through their combined efforts, the Settlement Agreement makes permanent the temporary relief initially obtained by Plaintiffs' counsel, and the City's adoption of new procedures for enforcement of gang injunctions ensures that no person may be subjected to a gang injunction absent sufficient due process again.

**ii. The Proposal Was Negotiated at Arm's Length**

The negotiation process was "fair and full of adversarial vigor," reflecting an arms-length negotiation process. *City of Colton v. American Promotional Events, Inc*., 281 F. Supp. 3d 1009, 1012 (C.D. Cal. 2017) (*quoting U.S. v. Chevron U.S.A.., Inc*., 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005). The parties arrived at the final Settlement Agreement after nearly two years of sustained negotiations assisted by a

Ninth Circuit mediator. (Bibring Decl. at ¶6.) These negotiations included discussing—and ultimately rejecting—various proposals that would have provided Settlement Class members with different mechanisms for challenging the City's allegations of gang membership aside from the full civil proceedings provided for in the Settlement Agreement. (Bibring Decl. at ¶6.) This outcome was obtained after an earlier failed attempt at settlement while the proceedings were stayed to allow for several months of negotiation. (Bibring Decl. at ¶6.)

Plaintiffs' counsel also discussed the terms of proposed settlements with named and unnamed class members, including members of the Youth Justice Coalition, to get feedback on these proposals as well as the final terms of the Settlement Agreement. (Bibring Decl. at ¶6.) The City conferred with many different City representatives in the negotiation process, some of whom also communicated directly with Class Counsel in negotiation sessions, and the final settlement was approved by the Los Angeles City Council. (Bibring Decl. at ¶6.) *Cf. Chevron*, 380 F. Supp. 2d at 1112 (finding that after months' long negotiation process, "a considerable amount of time and resources was invested by both sides in order to come to a settlement that satisfactorily met each party's objectives . . . consistent with an adversarial and non-collusive process").

**iii. All Class Members Are Treated Equitably**

All members of the Settlement Class, including future class members and the class representatives, receive the same relief: being freed from the City's gang injunctions, and, if the City attempts to make them subject to a gang injunction in the future, all class members will receive the same, full due process before being made subject to its terms. (Settlement Agreement, ¶¶21-27.)

**iv. Relief is Adequate Given the Costs, Risks, and Delay of Trial and Appeal**

As recognized by the Court in its orders granting preliminary injunctions, Plaintiffs were highly likely to succeed on the merits of their case. If this case

proceeded to trial, Plaintiffs likely would have won an order permanently enjoining the City from enforcing its gang injunctions against any individuals who were not provided a pre-deprivation process for challenging City's allegation that they were active members of an enjoined gang. This ruling would not, however, preclude City from adopting a new method, with some additional process, for enforcing its injunctions against those who were not named as defendants in the original action. If the City provided additional pre-deprivation process—which it had begun to do during the course of the litigation—the case law is unclear on what the precise contours of that process the constitution requires. Therefore, while Plaintiffs' counsel were likely to succeed in securing some pre-deprivation process for the class, it was possible that substantial future litigation would have been necessary and uncertain if the City adopted a process that had some of the hallmarks of due process but Plaintiffs believed that process remained constitutionally inadequate.

The Settlement Agreement fixes the process by which the City will subject new individuals to gang injunctions: requiring the City to either name them as defendants or make a motion in the state court civil case that will give class members the same rights as parties under California court rules and civil procedures. This agreed-upon process not only reduces the risk of future litigation on the issue of due process after the City's new process has been implemented, but provides class members with the robust procedural protections of state civil court. In the complaint, Plaintiffs only sought a prohibitory injunction to preclude enforcement of the City's existing, constitutionally infirm process; it did not seek a mandatory injunction to require the City to adopt a specific process going forward. Through this settlement, Plaintiffs retained the complete relief granted under the preliminary injunctions for the existing class members and also worked with the City to ensure that it adopted a new, constitutionally adequate process if it chose to go forward with its gang injunction program. Plaintiffs' counsel also secured an agreement for the City to provide Plaintiffs' counsel with contact information of people made subject to gang

injunctions in the future, and to provide them with contact information for Plaintiffs' counsel for the next three years, so that Plaintiffs' counsel can monitor state court proceedings to ensure proper implementation.

Because the Settlement Agreement therefore provides more extensive and detailed relief than the injunctive relief that Plaintiffs likely would have obtained from the Court at trial, it mitigates the need for further litigation on the City's amended procedures for subjecting individuals to gang injunctions, and also ensures that affected individuals can be connected with resources to defend against allegations of gang membership for the next three years.

