PETER BIBRING (SBN 223981)
pbibring@aclusocal.org
MELANIE P. OCHOA (SBN 284342)
mpochoa@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299

JACOB S. KREILKAMP (SBN 248210)
jacob.kreilkamp@mto.com
LAURA D. SMOLOWE (SBN 263012)
laura.smolowe@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Counsel for Plaintiffs*
(Additional Counsel for Plaintiffs on Following Page)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

YOUTH JUSTICE COALITION, a non-profit organization; et al.,

*Plaintiffs*,

vs.

CITY OF LOS ANGELES; et al.,

*Defendants*.

Case No.: 2:16-cv-07932-VAP-RAO

**DECLARATION OF PETER BIBRING IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Date: November 16, 2020
Time: 2:00 PM
Crtrm: 8A; Hon. Virginia A. Phillips

[Unopposed Notice of Motion and Motion for Preliminary Approval, and Proposed Order Filed Concurrently Hereto]

JOSHUA GREEN (SBN 293749)
jgreen@urbanpeaceinstitute.org
THE CONNIE RICE INSTITUTE FOR URBAN PEACE
1910 West Sunset Boulevard
Suite 800
Los Angeles, California 90026
Telephone: (213) 404-0124
Facsimile: (213) 402-2843

**DECLARATION OF PETER BIBRING**

I, PETER BIBRING, declare as follows:

1. I am an attorney licensed to practice before the courts of the State of California, and I am the Director of Police Practices and a Senior Staff Attorney for the American Civil Liberties Union Foundation of Southern California ("ACLU SoCal"). Throughout the course of this case, the ACLU SoCal has served as counsel for Plaintiffs, and I was one of the attorneys involved in all aspects of this litigation. I make this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement based on my own personal knowledge and if called to testify could and would do so competently.

2. Attached is a true and correct copy of the executed Settlement Agreement as Exhibit 1. The Settlement Agreement attaches the following documents:

Exhibit A: Proposed Class Notice

Exhibit B: Stipulated Settlement and Order of Dismissal

Exhibit C: A list of the 46 gang injunctions in existence as of the effective date of the Settlement Agreement

Exhibit D: Form letter accompanying all complaints to be served on individuals when the City seeks to obtain a new gang injunction

Exhibit E: Form letter accompanying all motions to modify an existing injunction (or similar document) to be served on individuals when the City seeks to add them to an existing gang injunction

Exhibit F: Exemplar Notice of Non-Enforcement of Specific Gang Injunction Provisions

3. Class Counsel invested significant time and resources into this Action. Although the parties did not conduct significant discovery during the course of the litigation, Class Counsel engaged in extensive fact research prior to initiating this

case, beginning at least as early as 2015. Class Counsel's pre-filing fact investigation included numerous interviews with individuals made subject to the City's gang injunctions, researching the City's process for removal from gang injunctions and representing individuals in their requests for administrative removal, and reviewing materials produced in the course of other litigation related to the City's enforcement of gang injunctions. This included reviewing historical versions of the City Attorney's Office's policies with respect to gang injunctions, transcripts of depositions of employees of the City Attorney's Office involved in the enforcement of gang injunctions, and all 46 orders granting gang injunctions and the related dockets.

4. I believe the settlement is fair, reasonable and adequate in view of the claims raised and the relief sought. The litigation advances the core claim that the City's process for placing individuals on gang injunctions provided insufficient due process. Through the course of the litigation, we obtained complete relief for the affected class by winning a classwide preliminary injunction. This success was made permanent by the City's agreement to cease enforcement on all class members and to enforce its gang injunctions only after an individual had been afforded a process in Superior Court to adjudicate whether they are active gang members. The settlement provides more extensive and detailed relief than Plaintiffs likely could have obtained from a judgment of this Court. Had Plaintiffs litigated the case fully and won, the Court could have held the City's process unconstitutional and effectively removed from gang injunctions all individuals who unconstitutionally had been made subject to a gang injunction through the City's enforcement, which the settlement will do. However, because of issues of comity limiting this Court's ability to direct the state court process, Plaintiffs would have been unlikely to obtain a ruling setting forth the precise form any future process

adopted by the City for subjecting people to a gang injunction must take. Instead, that question would have been the subject for future litigation if and when the City decided to implement new procedures—and possibly after such program was in operation for some time in order to assess how it worked in practice. Through this settlement, however, Plaintiffs can avoid substantial future litigation over the precise contours of the City's gang injunction enforcement program through the City's agreement to provide the full due process protections afforded all civil litigants every time it seeks to make an individual subject to a gang injunction.

5. The settlement also exceeds the relief that likely would have been obtained by an order of this Court by ensuring that for three years all individuals are given some explanatory information about the process—rather than just being served with legal papers—as well as the contact information for Class Counsel and the Youth Justice Coalition for a period of three years. We believe that this additional information and connection to resources will allow more individuals who were improperly labeled gang members by the City to effectively challenge the gang injunction's applicability to them.

6. The parties twice attempted settlement during the course of this litigation. First, in January 2017 the parties agreed to stay proceedings to pursue settlement discussions with the assistance of a private mediator. These initial discussions were not successful and were terminated in June 2017. After the Court granted the classwide preliminary injunction in March 2018, the City filed a Notice of Appeal to the Ninth Circuit, and the parties again began settlement negotiations with assistance of a Ninth Circuit mediator. The parties engaged in numerous discussions with and without the assistance of the mediator, and considered a number of different proposals that would have provided varying forms of process for individuals the City alleged to be active gang members subject to gang

injunctions. This negotiation process lasted for nearly two years, during which time Plaintiffs' counsel discussed the terms of proposed settlements with named and unnamed class members, including members of the Youth Justice Coalition, to get feedback on these proposals as well as the final terms of the Settlement Agreement. Plaintiffs Youth Justice Coalition, Joe Reza and Peter Arellano approved the terms of the final settlement. During these negotiations, we understand that the City conferred with many different City representatives in the negotiation process, some of whom also communicated directly with Class Counsel in negotiation sessions, and the final settlement, including attorneys' fees, was approved by the Los Angeles City Council.

7. As part of the settlement, the City agreed to pay attorneys' fees and costs to class counsel of $1,750,000. This represents a substantially discounted figure as compared to the substantial hours expended by Class Counsel. Class Counsel's initial lodestar, based only on work on the case through November 2018, came to $2,396,030 in fees and $8,112 in costs, reflecting a reduction of more than 25% based on billing discretion and negotiations. Additionally, Plaintiffs' counsel spent substantial additional time on negotiating and finalizing the settlement since November 2018, and anticipate spending substantially further time during the approval and implementation of the settlement.

8. The fee award is justified by factors including the exceptional results obtained in the course of the litigation and secured by the Settlement Agreement, and the skill and experience of Class Counsel. The attorneys who have served as Class Counsel are highly experienced, well-regarded, skilled litigators with expertise in litigation, civil rights, class actions, and other complex litigation. The declarations of Class Counsel, previously submitted in support of the Motion for Class Certification and Appointment of Class Counsel, describe their qualifications

at length. True and correct copies of these previously-filed declarations are attached hereto for the Court's convenience:

Exhibit 2: Declaration of Joshua Green Declaration in Support of Plaintiffs' Motion of Class Certification

Exhibit 3: Declaration of Laura D. Smolowe in Support of Plaintiffs' Motion of Class Certification

Exhibit 4: Declaration of Peter Bibring in Support of Plaintiffs' Motion of Class Certification

9. Individualized notice is not required and would not be as effective in ensuring that most or all class members receive notice of the proposed settlement as the notice method the parties have agreed on. During the course of this litigation, the City mailed to approximately 7,500 class members a notice that they were no longer subject to a gang injunction. Additionally, after Plaintiffs' classwide preliminary injunction was granted, the City mailed letters to the most recent mailing address of the remaining approximately 1,500 class members notifying them that, until further notice, the LAPD may not stop, detain, or arrest them for violating any of the terms of the gang injunction. Several months later the City sent another letter to those approximately 1,500 class members informing them that the City was releasing them from the gang injunction, but reserved the right to place them on an injunction again in the future. Additionally, after the issuance of the order granting the classwide preliminary injunction, Class Counsel conducted outreach through community organizations, including Youth Justice Coalition, and gang intervention programs to further disseminate notice that all previously-enjoined people were no longer subject to gang injunctions. During the course of this outreach, we learned that individuals did not fully understand the significance of the various letters that they or others had received from the City and were confused as to whether they personally were still subject to a gang

injunction or would be subject to it again in the future. In addition, counsel for the City has represented that a significant number, between 20%-30%, of mailings to the addresses most recently provided by class members were returned by the Post Office. As a result, we decided that an additional notice sent via mail would fail to reach many Settlement Class Members and could cause additional confusion about the recipients' current status on the gang injunction. Therefore, mail would not be the most effective or efficient means of providing notice.

10. The parties have agreed upon a professional vendor, DJ-LA Marketing, to administer the notice to the Settlement Class through a 4-week advertising campaign, including 20 Poster Outdoor Boards. The City agrees to pay $25,000 towards the costs of the notice provided by DJ-LA, and Class Counsel will pay the remaining costs to execute this marketing plan. A true and correct copy of the contract between ACLU SoCal and DJ-LA is attached as Exhibit 5.

11. Based on all of the above, Plaintiffs respectfully request that the Court approve the attached Settlement and Proposed Order and grant Plaintiffs' Motion for Preliminary Approval of the Settlement.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed on this 12th day of October, 2020 at Los Angeles, California.

By: *s/ Peter Bibring*
Peter Bibring

*Counsel for Plaintiffs*

# Exhibit 1

PETER BIBRING (SBN 223981)
MELANIE P. OCHOA (SBN 284342)
REKHA ARULANANTHAM (SBN 317995)
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299
pbibring@aclusocal.org
mpochoa@aclusocal.org
rarulanantham@aclusocal.org

*Counsel for Plaintiffs*
(Additional Counsel for Plaintiffs on Following Page)

MICHAEL FEUER, City Attorney
JAMES P. CLARK, Chief Deputy City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
A. PATRICIA URSEA, Deputy City Attorney (SBN 221637)
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011
Patricia.Ursea@lacity.org

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| YOUTH JUSTICE COALITION, a non-profit organization; et al.,<br><br>*Plaintiffs*,<br><br>vs.<br><br>CITY OF LOS ANGELES, et al.,<br><br>*Defendants*. | Case No.: 2:16-cv-07932-VAP-RAO<br><br>[Honorable Virginia A. Phillips]<br><br>Complaint Filed: October 25, 2016<br><br>**SETTLEMENT AGREEMENT** |

JACOB S. KREILKAMP (SBN 248210)
LAURA D. SMOLOWE (SBN 263012)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
jacob.kreilkamp@mto.com
laura.smolowe@mto.com

JOSHUA GREEN (SBN 293749)
SEAN GARCIA-LEYS (SBN 313558)
THE CONNIE RICE INSTITUTE FOR URBAN PEACE
1910 West Sunset Boulevard, Suite 800
Los Angeles, California 90026
Telephone: (213) 404-0124
Facsimile: (213) 402-2843
jgreen@urbanpeaceinstitute.org
sgarcialeys@urbanpeaceinstitute.org

*Counsel for Plaintiffs*

# SETTLEMENT AND RELEASE AGREEMENT

Plaintiffs Youth Justice Coalition, Peter Arellano, and Jose Reza, for themselves and on behalf of all class members as certified in the class action *Youth Justice Coalition v. City of Los Angeles*, 16-CV-07932-VAP (RAO) (collectively "Plaintiffs"), and Defendant City of Los Angeles ("City"), subject to the terms and conditions hereof and final approval by the District Court, hereby enter into this Settlement and Release Agreement ("Settlement Agreement"). This Settlement Agreement is intended to fully, finally, and forever compromise, release, resolve, discharge, and settle the claims and allegations in this matter.

## I. RECITALS

1. On October 26, 2016, Plaintiffs filed a lawsuit against City, its City Attorney Mike Feuer, and its Chief of Police Charlie Beck, in the United States District Court for the Central District of California, Case No. 16-CV-07932-VAP (RAO), alleging that City violated procedural due process under the United States and California Constitutions by not naming Plaintiffs as defendants in the civil actions in which gang injunctions were issued or otherwise affording Plaintiffs an opportunity to contest the allegation that they were active members of the criminal street gang subject to the injunction before being served with and made subject to enforcement of the gang injunction (the "Action"). [Dkt. 2.] Upon a stipulation by the Parties, Plaintiffs later dismissed Feuer and Beck from the Action without prejudice. [Dkt. 37.]

2. City answered the Complaint on December 16, 2016, expressly denying all claims alleged in the Action and denying that City or any of its officers, employees, or agents violated any laws or committed any wrongful acts or omissions against Plaintiffs as alleged in the Action. [Dkt. 38.]

3. On October 31, 2016, Plaintiffs filed a motion for preliminary injunction seeking to prohibit City and its agents and employees from enforcing

gang injunctions against Plaintiffs Peter Arellano and Jose Reza. [Dkt. 12.] City opposed the motion for preliminary injunction as to Arellano and filed a notice of non-opposition as to Reza. [Dkts. 39 & 40.] The District Court entered a preliminary injunction on September 7, 2017, barring City from enforcing the Judgment Granting Permanent Injunction in *People v. Big Top Locos, et al.*, Case No. BC511444 (L.A. Sup. Ct. Sept. 23, 2013) against Plaintiff Arellano, on the ground that he was likely to succeed on his claim that "the risk of erroneous deprivation under the City's current procedures [for subjecting individuals to a gang injunction] is considerable and the City's removal procedures do not adequately remedy the lack of pre-deprivation process." [Dkt. 106, p. 24.]

4. On October 2, 2017, Plaintiffs filed a Motion For Class Certification And Appointment Of Class Counsel. [Dkt. 107.] After negotiations between counsel, City filed a notice of non-opposition to the Motion For Class Certification on October 30, 2017. [Dkt. 111.]

