PETER BIBRING (SBN 223981)
pbibring@aclusocal.org
MELANIE P. OCHOA (SBN 284342)
mpochoa@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299

*Counsel for Plaintiffs*
(Additional Counsel for Plaintiffs on Following Page)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

YOUTH JUSTICE COALITION, et al.,

*Plaintiffs*,

vs.

CITY OF LOS ANGELES, et al.,

*Defendants*.

Case No. 2:16-cv-07932-VAP-RAO

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

**CLASS ACTION**

Honorable Virginia A. Philips
Hearing Date: June 7, 2021
Hearing Time: 2 p.m.

JACOB S. KREILKAMP (SBN 248210)
jacob.kreilkamp@mto.com
LAURA D. SMOLOWE (SBN 263012)
laura.smolowe@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

JOSHUA GREEN (SBN 293749)
jgreen@urbanpeaceinstitute.org
THE CONNIE RICE INSTITUTE FOR URBAN PEACE
1910 West Sunset Boulevard
Suite 800
Los Angeles, California 90026
Telephone: (213) 404-0124
Facsimile: (213) 402-2843

*Counsel for Plaintiffs*

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, on June 7, 2021, or on such date as may be specified by the Court, in the courtroom of the Honorable Virginia A. Philips, United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California, Plaintiffs Youth Justice Coalition, Peter Arellano, and Jose Reza, for themselves and on behalf of all class members, will hereby move this Court for an order awarding Plaintiffs' counsel attorneys' fees and costs.

This motion for attorneys' fees and costs (the "Motion") is unopposed and supported by the record before the Court, the Memorandum of Points and Authorities, filed concurrently herewith, the Declarations of Peter Bibring, Laura Smolowe, and Josh Green, filed concurrently herewith, the [Proposed] Order, the other pleadings of record in this matter, and any briefs or supporting materials submitted in reply on this Motion.

Pursuant to Local Rule 7-3, counsel for the parties corresponded pre-filing on March 9, 2021 and March 10, 2021. Counsel for Defendants indicated that Defendants would not oppose this Motion.

Dated: March 15, 2021

Respectfully Submitted,

ACLU FOUNDATION OF SOUTHERN CALIFORNIA
MUNGER, TOLLES & OLSON LLP
THE CONNIE RICE INSTITUTE FOR URBAN PEACE

By: *s/ Melanie P. Ochoa*
Melanie P. Ochoa

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 2

I. Procedural History .......... 2

A. The Proposed Settlement .......... 4

ARGUMENT .......... 6

I. The Parties Have Agreed to a Fair, Reasonable, and Appropriate Award of Costs .......... 7

II. The Parties Have Agreed to a Fair, Reasonable, and Appropriate Attorneys' Fee Award .......... 8

A. Plaintiffs' Attorneys' Fee Request Is Reasonable and Reflects a Substantially Reduced Lodestar Resulting from Arms-Length Negotiations .......... 9

B. The *Kerr* and *Hanlon* Factors Further Reflect the Reasonableness of the Negotiatied Attorneys' Fee Award .......... 14

1. The Result of the Settlement Agreement Is Complete Relief to the Class .......... 15

2. Plaintiffs' Counsel Expended Significant Time and Labor Before and During the Litigation .......... 16

3. The Issues Are Novel and Difficult and Skill Was Required to Perform the Legal Service Properly .......... 18

4. Plaintiffs' Counsel Assumed Risk of Nonpayment .......... 19

5. Plaintiffs' Counsel Has the Requisite Experience, Reputation, and Ability .......... 20

6. The Class Has Not Reacted Fully to the Settlement .......... 20

7. Gang Injunction Cases Are Often Considered "Undesirable" to Litigators ........ 21

8. The Requested Award is Commensurate with Awards in Similar Cases ........ 22

CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambriz v. Arrow Fin. Servs.*,
2008 WL 2095617 (C.D. Cal. May 15, 2008) .......... 8

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .......... 19

*Barrios v. California Interscholastic Federation*,
277 F.3d 1128 (9th Cir. 2002) .......... 7

*Beasley v. Wells Fargo Bank*,
235 Cal.App.3d 1407 (1992) .......... 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......... 15

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) .......... 11

*Carr v. Tadin, Inc.*,
51 F. Supp. 3d 970 (C.D. Cal. 2014) .......... 16

*Children's Hosp. & Med. Ctr. v. Bonta*,
97 Cal. App. 4th 740 (Cal. Ct. App. 2002) .......... 10

*City of Riverside v. Rivera*,
477 U.S. 561 (1986) .......... 11

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) .......... 18

*Cox v. Clarus Mktg. Grp., LLC*,
291 F.R.D. 473 (S.D. Cal. 2013) .......... 9

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal 2008) .......... 19

*Dang v. Cross*,
422 F.3d 800 (9th Cir. 2005) .......... 6

*Fernandez v. Victoria Secret Stores, LLC*,
No. CV 06-04149 MMM ........ 13

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992) ........ 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........ 14

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ........ 6

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........ 9, 10, 15

*Hernandez v. Kovacevich*,
2005 WL 2435906 (E.D. Cal. Sept. 30, 2005) ........ 9

*In re Immune Responses Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........ 8

*Jordan v. Multnomah Cty.*,
815 F.2d 1258 (9th Cir. 1987) ........ 11

*Adoption of Joshua S.*,
42 Cal.4th 945 (2008) ........ 7

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ........ 14

*Ketchum v. Moses*,
24 Cal.4th 1122 (2001) ........ 14

*Klein v. City of Laguna Beach*,
810 F.3d 693 (9th Cir. 2016) ........ 6

*Lopez v. Youngblood*,
2011 WL 10483569 (E.D. Cal., Sept. 2, 2011) ........ 19

*McGinnis v. Kentucky Fried Chicken of California*,
51 F.3d 805 (9th Cir. 1994) ........ 14

