United States District Court
Central District of California

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Youth Justice Coalition, et al.,

Plaintiffs,

v.

City of Los Angeles, et al.,

Defendants.

2:16-cv-07932-VAP-RAOx

**Order GRANTING Motion for Final Approval of Class Settlement and Motion for Award of Attorneys' Fees and Costs (Dkts. 151, 158).**

Plaintiffs Youth Justice Coalition, Peter Arellano, and Jose Reza ("Plaintiffs") filed a Motion for Final Approval of Class Settlement ("Settlement Motion," Dkt. 158) and a Motion for Award of Attorneys' Fees and Costs ("Fees Motion," Dkt. 151). The Motions are unopposed. After considering all papers filed in connection to the Motions and holding a hearing, the Court GRANTS the Motions.

## I. BACKGROUND

On October 25, 2016, Plaintiffs filed their class action complaint on behalf of a putative class of persons notified by the City of Los Angeles ("City") that they are subject to a "Gang Injunction," an injunction prohibiting suspected gang members from participating in various activities. (Compl., Dkt. 2.) Plaintiffs allege that the City's enforcement of Gang Injunctions violates the procedural due process protections of the United States Constitution and California Constitution. (*Id.*)

United States District Court
Central District of California

After years of litigation, the parties reached an agreement to settle the case (the "Settlement Agreement"). ("Agmt.," Dkt. 158-1, Ex. 1.) On October 15, 2020, the parties moved for preliminary certification of the proposed settlement class and approval of the Settlement Agreement. (Dkt. 23.) On November 17, 2020, the Court granted the motion and directed notice be given to the proposed class members. (Dkt. 148.) After providing notice and receiving no objections, Plaintiffs now move for final approval. (Dkt. 158.)

The key terms of the Settlement Agreement are as follows. The Settlement Agreement provides relief to the Settlement Class, defined below, in relation to the 46 Gang Injunctions currently in effect and any future Gang Injunctions. (*See* Agmt.) The City may enforce existing or new Gang Injunctions against persons only if they are a named defendant in the underlying civil proceeding or are otherwise joined in the proceeding in a manner entitling them to the procedural rights due to defendants, and the City obtains a court order finding that the person is an active gang member. (*Id.* ¶¶ 21, 29.) The enforcement of a Gang Injunction against a person is limited to five years from the date of the court order determining his or her active gang membership. (*Id.* ¶ 37.) The Settlement Agreement preserves for the Settlement Class all individual claims and forms of relief distinct from the specific due process claims and injunctive relief sought in the present litigation. (*See id.* ¶ 41.)

United States District Court
Central District of California

Additionally, for a period of three years, the City will provide a letter to persons against whom it seeks to enforce a Gang Injunction containing Class Counsel's contact information and information about the court process. (*Id.* ¶ 27.) For that same period, the City will provide Class Counsel with the contact information of such persons for the limited purpose of allowing Counsel to connect them with legal resources. (*Id.*) Finally, the parties agree to an award of $1,750,000 in attorneys' fees and costs to Class Counsel. (*Id.* ¶ 45.)

## II. SETTLEMENT MOTION

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

The approval of a settlement is a multi-step process. The parties first seek preliminary approval of the settlement class and settlement agreement, after which the Court directs notice to class members and holds a "fairness hearing" to determine if final approval is warranted. A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power*

*Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*,150 F.3d 1011, 1026 (9th Cir. 1998)). Rule 23(e)(2) directs courts to consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other."[1] Fed. R. Civ. P. 23(e)(2).

**B. The Settlement Class**

The proposed class ("Settlement Class") consists of "[a]ll persons, past and future, whom an authorized agent of City has notified, whether by personal service or otherwise, that they are subject to a Gang Injunction and who were not named as individual civil defendants, or who were not substituted in as Doe defendants, in the civil nuisance abatement action to obtain that injunction." (Agmt. ¶ 13.)

The Court has already certified a class in this matter under Rule 23(b)(2). (Dkt. 114). The Settlement Class differs from the previously certified class in that it does not exclude persons who have contempt

[1] Courts in this Circuit have applied multi-factor tests to determine if preliminary and final approval are proper. *See, e.g., In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Although Rule 23 does not purport to displace those tests, the Advisory Committee cautions that "[t]he sheer number of factors can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. The Court therefore considers the core factors provided by the Rule, as it did in its order preliminarily approving the settlement.