**v. All Members of the Settlement Class Will Receive the Full Relief to Which They Are Entitled**

As relief in this settlement, Plaintiffs obtained policy changes by the City that will be provided to all members of the Settlement Class without any further action on their part. All current members of the Settlement Class have already been afforded the full relief that they will receive under the Settlement Agreement—*i.e.* they are no longer subject to a gang injunction. Enforcement against them ceased when Plaintiffs secured class-wide preliminary injunctive relief in 2018. The City additionally already mailed notice to class members that it would permanently cease enforcement of its previously served injunctions. (Bibring Decl. at ¶9; Settlement Agreement at ¶9.) Plaintiffs' counsel and Youth Justice Coalition also disseminated this information directly to class members and through various organizations. (Bibring Decl. at ¶9.) Additionally, the Court's order barring the City from enforcing its injunctions was the subject of reporting in the Los Angeles Times and local television media and was therefore widely publicized at the time it was issued.[5]

[5] *See, e.g.*, James Queally, "Los Angeles barred from enforcing nearly all gang injunctions, federal judge rules." L.A. Times, Mar. 15, 2018, available at https://www.latimes.com/local/lanow/la-me-ln-gang-injunction-court-order-20180315-story.html. James Queally, "California moving away from gang injunctions amid criticism,

Any future members of the Settlement Class—*i.e.* those the City attempts to subject to a new or existing gang injunction in the future—will receive the benefits of this settlement at the time that they are served with a complaint and summons or motion initiating a court proceeding to determine whether they are an active gang member.

**c. The Proposed Attorney's Fees Are Reasonable Under the Circumstances**

The courts require that "fee awards be reasonable in the circumstances." *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 967 (9th Cir. 2009). When evaluating reasonableness, "[f]oremost among these considerations . . . is the benefit obtained for the class." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011). Plaintiffs' counsel obtained complete relief for all current and future members of the Settlement Class after extensive pre-litigation research and vigorously litigating two motions for injunctive relief. (Bibring Decl., ¶8.) The agreed-upon attorneys' fee award, subject to court approval, reflects a substantial discount from what Plaintiffs' counsel would have sought and would reasonably expect to be awarded as statutory attorneys' fees for civil rights litigation—a sum that is not generally correlated to the size of plaintiffs' recovery. *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief. Rather, Congress made clear that it 'intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as

---

falling crime rates." L.A. Times, July 8, 2018, available at https://www.latimes.com/local/lanow/la-me-gang-injunctions-california-20180708-story.html; "Federal Judge Bars City of LA From Enforcing Gang Injunctions," NBC Los Angeles, Mar. 16, 2018, available at https://www.nbclosangeles.com/news/federal-judge-thursday-barred-city-los-angeles-enforcing-gang-injunctions/165957/.

antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature.'" (internal citations omitted)).

In addition, there is no suggestion Plaintiffs traded relief for attorney fees. Plaintiffs have obtained substantial injunctive relief through the Settlement. Plaintiffs never sought money damages in the action, and the Settlement Agreement does not waive any individual damages claims that members of the Settlement Class may have with respect to harms incurred as a result of being made subject to the terms of a gang injunction absent due process. (Settlement Agreement at ¶41 (limiting the release of claims to those "allegations made and remedies sought in the Complaint")); *Cf. Stinson v. City of New York*, 256 F. Supp. 3d 283, 292-93 (S.D.N.Y. 2017) (approving a settlement involving improperly-issued summonses where it did not release any class members' individual damage claims of excessive force arising from the same incident). Under these terms, there is no suggestion that the attorneys' fee provision "disproportionately advances the interests of class counsel over those of the class itself." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 940 (9th Cir. 2011).

**d. The Terms of the Settlement Agreement are Fair, Adequate and Reasonable**

To evaluate the fairness of a settlement, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 159 F.3d 1011, 1026 (9th Cir. 1998). The terms of the settlement provide the complete relief sought in this Action to all current and future members of the Settlement Class. It does so without forcing them to relinquish any individual claims for monetary damages that they may have. The Settlement Agreement also provides a mechanism for future members of the Settlement Class to be connected with resources to assist them as they navigate the City's new process for subjecting individuals to a gang injunction. These terms are well within the range of reasonable

and fair remedies for purposes of preliminary approval.

**V. The Process for Distribution of Class Notice is Reasonably Calculated to Reach Class Members**

This Action sought solely injunctive relief and was certified under Federal Rule of Civil Procedure 23(b)(2). For Rule 23(b)(2) class, the court must direct notice to the class "in a reasonable manner." Fed. R. Civ. Pro. 23(e)(1)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., LLC v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004)). The proposed notice and plan accomplishes this.

The Settlement Class consists of individuals the City has served or will serve in the future with notice that they will be subjected to gang injunctions. As a result, the Settlement Class consists primarily of African American and Latino men aged 18-40. (Bibring Decl., Ex. 5 at p. 1.) Many of them are transient and have low household incomes. (Id.) At various points in this case, mailings were sent to class members at the most recent address provided by the class members themselves, but the City informed Plaintiffs' counsel that approximately 20-30% of the letters came back undeliverable or indicating the address was no longer valid. (Bibring Decl., ¶9.) Additionally, from conversations with class members and organizations that work directly with members of the Settlement Class, we have learned that the various mailings caused confusion as to the status of the gang injunctions and whether they remained subject to them. (Bibring Decl., ¶9.)