5. On November 6, 2017, the Parties filed a Joint Stipulation re Class Certification and Amended Class Definition [Dkt. 112]. The Court approved the Joint Stipulation, certifying the case as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, on January 4, 2018. [Dkt. 114].

6. Also in its January 4, 2018, Order [Dkt. 114], the District Court appointed the ACLU Foundation of Southern California, The Connie Rice Institute for Urban Peace, and Munger, Tolles & Olson LLP (collectively, "Plaintiffs' Counsel") as Class counsel.

7. On January 29, 2018, Plaintiffs filed a Motion to Expand Preliminary Injunctions Entered on Behalf of Plaintiffs Peter Arellano and Jose Reza to the Entire Class. [Dkt. 115.] City opposed this Motion. [Dkt. 116.] On March 15, 2018, the District Court granted Plaintiffs' Motion and extended the Arellano Preliminary Injunction to Class members served with a Los Angeles

Gang Injunction before January 19, 2018, on the basis that "Plaintiffs are likely to establish that the City did not provide sufficient due process for [these] class members . . . and that continued enforcement of the Los Angeles Gang Injunctions against these class members is likely to result in irreparable injury." [Dkt. 132, p. 9.]

8. On April 13, 2018, City filed a Notice of Appeal of the District Court's March 15, 2018 Order. [Dkt. 134.] Soon thereafter, the Parties agreed to participate in the Ninth Circuit Mediation process.

9. At the start of this litigation, the class consisted of approximately 9,000 individuals whom the City had served with notice that the City would enforce gang injunctions against them. During the course of this action, the City ceased enforcing gang injunctions against certain class members and mailed those class members notices at their last known address informing them that the City would no longer enforce the gang injunction against them, as follows:

a. In about December 2017, the City sent letters to approximately 7,500 class members informing them that the City would no longer enforce the provisions of the gang injunctions against them, but also informing them that they could be served with a gang injunction and be subject to enforcement in the future if the City became aware of additional evidence of gang involvement;

b. In about April 2018, following the Court's grant of the preliminary injunction against enforcement of gang injunctions against the class, the City sent letters to the approximately 1,450 class members still subject to gang injunctions informing them of the Court's ruling and telling them the City would temporarily cease enforcement of the injunctions against them, until further notice;

c. In about September and October 2018, the City sent letters to the same approximately 1,450 individuals informing them that the City would no longer enforce the provisions of the gang injunctions against them, but also informing them that they could be served with a gang injunction and be subject to enforcement in the future if the City became aware of additional evidence of gang involvement.

d. As of the signing of this Settlement, the City has sent letters to all class members at their last known address telling them that they are no longer subject to enforcement of the gang injunctions previously served on them.

10. Throughout these proceedings, the Parties have discussed possible informal resolution of this litigation, including potential changes to City's policies and procedures for serving and enforcing gang injunctions. These efforts included staying the Action from January through June 2017 [Dkt. 69] during which time the Parties utilized the assistance of a private mediator. Even after the stay was lifted, the Parties continued to discuss ways of resolving this matter without the need for full litigation. To that end, the Parties communicated regularly, both by phone and by email, and met in person multiple times.

11. This Settlement Agreement constitutes the conclusion of those discussions. The Parties desire to fully and finally compromise and settle all claims arising out of or relating to all matters alleged or that could have been alleged in the Action, as specifically defined below, without any admission of fault, liability, or wrongdoing, in the interests of avoiding the additional expense and the inherent uncertainties of protracted litigation. The Parties believe that resolution upon the terms and conditions set forth in this Settlement Agreement is in the best interests of both Plaintiffs and City, and Plaintiffs' Counsel has concluded that settlement for the consideration and on the terms set forth in this

Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Class.

## II. SETTLEMENT TERMS

### A. Definitions

12. The Parties agree that the following terms will have the following meanings for purposes of this Settlement Agreement:

13. **Class**: All persons, past and future, whom an authorized agent of City has notified, whether by personal service or otherwise, that they are subject to a Gang Injunction and who were not named as individual civil defendants, or who were not substituted in as Doe defendants, in the civil nuisance abatement action to obtain that injunction.

14. **Gang Injunction**: An injunction obtained by the People of the State of California represented by the Los Angeles City Attorney's Office, against a criminal street gang (as defined in Section 186.22 of the California Penal Code), which the City has sued as an unincorporated association, and its members, pursuant to a nuisance abatement action, including but not limited to a common law nuisance abatement action or those brought pursuant to Section 3479 of the California Civil Code.

15. **Existing Gang Injunction:** Any of the 46 Gang Injunctions in existence as of the Effective Date of this Agreement, a list of which is attached as Exhibit C hereto.

16. **New Gang Injunction**: Any Gang Injunction that is not an Existing Gang Injunction and that is obtained by the People of the State of California represented by the Los Angeles City Attorney's Office after the Effective Date of this Agreement.

17. **City**: City shall mean (a) the Los Angeles City Attorney's Office in its capacity as attorneys for the People of the State of California; (b) the Los

Angeles Police Department; and (c) all other agents and employees of the City of Los Angeles who are authorized to obtain and/or enforce Gang Injunctions.

18. **<u>Effective Date</u>**: Seven (7) days after:

a. Entry of final judgment in the Action, following the final approval of the settlement of the Action by the District Court and entry of a final order by the District Court approving this Settlement Agreement without any material modifications; and

b. The later of any or all of the following events: the expiration of the period for filing any appeal, writ, or other appellate proceeding opposing approval of the settlement and final judgment without any appeal, writ or other appellate proceeding having been filed; a final and conclusive ruling on any appeal, writ, or other appellate proceeding upholding the District Court's final order with no right to pursue further remedies or relief; or the final and conclusive dismissal of any appeal, writ or other appellate proceeding opposing the settlement with no right to pursue further remedies or relief.

19. **<u>Parties</u>**: Plaintiffs Peter Arellano and Jose Reza, for themselves and on behalf of all class members as certified in the Action, Youth Justice Coalition, and Defendant City.

20. **<u>Removal Petition Process</u>**: An administrative process provided by City that allows an individual who is subject to enforcement of a Gang Injunction to informally petition City to cease enforcing the injunction against that individual.

**B. New Policy For Gang Injunctions**

21. City will enforce a Gang Injunction against an individual only if that individual was named as a defendant in the civil injunction proceeding (or was otherwise joined in the civil injunction proceeding, as a party, real party in interest,

or otherwise, such that the person received all the same procedural rights as a defendant under the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws) and is made subject to enforcement of the gang injunction by a judgment or court order. This new policy applies even if an individual was previously served with a Gang Injunction. This policy applies to New and Existing Gang Injunctions, as further described below.

**C. New Gang Injunctions**

22. If City files a complaint seeking a New Gang Injunction, City will name as a defendant any individual against whom City seeks to enforce the New Gang Injunction.

23. City may seek to specify, in any proposed New Gang Injunction, the procedure by which the City may petition the court to include additional defendants or parties in interest to the New Gang Injunction. Any specified procedure shall seek to afford to any additional defendant or party in interest the same due process rights that a defendant receives under the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws as referenced in Settlement Agreement Sections II.D-E; is intended to ensure that the court will accept jurisdiction to allow the City to include additional persons; and must be approved by the court.

24. Service of the complaint and other legal documents related to a New Gang Injunction on an individual named as a defendant, and/or the gang entity, shall be conducted in the manner provided for service of process in civil litigation under the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws.

**D. Existing Gang Injunctions**

25. City may move to modify an Existing Gang Injunction to add a new defendant(s) and/or otherwise make an individual(s) a party or real party in interest

subject to an Existing Gang Injunction to provide the individual(s) with the same due process rights as a defendant.

26. City will personally serve a motion to modify injunction (or similar document) on an individual that City seeks to add as a defendant or real party in interest to an Existing Gang Injunction. The motion to modify (or similar document) will include the evidence on which City relies in the motion. This provision of evidence is not intended to supplant or replace the rights of either side under the Civil Discovery Act, Cal. Code Civ. Proc. §. 2016.010 *et seq*., subject to any rulings, interpretations, or determinations of the Superior Court.

**E. Procedural Aspects of New Policy**

27. For a period of three years following the Effective Date of this Agreement, City will provide:

a. to individuals served with a complaint seeking a New Gang Injunction: a letter (in the form set forth in Exhibit D) that provides contact information of Plaintiffs' Counsel and explanatory information about the process;

b. to individuals served with a motion to modify an Existing Gang Injunction (or similar document) to add that individual as a defendant or real party in interest: a letter (in the form set forth in Exhibit E) that provides contact information of Plaintiffs' Counsel and other legal resources available to the individual; and

c. to Plaintiffs' Counsel: the names and reasonably available contact information of individuals served with a complaint seeking a New Gang Injunction or a motion to modify (or similar documents) seeking to add an individual to an Existing Gang Injunction.

28. Nothing in this Agreement obligates City to provide or pay for counsel for any defendant or real party in interest that City seeks to subject to enforcement of a New or Existing Gang Injunction.

29. Absent a change in the legal standard of proving active gang membership in California, City, in obtaining a court order permitting enforcement of a New or Existing Gang Injunction against an individual, will bear the burden of proof to establish by clear and convincing evidence that the individual is an active gang member of the criminal street gang that the City alleges is a cause of the public nuisance. Nothing in this Agreement prevents the individual from raising any defense to or legal arguments against the enforcement sought by the City.

30. City may seek a default judgment or similar remedy against any individual who fails to oppose a motion to modify (or similar document) seeking to subject an individual to enforcement of an Existing Gang Injunction or who fails to respond to a complaint filed to obtain a New Gang Injunction.

31. If City voluntarily dismisses an individual before a final order or judgment as to that individual's active gang membership, City will not enforce against that individual. This does not preclude City from later serving a previously dismissed individual in accordance with the provisions of this Agreement.

32. A court's determination that an individual is or is not an active gang member made in a civil gang injunction proceeding does not preclude City or the individual from taking the position that the individual is or is not an active gang member in any other criminal, civil, or administrative proceeding.

33. If the court determines that an individual is not an active gang member, this does not preclude City from later serving that individual based on new or additional evidence of active gang membership in accordance with the provisions of this Agreement.

34. Any appeal, writ, or other challenge to a court's determination of active gang membership shall be as provided in the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws.

**F. Notice and Enforcement**

35. Enforcement of a Gang Injunction may begin upon notice of the judgment or order permitting enforcement against that individual. Unless otherwise ordered by the court, notice of the judgment or order shall be effectuated in accordance with the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws.

36. If the judgment or order permitting enforcement against an individual is entered in an Existing Gang Injunction, City shall serve the individual with a Notice of Non-Enforcement of Specific Gang Injunction Provisions, an example of which is attached as Exhibit F, setting forth any provisions of the Existing Gang Injunction that City does not or will not enforce.

37. City will cease enforcing a Gang Injunction against an individual five (5) years from the date of the judgment or court order authorizing such enforcement against that individual. However, nothing in this Agreement precludes City from seeking a judgment or order permitting enforcement of a Gang Injunction against any individual, regardless of any previous service, enforcement, or dismissals, based on new or additional evidence of active gang membership, so long as City does so in accordance with the provisions of this Agreement.

**G. Juveniles**

38. The New Policy for Gang Injunctions and all other provisions of this Agreement shall apply equally in the event City seeks to obtain a judgment or court order permitting enforcement of a Gang Injunction against an individual who is under the age of 18 ("Juvenile"). In addition, City shall:

a. Comply with applicable California law governing civil lawsuits brought against Juveniles, including Cal. Code Civ. Proc. §§ 372-373 (appointment of a guardian ad litem);

b. Serve a copy of the complaint, or motion to modify or similar document, on the Juvenile's parent and/or guardian, in addition to serving such document on the Juvenile in accordance with the terms of this Agreement and applicable law; and

c. Deliver an electronic copy of the complaint, motion to modify, or similar document to the Children's Law Center, who can provide the document to the attorney assigned to the Juvenile in the event the Juvenile is under the jurisdiction of the dependency court pursuant to Welfare & Institutions Code § 300 et seq.

39. In appropriate cases, City may seek release of Juvenile Court records to the court presiding over the Gang Injunction proceeding and the Juvenile.

**H. Removal Petition Process**

40. City retains full discretion to modify or terminate its Removal Petition Process at any time.

## III. RELEASES

41. In exchange for the consideration as described herein, upon the final approval by the District Court of the settlement as set forth in this Settlement Agreement, and except as to such rights or claims as may be created by this Settlement Agreement, Plaintiffs and each member of the Class, for themselves, their beneficiaries, executors, conservators, personal representatives, wards, heirs, spouses, predecessors, successors and affiliates, jointly and severally, shall, and hereby do fully, finally, and forever release, acquit, and discharge City and all of its boards, bureaus, departments, administrators, officers, agents, employees,

including but not limited to, Mike Feuer and Charlie Beck, and all persons that acted on behalf of City (collectively the "City Released Parties") from any and all claims, demands, causes of action, or suits for equitable relief asserted by Plaintiffs in this Action, specifically Plaintiffs' claims that City's process in subjecting individuals to Gang Injunctions without adequate pre-deprivation process violated Class Members' due process rights under the United States and California constitutions (the "Released Claims"). This waiver shall be limited to the allegations made and remedies sought in the Complaint. However, if evidence that a Class member was subject to an Existing Gang Injunction prior to the execution of this Settlement Agreement is presented in any proceeding, nothing in this Agreement shall impede that Class member from raising arguments identical to those alleged in this Action to rebut or refute that evidence, and nothing shall impede City from rebutting any arguments raised by the Class member.

42. The Parties acknowledge that it is possible that unknown claims exist or might exist. Plaintiffs, and every Class member, are deemed to acknowledge and understand that they may later discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now believe to be true with respect to the Released Claims. Nevertheless, it is the intention of Plaintiffs and every Class member to fully, finally, and forever settle and release the Released Claims with City Released Parties that exist, hereafter may exist, or might have existed, as set forth above.