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) ........ 9

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1987) .................... 14

*People v. Big Top Locos, et al.*, Case No. BC511444 (L.A. Sup. Ct. Sept. 23, 2013) .................... 2

*Perdue v. Kenny A., ex rel., Winn*, 559 U.S. 542 (2010) .................... 9, 15

*Rodriguez v. City of Los Angeles*, No. CV 11-1135-DMG (PJWx) (C.D. Cal. March 24, 2017) .................... 22

*Rodriguez v. West Publishing Corp*., 563 F.3d 948 (9th Cir. 2009) .................... 9

*Serrano v. Stefan Merli Plastering Co.*, 52 Cal. 4th 1018 (2011) .................... 7

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................... 13

*Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240 (9th Cir. 1982) .................... 8

*In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) .................... 20

*Vasquez v. Rackauckas*, No. SACV09-1090 VBF .................... 14, 18, 22

*Williams v. Alioto*, 625 F.2d 845 (9th Cir. 1980) .................... 7

**Statutes**

42 U.S.C. § 1983 .................... 6

42 U.S.C. § 1988 .................... 6, 11, 18

Federal Rule of Civil Procedure 23(h) .................... 6, 9

Federal Rules of Civil Procedure Rule 23(b)(2) .................... 3

**Other Authorities**

Beth Caldwell, *Criminalizing Day-to-Day Life: A Socio-Legal Critique of Gang Injunctions*, 37 Am. J. Crim. L. 241, 241 (2010) .................. 21

Cathy Wang, *Gang Injunctions Under Heat from Equal Protection: Selective Enforcement As A Way to Defeat Discrimination*, 35 Hastings Const. L.Q. 287 (2008) .................. 21

Lindsay Crawford, *No Way Out: An Analysis of Exit Processes for Gang Injunctions*, 97 Cal. L. Rev. 161, 163 (2009) .................. 21

Matthew Mickle Werdegar, *Enjoining the Constitution: The Use of Public Nuisance Abatement Injunctions Against Urban Street Gangs*, 51 Stan. L. Rev. 409 (1999) .................. 21

S. Rep. No. 94-1011 (1976) *reprinted in* 1976 U.S.C.C.A.N. 5908 .................. 18

Thomas A. Myers, *The Unconstitutionality, Ineffectiveness, and Alternatives of Gang Injunctions*, 14 Mich. J. Race & L. 285 (2009) .................. 21

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

For decades, the City of Los Angeles subjected individuals it unilaterally determined were members of a gang to restrictive "gang injunctions"—court orders limiting their freedoms of association and movement, and their ability to participate in the social and civic life of their own communities. Individuals designated by the City as active gang members did not receive an opportunity to challenge the allegation of gang membership before they were required to comply with the terms of the gang injunctions under threat of criminal prosecution. Nearly ten thousand individuals were made subject to gang injunctions by the City of Los Angeles in this way. Plaintiffs in this action challenged the City's practice and, after securing a preliminary injunction preventing enforcement of injunctions based on this process against not only individual plaintiffs but the class, the Parties have reached final settlement in this matter. The settlement defines a new process the parties agree passes constitutional muster, under which the City will enforce gang injunctions against new individuals only by filing motions in state court and requires the City to use that process before enforcing injunctions against any person going forward, including any of the nearly ten thousand people who it previously subjected to injunctions under its old process. As part of the Settlement Agreement, the Parties have agreed-upon an attorneys' fees award of $1,750,000, inclusive of litigation costs, and Plaintiffs, through this unopposed motion[1] seek the Court's approval of the agreed-upon fees.

This amount, which reimburses Plaintiffs' counsel for some, but not all, out-of-pocket expenses and actual hours expended litigating this matter, is fair and reasonable in light of the extraordinary results obtained through this litigation, the

[1] Plaintiffs report that, while Defendant City of Los Angeles does not oppose this Motion as it seeks the award of the amount of attorneys' fees agreed upon between the parties in the Settlement Agreement, the City does not adopt, concede, or concur with any statement, arguments, points or authorities set forth in this Motion.

extensive effort expended by Plaintiffs' counsel, the difficulty and complexity of the litigation, and the experience and skill of Plaintiffs' counsel.

For these reasons, and as further detailed below, the Court should grant the Parties' agreed-upon award of $1,750,000 in attorneys' fees and costs.

## BACKGROUND

### I. Procedural History

On October 26, 2016, Plaintiffs filed this lawsuit against the City of Los Angeles on behalf of the non-profit organization Youth Justice Coalition, and individuals Peter Arellano and Jose Reza, for themselves and on behalf of all class members. Plaintiffs alleged that the City violated procedural due process under the United States and California Constitutions by enforcing so-called "gang injunctions"—civil injunctions prohibiting otherwise lawful behavior by active members of street gangs on grounds that the gangs are causing a public nuisance—against individuals the City alleged to be members of those gangs, without providing those individuals notice and the opportunity to contest this designation before being made subject to its terms. Dkt. 2. On October 31, 2016, Plaintiffs filed a motion for preliminary injunction seeking to prohibit the City and its agents and employees from enforcing gang injunctions against Plaintiffs Arellano and Reza. Dkt. 12. The City opposed the motion for preliminary injunction as to Arellano and filed a notice of non-opposition as to Reza. Dkts. 39 & 40.

The Parties stipulated to, and the Court granted, a stay of the proceedings on January 27, 2017 to allow the Parties to pursue settlement negotiations with the help of a mediator. Dkt. 69. After the Parties were unable to reach an agreement, the stay was lifted on July 3, 2017. Dkt. 86.