United States District Court
Central District of California

United States District Court
Central District of California

proceedings for violation of a Gang Injunction pending against them. As the Court previously found, the addition of these proposed members does not alter the reasoning underlying its earlier decision to grant class certification, (Dkt. 148 at 5). *See Allen v. Similasan Corp.*, No. 12-CV-00376-BAS-JLBx, 2017 WL 1346404, at *3 (S.D. Cal. Apr. 12, 2017) (approving expansion of settlement class where the expansion did not change the court's previous class certification analysis). The Court is not aware of any legal or factual developments that would alter that conclusion.

Accordingly, the Court certifies the proposed Settlement Class pursuant to Rule 23(b)(2) for purposes of settlement.

### C. Notice Requirements

As a preliminary matter, "[a]dequate notice [to class members] is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. The Court previously reviewed and approved the parties' plan for notice, which utilized non-traditional methods like social media advertising and large-scale posters to best reach class members. (Dkt. 148 at 13.)

Plaintiffs now attest that notice was provided as proposed, with certain adjustments made due to the COVID-19 pandemic. The approved notice and Settlement Agreement were posted on the websites of the ACLU Foundation of Southern California ("ACLU"), the Connie Rice Institute for Urban Peace ("UPI"), and the Youth Justice Coalition. (Dkt. 152 ¶ 2, Dkt. 153 ¶ 2, Dkt. 154 ¶ 2.) Pursuant to the proposed plan, the Youth Justice

Coalition provided notice via email to its distribution list of approximately 10,000 persons and announced the settlement on its social media accounts. (Dkt. 154 ¶¶ 2–3.)

The Youth Justice Coalition explains that direct outreach to class members via community meetings and gang intervention workers was limited due to the COVID-19 pandemic and loss of critical staff. (*Id.* ¶¶ 4–5.) Instead, the Youth Justice Coalition announced the settlement during policy meetings held in December 2020 and directed the representatives of the organizations in attendance to its website for further information. (*Id.*) The UPI additionally provided the settlement notice and an update on the status of the present litigation to a distribution list that included representatives of 16 organizations and advocacy groups focused on frontline violence intervention. (Dkt. 153 ¶ 3.)

Additionally, a third party marketing firm conducted the proposed four-week advertising campaign through print and social media. (*See* Dkt. 155.) Twenty large-scale outdoor posters directing viewers to a website containing the notice and Settlement Agreement were placed within Gang Injunction zones.[2] (*Id.* ¶¶ 3–5). The majority of the posters are estimated to have received between 100,000 and 440,719 views per week. (*Id.*) The social media advertising campaign on Facebook and Instagram also geo-targeted users in Gang Injunction areas. (*Id.* ¶¶ 7–9.) The advertisement, which directed viewers to the same website as the posters, had a "reach" of

---

[2] The posters were up for a minimum of four weeks. (Dkt. 155 ¶¶ 4–6.) Twelve remain up as of March 25, 2021. (*Id.*)



United States District Court
Central District of California

182,813 persons, reflecting the number of unique persons who viewed it. (*Id.* ¶¶ 9–10.)

The Court is satisfied that the multi-media approach was executed as best as practicable and adequately directed notice at class members. Plaintiffs represent that they have received inquiries regarding the litigation and the impact of settlement, but no objections have been lodged. (Dkt. 156 ¶¶ 5–6.)

Counsel for the City represents that notice of the proposed settlement was also provided to the Attorneys General of the United States and California pursuant to 28 U.S.C. § 1715. (Dkt. 157, Ex. A.) That section requires service of notice on the appropriate official of "*each* State in which a class member resides." 28 U.S.C. § 1715(b) (emphasis added). As Counsel's notice indicates that class members reside in states outside California, the Court will order final approval 90 days after notice to an appropriate official of those states has been served. *See* 28 U.S.C. § 1715(d). The Court will accordingly hold this Order in abeyance until such time.

**D. The Settlement Agreement**

The Court next assesses whether the Settlement Agreement is fair, reasonable, and adequate by applying the Rule 23(e) factors. As in its order preliminarily approving the Settlement Agreement, the Court finds all four factors satisfied. The Court briefly revisits its analysis below.