As a result, the parties did not believe that additional direct mailings would be the most effective means of providing notice, because such mailings would continue to miss a substantial portion of the Settlement Class and might be discarded by the rest. (Bibring Decl., ¶9.) In discussions with various agencies, and after reviewing specific proposals for the most efficient provision of notice, the parties concluded

that social media, geographically targeted messages, and direct outreach where possible would be the most likely to reach individuals with the demographic characteristics of the Settlement Class. (Bibring Decl., Ex. 5 at p.2.)

The parties have agreed on a multi-pronged outreach plan. First, the full text of the Notice as provided in Exhibit A to the Settlement Agreement will be posted on the websites of the ACLU Foundation of Southern California, the Connie Rice Institute for Urban Peace, and the Youth Justice Coalition. (Settlement Agreement at ¶49.a.)

Second, a marketing and communications firm, DJ-LA, will run a four-week advertising campaign on social media that will be geographically targeted so that it will appear on the social media feeds of targeted individuals when they are within the various injunction zones. (Bibring Decl., Ex. 5 at p. 2-3; Settlement Agreement ¶49.b-c.) The advertisements will appear on Facebook and Instagram platforms. (Bibring Decl., Ex. 5 at p. 2-3.) These platforms were selected because they have the largest available audience overall, provide the best geographic and age-based targeting for advertisers, and do not require significant costs to create advertisements. (Bibring Decl., Ex. 5 at p. 2-3.) We anticipate that these ads will receive at least 100,000 to 300,000 impressions from social media, and could be greater depending on how widely the ads are forwarded or shared by recipients. (Bibring Decl., Ex. 5 at p. 3.) Plaintiff Youth Justice Coalition will also use its social media to direct individuals to the website by announcing the settlement on its Facebook, Twitter, and Instagram feeds, as well in email sent to their distribution list of over 10,000 recipients. (Settlement Agreement ¶49.b.)

Third, there will be 20 Poster Outdoor Boards—billboards sized 10’5” by 22’8”—placed in high-traffic areas in Safety Zones. (Bibring Decl., Ex. 5 at p. 4; Settlement Agreement ¶49.c.) These boards are elevated to minimize graffiti and are visible from the street. (Bibring Decl., Ex. 5 at p. 2.) The average number of impressions for a single Poster Outdoor Board is around 400,000 for a four-week

period. (Bibring Decl., Ex. 5 at p. 2.) Finally, Youth Justice Coalition will also directly outreach to gang intervention workers, who work with members of the Settlement Class. (Settlement Agreement ¶49.b.) The parties estimate that the total cost for executing this notice plan will cost around $30,000-$50,000, of which the City has agreed to contribute $25,000. (Bibring Decl., Ex. 5 at p.4; Settlement Agreement at ¶49.c.)

"The form of notice of settlement of a . . . Rule 23(b)(2) class action need only be such as to bring the proposed settlement to the attention of representative class members who may alert the court to inadequacies in representation, or conflicts in interest among subclasses, which might bear upon the fairness of the settlement." *Walsh v. Great Atl. & Pac. Tea Co., Inc*., 726 F.2d 956, 963 (3d Cir. 1983); *see also, Handschu v. Special Servs. Div*., 787 F.2d 828, 833 (2d Cir. 1986) ("Because of the common interests of all its members, a Rule 23(b)(2) class seeking declaratory and injunctive relief is cohesive by nature, and notice to a representative class membership may be considered sufficient." (citation omitted)). In light of the robust notice scheme described above, difficulties with direct mail notice, and that this case involves a class certified under Rule 23(b)(2)—all existing members of which have already obtained their relief—individualized notice of the proposed settlement to all class members should not be required. *Cf. Mendoza v. Tuscon School Dist. No. 1,* 623 F.2d 1338, 1351(9th Cir. 1980) (finding that "[i]n a class action seeking a structural injunction, notice is intended to encourage those with divergent views to come forth . . . [and] publication notice sufficiently accomplishes this major purpose."); *Rota v. Brotherhood of Ry., Airline and S.S. Clerks*, 64 F.R.D. 699, 707 (1974) (finding posting notices on bulletin board and distributing through a union newspaper was sufficient notice for a Rule 23(b)(2) class receiving solely injunctive relief). The proposed multi-pronged notice plan is sufficient to ensure that a representative number of class members receive actual notice and may alert the court to any deficiencies in Plaintiffs' proposed settlement plan.

## VI. Conclusion

Based on the foregoing, the Plaintiffs respectfully request that the Court grant this Motion and enter the proposed unopposed Preliminary Approval Order.

DATE: October 15, 2020

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

By: /s/ Melanie P. Ochoa
Melanie P. Ochoa

MUNGER, TOLLES & OLSON LLP

THE CONNIE RICE INSTITUTE FOR URBAN PEACE

*Counsel for Plaintiffs*