43. The undersigned Plaintiffs further acknowledge and agree that, as to the Released Claims, they waive and relinquish the provisions of any protection under **Section 1542 of the *California Civil Code***, and/or any similar law, either federal or of any state or territory of the United States or statute or applicable law anywhere existing. Plaintiffs acknowledge and agree that they understand the meaning of ***California Civil Code* Section 1542**, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

44. The undersigned Plaintiffs expressly acknowledge that each of them understands the significance and consequence of such a specific waiver of Section 1542 as applied to the Released Claims, as set forth above.

## IV. ATTORNEY'S FEES AND COSTS

45. In addition to the actions set forth above, the City shall pay the sum of $1,750,000, made payable to ACLU Foundation of Southern California, in total payment for, and in full satisfaction of any and all of claims for attorneys' fees, litigation expenses and costs in this action, by Plaintiffs or by Plaintiffs' counsel, within thirty (30) days of Effective Date of this Settlement Agreement.

## V. APPROVAL PROCESS

46. The Parties stipulate and agree to the following schedule and procedures for obtaining the District Court's approval of the Settlement Agreement.

### A. Preliminary Approval of Settlement Agreement

47. The Parties understand and agree that this Settlement Agreement is subject to final approval by City Council and other City officers, boards, commissions, or entities, and that the execution of this Agreement is subject to and conditioned upon the granting of all such City approvals needed to make this Agreement final and binding.

48. Once City has formally and finally approved this Settlement Agreement, the Parties will jointly file a regularly noticed motion for preliminary approval of this settlement. The Parties will use all best efforts to file the motion for preliminary approval no later than February 14, 2020.

**B. Notice of Proposed Settlement**

49. If the District Court grants preliminary approval of the settlement terms described in this Agreement, notice shall be provided to Class members in the form set forth in Exhibit A. Such notice will be provided as follows:

a. Within 30 days after this Court grants preliminary approval of the settlement, up to the date of the final approval hearing (the "Notice Period"), the ACLU Foundation of Southern California, the Connie Rice Institute for Urban Peace, and the Youth Justice Coalition will post the notice on their websites;

b. Plaintiff Youth Justice Coalition will announce the settlement on its Facebook, Twitter, and Instagram feeds, as well in email sent to their distribution list of over 10,000 recipients. Youth Justice Coalition will also distribute announcements and notice to gang intervention workers and at community meetings.

c. Plaintiffs will retain DJ-LA, a marketing and communications firm, to provide announcements of the settlement with links to the notice through a 4-week advertising campaign to be fully implemented during the Notice Period. The campaign will include 20 outdoor posters placed where they will be visible to class members and a social media advertising campaign geo-targeted for class members in injunction areas. The City agrees to pay $25,000 towards the costs of the notice provided by DJ-LA.

**C. Objections to Settlement Agreement after Preliminary Approval**

50. Any Class member who intends to object to final approval of the settlement or this Settlement Agreement must file a written objection, along with any supporting documents, with the District Court, with copies to Plaintiffs'

Counsel and City, no later than 120 days after preliminary approval. The written objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection.

51. Any Class member who fails to make a timely objection in the manner specified above shall be deemed to have waived any and all objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the settlement or this Settlement Agreement.

52. The Parties understand and agree that the Class is certified under Federal Rules of Civil Procedure 23(b)(2), and that therefore no Class member may opt out of any provisions of this Settlement Agreement.

**D. Final Approval of Settlement Agreement**

53. The District Court shall schedule a Final Approval Hearing on a date at least 180 days after preliminary approval, to provide all Class members with notice of this proposed settlement and an opportunity to object and appear at the hearing.

54. No Class member shall be entitled to be heard at the Final Approval Hearing (whether in person or through counsel) unless the Class member has filed with the District Court and served upon Plaintiffs' Counsel and City a written objection as set forth in Paragraph 50.

55. Should the District Court grant the request for approval of the settlement, the Parties will submit a proposed Stipulated Settlement and Order of Dismissal ("Order") in the form set forth in Exhibit B. The Order will set forth final approval of the class action settlement, adjudicating the terms thereof to be fair, reasonable, and adequate, and directing consummation of all terms and provisions of this Settlement Agreement. The Order shall include an express provision for the District Court to retain jurisdiction to enforce the terms of this

Settlement Agreement for a period of three (3) years following the date of the District Court's entry of the Order.

## VI. OTHER PROVISIONS

56. A failure of the District Court to approve any material condition of this Settlement Agreement that effects a fundamental change to the terms of the settlement shall render the entire Settlement Agreement voidable and unenforceable as to all Parties, at the option of either party upon written notice to the other party and to the Court at any time prior to final approval of this Settlement Agreement. In the event a party voids this Settlement Agreement as set forth herein, the Parties shall be restored to their pre-settlement positions in this action.

57. The Parties and their respective counsel agree to cooperate fully with each other to accomplish the approval of the terms of this Settlement Agreement by the District Court, including but not limited to the execution of documents, and to take such other action as may reasonably be necessary to implement the terms herein. The Parties agree to use their best efforts, including all efforts contemplated by this Settlement Agreement, and any other efforts that may become necessary by order of the District Court, or otherwise, to effectuate this Settlement Agreement.

58. The Parties and their respective counsel agree that they will not encourage or attempt to encourage any members of the Class to object to the proposed settlement, and will make every reasonable effort to accurately explain the benefits of this Settlement Agreement in response to any questions from any Class member.

59. This Settlement Agreement may be amended or modified only by a written instrument signed by Plaintiffs, City, and their respective counsel. No rights under this Settlement Agreement may be waived except in writing.

60. If a court of competent jurisdiction issues an order or judgment regarding the due process to be afforded persons being served with and made subject to enforcement of a gang injunction, and that order or judgment conflicts with or is inconsistent with any part or subpart of the terms contained in Section II of this Agreement, the Parties agree that the conflicting or inconsistent part(s) or subpart(s) of this Agreement shall no longer be effective. In the event either party believes that a conflict or inconsistency exists, that party shall provide the other party with notice in writing of the conflict or inconsistency, and identifying the part or subpart that shall no longer be effective; the other party shall respond in writing within 14 days. If the Parties disagree as to whether a conflict or inconsistency exists, the party that contends that any part or subpart of Section II shall no longer be effective shall bring a motion seeking resolution of the issue by the District Court in accordance with its retention of jurisdiction to enforce this Agreement pursuant to Paragraph 69. The Agreement shall remain in effect until the District Court orders otherwise or the Parties agree in writing.

61. This Settlement Agreement and any attached exhibits constitute the entire Settlement Agreement between the Parties relating to the terms contained herein. All prior or contemporaneous agreements, understandings, and statements, whether oral or written, whether express or implied, and whether by a party or its counsel, are merged herein. No oral or written representations, warranties, or inducements have been made to any party concerning this Settlement Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

62. Counsel for Plaintiffs and City have arrived at this Settlement Agreement as a result of a series of arm's-length negotiations extending many months, taking into account all relevant factors, present and potential. This Settlement Agreement has been drafted jointly by counsel for the Parties and,

therefore, in any construction or interpretation of this Settlement Agreement, shall not be construed against any of the Parties.

63. This Settlement Agreement contains the entire agreement among the Parties hereto and supersedes any prior agreements or understandings between them. Except for the Recitals, all terms of this Settlement Agreement are contractual and not merely recitals. The terms of this Settlement Agreement are and shall be binding upon the Parties, their agents, attorneys, employees, successors and assigns, and upon all other persons claiming any interest in the subject matter through any of the Parties, including any Class Member.

64. This Settlement Agreement may be executed in one or more counterparts. All executed copies of this Settlement Agreement and photocopies thereof shall have the same force and effect and shall be as legally binding and enforceable as the original. This Settlement Agreement shall be deemed to have been executed upon the last date of execution by all of the undersigned.

65. The exhibits to this Settlement Agreement are an integral part of the Settlement and are hereby incorporated and made a part of the Settlement Agreement.

66. The signatories hereto represent that they are fully authorized to enter into this Settlement Agreement and are fully authorized to bind the Plaintiffs, the Class Members, and City to all terms stated herein.

67. Whenever this Settlement Agreement requires or contemplates that one party shall or may give notice to the other, notice shall be provided in writing by first class U.S. Mail and e-mail to counsel.

68. This Settlement Agreement is in compromise of disputed claims, and neither the execution and delivery of this Settlement Agreement, nor the performance of any obligations thereunder, shall be construed as an admission of liability or wrong doing or as an admission of any other matter on the part of any

of the Parties, and neither this Settlement Agreement, nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement is or may be deemed to be or may be used as an admission of, or evidence of, any fault, admission, or omission of the Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

69. The District Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Settlement Agreement, and the Parties hereto submit to the jurisdiction of the District Court for purposes of implementing and enforcing the Settlement embodied in this Settlement Agreement.

70. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions in this Settlement Agreement.

IN WITNESS THEREOF, the Parties hereto have caused this Settlement Agreement to be executed by their duly authorized representatives.

DATED: OCTOBER 14, 2020

______________________________
YOUTH JUSTICE COALITION
by MICHAEL SAAVEDRA

______________________________
PETER ARELLANO

______________________________
JOSE REZA

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

MUNGER, TOLLES & OLSON LLP

THE CONNIE RICE INSTITUTE FOR URBAN PEACE

By: ______________________________
PETER BIBRING
*Attorneys for Plaintiffs*

MICHAEL N. FEUER, City Attorney
JAMES P. CLARK, Chief Deputy City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Senior Assistant City Attorney
A. PATRICIA URSEA, Deputy City Attorney

By: ______________________________
SCOTT MARCUS
Senior Assistant City Attorney
*Attorneys for Defendant*
CITY OF LOS ANGELES

IN WITNESS THEREOF, the Parties hereto have caused this Settlement Agreement to be executed by their duly authorized representatives.

DATED: Jan 29, 20~~19~~ 20

______________________
YOUTH JUSTICE COALITION
by ______________________

______________________
PETER ARELLANO

______________________
JOSE REZA

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

MUNGER, TOLLES & OLSON LLP

THE CONNIE RICE INSTITUTE FOR URBAN PEACE

By: ______________________
PETER BIBRING
*Attorneys for Plaintiffs*

MICHAEL N. FEUER, City Attorney
JAMES P. CLARK, Chief Deputy City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Senior Assistant City Attorney
A. PATRICIA URSEA, Deputy City Attorney

By: ______________________
SCOTT MARCUS
Senior Assistant City Attorney
*Attorneys for Defendant*
CITY OF LOS ANGELES

IN WITNESS THEREOF, the Parties hereto have caused this Settlement Agreement to be executed by their duly authorized representatives.

DATED: 01/28/ , 2020

______________________________
YOUTH JUSTICE COALITION
by ______________________

______________________________
PETER ARELLANO

______________________________
JOSE REZA

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

MUNGER, TOLLES & OLSON LLP

THE CONNIE RICE INSTITUTE FOR URBAN PEACE

By: ______________________________
PETER BIBRING
*Attorneys for Plaintiffs*

MICHAEL N. FEUER, City Attorney
JAMES P. CLARK, Chief Deputy City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Senior Assistant City Attorney
A. PATRICIA URSEA, Deputy City Attorney

By: ______________________________
SCOTT MARCUS
Senior Assistant City Attorney
*Attorneys for Defendant*
CITY OF LOS ANGELES

IN WITNESS THEREOF, the Parties hereto have caused this Settlement Agreement to be executed by their duly authorized representatives.

DATED: January 29, 2020

______________________________

YOUTH JUSTICE COALITION
by ______________________

______________________________

PETER ARELLANO

______________________________

JOSE REZA

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

MUNGER, TOLLES & OLSON LLP

THE CONNIE RICE INSTITUTE FOR URBAN PEACE

By: ______________________________
PETER BIBRING
*Attorneys for Plaintiffs*

MICHAEL N. FEUER, City Attorney
JAMES P. CLARK, Chief Deputy City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Senior Assistant City Attorney
A. PATRICIA URSEA, Deputy City Attorney

By: ______________________________
SCOTT MARCUS
Senior Assistant City Attorney
*Attorneys for Defendant*
CITY OF LOS ANGELES

# Exhibit A

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT REGARDING THE RIGHTS OF PERSONS PREVIOUSLY SUJBECT TO GANG INJUNCTIONS IN THE CITY OF LOS ANGELES

This notice is about a proposed settlement of a class action lawsuit against the City of Los Angeles involving alleged constitutional violations in the enforcement of "gang injunctions" by the Los Angeles Police Department and Los Angeles City Attorney's office against individuals in the City of Los Angeles. ***If you have previously been notified by the City of Los Angeles that you were subject to a gang injunction, this settlement may affect your rights.***

## ABOUT THE LAWSUIT

On October 26, 2016, the organization Youth Justice Coalition and two individuals ("Plaintiffs") filed this lawsuit (entitled *Youth Justice Coalition et al. v. City of Los Angeles et al.*) against the City of Los Angeles in the United States District Court for the Central District of California, Case No. 16-CV-07932-VAP (RAO), challenging the City's practice in enforcing "gang injunctions," which are state-court civil orders prohibiting a variety of gang-related nuisance behaviors. The lawsuit alleged that City of Los Angeles violated procedural due process under the United States and California Constitutions by not naming Plaintiffs as defendants in the civil actions in which gang injunctions were issued or otherwise affording Plaintiffs an opportunity to contest the allegation that they were active members of the criminal street gang subject to the injunction before being served with and made subject to enforcement of the gang injunction. The lawsuit asked the Court to order the City of Los Angeles to cease enforcing gang injunctions against any individuals without first providing them constitutionally sufficient process to contest the allegation that they are active gang members.

In October 2016, the two individual Plaintiffs asked the Court to temporarily halt enforcement of gang injunctions against them pending resolution of the case. The City did not oppose the request as to one Plaintiff, and the Court granted the request as to the other in a preliminary injunction entered in September 2017.

In October 2017, Plaintiffs asked the Court to certify this case as a class action. After discussions between the parties, the City agreed that the case should be certified as a class action, which the Court did in January 2018, certifying a class described below (in "The Parties").