The Court entered a preliminary injunction on September 7, 2017, barring the City from enforcing the Judgment Granting Permanent Injunction in *People v. Big Top Locos, et al.*, Case No. BC511444 (L.A. Sup. Ct. Sept. 23, 2013) against

Plaintiff Arellano, on the ground that he was likely to succeed on his claim that "the risk of erroneous deprivation under the City's current procedures [for subjecting individuals to a gang injunction] is considerable and the City's removal procedures do not adequately remedy the lack of pre-deprivation process." Dkt. 106, p. 24.

Plaintiffs filed a motion to certify the class and, after negotiations between counsel, the Parties filed a Joint Stipulation re Class Certification and Amended Class Definition. Dkt. 112. The Court approved the Joint Stipulation, certifying the case as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Dkt. 114. The Court also appointed the ACLU Foundation of Southern California, The Connie Rice Institute for Urban Peace, and Munger, Tolles & Olson LLP (collectively, "Plaintiffs' counsel") as class counsel.

On January 29, 2018, Plaintiffs filed a Motion to Expand Preliminary Injunctions Entered on Behalf of Plaintiffs Peter Arellano and Jose Reza to the Entire Class. Dkt. 115. The City opposed this motion. Dkt. 116. Shortly before the Plaintiffs filed this motion, the City adopted various changes to its gang injunction program that would have provided some class members—only those to be served in the future—with the option of seeking a determination of active gang member status prior to having the injunction enforced against them. Dkt. 117 at ¶¶ 7-12. The City's policy changes did not, however, provide any pre-deprivation process to class members currently subject to the City's gang injunctions. On March 15, 2018, the District Court granted Plaintiffs' motion and extended the Arellano Preliminary Injunction to class members served with a Los Angeles Gang Injunction before January 19, 2018, on the basis that "Plaintiffs are likely to establish that the City did not provide sufficient due process for [these] class members . . . and that continued enforcement of the Los Angeles Gang Injunctions against these class members is likely to result in irreparable injury." Dkt. 132, p. 9.

On April 13, 2018, City filed a Notice of Appeal of the District Court's

March 15, 2018 Order for a class-wide preliminary injunction. Dkt. 134. Soon thereafter, the Parties agreed to participate in the Ninth Circuit Mediation process. After considering numerous different proposals and engaging in discussions both with and without the assistance of the mediator, the Parties agreed in December 2019 to a settlement calling for extensive changes to the City's process for enforcing gang injunctions to both existing and future class members. The settlement, which included the agreed-upon amount for attorneys' fees and costs, was approved by the Los Angeles City Council and executed by the Parties in January 2020. Settlement Agreement, p. 20.

### A. The Proposed Settlement

The Parties' settlement, as preliminarily approved by the Court, ensures that all people the City contends are active gang members subject to a gang injunction will have a meaningful pre-deprivation process before being subjected to an injunction's restrictive terms. The Settlement Class includes:

> All persons, past and future, whom an authorized agent of City has notified, whether by personal service or otherwise, that they are subject to a Gang Injunction and who were not named as individual civil defendants, or who were not substituted in as Doe defendants, in the civil nuisance abatement action to obtain that injunction.

Settlement Agreement at ¶ 13.

Through this agreement, City has agreed to policy changes to ensure that any individual accused of being a gang member is provided a constitutionally adequate process to challenge that accusation before being made subject to a gang injunction. Under the new policy,

> City will enforce a gang injunction against an individual only if that individual was named as a defendant in the civil injunction proceeding (or was otherwise joined in the civil injunction proceeding, as a party, real party in interest, or otherwise, such that the person received all the same procedural rights as a defendant under the California Code of Civil Procedure, Rules of Court, and other applicable California rules and laws) and is made subject to enforcement of the gang

injunction by a judgment or court order.

Settlement Agreement at ¶ 21. This new policy applies to all individuals the City wishes to subject to an injunction, including those previously made subject to one of the City's gang injunctions under its prior policy.

Under this Settlement Agreement, all individuals will now have the opportunity to challenge the City's allegation of gang membership in state court with all of the procedural protections—including access to discovery—available in any civil proceeding in Superior Court, and the City will be unable to enforce gang injunctions against individuals absent a court's determination that the individual is an active gang member by clear and convincing evidence. Settlement Agreement at ¶ 26. In addition, the Settlement Agreement also limits the City's enforcement of gang injunctions against an individual to five years after a court's determination of active gang membership, as opposed to the City's prior practice of permanently enforcing injunctions against enjoined individuals. Settlement Agreement at ¶ 37.

The Settlement Agreement also includes some provisions to assist individuals who the City seeks to make subject to a gang injunction. For the first three years, the City will provide a letter that includes the contact information of Plaintiffs' counsel and explanatory information about the process at the time that it serves either a complaint seeking a new gang injunction or a motion to modify an existing gang injunction to add the individual. For this same period, it will also provide to Plaintiffs' counsel the names and contact information of those served. This will allow Plaintiffs' counsel and Youth Justice Coalition to connect Settlement Class members with resources to help them navigate this process, and potentially mount a defense to the City's allegations.

The Settlement Agreement also preserves for Settlement Class members any individual claims and forms of relief, including claims for damages, arising from unconstitutionally being made subject to a gang injunction that are different from the specific due process claims and injunctive relief sought in this litigation.

Settlement Agreement at ¶ 41. Additionally, recognizing that the fact that an individual was subject to a gang injunction may be deemed relevant in other proceedings, the Settlement Agreement also retains for Settlement Class members the right to raise the same arguments as in this litigation regarding the unconstitutionality of the injunction's enforcement where applicable. Settlement Agreement at ¶ 41.