United States District Court
Central District of California

United States District Court
Central District of California

1. Adequate Representation

As the Court previously observed, Class Counsel are experienced in conducting similar civil rights litigation and have demonstrated their experience and extensive knowledge of the facts and legal issues in this matter. (Dkt. 114 at 13; Dkt. 148 at 6.) Indeed, Counsel have brought several successful motions, including for preliminary injunctive relief. (*See* Dkts. 106, 132.) That Counsel have now secured full relief for the Settlement Class further evinces their capabilities. Accordingly, the Court has no difficulty concluding that the representation provided by Counsel was adequate. The Court is satisfied that the class representatives, Peter Arellano and Jose Reza, have performed adequately, including by assisting Counsel throughout the prolonged settlement negotiations. (Dkt. 148 at 7.)

2. Negotiation of the Proposed Settlement

The Court is satisfied with the arm's-length, serious, informed, and non-collusive negotiations in this matter. As stated above, the class was represented by experienced, well-informed counsel during the settlement process. The parties' sustained negotiations, which lasted almost two years and included the rejection of other settlement proposals (Dkt. 148 at 7), indicate that the Settlement Agreement was the result of a process that was "fair and full of adversarial vigor," *City of Colton v. American Promotional Events, Inc.*, 281 F. Supp. 3d 1009, 1012 (C.D. Cal. 2017) (quoting *U.S. v. Chevron U.S.A., Inc.*, 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005). As the Court previously noted, the guidance of a Ninth Circuit mediator and the involvement of variety of groups in the settlement process, including unnamed class members and city representatives, further reduces the risk

of collusion (Dkt. 148 at 7–8). *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (holding that participation of a mediator is "a factor in favor of a finding of non-collusiveness").

3. Adequate Relief

In determining the adequacy of relief, the Court takes into account the following subfactors: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class; (3) the terms of any proposed award of attorney's fees; and (4) any agreements made in connection with the proposal. *See* Fed. R. Civ. P. 23(e).

The Court previously found that the extensive relief provided by the Settlement Agreement, summarized above, supports approval of its terms. (Dkt. 148 at 9.) As Plaintiffs note, their success on the merits in this matter would have permanently enjoined the City from enforcing Gang Injunctions against persons who did not receive pre-deprivation process but would leave open the issue of the process necessary going forward. The Settlement Agreement thus provides the additional benefit of securing uniform process for class members, including notice and an opportunity to challenge allegations of gang membership. Under these circumstances, Plaintiffs' reluctance to risk trial and incur further costs is reasonable. Additionally, the method of distributing relief to the class is not a concern here as the onus is on the City to comply with the procedures set forth in the Agreement. The Court also notes the lack of any objections to the Settlement Agreement despite the adequate notice procedures explained

United States District Court
Central District of California

above.[3] "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms … are favorable to the class members." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004).

As to the third subfactor, the Court finds the allocated attorneys' fees reasonable for the reasons set forth below and the timing of the payment, which is to occur after the Court's entry of final approval, acceptable. *See Perks v. Activehours, Inc.*, No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021) (third subfactor favored approval where fees were reasonable and were to be paid after final approval). Finally, the parties represent that they have not made any other agreements in connection with the proposed settlement. (Dkt. 158-1 ¶ 9.)

4. <u>Equal Treatment of Class Members</u>

The Settlement Agreement provides the same relief to all class members, namely relief from existing Gang Injunctions enforced without due process and the guarantee of process prior to the enforcement of any future Gang Injunctions. (*See* Dkt. 148 at 11.) This factor accordingly supports approval.

As each Rule 23(e) factor favors approval of the Settlement Agreement, the Court's final approval is warranted.

---

[3] There were no objections to the Settlement Agreement raised at the hearing on the Motions.

United States District Court
Central District of California

## III. FEES MOTION

### A. Legal Standard

Notwithstanding an explicit agreement to shift attorneys' fees in a certified class action, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. The "lodestar" method is typically used where the benefit received by the class is primarily injunctive in nature, and therefore, monetary benefit is not easily calculated. *Id.* The lodestar approach calculates attorneys' fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). The "relevant community" for purposes of the prevailing market rate is the "forum in which the district court rests." *Id.* at 979. Courts have the discretion to award fees at current rather than historic rates to account for delay. *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992).

Additionally, the lodestar may be adjusted upward or downward based on a variety of factors, *see e.g. Kerr v. Screen Extras Guild, Inc.*, 526 F.2d



United States District Court
Central District of California

United States District Court
Central District of California

67, 70 (9th Cir.1975), the most important of which is the benefit obtained for the class, *In re Bluetooth*, 654 F.3d at 942.