In January 2018, Plaintiffs asked the Court to expand the preliminary injunction temporarily prohibiting enforcement of gang injunctions from the individual Plaintiffs to the entire Plaintiff Class. The Court granted the request in March 2018 on the basis that Plaintiffs were "likely to establish that the City did not provide sufficient due process for [these] class members . . . and that continued enforcement of the Los Angeles Gang Injunctions against these class members is likely to result in irreparable injury."

The parties have reached a settlement of the claims that were certified as class claims, and this notice provides details of that settlement.

## THE PARTIES

Two individuals previously subjected to gang injunctions, Peter Arellano and Jose Reza, represent a class of individuals certified by the Court, defined as

> "All persons, past and future, whom an authorized agent of the City of Los Angeles has notified, whether by personal service or otherwise, that they are subject to a Los Angeles Gang Injunction and who (a) were not named as individual civil defendants, or who were not substituted in as Doe defendants, in the civil nuisance abatement action to obtain that injunction, and (b) who do not have contempt proceedings for violation of such an injunction currently pending against them." (the "Plaintiff Class")

If you have been previously notified by an authorized agent of the City of Los Angeles that you are subject to a gang injunction obtained by the City, and you were not named or substituted in as defendant in the state court action in which that injunction issued, you are a member of the Plaintiff Class in this case. Even if you have been notified by the City of Los Angeles that they are no longer enforcing the injunction against you, you may still be a member of the Plaintiff Class.

**NOTE: Some gang injunctions in Los Angeles County were obtained by the County of Los Angeles. This Settlement does not affect those injunctions.** If you have questions about whether you are affected by this case, contact the attorneys for the Plaintiffs as described below.

The organization Youth Justice Coalition is also a plaintiff in this case, although it is not a class representative.

The Defendant in this case is the City of Los Angeles ("the City").

The City is not admitting liability or any wrongdoing. The Parties desire to compromise and settle this dispute without any admission of fault, liability, or wrongdoing, in the interests of avoiding the additional expense and the inherent uncertainties of litigation.

## ABOUT THE SETTLEMENT

The following is only a summary of the provisions of the settlement. The written agreement between the parties has the full terms of the proposed settlement that was preliminarily approved by the Court. There are instructions below if you want more information about this settlement, including a copy of the complete agreement. The settlement is for non-monetary relief only, which means that the parties are agreeing that the City of Los Angeles will continue certain actions that it already takes and will take certain additional actions to address the claims in the lawsuit and ensure the City's enforcement of gang injunctions complies with due process required by the California and United States constitutions. **The settlement does not entitle you or any member of the Plaintiff Class to money damages, i.e., a cash payment.**

### The Contents of the Settlement

<u>Plaintiff Class Releases</u>
The Plaintiff Class will release all claims in this lawsuit that the Court allowed to be pursued on behalf of the Plaintiff Class (specifically, all constitutional claims asserted against the Defendant). The Plaintiff Class will also release all claims based on future events that are substantially similar to the events on which this lawsuit was based.

<u>Enforcement of Gang Injunctions</u>
Under the Settlement, the City of Los Angeles will enforce a Gang Injunction against an individual only if that individual was named as a defendant in the civil injunction proceeding (or was otherwise

joined in the civil injunction proceeding, as a party, real party in interest, or otherwise, such that the person received all the same procedural rights as a defendant under the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws) and is made subject to enforcement of the gang injunction by a judgment or court order. This new policy applies even if an individual was previously served with a Gang Injunction, and applies to existing Gang Injunctions and to any new Gang Injunction the City of Los Angeles may obtain or seek to enforce in the future.

<u>New Gang Injunctions</u>
If City files a complaint seeking a New Gang Injunction, City will name as a defendant any individual against whom City seeks to enforce the New Gang Injunction. The City may seek to specify, in any proposed New Gang Injunction, the procedure by which the City may petition the court to include additional defendants or parties in interest to the New Gang Injunction. Any such procedure shall seek to afford to any additional defendant or party in interest the same due process rights that a defendant receives under the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws, and must be approved by the court. The City will serve the complaint and other legal documents related to a New Gang Injunction on an individual named as a defendant, and/or the gang entity, in the manner provided for service of process in civil litigation under the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws.

<u>Existing Gang Injunctions</u>
The City of Los Angeles may ask a court to modify an Existing Gang Injunction to make a person subject to it, either by asking the court to add that person as a defendant or by otherwise providing the individual with the same due process rights as a defendant.

The City will make that request by personally serving a motion to modify injunction (or similar document) on an individual that City seeks to add as a defendant or real party in interest to an Existing Gang Injunction. This motion (or similar document) will include the evidence on which the City relies in the motion, although that production of evidence does not supplant or replace the rights of either side under the rules of civil discovery, subject to the rulings of the court.

<u>Procedures of the City of Los Angeles's New Policy</u>
For a period of three years following the Effective Date of this Settlement, City will provide:

- to individuals served with a complaint seeking a New Gang Injunction: a letter that provides contact information of Plaintiffs' Counsel and explanatory information about the process;
- to individuals served with a motion to modify an Existing Gang Injunction (or similar document) to add that individual as a defendant or real party in interest: a letter that provides contact information of Plaintiffs' Counsel and other legal resources available to the individual; and
- to Plaintiffs' Counsel: the names and reasonably available contact information of individuals served with a complaint seeking a New Gang Injunction or a motion to modify (or similar documents) seeking to add an individual to an Existing Gang Injunction.

Nothing in the Settlement Agreement obligates City to provide or pay for counsel for any defendant or real party in interest that City seeks to subject to enforcement of a New or Existing Gang

Injunction, nor does anything in the Settlement Agreement obligate Plaintiffs' Counsel in this class action to represent you in any such proceeding.

Absent a change in the legal standard of proving active gang membership in California, City, in obtaining a court order permitting enforcement of a New or Existing Gang Injunction against an individual, will bear the burden of proof to establish by clear and convincing evidence the individual is an active gang member of the criminal street gang that is a cause of the public nuisance. Nothing in the Settlement Agreement prevents the individual from raising any defense to or legal arguments against the enforcement sought by the City.

The City may seek a default judgment or similar remedy against any individual who fails to oppose a motion to modify (or similar document) seeking to subject an individual to enforcement of an Existing Gang Injunction or who fails to respond to a complaint filed to obtain a New Gang Injunction. If City voluntarily dismisses an individual before a final order or judgment on that individual's active gang membership, City will not enforce against that individual, but this does not preclude the City from later serving a previously dismissed individual in accordance with the provisions of the Settlement Agreement.

A court's determination that an individual is or is not an active gang member made in a civil gang injunction proceeding does not preclude City or the individual from taking the position that the individual is or is not an active gang member in any other criminal, civil, or administrative proceeding.

If the court determines that an individual is not an active gang member, this does not preclude City from later serving that individual based on new or additional evidence of active gang membership in accordance with the provisions of the Settlement Agreement.

Any appeal, writ, or other challenge to a court's determination of active gang membership shall be as provided in the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws.

Enforcement of a Gang Injunction may begin upon notice of the judgment or order permitting enforcement against that individual. Unless otherwise ordered by the court, notice of the judgment or order shall be effectuated in accordance with the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws.

If the judgment or order permitting enforcement against an individual is entered in an Existing Gang Injunction, City shall serve the individual with a Notice of Non-Enforcement of Specific Gang Injunction Provisions, an example of which is attached as Exhibit __, setting forth any provisions of the Existing Gang Injunction that City does not or will not enforce.

The City will cease enforcing a Gang Injunction against an individual five (5) years from the date of the judgment or court order authorizing such enforcement against that individual. However, nothing in the Settlement Agreement precludes the City from seeking a judgment or order permitting enforcement of a Gang Injunction against any individual, regardless of any previous service, enforcement, or dismissals, based on new or additional evidence of active gang membership, so long as the City does so in accordance with the provisions of the Settlement Agreement.

Enforcement of Gang Injunctions Against Juveniles

The new policy for Gang Injunctions and all other provisions of the Settlement Agreement shall apply equally in the event City seeks to obtain a judgment or court order permitting enforcement of a Gang Injunction against an individual who is under the age of 18 ("Juvenile"). In addition, City shall:

- Comply with applicable California law governing civil lawsuits brought against Juveniles, including Cal. Code Civ. Proc. §§ 372-373 (appointment of a guardian ad litem);
- Serve a copy of the complaint, or motion to modify or similar document, on the Juvenile's parent and/or guardian, in addition to serving such document on the Juvenile in accordance with the terms of the Settlement Agreement and applicable law; and
- Deliver an electronic copy of the complaint, motion to modify, or similar document to the Children's Law Center, who can provide the document to the attorney assigned to the Juvenile in the event the Juvenile is under the jurisdiction of the dependency court pursuant to Welfare & Institutions Code § 300 et seq.

In appropriate cases, City may seek release of Juvenile Court records to the court presiding over the Gang Injunction proceeding and the Juvenile.

Attorneys' Fees and Costs

The City will pay Class Counsel reasonable attorneys' fees and costs in the amount of $1,750,000.

**IF YOU WANT MORE DETAILS**

There is a group of lawyers, Plaintiffs' Counsel, representing Plaintiffs and the Plaintiffs Class in this case. You can get a list of these lawyers and a copy of the settlement agreement at https://www.aclusocal.org/LAganginjunctions.

To ask questions about the settlement of this case you can:

- Send a letter to *Youth Justice Coalition* Plaintiffs' Counsel, c/o ACLU of Southern California, 1313 West 8th Street, Los Angeles, CA 90017.
- Send an email to LAganginjunctions@aclusocal.org.
- Leave a voicemail at (213) 201-8933.

**IF YOU DO NOT OBJECT TO THIS SETTLEMENT:**

You do not have to do anything.

**IF YOU OBJECT TO THIS SETTLEMENT:**

You must mail a statement explaining why you object to the settlement no later than **[DATE]**. Please be sure to include your name, address (if available), telephone number (if available), the case name and number of any gang injunction you have been subject to (if available), your signature, a reference to this settlement or the case (*Youth Justice Coalition et al. v. City of Los Angeles et al.)*, the portions of the settlement to which you object, and the reasons you object. Mail your objection to:

*Youth Justice Coalition* Plaintiffs' Counsel
c/o ACLU of Southern California

1313 W. 8th Street
Los Angeles, CA 90017

Plaintiffs' Counsel will provide your objection to the federal judge assigned to this matter, the Honorable Virginia A. Phillips, and to Defendant's Counsel. You must mail your objection by the above deadline; you cannot object to this settlement after the deadline has passed. Even if you object, you do not have the ability to "opt out" of this settlement if the Court approves it.

**HEARING REGARDING FINAL APPROVAL OF THIS SETTLEMENT**

The Court will also hold a hearing about this settlement on **[DATE]**. The hearing date could change. Please check any of the websites listed above close to the date of the hearing for information about any possible change in the hearing date. The Court gets to decide whether to allow members of the Plaintiff Class who timely served objections to this settlement to speak at the hearing.

The address for the court is:
U.S. Federal District Court, Courtroom 8A (8th floor)
350 West 1st Street
Los Angeles, CA 90012

You can get more details about the hearing from the places listed above.

# Exhibit B

PETER BIBRING (SBN 223981)
*pbibring@aclusocal.org*
MELANIE P. OCHOA (SBN 284342)
*mpochoa@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299

*Counsel for Plaintiffs*
(Additional Counsel for Plaintiffs on Following Page)

MICHAEL FEUER, City Attorney
JAMES P. CLARK, Chief Deputy City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
A. PATRICIA URSEA, Deputy City Attorney (SBN 221637)
*Patricia.Ursea@lacity.org*
200 N. Main Street, City Hall East, Room 675
Los Angeles, CA 90012
Telephone (213) 978-7569
Facsimile (213) 978-7011

Attorneys for Defendant
CITY OF LOS ANGELES

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

YOUTH JUSTICE COALITION, a non-profit organization; et al.,

*Plaintiffs*,

vs.

CITY OF LOS ANGELES; et al.,

*Defendants*.

Case No.: 2:16-cv-07932-VAP-RAO

**[Proposed] FINAL ORDER APPROVING CLASS SETTLEMENT**

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
LAURA D. SMOLOWE (SBN 263012)
*laura.smolowe@mto.com*
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

JOSHUA GREEN (SBN 293749)
*jgreen@urbanpeaceinstitute.org*
THE CONNIE RICE INSTITUTE FOR URBAN PEACE
1910 West Sunset Boulevard
Suite 800
Los Angeles, California 90026
Telephone: (213) 404-0124
Facsimile: (213) 402-2843

WHEREAS, Plaintiffs filed the complaint in this class action on October 25, 2016, alleging that City of Los Angeles ("City") violated procedural due process under the United States and California Constitutions by not naming Plaintiffs as defendants in the civil actions in which gang injunctions were issued or otherwise affording Plaintiffs an opportunity to contest the allegation that they were active members of the criminal street gang subject to the injunction before being served with and made subject to enforcement of the gang injunction (the "Action");

WHEREAS, City answered the Complaint on December 16, 2016, expressly denying all claims alleged in the Action and denying that City or any of its officers, employees, or agents violated any laws or committed any wrongful acts or omissions against Plaintiffs as alleged in the Action;

WHEREAS, on November 6, 2017, the Parties filed a Joint Stipulation re Class Certification and Amended Class Definition, and the Court approved the Joint Stipulation on January 4, 2018, certifying the case as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure and appointing Plaintiffs' attorneys as class counsel;

WHEREAS, on September 7, 2017, prior to certifying the case as a class action, the Court on Plaintiffs' motion entered a preliminary injunction barring defendant City from enforcing the Judgment Granting Permanent Injunction in *People v. Big Top Locos, et al.*, Case No. BC511444 (L.A. Sup. Ct. Sept. 23, 2013) against Plaintiff Arellano, on the ground that he was likely to succeed on his claim that "the risk of erroneous deprivation under the City's current procedures [for subjecting individuals to a gang injunction] is considerable and the City's removal procedures do not adequately remedy the lack of pre-deprivation process" (Dkt. 106, p. 24), and on March 15, 2018, again on Plaintiffs' Motion, the Court extended that preliminary injunction to prohibit enforcement of gang injunctions

against all class members served with a Los Angeles Gang Injunction before January 19, 2018 (Dkt. 132);

WHEREAS, the City filed a Notice of Appeal of the District Court's March 15, 2018 Order, and soon thereafter, the Parties agreed to participate in the Ninth Circuit Mediation process;

WHEREAS, parties entered into a settlement of the above-captioned matter (the "Settlement") and executed a Settlement Agreement (the "Settlement Agreement"), which has been filed with the Court;

WHEREAS, the Court held a hearing on _____, 2020, where the Court found the Settlement as set forth in the Settlement Agreement to be adequate, reasonable, and fair;

WHEREAS, the Court preliminarily approved the Settlement in an Order dated _______;

WHEREAS, notice of the Settlement has been adequately provided to the Class as provided in the Court's Order Granting Preliminary Approval;

WHEREAS, Plaintiffs have filed with the Court a Motion for Final Approval of the Settlement, with supporting documents;

WHEREAS, the Court held a hearing on ______ to consider the final approval of the Settlement, and any objections filed before or at the time of the hearing; and

WHEREAS, the Court has considered the Settlement between the Plaintiff Class and Defendants, and the pleadings and documents submitted in connection with the parties' request for final approval of the Settlement Agreement, the arguments presented at the hearing, and any objections and responses, and good cause appearing;

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. This Court has jurisdiction over the subject matter in this Action

pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367(a) (supplemental jurisdiction). The Court has jurisdiction over the Plaintiff Class (as defined in the Court's Order certifying the case as a class action, Dkt. 114), the Settlement Class (as defined in Paragraph ___, below), and Defendants.