## ARGUMENT

Plaintiffs have successfully litigated legal claims under the United States and California Constitutions for which an award of reasonable attorneys' fees and costs are authorized, and have entered into a settlement agreement granting full, fair, and adequate relief to all class members. In certified class actions, Federal Rule of Civil Procedure 23(h) provides that "the Court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Here, the Parties have agreed to an $1,750,000 attorneys' fee award, which represents only a partial recovery of Plaintiffs' counsel's out-of-pocket expenses and expended time. Bibring Decl. at ¶ 3. Defendants do not oppose this Motion.

Moreover, in the absence of the Parties' agreement as to fees, Plaintiffs would be entitled to recover reasonable fees that would significantly exceed the agreed-upon $1,750,000. Under 42 U.S.C. § 1988, the prevailing party in an action under 42 U.S.C. § 1983 to challenge the deprivation of individuals' constitutional rights by state actors—as the case here—may recover attorneys' fees and out-of-pocket expenses. *See, e.g.*, *Dang v. Cross*, 422 F.3d 800 (9th Cir. 2005); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Similarly, California Code of Civil Procedure § 1021.5[2] authorizes a similar recovery of attorneys' fees for "a party who secures a significant benefit for many people by enforcing an important right

[2] A plaintiff who prevails in federal court on California claims is entitled to fees under this section. *Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016).

affecting the public interest." *Serrano v. Stefan Merli Plastering Co.*, 52 Cal. 4th 1018, 1020 (2011); *see also Beasley v. Wells Fargo Bank*, 235 Cal.App.3d 1407, 1419 (1992), *overruled in part re expert witness fees as costs*, *Olson v. Automobile Club of So. Cal.*, 42 Cal.4th 1142 (2008).[3] Assuming this Court approves the proposed Settlement Agreement, Plaintiffs are the "prevailing party" because they have secured a substantial, judicially enforceable settlement on behalf of the class. *See Barrios v. California Interscholastic Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002) (recognizing party prevails by materially altering the legal relationship between parties, such as obtaining an enforceable judgment, consent decree, or judicially enforceable settlement agreement). Moreover, during the course of this litigation, Plaintiffs successfully obtained preliminary injunctive relief on behalf of the named plaintiffs and the plaintiff class, also entitling them to prevailing party status. *See Williams v. Alioto*, 625 F.2d 845 (9th Cir. 1980) (holding that plaintiffs' success in obtaining a preliminary injunction which "prevented [the police department] from continued enforcement of their original guidelines, which is precisely the relief appellees sought" was sufficient for prevailing party status). Plaintiffs' entitlement to fees is well supported by the record, and the amount agreed to, as set forth in the Parties' Settlement Agreement, is reasonable and fair.

Thus, Plaintiffs' counsel is entitled to a reasonable attorneys' fee award.

**I. The Parties Have Agreed to a Fair, Reasonable, and Appropriate Award of Costs.**

Plaintiffs' requested costs are subsumed within the request for attorneys' fees, but include an amount that is well within the normal range of costs awarded under both California and federal fee shifting statutes, which allow reimbursement

[3] Plaintiffs are likewise considered the "prevailing party" for § 1021.5 purposes because (1) they have provided a significant benefit to a large class of persons, (2) an award is appropriate because of the necessity and financial burden of private enforcement, and (3) fees will not be paid out of any class recovery. *See Adoption of Joshua S.*, 42 Cal.4th 945, 952, n.2 (2008) (quoting C.C.P. § 1021.5).

of litigation expenses that "are normally charged to a fee-paying client, in the course of providing legal services . . . [including] [r]easonable photocopying, paralegal expenses, and travel and telephone costs." *Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982), *cert. granted, judgment vacated on other grounds*, 461 U.S. 952 (1983).

The types of costs included in the Parties' agreed-upon attorneys' fees reflect normal costs awarded under fee shifting statutes, and are routinely allowed, including travel costs, consultants, filing fees, printing, scans, messenger services, computerized legal research, and similar costs normally reimbursed by the client. *See, e.g., In re Immune Responses Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007); *Ambriz v. Arrow Fin. Servs.*, LLC, No. CV07-5432-JFW(SSX), 2008 WL 2095617 (C.D. Cal. May 15, 2008). Bibring Decl. at ¶¶ 57-60; Smolowe Decl. at ¶¶ 16-18.

The chart below reflects Plaintiffs' counsel's $7,262.47 in costs.

| **COSTS** | |
|---|---|
| **Cost Item** | **Amount** |
| Arbitration/Mediation | $1,845.00 |
| Messenger Services | $1,611.00 |
| Expert Services | $1,400.00 |
| Filing/Recording/Registration Fees | $968.10 |
| Other Litigation Expenses | $1,438.37 |
| **Total** | **$7,262.47** |

## II. The Parties Have Agreed to a Fair, Reasonable, and Appropriate Attorneys' Fee Award.

An "agreement as to the attorney fee award is accorded great weight" where

it neither reduces the benefit provided to the parties nor reflects any evidence of collusion. *Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473, 482 (S.D. Cal. 2013). As the Court acknowledged in its Order Granting Motion for Preliminary Approval of Class Settlement, "the guidance of a Ninth Circuit mediator and the involvement of a variety of groups, including class members, the Youth Justice Coalition, and the Los Angeles City Council, in the negotiation and approval of the Settlement Agreement lessens the risk of collusion," Dkt. 148 at 7-8, and the record contains no evidence of improper conduct by counsel for the Parties. Therefore, in determining whether to approve an agreed-upon fee, the Court's task is "simply to determine whether the negotiated fee is facially fair and reasonable." *Hernandez v. Kovacevich*, No. 1:04-cv-5515, 2005 WL 2435906, at *8 (E.D. Cal. Sept. 30, 2005). As detailed below, the negotiated attorneys' fee award is fair and reasonable. Accordingly, the Court should enforce the Settlement Agreement and award the agreed-upon sum pursuant to Rule 23(h).