B. **The Proposed Fees and Costs**

As a term of the Settlement Agreement, the parties agreed to a $1,750,000 award of attorneys' fees and costs to Class Counsel. (Agmt. ¶ 45.) Counsel represent that this amount represents only a partial recovery of the fees and costs they incurred in connection with this litigation.

The Court has reviewed the declaration detailing the $7,262.47 in costs incurred by Counsel in this matter and finds such costs reasonable. (Dkt. 151-2 ¶¶ 16–18.) As to attorneys' fees, Counsel estimate a lodestar of $2,173,207.50 based upon 2,998.3 hours of work at their respective current hourly rates. (Dkt. 151-1 ¶ 40.) Counsel have excluded certain hours from the lodestar estimate, including those spent participating in team meetings for more than two participants per firm, onboarding new attorneys, and conducting factual or legal research related to claims not ultimately litigated. (*Id.* ¶ 46.) Additionally, the proposed lodestar does not include hours billed after November 2018, and thus does not include time spent negotiating, finalizing, and executing the Settlement Agreement or drafting the motions for approval of the Settlement Agreement. (*Id.*) For the hours included in the lodestar calculation, the Court has reviewed Counsel's detailed billing records and confirms that the tasks performed and the hours expended on such tasks are reasonable (*id.*, Ex. A). *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (noting it is a "highly atypical civil rights case where plaintiff's lawyer engages in churning").

The Court next considers the hourly rates of the 24 attorneys, paralegals, and other litigation staff who billed time on this matter.[4] Class Counsel at the ACLU, UPI, and Munger, Tolles, and Olson LLP ("MTO") provide declarations attesting to their skill and experience. (Dkts. 151-1, 151-2, 151-3.) ACLU and UPI Counsel's rates reasonably range from $420 per hour for a staff attorney to $815 per hour for the ACLU's Director of Police Practices. (Dkt. 151-1 ¶ 42.) Counsel attach court orders from this district approving the rates of ACLU attorneys with comparable skill and experience to the ACLU and UPI attorneys who have billed time in this matter. (Dkt. 151-1 ¶¶ 48–54, Exs. C–G; Dkt. 151-3 ¶ 12.)[5]

As for Counsel at Munger, Tolles and Olson LLP ("MTO"), the rates provided range from $765 for an associate to $1050 for a partner. (Dkt. 151 ¶ 42.) Even if MTO's rates were aligned more closely with the rates of their ACLU and UPI co-counsel, the resulting lodestar of $1,851,189.38 still exceeds the fees requested here.[6] The Court also finds no grounds for a downward adjustment in the total lodestar, particularly in light of the exceptional relief obtained for the class in this matter. As the sum of the reasonable costs incurred and estimated lodestar exceeds the $1,750,000

[4] A table listing the persons that billed time in this matter, their titles and years of experience, the hours they billed, and their respective hourly rates is provided in the supporting declarations. (*See* Dkt. 151-1 ¶ 42.)

[5] Based on its knowledge of rates in this district, the Court finds the hourly rate of the ACLU's paralegal reasonable as well.

[6] This calculation accounts for a hypothetical 25% reduction in the rates for MTO's attorneys, paralegals, and litigation staff.



United States District Court
Central District of California

award allocated to Counsel by the terms of the Settlement Agreement, the Court approves the award.

## IV. CONCLUSION

The Court therefore **GRANTS** the Motion for Final Approval of the Settlement Agreement and the Motion for Award of Attorneys' Fees and Costs. The parties are ordered to implement the Settlement Agreement, including the provision awarding attorneys' fees and costs, in accordance with its terms. The action is accordingly **DISMISSED WITH PREJUDICE**. The Court will retain jurisdiction for the purpose of enforcing the Settlement Agreement and as to any related matters for a period of three years from the date of the final judgment.

The Court holds this Order in abeyance pending Defendant's satisfaction of the notice requirements of 28 U.S.C. § 1715. Defendant is **ORDERED** to complete service of notice upon the appropriate state officials on or before June 28, 2021 and file a declaration with the Court attesting to such service. The Court will issue a final judgment 90 days thereafter.

**IT IS SO ORDERED.**

Dated: 6/8/21



Virginia A. Phillips
United States District Judge



United States District Court
Central District of California