2. The Court finds that the Settlement Agreement appears to have resulted from arm's-length negotiations by and among counsel for the parties who were reasonably skilled and prepared and who represented the best interests of their respective clients in negotiating the Settlement, based on a sufficiently developed record, motion practices before this court, and all other relevant factors leading to the Settlement.

3. Pursuant to Federal Rule of Civil Procedure 23(e), and based on all of the facts and circumstances, including the submissions of the parties in connection with the motions for preliminary and final approval, the hearing on final approval, the Court's familiarity with the legal issues, claims, and defenses in this case from litigation of motions for preliminary injunctions and class certification, the Court finds the Settlement as set forth in the Settlement Agreement to be fair, reasonable, adequate and in the best interests of the members of the Plaintiff Class.

4. The Court further finds that the attorneys fees and costs provision of the Settlement Agreement was the result of arm's-length and good faith negotiations supervised by Ninth Circuit mediator Roxane Ashe. The attorneys' fees and costs provision appears to have taken into consideration the right of Plaintiffs to seek an award of fees that would be substantially higher than the amount agreed to, the risks of trial, and all other relevant factors. The Court therefore approves the provisions for attorney's fees and costs contained in the Settlement Agreement in accordance with 42 U.S.C. section 1988(b).

5. The Settlement Agreement is attached to this Final Order as Attachment A and is incorporated by reference into this Final Order. The parties are ordered to implement the Settlement Agreement in accordance with its terms

and provisions.

6. By its Preliminary Approval Order, dated ____, 2020 (Dkt. ___), consistent with the terms of the Settlement Agreement, the Court preliminarily certified the following Settlement Class:

> All persons, past and future, whom an authorized agent of City has notified, whether by personal service or otherwise, that they are subject to a Gang Injunction and who were not named as individual civil defendants, or who were not substituted in as Doe defendants, in the civil nuisance abatement action to obtain that injunction.

The Court finds that this Settlement Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, including the requirements of numerosity, commonality, typicality and adequacy pursuant to Rule 23(a) and the requirements of Rule 23(b)(2). The Court hereby certifies this Settlement Class.

7. The Court approves Peter Arellano and José Reza as Class Representatives of the Settlement Class.

8. The Court finds that the ACLU Foundation of Southern California, the Connie Rice Institute for Urban Peace, and Munger Tolles & Olson LLP (collectively "Class Counsel") have fairly and adequately represented the interests of the Plaintiff Class and satisfied all the requirements of Rule 23(g) of the Federal Rules of Civil Procedure.

9. The Court, having approved the provision for attorneys' fees and costs in the Settlement Agreement hereby orders that these fees and costs be paid in accordance with the Settlement Agreement.

10. In accordance with the Settlement Agreement, this action is hereby dismissed with prejudice. Fed. R. Civ. P. 54. Without in any way affecting the finality of this Final Order, this Court retains continuing jurisdiction for the purposes of enforcing the Settlement and as to all matters relating to the

interpretation and enforcement of the Settlement Agreement.

IT IS SO ORDERED.

Dated:

Hon. Virginia A. Phillips
United States District Judge

# Exhibit C

# GANG INJUNCTIONS

| | Gang/Defendant | Case No. |
|---|---|---|
| 1 | Blythe Street | LC020525 |
| 2 | 18th Street (Southwest) | BC167915 |
| 3 | Harpys | BC192678 |
| 4 | Langdon Street | LC048292 |
| 5 | Venice Shoreline Crips | SC057282 |
| 6 | Harbor City Boys/Harbor City Crips | NC026769 |
| 7 | Venice 13 | SC060375 |
| 8 | Culver City Boys (w/LADA) | SC056980 |
| 9 | Pacoima Project Boys | PC027254 |
| 10 | Eastside Wilmas/Westside Wilmas | NC030080 |
| 11 | Canoga Park Alabama (CPA) | BC267153 |
| 12 | 18th Street (Pico-Union) | BC272030 |
| 13 | KAM | BC282629 |
| 14 | Avenues | BC287137 |
| 15 | Rolling 60s | BC298646 |
| 16 | Bounty Hunters | BC298646 |
| 17 | 18th Street (Hollywood) | BC305434 |
| 18 | Mara Salvatrucha (MS) | BC311766 |
| 19 | 18th Street (Wilshire) | BC313309 |
| 20 | 38th Street | BC319166 |
| 21 | Varrio Nuevo Estrada (VNE) | BC319981 |
| 22 | 42nd/43rd/48th Street Gangster | BC326016 |
| 23 | Grape Street Crips | BC330087 |
| 24 | Hoover/Trouble | BC330272 |
| 25 | 18th Street, Crazy Riders, DIA, Krazy Town, La Raza Loca, Orphans, Rockwood, Varrio Vista Rifa, Wanderers, Witmer Street Locos | BC332713 |
| 26 | Big Hazard | BC335749 |
| 27 | Playboys | BC351990 |
| 28 | Black P Stones | BC352951 |
| 29 | Schoolyard Crips /Geer St | BC349468 |
| 30 | White Fence | BC353596 |
| 31 | Dogtown | BC359945 |
| 32 | Lincoln Heights/Clover/ Eastlake | BC358881 |
| 33 | Highland Park | BC359944 |
| 34 | Rolling 40s/46 Top Dollar Hustler Crips/46 Neighborhood Crips | BC380229 |
| 35 | 5th and Hill | BC380877 |
| 36 | 204th Street/Eastside Torrance | BC381942 |
| 37 | San Fer | BC388726 |
| 38 | For Crime, Barrio Mojados, Florencia13, Pueblo Bishops, Bloodstone Villains, Oriental Boyz | BC397522 |
| 39 | Eastside Pain | BC399741 |
| 40 | Temple Street | BC401190 |
| 41 | Toonerville | BC401928 |
| 42 | Barrio Van Nuys | BC413147 |
| 43 | Swans, F-13, 7-Trey, Main St. Crips | BC415694 |
| 44 | Rancho San Pedro | BC460412 |
| 45 | Columbus Street | BC501348 |
| 46 | Big Top Locos, Crazys, Diamond Street Locos, Echo Park Locos, Frogtown Rifa, Head Hunters | BC511444 |

# Exhibit D

**MICHAEL N. FEUER**
CITY ATTORNEY

# THESE LEGAL PAPERS MEAN THE CITY IS ASKING A COURT TO MAKE YOU SUBJECT TO A GANG INJUNCTION.[1]

You are being served with legal papers that allege that [GANG] and its members are a public nuisance in a particular area (called the "Safety Zone") and that you are an active member of [GANG]. The papers include a Complaint, which describes the facts that the City will use to prove the case against you and the gang. This is the beginning of a civil lawsuit, and you are named as a defendant in this lawsuit, but you are not yet on the gang injunction. You will have the chance to defend yourself, to challenge the City's evidence, and to argue both that the court should not issue a gang injunction at all, and that you are not an active gang member who should be subject to a gang injunction, even if the court issues one.

**You must respond to this lawsuit by a certain date or else a court may grant the injunction and order you to obey it, even without hearing from you first.** If the judge finds that the gang is a public nuisance, the judge will issue a gang injunction that restricts what active members of [GANG] may do while in the Safety Zone. If the judge grants the injunction and finds that you are an active member of [GANG], you will have to follow the terms of the gang injunction for up to five years.[2] These terms may include restrictions on you such as a prohibition against being seen in public in the Safety Zone with other gang members or wearing certain clothing in the Safety Zone. If you violate the terms of the gang injunction, you may be arrested and charged with a crime.

You can consult with an attorney if you have questions about this lawsuit or your legal rights, or you can represent yourself.[3] Because this case is in civil court, you will not be appointed an attorney like in a criminal case. **You can get information about free resources to help you by contacting the ACLU at (213) 201-8933 or go to www.aclusocal.org/laganginjunctions.**

Very truly yours,
Office of the Los Angeles City Attorney

---

[1] This letter is intended to provide general information only. It is not intended and should not be taken as legal advice. The City has agreed to provide this information as part of the settlement of a lawsuit filed by the Youth Justice Coalition, with the help of the ACLU of Southern California and the Urban Peace Institute, over the City's prior gang injunction policy. (*Youth Justice Coalition v. City of Los Angeles*, 16-CV-07932.)

[2] At the end of 5 years, if there is additional evidence of your active membership in the gang, you may be served with new legal papers alleging that you are an active gang member. If you are also subject to probation or parole with gang terms, you may be required to follow the terms of the gang injunction even after your probation or parole terminates.

[3] If you have an open case in the dependency court (Children's Court), either as a minor or as a nonminor dependent, you can consult with your dependency attorney. If you do not know your attorney's name or phone number you may call (323) 980-1700 for assistance.



DRAFT

# Exhibit E

**MICHAEL N. FEUER**
CITY ATTORNEY

**THESE LEGAL PAPERS MEAN THE CITY IS ASKING A COURT TO MAKE YOU SUBJECT TO A GANG INJUNCTION.**[1]

You are being served with legal papers that allege that you are an active member of [GANG] and you should be subject to the gang injunction against [GANG]. The legal papers include the evidence that the City will use to prove that you are an active member of [GANG]. You are not yet on the gang injunction, and you will have the chance to defend yourself.

**You must respond to these papers by a certain date or else a court may order you to obey the injunction, even without hearing from you first.** The hearing will be on **[DATE/TIME] at [COURT]**, however, you may have to submit your evidence before that date.

If the judge finds that you are an active member of [GANG], then you will have to follow the terms of the injunction against [GANG] for up to five years.[2] For example, the gang injunction may prohibit active gang members, including you, from being seen in public with other gang members or wearing certain clothing in a specific area called the Safety Zone. If you violate the terms of the gang injunction, you may be arrested and charged with a crime.

You can consult with an attorney if you have questions about these papers or your legal rights, or you can represent yourself.[3] Because this case is in civil court, you will not be appointed an attorney like in a criminal case. **You can get information about free resources to help you by contacting the ACLU at (213) 201-8933 or www.aclusocal.org/laganginjunctions.**

Very truly yours,
Office of the Los Angeles City Attorney

DRAFT

[1] This letter is intended to provide general information only. It is not intended and should not be taken as legal advice. The City has agreed to provide this information as part of the settlement of a lawsuit filed by the Youth Justice Coalition, with the help of the ACLU of Southern California and the Urban Peace Institute, over the City's prior gang injunction policy. (*Youth Justice Coalition v. City of Los Angeles*, 16-CV-07932.)

[2] At the end of 5 years, if there is additional evidence of your active membership in the gang, you may be served with new legal papers alleging that you are an active gang member. If you are also subject to probation or parole with gang terms, you may be required to follow the terms of the gang injunction even after your probation or parole terminates.

[3] If you have an open case in the dependency court (Children's Court), either as a minor or as a nonminor dependent, you can consult with your dependency attorney. If you do not know your attorney's name or phone number you may call (323) 980-1700 for assistance.

# Exhibit F

**MICHAEL N. FEUER**
CITY ATTORNEY

# NOTICE OF NON-ENFORCEMENT OF SPECIFIC PERMANENT GANG INJUNCTION PROVISIONS

To ____________:

You are receiving this Notice Letter because on [DATE] the Court has entered an order permitting enforcement against you of the "Judgment Granting Permanent Injunction By Court After Default" in *People v.* ________, Case Number _______ (hereinafter referred to as "permanent gang injunction order").

## PROVISION 1(d) "STAY AWAY FROM DRUGS"

The City of Los Angeles is providing you with Notice that subsections (2) and (3) of the "Stay Away From Drugs" provision contained in the permanent gang injunction order will no longer be enforced. However, subsection (1) remains in full force. As a result, you will not be stopped, detained or arrested, unless within the Safety Zone you are "without a prescription, … selling, possessing, or using any controlled substance or related paraphernalia, including but not limited to rolling papers and pipes used for illegal drug use," in violation of subsection (1).

## PROVISION 1(e) "NO OPEN CONTAINERS OF ALCOHOL"

The City of Los Angeles is providing you with Notice that subsections (2) and (3) of the "No Open Containers of Alcohol" provision contained in the permanent gang injunction order will no longer be enforced. However, subsection (1) remains in full force. As a result, you will not be stopped, detained or arrested, unless within the Safety Zone you are "anywhere in public view or anyplace accessible to the public, except on properly licensed premises, … possessing an open container of an alcoholic beverage," in violation of subsection (1).