### A. Plaintiffs' Attorneys' Fee Request Is Reasonable and Reflects a Substantially Reduced Lodestar Resulting from Arms-Length Negotiations.

Courts require that "fee awards be reasonable in the circumstances." *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 967 (9th Cir. 2009). "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A., ex rel., Winn*, 559 U.S. 542, 550 (2010). "[T]he district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citations omitted). "The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Id*. "Where a plaintiff has obtained excellent results, his attorney should recover . . . all hours reasonably expended on the litigation . . ." *Hensley v. Eckerhart*, 461

U.S. 424, 435 (1983). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which is known as the lodestar. *Id.* at 433.

In an effort to compromise and obtain the benefit afforded to the Settlement Class, Plaintiffs substantially discounted their claim for attorneys' fees under their lodestar and are requesting an award that is well below the amount they would have sought in a motion for attorneys' fees after the resolution of this case. As more fully explained below, Plaintiffs' lodestar for this case is $2,173,207.50, based upon 2,998.30 hours, multiplied by the reasonable hourly rates of counsel, plus a total of $7,262.47 in costs. Bibring Decl. at ¶ 40. After arms-length negotiations, during which Plaintiffs' counsel provided Defendants with billing records supporting their claim for attorneys' fees, the Parties agreed to settle Plaintiffs' claim for attorneys' fees and costs for $1,750,000, an amount 19.75 percent less than Plaintiffs' lodestar based on 2021 rates. *Id.*[4]

Counsel's requested hourly rates are reasonable and commensurate with attorneys of their skill, experience, and reputation. Both California and federal law dictate that attorneys are entitled to their requested rates when they are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th

[4] The parties agreed upon the settlement of attorneys' fees in 2019. Plaintiffs in this motion have used their 2021 rates to evaluate the reasonableness of the fee award, as courts "long have recognized that district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use funds." *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992). Even using 2019 rates, however, the parties agreed-upon fee award reflects nearly a 25% reduction from the $2,396,030 costs and fees actually incurred by Plaintiffs. The billing records produced here to calculate Plaintiffs' lodestar reflect a significant exercise of billing discretion to remove or reduce items for which Plaintiffs could have sought compensation in a contested fee motion, and, even using the 2019 rates, the settlement amount still reflects a nearly 10% reduction in costs and fees using Plaintiffs' 2019 lodestar of $1,925,110.50. Bibring Decl. at ¶¶ 44-46.

740, 783 (Cal. Ct. App. 2002); *see also Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987) ("[R]equested rates [should be] in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.") (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). As further detailed in Plaintiffs' declarations,[5] the rates sought by attorneys from ACLU SoCal, The Connie Rice Institute for Urban Peace, and Munger, Tolles & Olson LLP are each commensurate with the prevailing rates of similarly qualified and experienced counsel, and which have been previously approved by courts in similar complex civil rights and business litigation. Plaintiffs' counsel describe the setting of their rates in declarations from Peter Bibring and Laura Smolowe, which reference attorneys' fees awards in comparable civil rights and class action cases, provides rates of attorneys with comparable skill, experience, and reputation from large law firms and civil rights firms and organizations—including past awards approved for attorneys at Munger, Tolles & Olson and ACLU SoCal—and discuss fee decisions and declarations in cases involving large law firms engaged in complex business litigation, which Congress considered the appropriate market rate comparison in the adoption of 42 U.S.C. § 1988. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress made clear that it 'intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation.'") Plaintiffs' requested rates are generally below those charged in complex commercial litigation. Bibring Decl. at ¶¶ 48, 54; Smolowe Decl. at ¶ 14. Given the comparably lower rates, the skill and experience of counsel, the complexity of the case, and results obtained, the requested hourly rates are reasonable.

Plaintiffs' lodestar above reflects significant reductions from time counsel

[5] As the Ninth Circuit has recognized, "affidavits by plaintiffs' attorneys and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quotations omitted).

actually spent litigating the case, including hundreds of hours that would otherwise be compensable in an attorneys' fees motion. Significantly, the total does not include the substantial hours expended over two years negotiating and finalizing the Parties' settlement, preparing and providing notice to the Settlement Class, and drafting motions for preliminary and final approval of the Settlement Agreement and attorneys' fees and costs—which were completely excluded from the lodestar calculation. Bibring Decl. at ¶ 46.

Additionally, the hours listed above reflects Plaintiffs' initial exercise of billing judgment to remove items identified as non-compensable as well as time spent on items that are legally compensable and could have been included in a contested motion for attorneys' fees, had one been necessary. Bibring Decl. at ¶ 43. The excluded items included hours spent participating in team meetings for more than two participants per firm, time spent onboarding new attorneys, factual or legal research related to claims not ultimately litigated, time on some projects where we determined that it was appropriate to reduce the total compensation sought for time spent on that particular task, travel time, and research time by those employed as summer associates. Bibring Decl. at ¶ 46. As reflected in the "Discretionary Reductions in Attorneys' Fees" table in Peter Bibring's declaration, Plaintiffs eliminated 1,008.37 hours and reduced their lodestar by $685,602.[6] Bibring Decl. at ¶ 47.

During the course of negotiations, Defendants had ample opportunity to review the reasonableness of Plaintiffs' lodestar. Plaintiffs' counsel provided defense counsel with a searchable file of the billing records supporting their fees in March 2019, allowing them to scrutinize Plaintiffs' billing entries before the Settlement was finally reached months later. Bibring Decl. at ¶ 44.