City Hall East 200 N. Main Street Room 966 Los Angeles, CA 90012 Phone (213) 978-7192 Fax (213) 978-8717

**PROVISION 1(g) "OBEY CURFEW"**

The City of Los Angeles is providing you with Notice that the "Obey Curfew" provision contained in the permanent gang injunction order will no longer be enforced. As a result, you will not be stopped, detained or arrested for violating the "Obey Curfew" provision of the permanent gang injunction order.

**PROVISION 1(j) "OBEY ALL LAWS"**

The City of Los Angeles is providing you with Notice that the "Obey All Laws" provision contained in the permanent gang injunction order will no longer be enforced. As a result, you will not be stopped, detained or arrested for violating the "Obey All Laws" provision of the permanent gang injunction order.

If you have any questions regarding the contents of this Notice Letter, please contact the Anti-Gang Section of the Los Angeles City Attorney's Office at (213) 978-7192.

Very truly yours,

Office of the Los Angeles City Attorney

# Exhibit 2

PETER BIBRING (SBN 223981)
pbibring@aclusocal.org
MELANIE P. OCHOA (SBN 284342)
mpochoa@aclusocal.org
ADITI FRUITWALA (SBN 300362)
afruitwala@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299

*Counsel for Plaintiffs*
(Additional Counsel for Plaintiffs on Following Page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

YOUTH JUSTICE COALITION, a non-profit organization; PETER ARELLANO and JOSE REZA, individuals, for themselves and on behalf of a class of similarly-situated individuals,

*Plaintiffs*,

vs.

CITY OF LOS ANGELES; DOES 1 through 10, in their official and individual capacities,

*Defendants*.

Case No.: 2:16-cv-07932-VAP-RAO

Complaint Filed: October 25, 2016

**DECLARATION OF JOSHUA GREEN IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

JACOB S. KREILKAMP (SBN 248210)
jacob.kreilkamp@mto.com
LAURA D. SMOLOWE (SBN 263012)
laura.smolowe@mto.com
MARIA JHAI (SBN 283059)
maria.jhai@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

ANKUR MANDHANIA (SBN 302373)
ankur.mandhania@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

ADELE M. EL-KHOURI (Admitted *pro hac vice*)
adele.el-khouri@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, 7th Floor
Washington, D.C. 20004
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

JOSHUA GREEN (SBN 293749)
jgreen@urbanpeaceinstitute.org
SEAN GARCIA-LEYS (SBN 313558)
sgarcialeys@urbanpeaceinstitute.org
THE CONNIE RICE INSTITUTE FOR URBAN PEACE
1910 West Sunset Boulevard
Suite 800
Los Angeles, California 90026
Telephone: (213) 404-0124
Facsimile: (213) 402-2843

*Counsel for Plaintiffs*

**DECLARATION OF JOSHUA GREEN**

I, JOSHUA GREEN, declare as follows:

1. I am an attorney licensed to practice before the courts of the State of California, and I am one of the attorneys for Plaintiffs Youth Justice Coalition, Peter Arellano, and José Reza. I work for the Connie Rice Institute for Urban Peace ("UPI"). I am also admitted to practice before United States District Court for the Central District of California. I make this declaration in support of Plaintiffs' motion for class certification based on my own personal knowledge and if called to testify could and would do so competently.

2. Throughout the course of this case, UPI has served as counsel for the Plaintiffs. I am the UPI attorney primarily responsible for and involved in this litigation.

3. UPI is committed to supporting violence-impacted communities to implement policy, systems and practice solutions to reduce violence, achieve safety and improve community health. UPI has extensive expertise in gang policing practices and has worked to train law enforcement officers and community violence intervention workers, develop localized violence intervention strategies, and support individuals and communities impacted by gang injunctions and gang databases through direct representation and policy advocacy.

4. I graduated from Harvard Law School in 2013 where I was the co-Editor-in-Chief of the Harvard Journal on Racial and Ethnic Justice.

5. Following law school I received an Equal Justice Works Fellowship to work at the Advancement Project California focusing on gang injunctions. This work included community outreach and education on gang injunctions, as well as the representation of individuals in the Los Angeles City Attorney's Petition for Removal from Gang Injunction Enforcement process.

6. I have worked at UPI since 2016, first as the criminal justice coordinator and now as the criminal justice program manager. In this capacity I manage and supervise all of UPI's criminal justice work. In addition to litigation, I work on legislation related to gang profiling and gang databases and have presented at multiple conferences on issues related to gang injunctions and gang databases.

7. In my role as criminal justice program manager, I also supervise UPI attorney Sean Garcia-Leys in his work on this litigation

8. Sean Garcia-Leys graduated from University of California, Irvine School of Law in 2016. Upon graduation, Mr. Garcia-Leys came to UPI as a staff attorney. He is admitted to the California bar and is admitted to practice before the United States District Court for the Central District of California.

9. Before law school, Mr. Garcia-Leys worked for nine years as public high school teacher in Los Angeles' inner-city communities of Watts and East Los Angeles. Following that he worked for one year as a teacher at a charter school managed by Plaintiff in this case, Youth Justice Coalition. In both the public schools and at Youth Justice Coalition, Mr. Garcia-Leys worked closely with gang involved youth and with adult gang intervention workers, some of whom were subject to gang injunctions.

10. In addition to his work on the present case, Mr. Garcia-Leys has also represented individuals in five gang injunction cases: *People v. La Jolla Criminal Street Gang*, No. 30-2015-00810734 (O.C. Super. Ct.); *People v. Plas Criminal Street Gang*, No. No. 30-2015-00810781 (O.C. Super. Ct.); *People v. Fullerton Tokers Town Criminal Street Gang*, No. 30-2011-00449392 (O.C. Supr. Ct.); *People v. Varrio Viejo Criminal Street Gang*, No. 07CC19689 (O.C. Supr. Ct.); and *People v. Longos, Surenos*, No. NC 056071 (L.A. Supr. Ct.). In these cases,

Mr. Garcia-Leys argued for the right to pre-deprivation active participation hearings, which is a central issue to the claims asserted in this action. Mr. Garcia-Leys has also represented clients subject to existing gang injunctions in seeking an end to enforcement of the injunction against them as individuals on the grounds they are not members of the enjoined gang.

11. Mr. Garcia-Leys has been a part of UPI's work identifying and investigating the claims of this action. He has sixteen years working with individuals subject to gang injunctions in various capacities, including living for one year with an individual subject to a gang injunction. From these experiences, Mr. Garcia-Leys is particularly knowledgeable about the procedures and effects of gang injunctions, including their service on alleged members, their enforcement by police, how alleged gang members have had to adapt to injunctions to avoid arrest, and the difficulties of seeking an end to enforcement.

Executed on this 2nd day of OCTOBER, 2017 at Los Angeles, California.

By: *s/ Joshua Green*
Joshua Green

*Counsel for Plaintiffs*

# Exhibit 3

PETER BIBRING (SBN 223981)
pbibring@aclusocal.org
MELANIE P. OCHOA (SBN 284342)
mpochoa@aclusocal.org
ADITI FRUITWALA (SBN 300362)
afruitwala@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299

*Counsel for Plaintiffs*
(Additional Counsel for Plaintiffs on Following Page)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YOUTH JUSTICE COALITION, a non-profit organization; PETER ARELLANO and JOSE REZA, individuals, for themselves and on behalf of a class of similarly-situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES; DOES 1 through 10, in their official and individual capacities,<br><br>Defendants. | Case No. 2:16-cv-07932-VAP-RAO<br><br>Complaint Filed: October 25, 2016<br><br>**DECLARATION OF LAURA D. SMOLOWE IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

JACOB S. KREILKAMP (SBN 248210)
jacob.kreilkamp@mto.com
LAURA D. SMOLOWE (SBN 263012)
laura.smolowe@mto.com
MARIA JHAI (SBN 283059)
maria.jhai@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

ANKUR MANDHANIA (SBN 302373)
ankur.mandhania@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

ADELE M. EL-KHOURI (Admitted *pro hac vice*)
adele.el-khouri@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, 7th Floor
Washington, D.C. 20004
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

JOSHUA GREEN (SBN 293749)
jgreen@urbanpeaceinstitute.org
SEAN GARCIA-LEYS (SBN 313558)
sgarcialeys@urbanpeaceinstitute.org
THE CONNIE RICE INSTITUTE FOR URBAN PEACE
1910 West Sunset Boulevard
Suite 800
Los Angeles, California 90026
Telephone: (213) 404-0124
Facsimile: (213) 402-2843

*Counsel for Plaintiffs*

Case 2:16-cv-07932-VAP-RAO Document 107-3 Filed 10/02/17 Page 3 of 7 Page ID #:4817

**DECLARATION OF LAURA D. SMOLOWE**

I, Laura D. Smolowe, declare as follows:

1. I am an attorney licensed to practice in the State of California, and I am a partner at Munger, Tolles & Olson LLP ("MTO"), counsel of record for Plaintiffs YOUTH JUSTICE COALITION, PETER ARELLANO, and JOSE REZA (collectively "Plaintiffs") in the above-entitled action. I have personal knowledge of the facts set forth below and if called upon to testify, I could and would do so competently. I submit this declaration in support of Plaintiffs' motion for class certification and appointment of the ACLU Foundation of Southern California, The Connie Rice Institute for Urban Peace, and Munger, Tolles & Olson LLP (collectively, "Plaintiffs' Counsel") as class counsel.

2. In appointing class counsel, the Court must consider "the work counsel has done in identifying or investigating potential claims in the action," "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," "counsel's knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). As set forth herein and in the declarations of Peter Bibring and Joshua Green filed concurrently herewith, Plaintiffs' Counsel satisfy this standard.

3. Throughout this action, MTO has served as counsel for Plaintiffs, along with counsel from the American Civil Liberties Union of Southern California ("ACLU/SC") and the Connie Rice Institute for Urban Peace ("UPI").[1] Jacob Kreilkamp, Maria Jhai, Ankur Mandhania, Adele M. El-Khouri and I are the MTO attorneys primarily responsible for and involved in this litigation.

4. Both Jacob Kreilkamp and I were counsel for the plaintiffs in the related case *Vasquez v. Rackaukas*., Case No. CV09-1090 VBF (RNBx) (C.D. Cal.).

---

[1] Declarations from attorneys for the ACLU/SC and UPI are filed concurrently herewith.

Because *Vasquez* was a class action, like this case, and involved virtually identical due process challenges to very similar gang injunction enforcements practices, both Mr. Kreilkamp and I have substantial, directly relevant, experience that makes us well-suited to represent Plaintiffs in this matter. Our further qualifications, along with those of our colleagues, are set forth below.

5. I have been a member of the California bar since 2009. I graduated from Yale Law School in 2006. At Yale Law School, I was the director of the Green Haven Prison Project and served on the boards of Yale Law Women and the Jerome N. Frank Legal Services Organization, Yale's clinical arm. After graduation, I served as a judicial law clerk to the Honorable Dean D. Pregerson of the United States District Court for the Central District of California from 2007 to 2008, and for the Honorable Richard A. Paez of the Ninth Circuit from 2006 to 2007.

6. I joined MTO in 2009. My practice has focused on complex civil litigation in federal and state court, and constitutional issues. I have litigated multiple constitutional issues including section 1983 and state and federal habeas cases involving, among other issues, due process, and the First, Sixth and Eighth Amendments. I have represented clients at all stages of litigation, from the inception of a case, through motion practice, up to and including obtaining favorable verdicts in both bench and jury trials, and throughout the appellate process. In addition to the *Vasquez* matter, my significant representations relevant to this motion include: representing prisoners seeking parole before the California Board of Parole Hearings and in habeas proceedings before the California Superior Court and the California Court of Appeal, and representing a class of chronically homeless and disabled individuals against the City of Santa Monica in bringing claims under the Fourth, Eighth, and Fourteenth Amendments, and the Americans with Disabilities Act for harassing, citing, or arresting the plaintiff class on account of their status as chronically homeless. In addition to my litigation practice, I am a member of the Board of Trustees for the Lawyers' Committee for Civil Rights Under Law, and I

serve on the board of the anti-poverty non-profit LIFT-LA.

7. My partner Jacob Kreilkamp has been a member of the California bar since 2007. Mr. Kreilkamp graduated *magna cum laude* from New York University School of Law in 2003, where he was elected to the Order of the Coif and received the Butler Graduation Award for Outstanding Scholarship, Professional Activities and Character, and the Lipper Graduation Award for Outstanding Scholarship in the Field of International Law. After graduation, Mr. Kreilkamp clerked for the Honorable Kimba M. Wood for the United States District Court for the Southern District of New York from 2003 to 2004, and for the Honorable Raymond C. Fisher for the United States Court of Appeal for the Ninth Circuit from 2004 to 2005.

8. Mr. Kreilkamp has been with MTO since 2006. His practice focuses on complex commercial litigation and civil rights *pro bono* litigation. In addition to the *Vasquez* litigation, his significant litigation experience relevant to this motion includes: defending putative securities class action claims; representing a proposed class of individuals pursuing claims against the federal government for delays in their naturalization proceedings; representing the United Nations' Special Rapporteur on the promotion of the right to freedom of opinion and expression in proceedings in various African regional courts challenging restrictive press laws; working as co-counsel with the ACLU/SC on other projects relating to prisoners' rights; and drafting amicus briefs relating to a range of civil liberties issues on behalf of various individuals and organizations, including law professors and members of Congress. Mr. Kreilkamp is a member of the Board of Directors of the ACLU/SC, Chair of the Board's Communications and Outreach Committee, and a member of the Board's Executive Committee.

9. My colleague Maria Jhai has been a member of the California bar since 2012. She graduated *magna cum laude* from Michigan Law School in 2011, where she was elected to the Order of the Coif and was awarded the Michigan Supreme Court Historical Society Law Student Prize and the Ralph M. Freeman Prize for

excellence in criminal law and procedure. As a student attorney in the law school's Innocence Clinic, Ms. Jhai uncovered evidence that led to the exoneration of her client after nine years in prison, and submitted briefs at all levels of the Michigan court system. After law school, Ms. Jhai served as a law clerk for the Honorable Stephen J. Murphy, III in the United States District Court for the Eastern District of Michigan, and for the Honorable Helene N. White in the Sixth Circuit Court of Appeals.