---

[6] If it would assist the Court in its analysis, Plaintiffs can also provide detailed billing records for the items discretionarily excluded from the lodestar.

Defendants were fully incentivized to scrutinize billing records and negotiate fees aggressively. In cases in which a class action settlement calls for payment of attorneys' fees in addition to a monetary payment to class members, courts have recognized that a defendant may be "interested only in disposing of the total claim asserted against it [,] and . . . the allocation between the class payment and the attorneys' fees is of little or no interest to the defense . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) (citations and quotations omitted). By contrast, this case presented no monetary claims, so the only monetary payment required in the Settlement is Plaintiffs' attorneys' fees. Defendants' therefore retained a strong interest in scrutinizing the reasonableness of fees and seeking reductions through the negotiations. And while courts have recognized the need for assessing the reasonableness of fees to guard against a possible trade-off between attorneys' fees and injunctive relief obtained for the class, *id.*, the Settlement here bears no signs of such a trade-off. The injunctive relief obtained provides complete relief more extensive than any that could have been ordered by the Court. The fact that the settlement amount resulted from arms-length negotiations in which Defendants retained full incentive to seek reductions in fees provides an additional indicator of reasonableness.

The Parties ultimately settled on a $1,750,000 fee award that included costs and was already significantly below Plaintiffs' lodestar calculation. When evaluating the reasonableness of a fee settlement for an amount significantly below the lodestar, "a less exhaustive cataloging and review of counsel's hours" is involved than in evaluating a request for an award of the full lodestar. *See, e.g., Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SIDC, 2008 WL 8150856, at *9, n.35 (C.D. Cal. July 21, 2008). Accordingly, the Parties did not complete a searching review and negotiation over Plaintiffs' individual billing records.

Finally, had Plaintiffs prevailed in court, they would have been entitled to

seek to enhance their lodestar with a multiplier. Under California law, the initial lodestar may be adjusted based on factors, such as "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (citing *Serrano v. Priest*, 20 Cal.3d 25, 48 (1997); *see also Vasquez v. Rackauckas*, No. SACV09-1090 VBF RNBX, 2011 WL 3320482, at *3 (C.D. Cal. July 29, 2011) (awarding a 1.2 multiplier in the gang injunction context due to the novelty and complexity of the issues, the strong contingency risk, and complete relief obtained). Given the complexity, significant risk of nonrecovery, expertise of counsel, and exceptional and complete relief obtained, Plaintiffs might reasonably have sought and been granted a multiplier, making the settlement of fees for an amount less than their lodestar all the more reasonable.

In all, Plaintiffs' significant and varied exercises of discretion evince the reasonableness of the agreed-upon $1,750,000 award.

### B. The *Kerr* and *Hanlon* Factors Further Reflect the Reasonableness of the Negotiated Attorneys' Fee Award.

While there is a "strong presumption . . . that the lodestar figure represents a reasonable fee," *see Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1987), the court must also evaluate additional factors, such as those enunciated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). However, the Court need only discuss the relevant factors and those not already subsumed within the lodestar calculation. *See, e.g.*, *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 809 (9th Cir. 1994). Here, the pertinent *Kerr* and *Hanlon* factors are: (1) the obtained results; (2) time and labor required; (3) the novelty and difficulty of the questions involved and required skill to perform the service properly; (4) the risk of nonpayment; (5) counsel's experience, reputation,

and ability; (6) reaction of the settlement class; (7) the "undesirability" of the case; and (8) awards in similar cases. Ultimately, the district court has discretion in determining a reasonable fee, but the court must exercise that discretion consistently with the principles described above. *Perdue,* 559 U.S. at 552-53, 558; *Hensley*, 461 U.S. at 433-37.

**1. The Result of the Settlement Agreement Is Complete Relief to the Class**

The single most important factor in determining a fee award is the benefit obtained for the class. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Here, the Settlement Agreement provides complete relief for all current and future members of the Settlement Class. The City has agreed to cease enforcing gang injunctions against the Settlement Class and to institute policy changes that ensure individuals alleged to be active gang members are afforded adequate procedural protections before being made subject to any gang injunction in the future.

The Settlement Agreement not only terminates the City's prior process that Plaintiffs alleged was constitutionally infirm, but also sets forth precisely what process will be followed in the future—providing more extensive and detailed relief than Plaintiffs could have obtained from a judgment from this Court. Bibring Decl. at ¶¶ 4-5. Had Plaintiffs litigated the case to completion, the Court could have held that the City's gang injunction procedures are unconstitutional and prohibited the City from enforcing gang injunctions against all individuals who had been made subject absent sufficient pre-deprivation procedures. The Settlement Agreement provides the relief sought, while also establishing procedures for subjecting individuals to gang injunctions in the first instance, limiting the need for subsequent litigation to establish the precise contours of the process required and eliminating future uncertainty for the Settlement Class regarding their rights if the City attempts to make them subject to a gang injunction in the future. *Id.* As the

Court acknowledged in its Order Granting Motion for Preliminary Approval of Class Settlement, "the Agreement provides relief that exceeds the prohibitory injunction requested in Plaintiffs' Complaint . . . [and] [t]he parties' success in establishing a mandatory process going forward also reduces the likelihood of frequent and piecemeal litigation of the City's process for obtaining Gang Injunctions." Dkt. 148 at pp. 9-10. Therefore, the complete and extensive benefits to the Settlement Class—the most important factor in the reasonableness evaluation—strongly supports awarding the requested fees.