10. Ms. Jhai joined MTO in 2014. Her practice at MTO focuses on complex civil litigation, with an emphasis on class actions and trial work. She has written briefs, argued motions, conducted witness interviews, led discovery efforts, and prepared experts for deposition and examination at trial. Ms. Jhai's significant representations, for purposes of this motion, include representing a major retailer in a consumer class action, including a seven-week bench trial. Ms. Jhai has also represented clients pro bono in immigration proceedings and in wage-and-hour matters before the Labor Commissioner.

11. My colleague Adele El-Khouri is a 2013 graduate of Vanderbilt Law School, where she was elected to the Order of the Coif, served as Editor in Chief of the *Vanderbilt Law Review*, won the Bass, Berry & Sims Intramural Moot Court Competition, and participated in the appellate litigation clinic. She previously served as an Attorney-Adviser in the Office of Legal Counsel at the U.S. Department of Justice, where she advised the White House, the Attorney General, and federal agencies on major questions of constitutional, statutory, and administrative law. Before that, she clerked for Judge Pamela A. Harris of the U.S. Court of Appeals for the Fourth Circuit and Judge Stephen A. Higginson of the U.S. Court of Appeals for the Fifth Circuit.

12. Ms. El-Khouri joined MTO in 2017. She has drafted several motions and briefs at the federal district court, circuit court, and Supreme Court levels. Ms. El-Khouri's significant representations, for purposes of this motion, include

representing a major banking institution in a class action and representing pro bono several organizations and individuals in an action challenging federal regulations.

13. My colleague Ankur Mandhania graduated *magna cum laude* from New York University School of Law in 2014, where he was elected to the Order of the Coif, served as the articles editor for the New York Law Review, and was awarded the Weinfeld Prize for Scholarship in Procedure and Courts and the Pro Bono Service Award. During law school, Mr. Mandhania also served as a translator for Hindi-speaking plaintiffs being represented by various NYU clinics. After law school, Mr. Mandhania clerked for the Honorable Carlos T. Bea on the United States Court of Appeals for the Ninth Circuit from 2014 to 2015.

14. Mr. Mandhania joined MTO in 2015. Since starting at the firm his practice has focused on complex civil litigation, with a particular emphasis on class actions. His significant representations for purposes of this motion include representations of major internet companies in three putative class actions, one of which is being settled on a class-wide basis. Mr. Mandhania has also assisted in the favorable resolution of a civil rights action for a pro bono plaintiff.

I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge and belief. Executed this 2nd day of October, 2017 in Los Angeles, California.

By: /s Laura D. Smolowe
Laura D. Smolowe

# Exhibit 4

PETER BIBRING (SBN 223981)
pbibring@aclusocal.org
MELANIE P. OCHOA (SBN 284342)
mpochoa@aclusocal.org
ADITI FRUITWALA (SBN 300362)
afruitwala@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299

*Counsel for Plaintiffs*
(Additional Counsel for Plaintiffs on Following Page)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

YOUTH JUSTICE COALITION, a non-profit organization; et al.,

*Plaintiffs,*

vs.

CITY OF LOS ANGELES; et al.,

*Defendants.*

Case No.: 2:16-cv-07932-VAP-RAO

Honorable Virginia A. Phillips

Complaint Filed: October 25, 2016

**DECLARATION OF PETER BIBRING IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Case 2:16-cv-07932-VAP-RAO Document 107-5 Filed 10/02/17 Page 2 of 10 Page ID #:4858

JACOB S. KREILKAMP (SBN 248210)
jacob.kreilkamp@mto.com
LAURA D. SMOLOWE (SBN 263012)
laura.smolowe@mto.com
MARIA JHAI (SBN 283059)
maria.jhai@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

ANKUR MANDHANIA (SBN 302373)
ankur.mandhania@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

ADELE M. EL-KHOURI (Admitted *pro hac vice*)
adele.el-khouri@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, 7th Floor
Washington, D.C. 20004
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

JOSHUA GREEN (SBN 293749)
jgreen@urbanpeaceinstitute.org
SEAN GARCIA-LEYS (SBN 313558)
sgarcialeys@urbanpeaceinstitute.org
THE CONNIE RICE INSTITUTE FOR URBAN PEACE
1910 West Sunset Boulevard
Suite 800
Los Angeles, California 90026
Telephone: (213) 404-0124
Facsimile: (213) 402-2843

**DECLARATION OF PETER BIBRING**

I, PETER BIBRING, declare as follows:

1. I am an attorney licensed to practice before the courts of the State of California, and I am one of the attorneys for Plaintiffs Youth Justice Coalition, Peter Arellano, and José Reza. I work for the American Civil Liberties Union Foundation of Southern California ("ACLU SoCal"). I am also admitted to practice before a number of federal courts, including the United States District Court for the Central District of California and the United States Court of Appeals for the Ninth Circuit. I make this declaration in support of Plaintiffs' motion for class certification based on my own personal knowledge and if called to testify could and would do so competently.

2. Throughout the course of this case, the ACLU SoCal has served as counsel for Plaintiffs. Melanie P. Ochoa, Aditi Fruitwala, and I are the ACLU SoCal attorneys primarily responsible for and involved in this litigation.

3. The ACLU of SoCal is one of the largest regional affiliates of the American Civil Liberties Union, and is dedicated to defending and securing important constitutional rights and to extending these rights to people who have been excluded from their protection. ACLU SoCal has extensive expertise in class action litigation and due process litigation, and has participated in numerous cases in federal court related to law enforcement policies and practices.

4. I graduated *magna cum laude* from New York University School of Law in 2002. From 2002-2003, I served as a judicial law clerk for the Honorable Marilyn Hall Patel, then Chief Judge of the United States District Court for the Northern District of California. From 2003-2004, I served as a judicial law clerk for the Honorable Pierre N. Leval on the United States Court of Appeals for the Second Circuit. A true and correct copy of my resume is attached as Exhibit A.

5. Following my clerkships, I worked as an associate in private practice

for a law firm that specialized in civil rights and plaintiff-side employment cases. While at that firm, I engaged in complex class-action litigation, including *Wang v. Chinese Daily News, Inc.*, No. CV 04-1498 (C.D. Cal.) & Nos. 04-80094, 05-80010 (9th Cir.) (class action on behalf of more than two hundred newspaper workers for violations of the Fair Labor Standards Act and California Labor Code; plaintiffs prevailed at summary judgment and damages and attorneys' fees at trial totaling more than $5 million), and *Bonilla v. Starwood Hotels & Resorts Worldwide*, Inc., No. BC 421541 (L.A. Super. Ct.), No. CV 04-9025 CBM (C.D. Cal.) (class action on behalf of hotel workers denied meal and rest breaks; settled for more than $3 million).

6. I have worked at the ACLU SoCal since 2006, first as a staff attorney, then as a senior staff attorney, and currently as director of police practices. In my current role, I coordinate the work on policing issues for all three California affiliates of the ACLU and supervise attorneys and advocates engaged in that work. In addition to litigation, I work on legislation related to policing and civil rights and have presented widely on issues in policing and civil rights.

7. While at the ACLU SoCal, I have continued to work on complex and novel civil rights and class action litigation. My litigation experience at the ACLU SoCal includes: *Fazaga v. Federal Bureau of Investigation*, No. SA CV 11-00301 (C.D. Cal.) & Nos. 12-56867, 12-56874, and 13-55017 (9th Cir.) (lead counsel) (class action challenge to FBI's use of undercover informants to collect information in mosques without suspicion of criminal activity); *Nee v. County of Los Angeles*, No. CV 11-8899 (C.D. Cal.) (lead counsel) (challenging sheriff department's repeated harassment and detention of photographers on the asserted ground that photography potentially indicated involvement with terrorism); *K.L. v City of Glendale*, No. CV 11-8484 (C.D. Cal.) (co-lead counsel) (class action challenge to gang sweep in high school by police that exclusively targeted Latino

Case 2:16-cv-07932-VAP-RAO Document 107-3 Filed 10/02/17 Page 5 of 10 Page ID #:4861

students as unlawful detention and equal protection violation; settlement required changes to policies and training of four municipal agencies and verification that no information collected in sweep was retained by police); *Gordon v. City of Moreno Valley*, No. ED CV 09-688 (C.D. Cal.) (lead counsel) (representing African-American barbers in a challenge to raids by police, state and city officials; settlement required changes to policy and training); *United States v. Los Angeles*, No. CV 00-11769 (C.D. Cal.) (representing community interveners in United States Department of Justice case resulting in far-reaching consent decree over Los Angeles Police Department); *Trujillo v. City of Ontario*, No. ED CV 04-1015 (C.D. Cal.) and No. 06-55736 (9th Cir.) (class action on behalf of police officers subjected to covert video surveillance in their station locker room settled on the first day of trial for more than $2 million); *Fitzgerald v. City of Los Angeles*, No. 03-01876 (C.D. Cal.) (class action challenge to Los Angeles Police Department detention and search practices in the Skid Row area of Los Angeles, entered settlement requiring changes in LAPD training on search and detention); *Palmer/Sixth Street Properties, L.P. v. City of Los Angeles*, No. B206102 (Cal. Ct. App.) (co-lead counsel) (representing interveners and amici in support of the City of Los Angeles in a challenge to the City's affordable housing law).

8. In my work at the ACLU SoCal, I have litigated a number of cases specifically involving gang injunctions, which is the subject of the present case. These include: *Vasquez v. Rackauckus*, 734 F.3d 1025 (9th Cir. 2013) (class action due process challenge to enforcement of gang injunction against plaintiffs who had not been given opportunity to be heard on whether they were gang members), *People v. Orange Varrio Cypress*, No. 30-2009 118739 (O.C. Super. Ct.) (filed Feb. 17, 2009) (defending individuals in gang injunction action), and *People v. MTA*, No. BC440034 (L.A. Sup. Ct.) (filed June 21, 2010) (lead counsel) (defending artist in "tagger injunction" brought by the City of Los Angeles based

on alleged prior participation in graffiti crew, which sought to impose restrictive "gang injunction"-style restrictions and to impose penalties and seize proceeds from lawful sale of art). I have also filed amicus briefs in several gang injunction cases in Los Angeles County and elsewhere, including *People v. Florencia 13, et al.*, No. BC403340 (L.A. Sup. Ct.), *People v. Townsend Street Criminal Street Gang, et al.*, No. 30-2014 00727728 (O.C. Super. Ct.), and *People v. Eastside, et al.*, No. 1379826 (S.B. Sup. Ct.), and have presented on gang injunction issues to California judges at the California Appellate Justices Institute.

9. In addition to my work at the ACLU SoCal, I developed and taught the Civil Rights Litigation Clinic at UCLA School of Law, in which I provided classroom instruction on procedural and immunities issues with federal civil rights actions, as well as instruction in legal skills including interviews, depositions, negotiations, and close supervision of students in their work on active civil rights cases.

10. In my role as director of police practices, I also supervise several ACLU SoCal attorneys, including Melanie P. Ochoa and Aditi Fruitwala, in their work on this litigation.

11. Melanie P. Ochoa graduated *cum laude* from Harvard University Law School in 2010. After law school, Ms. Ochoa completed her PhD in Sociology and Social Policy from Harvard University in 2011. Ms. Ochoa then served as a law clerk for the Honorable Stephen Reinhardt in the Ninth Circuit Court of Appeals from 2011-2012. She has been admitted to the California bar since September of 2012, and is also admitted to practice before several federal courts, including the United States District Court for the Central District of California and the United States Court of Appeals for the Ninth Circuit.

12. Following her clerkships, Ms. Ochoa worked as an attorney at the law firm O'Melveny & Myers, a law firm specializing in complex litigation, from

2012-2016. While at this firm, Ms. Ochoa served as lead counsel, pro bono, in two civil rights cases on appeal to the Ninth Circuit: *Randee Vensor v. Tonya Schell, et al*, Case No. 14-16408 and *Jane Doe v. City of San Mateo, et al*, Case No. 11-15583. She has also briefed and argued cases before California state courts.

13. Ms. Ochoa came to the ACLU SoCal in October 2016 as a staff attorney. She is familiar with the issues in this litigation and has been actively representing the named plaintiffs in this matter, including fact-gathering, and researching and drafting filed pleadings.

14. Aditi Fruitwala graduated from the University of California, Berkeley School of Law in 2014. After law school, Ms. Fruitwala worked as an attorney at the California Department of Justice in the Torts & Condemnation section, representing the State of California and its employees in state and federal courts. Ms. Fruitwala has been admitted to the California bar since December of 2014, and is admitted to practice before several federal courts, including the United States District Court for the Central District of California and the United States Court of Appeals for the Ninth Circuit.

15. Ms. Fruitwala came to the ACLU SoCal in July 2017 as a legal fellow. She is familiar with the issues in this litigation.

Executed on this 2nd day of October, 2017 at Los Angeles, California.