**2. Plaintiffs' Counsel Expended Significant Time and Labor Before and During the Litigation**

Over the course of nearly six years, Plaintiffs' counsel invested significant time and effort into this case, including conducting extensive pre-litigation investigation and legal research, and successfully litigating substantive motions. Plaintiffs' counsel engaged in extensive pre-litigation factual research, beginning at least as early as 2015. Bibring Decl. at ¶ 7. This research included reviewing discovery produced in related gang injunction litigation, including current and historical gang injunction policies of the City Attorney's Office, depositions of City employees, and all 46 orders granting gang injunctions and related dockets. *Id. Cf. Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 976 (C.D. Cal. 2014) (finding that plaintiffs had "significant information going into the settlement negotiations" where no formal discovery was exchanged, but plaintiffs engaged in substantial informal discovery). Plaintiffs' counsel's factual research also included numerous interviews with individuals made subject to the City's gang injunctions, researching the City's process for removal from gang injunctions, and representing individuals in their requests for administrative removal. *Id; see also* Green Decl. at ¶ 5. Because the City substantially altered its policies on gang injunctions during the couse of litigation, Plaintiffs' counsel had to engage in additional factual investigation and research on the newly established policies. Bibring Decl. at ¶ 7.

In pre-litigation, Plaintiffs' team also engaged an expert to review documents related to the City's gang injunction program and provide an analysis on topics such as the impact of gang injunctions on enjoined individuals and the community, the effectiveness of gang injunctions, and the inaccuracies of active gang membership designations. Bibring Decl. at ¶ 8.

Additionally, Plaintiffs' counsel prepared and filed the complaint and conducted extensive legal research on the legal claims and framing of the issues presented. Dkt. 2. During discovery in this matter, Plaintiffs' counsel prepared document requests and interrogatories, reviewed and summarized produced documents, and prepared a motion to compel for documents that were not timely produced. Bibring Decl. at ¶ 9. Plaintiffs' team prepared the Rule 26 conference and report and a motion for class certification and appointment of class counsel. Dkt. 93; Dkt. 107. They also prepared, filed, and vigorously litigated two motions for injunctive relief, securing, among other things, class-wide relief that ceased the City's enforcement of gang injunctions. Bibring Decl. at ¶ 9. After obtaining class-wide relief, Plaintiffs' counsel engaged in affirmative outreach to class members and explained how the preliminary injunction altered their rights. *Id.* Plaintiffs' counsel twice engaged in serious arms-length settlement discussions with Defendants. Bibring Decl. at ¶ 10. They prepared an extensive mediation brief, engaged in mediation sessions for nearly two years, and reviewed and provided feedback on a multitude of settlement proposals. *Id.* Plaintiffs' counsel also discussed and sought feedback on the proposed and final settlement terms with named and unnamed class members, including members of the Youth Justice Coalition. *Id.*

To finalize the Settlement Agreement, Plaintiffs' counsel prepared lengthy settlement documents, including the Settlement Agreement, preliminary approval motion, class certification motion, and class notice. Bibring Decl. at ¶ 11. Anticipated future work for Plaintiffs' team includes responding to potential

objections to the Settlement Agreement, drafting and filing the motion for final approval and proposed final approval order, participating in the final approval hearing, and continuing contact with class members and offering information and assistance as requested. *Id.*

**3. The Issues Are Novel and Difficult and Skill Was Required to Perform the Legal Service Properly**

This was a novel and complex case that required the skill of experienced litigators. This case constitutes one of the few cases in the nation to impose due process requirements on the enforcement of gang injunctions. *See also Vasquez*, 2011 WL 3320482 at *3 (establishing similar due process requirements but featuring a class of around 100 individuals subject to a single gang injunction). Class actions are also considered among the most complex types of litigation. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("It is common knowledge that class action suits have a well-deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action."). Moreover, cases that raise constitutional questions and litigate individuals' civil rights are generally considered complex litigation, as recognized by Congress in its passage of 42 U.S.C. § 1988, the civil rights attorneys' fees statute. The legislative history for the fee statute acknowledges Congress's intent that "the amount of fees awarded under [42 U.S.C. § 1988] be governed by the same standards which prevail in other types of equally complex federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature." S. Rep. No. 94-1011 (1976) *reprinted in* 1976 U.S.C.C.A.N. 5908 at 5913.

The issues presented in this case concern complex issues of constitutional law that required skillful litigation on two separate motions for a preliminary injunction. Dkt. 12; Dkt. 28; Dkt.115; Bibring Decl. at ¶¶ 12-13. Plaintiffs alleged that the City violated the due process rights of alleged active gang members by

failing to name Plaintiffs as defendants in the civil actions issuing gang injunctions or otherwise afford them an opportunity to contest the allegation that they were active gang members subject to the injunctions, before being served with and made subject to enforcement.

To litigate this matter, Plaintiffs' counsel had to engage in complicated and extensive factual research and analysis. As detailed above, Plaintiffs' counsel expended significant hours to review all 46 orders granting gang injunctions and related dockets, depositions of City employees, and current and historical gang injunction policies for the City Attorney's Office. Bibring Decl. at ¶ 7. Counsel also had to interview countless individuals subjected to gang injunctions, and used the garnered information to build Plaintiffs' legal claims. Bibring Decl. at ¶ 13.

**4. Plaintiffs' Counsel Assumed Risk of Nonpayment**

The risk of non-payment flowed from the complexity of the case as described above. This case was taken on a fully contingent basis. Bibring Decl. at ¶ 15. If Plaintiffs did not prevail, counsel would receive no compensation. Although Plaintiffs were not concerned about their ability to collect if they were successful, the risk lay in establishing that the underlying conduct by the City was illegal and, if so, the appropriate remedy. *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal., Sept. 2, 2011) ("While the County had resources to pay a judgment, the risk lay in establishing that there were actually County policies that were illegal.").