By: *s/ Peter Bibring*
Peter Bibring

*Counsel for Plaintiffs*

# Exhibit A

# PETER BIBRING

## EDUCATION

**NEW YORK UNIVERSITY SCHOOL OF LAW**, New York, New York
J.D. Degree, *magna cum laude*, May 2002

**Journal:** *NYU Review of Law & Social Change*, Editor-in-Chief
**Honors:** Order of the Coif
Florence Allen Scholar—top ten percent of class based on cumulative G.P.A. after three semesters
Dean's Scholarship Recipient—half tuition scholarship based on academic merit
Summer Seminar for Future Law Teachers
Equal Justice America 2000 Summer Fellowship
**Activities:** Prisoner's Rights Education Project, co-coordinator
Students Need to Advocate Responsible Lawyering, co-coordinator

**CALIFORNIA INSTITUTE OF TECHNOLOGY**, Pasadena, California
Coursework for Ph.D. in Physics, January 1998

**HARVARD UNIVERSITY**, Cambridge, Massachusetts
A.B. in Physics, *magna cum laude*, June 1996
Derek Bok Award for Excellence in Teaching, Introductory Physics
Mission Hill After-School Program, tutor

## WORK EXPERIENCE

**AMERICAN CIVIL LIBERTIES UNION OF SOUTHERN CALIFORNIA**, Los Angeles, California
**Director of Police Practices, Senior Staff Attorney** July 2006 – present
Advance civil rights and civil liberties working through litigation, policy advocacy, legislation, media, and community education, focusing on policing and criminal justice, privacy and technology, housing and homelessness, and the First Amendment. Identify, and design strategies to address, issues for advocacy in focus areas, in cooperation with local community and advocacy organizations. Act as lead or co-lead counsel on cases including challenges to FBI use of informants to target Muslims in Orange County mosques, the use and enforcement of gang injunctions, racial profiling by local police agencies, unlawful detention of protestors and photographers, and police sweeps in schools, as well as interventions to support municipal policies on inclusionary housing and limitations on car impoundment. Work with government officials and stakeholders (including community organizations, religious organizations, service providers, and residents) on legislation and policy changes related to civilian oversight of police; analysis and reporting of and advocacy on counterterrorism operations by local police departments; stop-and-frisk and racial profiling issues; the use of public surveillance measures including video surveillance, drones, location tracking, and online privacy; free speech and open government, and advocacy around homelessness, housing and services, focusing on chronically homeless individuals with mental illness, through strategy development, advocacy and technical assistance with legal interpretation, drafting legislation, messaging, and community education. Conduct interviews for print media, radio, and television, and give presentations to community members and officials. Draft blog posts, op-eds, social media updates and talking points. Supervise junior attorneys, fellows, paralegals and interns.

**UNIVERSITY OF CALIFORNIA, LOS ANGELES, SCHOOL OF LAW**, Los Angeles, California
**Adjunct Faculty** January 2011 – present
Teach Civil Rights Litigation Clinic, alone and with Prof. Joanna Schwartz. With Prof. Schwartz, designed and revised curriculum for new clinic focusing on all aspects of advancing civil rights and social change through both litigation and non-litigation advocacy. Teach or co-teach classroom and simulation component focusing on legal doctrines arising in civil rights litigation (including pleading standards, immunities, and relief), narrative advocacy, the attorney's role in civil rights advocacy, and litigation skills including client interviews, depositions, oral argument and negotiation. Supervise clinic fieldwork including work on civil rights cases, and pre-litigation investigation and non-litigation advocacy on civil rights issues including police practices, immigration, educational equity, and First Amendment.

Case 2:16-cv-07932-VAP-RAO Document 107-5 Filed 10/02/17 Page 10 of 10 Page ID #:4866



**THE HONORABLE PIERRE N. LEVAL, SECOND CIRCUIT COURT OF APPEALS**, New York, New York
**Law Clerk** September 2003 – August 2004

**CHIEF JUDGE MARILYN HALL PATEL, NORTHERN DISTRICT OF CALIFORNIA**, San Francisco, California
**Law Clerk** September 2002 – August 2003

**NYU SCHOOL OF LAW IMMIGRANT RIGHTS CLINIC**, New York, New York
**Student Advocate** August 2001 – May 2002
Developed legal and factual theories and filed petition for writ of habeas corpus in federal district court on behalf of immigrant client deported for felony convictions; briefed and argued government's motion to dismiss. Analyzed legal issues and assisted with outreach and eduction in the creation of a day laborer hiring hall in Hempstead, NY.

**AMERICAN CIVIL LIBERTIES UNION OF SOUTHERN CALIFORNIA**, Los Angeles, California
**Legal Intern** June 2001 – August 2001
Performed legal research and prepared memoranda on topics such as attorneys' fees, class certification, and state constitutional protections against gender discrimination in youth sports program. Conducted background research and evaluation of potential cases and interviewed potential class members.

**PROFESSOR ANTHONY AMSTERDAM, NEW YORK UNIVERSITY**, New York, New York
**Research Assistant** March 2001 – July 2001
Performed legal research for petition for certiorari and petitioner's brief to the U.S. Supreme Court in a capital habeas case raising issues of ineffective assistance of counsel due to conflict of interest, *Mickens v. Taylor*, 535 U.S. 162 (2002).

**PROFESSOR RICHARD STEWART, NEW YORK UNIVERSITY**, New York, New York
**Teaching Assistant** August 2000 – December 2000
Teaching Assistant for first-year Torts class. Composed practice questions and provided extensive feedback on student answers. Conducted weekly discussion sections of about twenty students.

**NEIGHBORHOOD DEFENDER SERVICE OF HARLEM**, New York, New York
**Civil Team Legal Intern** February 2000 – August 2000
Participated in all aspects of civil litigation arising out of clients' criminal cases, including abuse/neglect proceedings in family court, forfeiture actions in New York Supreme Court, and police misconduct actions in Federal court. Performed legal research, prepared memoranda, and drafted motions, pleadings, and discovery requests. Conducted interviews of clients and assisted in preparation of witnesses for trial. Assisted with court proceedings and settlement negotiations.

## SELECTED LECTURES, PRESENTATIONS, and HONORS

Panelist, *Civilian Oversight of Police Departments*, La Verne Law School Civil Rights Symposium, Feb. 7, 2013.

Panelist, *Critical Incident Management Training*, L.A. County Police Chiefs Ass'n, Los Angeles, California, Nov. 10, 2011.

Panelist, *PERF vs. The ACLU: The Great Debate* (Plenary Panel), Annual Meeting of the Police Executive Research Forum, Seattle, WA, Apr. 28, 2011.

Panelist, *Gang Injunctions*. Appellate Justices Institute, Center for Judicial Education and Research of the California Administrative Office of the Courts. San Diego, CA, Oct. 30, 2008.

Featured Presenter for *TASERs: A Dialogue on Policies and Deployment in Law Enforcement*. Institute for Law Enforcment Administration conference on Police Use of Force. Plano, TX, Sept. 30, 2008.

Presenter, Suspicious Activity Reporting Privacy and Civil Liberties Dialogue, Director of National Intelligence. Washington, D.C., Sept. 3, 2008.

Panelist, *Intervening on Behalf of Children and Families: Using Litigation to Force Developers to Comply with Affordable Housing Requirements*. National Legal Aid & Defender Conference. Tuscon, AZ, Nov. 7, 2007.

Commentator on issues related to policing and First Amendment in various media, including New York Times, Washington Post, Los Angeles Times, and USA Today.

SUPERLAWYERS RISING STAR, NAMED BY LAW & POLITICS MAGAZINE, 2006, 2007, 2008, AND 2009

# Exhibit 5

djla

Proposal Prepared for Melanie P. Ochoa, Staff Attorney
ACLU of Southern California
March 25, 2020

Proposal from djla for the advertising of the Notice of the Class Action Settlement for the *Youth Justice Coalition v. City of Los Angeles, et al.*, No. CV 16-7932-VAP (RAOx).

As requested, here is the budget based on an advertising campaign to provide notice to class members regarding the status of their rights under this lawsuit, including notice of the upcoming hearing on the proposed settlement.

The advertising will direct class members to a web address where they will find pertinent information.

BUDGET RANGE: $26,280 - $39,999.90 Start date: TBD

DESCRIPTION OF PROJECT

This advertising campaign seeks to provide notice of a proposed class-action settlement of a federal court case, *Youth Justice Coalition v. City of Los Angeles, et al.*, involving the rights of individuals living in Los Angeles alleged to be gang members. The class members are predominately Black and Latino men, aged approximately 18-40. Many are transient and have low household incomes. Current mailing addresses are not known for many class members.

This campaign will attempt to reach class members through direct engagement, as well as through word of mouth by reaching their families and friends who will forward information to class members.

The full, court-approved, notice will be provided on the websites of the ACLU of Southern California, the Connie Rice Institute for Urban Peace, and the Youth Justice Coalition. In the month of February 2020,
the ACLU website(ACLUSOCAL.ORG) received 1,957 views and 1,075 unique visitors. The advertising campaign is intended to inform the public of changes to the rights of individuals under gang injunctions and direct them to those websites for further information about the settlement.

Because gang injunctions are geographically-limited and class members primarily reside in or frequent the neighborhood Safety Zones. We believe the most effective campaign will be geographically-targeted. To this end we will be

djla

placing Poster Outdoor Boards in areas in selected Safety Zones, and using geographically-targeted social media to ensure that individuals view the advertisements when within the various Safety Zones. Given the demographics of this population, social media will be a more effective medium than traditional print media such as newspapers, as the readership of local papers veers older and more affluent than our target audience.

• **4-week outdoor poster advertising campaign** with strategically placed posters in communities with class members.
A 4-week campaign with 15-20 Poster Outdoor Boards to reach the appropriate communities and specifically your class members the most efficiently. The posters are 10'5" in height x 22'8" in width.

The poster units are highly visible from a car or from the street, and are high enough to minimize graffiti. With an impactful message, the posters are a quick and powerful way to drive class members to the online landing page. The posters will be placed in selected Gang Injunction Safety Zones shown on the L.A. City map provided. In addition, djla will additionally research the zip codes to ensure proper placement and maximum reach of the posters. Once we identify the zip codes, the research team will find available units in those areas for placement. The average impressions for a single poster unit in a general market showing is around 400,000 for a 4-week period.

• **2-3-week Instagram campaign** geo-targeted to class members age 18-40 years of age.

A 2-3 ad campaign on social media (Facebook and Instagram) that will appear in the recipient's feeds when accessed while within the Safety Zones. Facebook and Instagram were selected as the appropriate media because due to the nature of the campaign and the goal to increase awareness through sharing within communities, a social platform would be the best option for this campaign. These two platforms also have the largest available audience overall. An awareness campaign on social media is also better over search engine marketing as it will mean we can quickly reach the target audience in the campaign time period, that is, we won't have to wait for enough people to search a target keyword. Facebook and Instagram have the best geographic targeting for advertising of the social platforms, allowing us to target to the 1 mile radius). Both Facebook and Instagram have better age-restriction targeting options for advertising.

djla

While YouTube has the single highest percentage of users—Facebook comes in second—YouTube has less ability to impose age restrictions and would impose significantly more costs to create the necessary creative content for the video advertisements. There are also other social advertising options to consider such as Twitter (smaller audience) and Snapchat (more expensive), but with the limited budget available for this campaign, we would recommend starting with the platforms with the biggest reach, easy shareability and quickest to launch—which would lead us to Facebook and Instagram.

The total length of the campaign will depend on how many engagements (clicks, reposts, etc.) the ads receive. These ads will contain links to drive traffic to the landing pages with the full notice.

**Instagram Campaign Setup**

- Create Facebook/Instagram Ad Account, connect to existing landing page/s
- Set up tracking pixel, work with team to get this implemented on the appropriate website or landing page.
- Audience research and creation - using the geo targeting supplied plus age, cultural affinities and similar interests as appropriate
- Ad set creation, creative
- Launching of ads on Instagram
- Reach: We can safely expect to get 100-300K impressions from social media. The total number of individual's reached will be greater, as this number does not include users' 'shares' to family and friends (which will increase the reach).

**Optimization/Management (2-3 weeks)**

- Reviewing campaign performance against pre-approved goal
- Bid adjustments and optimizing targeting as per performance of the campaigns
- Reporting on performance of ads and audiences.

**Ad spend:**

Based on a broad guess that we're looking to target a population of roughly 100 - 300k, we suggest looking at an FB/Instagram audience of 100 - 300k. We expect friends and family to share our posts regarding the settlement notice.

djla

Exact length of campaign will depend on click activity, engagement which will determine how long it takes to spend the budget.

**Fees & Costs:**

BUDGET RANGE: $31,280 - $39,999.90

Media:
Outdoor Posters:
15-20 units ($1,000 - $1,914.66 ea. depending on the month of the buy), + $2,280 (one-time production cost). (includes 1 x printing and installation of all - if the message changes, an additional $2,280 will be required, therefore we recommend a generic message to drive class members to the website for the most current information.

Once the media contract is signed by djla, if posters are printed, the $2,280 is not refundable. The advertiser is responsible to honor the contract for the 4-week run on the dates reserved. Once the posters are printed, if information changes, new printing will be necessary for $2,280.

Social Media
Optimization and Ad spend /Instagram/FB creative, placements, management fee:
$1,500
Ad spend:
$2,500

Agency Fees:
Creative, Media buying and Service fee
$5000

Agency media commission:
0 (waived)

**Project cost: $26,280 - $39,999.90.**

djla

Invoice to commence work: $35,000* payable to djla, LLC

* The ACLU to remit payment to djla for $35,000, to be held in total until the court approves the class action settlement. If the court denies the settlement, or rejects this proposal for class notice, and no work has been performed by djla for the ACLU, the entire $35,000 will be refunded immediately. THE FULL AMOUNT WILL BE REFUNDED NO LATER THAN DECEMBER 31ST IF THE PROJECT HAS NOT STARTED.

If work begins and then is terminated by the ACLU, only the pre-approved hours/services will be deducted from the amount paid by the ACLU.

Depending on the month the posters will run, the cost of the media buy may require an additional $5000. Client will be notified in advance for approval should this occur. If approved in writing, the posters will be installed and ACLU will be billed at that time. Payment to djla will be due in full, two-weeks from the date of the invoice.

**OUT OF SCOPE SERVICES**

The following items are not included in fees/costs above:

- Services that exceed the items and terms listed above
- Concept, design, production or printing of collateral materials
- Original or stock photography, original or stock music for videos
- Sales tax, messengers, shipping
- Any and all expenses over and above fees are to be pre-approved by the ACLU

All graphic images or materials created by djla for the ACLU are owned by and the sole property of the ACLU.

djla

Thank you for this opportunity to work on this project. We look forward to collaborating with you and reaching your class members with this important information.

Agreed and Accepted:

Melanie Ochoa Date

Melanie Ochoa,
Staff Attorney
ACLU of Southern California

Jackie Horlick

Date 3/25/2020

Jackie Horlick, CEO
djla LLC