Furthermore, class actions are inherently risky for a variety of reasons. *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal 2008) ("In addition to the risk of establishing liability, class certification carries risks and requires experienced class counsel."). Most cases filed as a class action are not certified and many that are can still result in a loss, or in only a partial success. *See Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001) (holding that district court's decision to certify a class is subject to "very limited" review and will be reversed "only upon a

strong showing that the district court's decision was a clear abuse of discretion."). Thus, Plaintiffs bore the added level of risk that inheres in any class action. Bibring Decl. at ¶ 15.

**5. Plaintiffs' Counsel Has the Requisite Experience, Reputation, and Ability**

Plaintiffs' counsel are highly qualified and experienced litigators with extensive experience and reputations for litigating class actions and other complex litigation in the constitutional law, civil rights, and criminal justice arenas, with specific expertise in criminal justice and policing generally as well as specific experience in litigation involving gang injunctions and gang enforcement. Bibring Decl. at ¶¶ 19-37; Smolowe Decl. at ¶¶ 4-12.; Green Decl. at ¶¶ 4-11. The Bibring, Smolowe, and Green declarations attest to the qualifications of Plaintiffs' counsel. *Id*. Their performance and the successful outcome of this case also attest to their experience, reputation, and ability.

**6. The Class Has Not Reacted Fully to the Settlement**

Class members were provided Notice of the Proposed Settlement Agreement on the websites of the ACLU Foundation of Southern California, The Connie Rice Institute for Urban Peace, and the Youth Justice Coalition by December 16, 2020. Bibring Decl. at ¶ 17. In the first week of February 2021, Plaintiffs' counsel, with the assistance of the marketing and communications firm DJ-LA, published 20 Poster Outdoor Boards in high-traffic areas in numerous Safety Zones, notifying individuals of the Settlement Agreement. *Id.*

To date, while we have received inquiries from individuals seeking to confirm their status on the City's gang injunctions, we have not received any opt-outs or objections to the Settlement. Bibring Decl. at ¶ 18. Assuming this trend continues, it is an indication of class approval of the settlement. *See. e.g., In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) (citing *Churchill Village, L.L.C. v.*

*General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) ("The negligible number of opt-outs and objections indicates that the class generally approves of the settlement," affirming the approval of a class action settlement where 90,000 members received notice and 45 objections were received).

**7. Gang Injunction Cases Are Often Considered "Undesirable" to Litigators**

Although gang injunction cases raise important and novel constitutional questions, litigators often consider this type of case undesirable. To successfully litigate these matters, counsel must have extensive experience and skill in litigating class actions and other complex civil litigation concerning complicated constitutional law and criminal justice questions. At great risk of nonpayment, counsel typically must also engage in prolonged and vigorous litigation in an effort to secure substantial injunctive relief for an entire plaintiff class. Many attorneys simply do not want to handle matters related to street gangs, even in cases such as these where the question is whether police and prosecutors are wrongly labelling people as gang members. While there has been criticism of gang injunctions in law reviews for decades, questioning various ways they conflict with the Constitution,[7] Plaintiffs' counsel are aware of only three other federal civil challenges in the nation to enforcement of civil gang injunctions. Bibring Decl. at ¶ 14. The complex legal issues inherent in many gang injunction cases, coupled with the required skill and experience of counsel and significant risk of nonpayment, render this type of

---

[7] *See, e.g.*, Beth Caldwell, *Criminalizing Day-to-Day Life: A Socio-Legal Critique of Gang Injunctions*, 37 Am. J. Crim. L. 241, 241 (2010); Thomas A. Myers, *The Unconstitutionality, Ineffectiveness, and Alternatives of Gang Injunctions*, 14 Mich. J. Race & L. 285 (2009); Lindsay Crawford, *No Way Out: An Analysis of Exit Processes for Gang Injunctions*, 97 Cal. L. Rev. 161, 163 (2009); Cathy Wang, *Gang Injunctions Under Heat from Equal Protection: Selective Enforcement As A Way to Defeat Discrimination*, 35 Hastings Const. L.Q. 287 (2008); Matthew Mickle Werdegar, *Enjoining the Constitution: The Use of Public Nuisance Abatement Injunctions Against Urban Street Gangs*, 51 Stan. L. Rev. 409 (1999).

civil litigation undesirable to many litigators.

**8. The Requested Award is Commensurate with Awards in Similar Cases**

The Parties' negotiated award of $1,750,000 in attorneys' fees and costs is comparable to, if not significantly less than, awards in similar gang injunction cases. *See, e.g.*, *Vasquez*, 2011 WL 3320482, and Bibring Decl., Ex. N (awarding Plaintiffs' counsel $3,247,249 in fees, prior to appeal, plus an additional $572,032.10 on appeal, in gang injunction case concerning due process procedures in enforcement of single gang injunction with plaintiff class of about 100 members); Bibring Decl. at ¶ 55 & Ex. J, order in *Rodriguez v. City of Los Angeles*, No. CV 11-1135-DMG (PJWx) (C.D. Cal. March 24, 2017) (awarding Plaintiffs' counsel $5,750,000 in fees in class action settlement concerning unconstitutional curfew provisions in gang injunctions).

**CONCLUSION**

For the foregoing reasons, Plaintiffs ask that the Court award $1,750,000 in attorneys' fees and costs, as provided in the Settlement Agreement.

Dated: March 15, 2021

Respectfully Submitted,
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
MUNGER, TOLLES & OLSON LLP
THE CONNIE RICE INSTITUTE FOR URBAN PEACE

By: *s/ Melanie P. Ochoa*
Melanie P. Ochoa

*Counsel for Plaintiffs*